UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
JENNIFER ECKHART and CATHY AREU,          :
                                          :
                    Plaintiffs,           :     Civil Case No. 1:20-cv-05593
                                          :
    against                               :
                                          :
FOX NEWS NETWORK, LLC, ED HENRY,          :
SEAN HANNITY, TUCKER CARLSON and          :
HOWARD KURTZ, in their individual and     :
professional capacities,                  :
                                          :
                    Defendants.           :
-------------------------------------- X

## AFFIDAVIT OF CHRISTEN BLOOM IN SUPPORT OF DEFENDANTS' RULE 11 MOTION FOR SANCTIONS

I, Christen Bloom, affirm the following to be true under penalty of perjury pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.9:

1. I have been employed with Fox News Network, LLC ("Fox News") since 2016. Among other duties, I serve as an associate producer for *Hannity*, a Fox News Channel program that airs on Monday to Friday from 9 p.m. to 10 p.m. Eastern Time. I am fully familiar with the facts and circumstances set forth herein and make this Affidavit in Support of Defendants' Rule 11 Motion for Sanctions.

2. In 2018, I served as a booker and production assistant for *Hannity*. On March 8, 2018, I escorted Plaintiff Cathy Areu and a man who accompanied her into the studio where *Hannity* was set to air. I did not know the man's identity. I knew at the time, however,

that Sean Hannity liked to know the identity of people who were present in the studio during his program.

3. I heard Mr. Hannity ask Ms. Areu who her friend was and whether the two were dating. After Ms. Areu and her friend did not say anything in response, Mr. Hannity told them they should go to Del Frisco's on him.

4. I then saw Mr. Hannity give Ms. Areu $100. Ms. Areu was laughing during the conversation, and at one point said, "I can't accept." At no time did Ms. Areu appear "mortified" or "uncomfortable," as she has alleged in her Complaint.

5. Moreover, I did not see Ms. Areu "quietly plead[] with one of her friends in the room to accept the money so that the humiliation would end," as alleged in her Complaint. In fact, during the conversation, Ms. Areu's male friend and I were standing right next to one another behind the camera and crew, as we needed to be outside the camera shot.

6. At no time did I hear Mr. Hannity do or say anything to "auction off" Ms. Areu, nor did he say anything remotely "misogynistic" or harassing to or about her.

7. Moreover, at no time did Mr. Hannity ever "offer" a "stack of cash" to his "male staff, auctioning off Ms. Areu to anyone in the studio was 'man enough' to take her on a date after work," as alleged by Michael Willemin, in a July 20, 2020 email to the Wigdor Firm's "press list." Nor did Mr. Hannity harass Ms. Areu, sexually or otherwise, as Mr. Willemin has stated.

8. Later that month, Ms. Areu again appeared as a guest on *Hannity* and was accompanied by the same man. On this occasion, Ms. Areu told Mr. Hannity that she and her friend enjoyed their date at Del Frisco's that had been paid for by Mr. Hannity. Mr. Hannity

told her he was glad she had a good time and offered her another $100 to go back to Del Frisco's, which was accepted.

Dated: 09/29/20

By: _____
Christen Bloom