UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER ECKHART,

                    Plaintiffs,

            v.                                          Case No. 20-CV-5593 (RA)

FOX NEWS NETWORK, LLC, and ED HENRY, in his
individual and professional capacities,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ED HENRY'S
MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT**

Elkan Abramowitz
Catherine M. Foti
Douglas Chalke
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND.................................................................................................4

ARGUMENT ........................................................................................................................10

    I.     PLAINTIFF ECKHART'S TVPA CLAIM SHOULD BE DISMISSED .............10

         A.  Eckhart Fails to Allege that Mr. Henry "Enticed or Recruited" Her...............10

         B.  Eckhart Fails to Allege Mr. Henry Knew He Would Use Fraud or
             Force.......................................................................................................................15

         C.  Eckhart Fails to Allege a "Commercial Sex Act" .............................................16

    II.    PLAINTIFF'S NYHRL CLAIMS FAILS TO STATE A CLAIM FOR
         RELIEF AND ARE TIME-BARRED.........................................................................18

         A.  Plaintiffs Fail to Allege Mr. Henry Was an Employer or Supervisor..............19

         B.  Eckhart Fails to Allege Mr. Henry Aided and Abetted any Hostile
             Work Environment Claim .....................................................................................20

         C.  Plaintiff Fails to Allege Mr. Henry Retaliated Against Either Plaintiff
             or Aided and Abetted Any Retaliation................................................................22

         D.  Eckhart's Claims are Time-Barred by the Statutes of Limitations ..................25

    III.   ECKHART'S GENDER-MOTIVATED VIOLENCE ACT CLAIM
         FAILS TO ALLEGE GENDER ANIMUS AND SHOULD BE
         DISMISSED .................................................................................................................27

    IV.   THE COURT SHOULD GRANT MR. HENRY'S MOTION FOR
         A MORE DEFINITE STATEMENT ........................................................................29

CONCLUSION......................................................................................................................32

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Jenkins*,
  2005 WL 6584554 (Sup. Ct., N.Y. Cty. Apr. 22, 2005) ............................................................ 28

*Aguirre v. Best Care Agency, Inc.*,
  961 F. Supp. 2d 427 (E.D.N.Y. 2013)................................................................................... 10

*Ardolf v. Weber*,
  332 F.R.D. 467 (S.D.N.Y. 2019)......................................................................................... 15

*Bankest Imports, Inc. v. ISCA Corp.*,
  717 F. Supp. 1537 (S.D. Fla. 1989)..................................................................................... 31

*Bermudez v. City of New York*,
  783 F. Supp. 2d 560 (S.D.N.Y. 2011).................................................................................. 25

*Breest v. Haggis*,
  180 A.D.3d 83 (2019) .................................................................................................. 28, 29

*Canosa v. Ziff*,
  2019 WL 498865,n.26 (S.D.N.Y. Jan. 28, 2019)..................................................................... 17

*Cordero v. Epstein*,
  869 N.Y.S.2d 725 (Sup. Ct., N.Y. Cty. 2008)................................................................... 28, 29

*Corrado v. New York Unified Court Sys.*,
  163 F. Supp. 3d 1 (E.D.N.Y. 2016) ................................................................................. 26, 27

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir.2000)................................................................................................ 32

*David v. Weinstein Co. LLC*,
  431 F. Supp. 3d 290 (S.D.N.Y. 2019)....................................................................... 11, 12, 17

*DeLuca v. AccessIT Grp., Inc.*,
  695 F.Supp.2d 54 (S.D.N.Y. 2010)........................................................................................ 5

*DiPilato v. 7-Eleven, Inc.*,
  662 F. Supp. 2d 333 (S.D.N.Y. 2009)......................................................................... 19, 21, 22

*Dunson v. Tri-Maint. & Contractors, Inc.*,
  171 F. Supp. 2d 103 (E.D.N.Y. 2001).................................................................................. 21

*F.D.I.C. v. Mintz*,
  816 F. Supp. 1541 (S.D. Fla. 1993)................................................................................ 30

*Garcia v. Comprehensive Ctr., LLC*,
  2018 WL 3918180 (S.D.N.Y. Aug. 16, 2018) ..................................................... 27, 28

*Gordon v. N.Y. City Bd. of Ed.*,
  232 F.3d 111 (2d Cir. 2000)........................................................................................ 23

*Gottwald v. Sebert*,
  2016 WL 1365969 (Sup. Ct., N.Y. Cty. Apr. 06, 2016) ......................................... 28

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)........................................................................................ 22

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)......................................... 19, 27, 28, 29

*In re Argo Commc'ns Corp.*,
  134 B.R. 776 (Bankr. S.D.N.Y. 1991) .................................................................... 30

*In re WorldCom, Inc. Sec. Litig.*,
  303 F. Supp. 2d 385 (S.D.N.Y. 2004)...................................................................... 32

*Jackson v. New York State*,
  523 F. App'x 67 (2d Cir. 2013).................................................................................. 26

*Jones v. H.H.C. Inc.*,
  2003 WL 1960045 (S.D.N.Y. Apr. 8, 2003)........................................................... 32

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir.2007).............................................................................. 25, 27

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992)................................................................................. 30

*Kincheloe v. Farmer*,
  214 F.2d 604 (7th Cir. 1954)...................................................................................... 30

*Krause v. Lancer & Loader Grp.*,
  40 Misc.3d 385 (Sup. Ct., N.Y. Cty. 2013)............................................................ 20

*Lopez v. Ctpartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016)....................................................................... 32

*Malena v. Victoria's Secret Direct, LLC*,
  886 F. Supp. 2d 349 (S.D.N.Y. 2012)........................................................... 21, 23

*Meyer v. United Airlines, Inc.*,
   624 F. Supp. 2d 923 (N.D. Ill. 2008) ........................................................ 30, 31

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013) ......................................................................... 22

*Nelson v. City of New York*,
   2013 WL 4437224 (S.D.N.Y. Aug. 19, 2013) ............................................. 24

*Nelson v. Long Lines Ltd.*,
   2003 WL 21356081 (N.D. Iowa June 11, 2003) .......................................... 31

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................. Passim

*Palmer v. Cook*,
   64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) ......................................... 20

*Patterson v. County of Oneida*,
   375 F.3d 206 (2d Cir. 2004) ......................................................................... 25

*Priore v. New York Yankees*,
   307 A.D.2d 67 (1st Dep't 2003) .............................................................. 19, 20

*Robles v. Goddard Riverside Cmty. Ctr.*,
   2009 WL 1704627 (S.D.N.Y. June 17, 2009) ........................................ 23, 24

*Shuvalova v. Cunningham*,
   2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) .................................. 11, 14, 31

*Spires v. MetLife Grp., Inc.*,
   2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ............................................. 19

*Straker v. Metro. Transit Auth.*,
   333 F. Supp. 2d 91 (E.D.N.Y. 2004) ........................................................... 30

*Taylor v. City of New York*,
   207 F. Supp. 3d 293 (S.D.N.Y. 2016) ......................................................... 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................ 4

*Todd v. United States*,
   2012 WL 2952084 (W.D. Wash. June 26, 2012) ......................................... 16

*Trower v. Mount Sinai Hosp.*,
   2018 WL 4283724 (S.D.N.Y. Sept. 6, 2018) ............................................... 21

iv

*United States v. Campbell*,
  111 F. Supp. 3d 340 (W.D.N.Y. 2015) ............................................................ 16

*United States v. Evans*,
  476 F. 3d 1176 (11th Cir. 2007) .................................................................... 10

*United States v. Marcus*,
  487 F. Supp. 2d 289 (E.D.N.Y. 2007) ............................................................ 17

*United States v. Marcus*,
  538 F. 3d 97 (2d Cir. 2008) .......................................................................... 17

*United States v. Morrison*,
  529 U.S. 598 (2000) ...................................................................................... 16

*United States v. Todd*,
  627 F. 3d 329 (9th Cir. 2010) .................................................................. 10, 15

*United States v. Walls*,
  784 F. 3d 543 (9th Cir. 2015) ........................................................................ 10

*Villar v. City of New York*,
  135 F. Supp. 3d 105 (S.D.N.Y. 2015) .................................................... Passim

*White v. Pacifica Found.*,
  973 F. Supp. 2d 363 (S.D.N.Y. 2013) ............................................................ 23

*Wilcox v. Cornell Univ.*,
  986 F. Supp. 2d 281 (S.D.N.Y. 2013) ............................................................ 23

*Williams v. New York City Hous. Auth.*,
  61 A.D.3d 62 (1st Dep't 2009) ...................................................................... 25

## **Statutes**

18 U.S.C. § 1591(e)(3) ...................................................................................... 16

18 U.S.C.A. § 1591 .......................................................................................... 15

22 U.S.C. § 7101(b)(1) ..................................................................................... 10

N.Y. Exec. Law § 296 ...................................................................................... 19

New York City, N.Y., Code § 8-107 ................................................................ 19

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 4

Fed. R. Civ. P. 12(e) ............................................................................................... 1, 29

Defendant Edward "Ed" Henry respectfully submits this memorandum of law in support of his motion to dismiss the claims in Plaintiff Jennifer Eckhart's Second Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and in support of his motion for a more definite statement pursuant to FRCP 12(e).[1]

## PRELIMINARY STATEMENT

"Come n get it ;)" Jennifer Eckhart cheerfully declares in response to an email from Ed Henry stating he would "like to wipe [her] with [his] tongue."  Conveniently, Eckhart neglected to include this response when she referenced the email in her Second Amended Complaint as an example of a purportedly unwanted sexual overture.  Specifically, Eckhart claims that Mr. Henry sent her unwanted "lewd and graphic sexual messages," including one in which he said, "I'd like to wipe you with my tongue."  SAC  ¶¶ 40-41.  Eckhart fails to mention that in response she exclaims: "I bet you would, dirty boy. Come n get it ;)."  Eckhart likewise fails to mention the numerous pornographic photos that she sent to Mr. Henry, evidencing that Eckhart was a willing, consenting, and enthusiastic participant in their relationship.  These photos include photos of Eckhart posing seductively, photos of her naked breasts, photos of her buttocks in a thong, and closeups of her vagina.  Eckhart took all of these photos herself and, based on the timeline suggested by the Second Amended Complaint, sent these photos to Mr. Henry both before and after the alleged assault.  Unfortunately, the Second Amended Complaint is replete with examples such as this where Eckhart has cherry-picked communications, selectively quoted only portions of those communications, and failed to include crucial evidence of her interactions with

---

[1] Eckhart has entitled the operative Complaint as her "Amended Complaint."  However, it has been filed on the docket, properly, as Eckhart's "Second Amended Complaint" (*see* Dkt. No. 78).  All references to the operative Complaint in this memorandum will be to the "Second Amended Complaint" as docketed.

Mr. Henry to paint a false and libelous narrative of what was clearly a consensual relationship between two adults.

By her own account, Jennifer Eckhart never accused Ed Henry of any wrongdoing until after she was informed by Fox News Network, LLC ("Fox News") that she was being terminated and not until the day before her last day of employment.  Only then, after more than three years had passed from the end of their relationship, and in what was clearly a desperate attempt to save her job after apparently failing to meet the terms of a performance improvement plan, did Eckhart mention Mr. Henry's name.  The reason Eckhart had never before complained about Mr. Henry is because her allegations are false.  Although Mr. Henry and Eckhart did have a relationship, that relationship was completely consensual, and Eckhart engaged in it willingly and enthusiastically.  Mr. Henry did not harass, nor did he ever assault, Eckhart, and Eckhart's claims to the contrary are meritless.

The Second Amended Complaint alleges a number of causes of action.  Specifically, Eckhart asserts claims against Mr. Henry under the Trafficking Victims Protection Act ("TVPA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL" and together with the NYSHRL, "NYHRL"), and under the Gender-Motivated Violence Act ("GMVA").  Each of the causes of action asserted against Mr. Henry is meritless, fails to state a claim for which relief may be granted, and should be dismissed.

First, the claim that Mr. Henry engaged in "sex trafficking" in violation of the TVPA is utterly devoid of merit.  Even where all the allegations in the Second Amended Complaint are taken as true, Eckhart does not allege that Mr. Henry "enticed" or "recruited" her to engage in a "commercial sex act" nor that he knew that "fraud" or "force" would be used to require a

"commercial sex act." Indeed, there is nothing in the Second Amended Complaint to suggest that the alleged sex act was in any way "commercial" in nature. Moreover, Eckhart's failure to specify the date of many of the communications on which she relies further undermines any claim that she has properly alleged a claim under the TVPA.

Second, the claims that Mr. Henry violated the NYHRL, or aided and abetted such violations, cannot withstand scrutiny. As a threshold matter, Mr. Henry is not an "employer" under the statutes and therefore cannot be liable for any direct violations. The aiding and abetting claims also fail because Eckhart's allegations, even if true, do not establish that Mr. Henry aided and abetted a hostile work environment or that he retaliated against her. Finally, even if Eckhart's claims were sufficient to sustain a cause of action against Mr. Henry for violation of the NYHRL, the claims all arose from interactions that occurred more than three years prior to July 20, 2020, the date Eckhart filed her original complaint, and, therefore, are time-barred.

Third, the claim that Mr. Henry violated New York's GMVA is similarly unsustainable. To allege such a violation, a plaintiff needs to allege "gender animus" beyond the alleged sexual misconduct. Eckhart does not allege any facts sufficient to show that Mr. Henry harbored animus towards women, nor can she.

Fourth, in the event that the Court does not dismiss Eckhart's claims, it should nevertheless grant Mr. Henry's motion for a more definite statement so it can analyze the timeliness of her NYHRL claims as well as assess the sufficiency of the TVPA allegations.

Eckhart's claims against Mr. Henry, alleging violations of the TVPA, the NYHRL, and the GMVA cannot be sustained; therefore, the Second Amended Complaint should be dismissed in its entirety as against Mr. Henry.

## FACTUAL BACKGROUND

Ed Henry is a television and print journalist.  He started his broadcasting career as a

political analyst for a local Washington, D.C. radio station, WMAL, and quickly moved to work

for CNN where he began covering the White House in 2006.  In 2011, Mr. Henry left CNN to

become the Chief White House Correspondent for Fox News.  In late 2016, Mr. Henry also took

on the role of an occasional host for *Fox & Friends Weekend* and assumed his position as a more

regular host for that show in 2018. Then, in December 2019, Mr. Henry became a co-host of

*America's Newsroom*.  He held that position until Fox News terminated him on July 1, 2020.

*See* Declaration of Catherine M. Foti, dated October 18, 2020 ("Foti Decl.") at ¶ 2.

**Eckhart's Allegations**

In January 2013, Jennifer Eckhart began working as a Freelance Administrative Assistant

to Liz Claman.  SAC ¶ 11.  Liz Claman is an anchor at the Fox Business Network, a division of

Fox News Media separate from the division for which Mr. Henry worked.  *See* Foti Decl. at ¶ 2.

According to the Second Amended Complaint, Mr. Henry started following Eckhart on Twitter

at some point in 2014, seemingly out of the blue.  In actuality, the first contact Mr. Henry had

with Eckhart was on December 18, 2013, when Eckhart, who apparently had been following Mr.

Henry on Twitter, commented on one of Mr. Henry's tweets about the film Anchorman 2.  *See*

Tweet between Ed Henry and Jennifer Eckhart, dated December 18, 2013, attached as Exhibit A

to Foti Decl. at ¶ 3 ("LOVE Ron Burgundy. Huge fan. But have we NOT seen. enough. cross-

promotions. ?"  Eckhart replies "@edhenrytv It's really ruining a good thing." Mr. Henry then

responds "@JenniferEckhart folks know he's not a real anchor right? ha").[2]  Mr. Henry had

---

[2] Although normally courts are not entitled to consider extrinsic evidence in determining a motion to dismiss, they
must consider documents incorporated into a complaint by reference.  *See, e.g., Tellabs, Inc. v. Makor Issues &
Rights, Ltd., 551 U.S. 308, 322 (2007)* (when ruling on rule 12(b)(6) motions to dismiss, "courts must consider . . .

never met Eckhart and did not know who she was.  Only after Eckhart commented on his tweet did Mr. Henry learn that Eckhart worked for Fox Business and begin following Eckhart on Twitter.  Indeed, about two hours after Eckhart communicated with Mr. Henry on Twitter, Mr. Henry reached out to Eckhart over email and Eckhart responded, "Ha! Big fan of yours.…Thanks for the follow :)".  *See* Copy of email correspondence from Jennifer Eckhart to Ed Henry, dated December 18, 2013, attached as Exhibit B to Foti Decl. at ¶ 4.

According to Eckhart, sometime in 2014, she received a private message from Mr. Henry that read "beautiful" to which Eckhart responded telling Mr. Henry that she was a fan of his and that it would be an honor to meet him.  SAC ¶¶ 21-22.  Mr. Henry replied by telling Plaintiff Eckhart that he was in New York and inviting her to meet him in the green room, a common area where people congregate before going on air.  SAC ¶ 23.   Plaintiff Eckhart agreed, and the two had their picture taken.  SAC ¶ 24.

Although Mr. Henry disagrees with the sequence of events leading up to the picture he took with Eckhart, he agrees that they did take a picture and recalls that Eckhart then posted it publicly on Twitter.  *See* Foti Decl. at ¶ 5.  As the Second Amended Complaint also alleges, the parties exchanged an email in which Mr. Henry used the words "hard to get."  SAC ¶ 26. However, contrary to the Second Amended Complaint's description of that email, the instigator of any flirtation between the parties was Eckhart, not Mr. Henry.  The Second Amended Complaint alleges the following: Mr. Henry sent Eckhart a message asking her to send him the picture of the two of them together; Mr. Henry replied, "You are way more beautiful in person;" Mr. Henry asked Eckhart to "get drinks with him;" Eckhart refused; and Mr. Henry, who was

---

documents incorporated into the complaint by reference . . . .".); *DeLuca v. AccessIT Grp., Inc.,* 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) (same).  By including a portion of a communication between the parties in the Second Amended Complaint, the plaintiffs have incorporated that communication by reference and, therefore, the Court should consider the remainder of the communication.

"intent on pursuing her despite her rejections, wrote to her in in an email, 'Yep.  Hard to get.'"

SAC ¶¶ 25-26.  In actuality, after taking the photo, Mr. Henry reached out to Eckhart using an

email he guessed would be her work email address at Fox Business and asked, "this you? :)" to

which Eckhart flirtatiously replies, "Maybe :)".  Only then does Mr. Henry answer "hard to get,"

to which Eckhart replies "Very hard".  Then, after Mr. Henry indicates amusement with a reply

that simply says "ha," Eckhart invites him to communicate with her using her personal email

address: "Try me here:" Jennifer@jennifereckhart.com.  *See* Email between Ed Henry and

Jennifer Eckhart, dated June 13, 2014, attached as Exhibit C to Foti Decl. at ¶ 6.

While the Second Amended Complaint is vague as to the timing of the next interaction

between Mr. Henry and Eckhart, it alleges that Mr. Henry invited Eckhart out for drinks, and

Eckhart eventually agreed.  SAC ¶¶ 27-28.  The two met at a hotel bar for drinks and then,

according to Eckhart, returned to Mr. Henry's hotel room and had consensual sex.  SAC ¶¶ 29-

32.  There is no allegation that they discussed work nor advancing Eckhart's career prior to this

consensual encounter.  Only after Eckhart had sex with Mr. Henry does he supposedly say he

could get her in the room with "really powerful people" which she now claims means he could

help her career.  SAC ¶ 33.  After this first alleged sexual encounter, Eckhart alleges another

encounter took place at the Fox News offices.  According to Eckhart, Mr. Henry told her to put

her underwear in an envelope for him to retrieve and Eckhart did so.  SAC ¶ 36.  Later that day,

Eckhart agreed to meet Mr. Henry in a Fox News guest office in the middle of the day where Mr.

Henry allegedly forced Eckhart to perform oral sex.  SAC ¶¶ 37-39.  According to the Second

Amended Complaint, Eckhart supposedly ran out of the room "in a state of shock, panic, and

fear."  SAC ¶ 39.  Eckhart claims she was so upset after this interaction that, thereafter, she

avoided Mr. Henry even though "he continued to send her lewd and graphic sexual messages,"

such as: "I'd like to wipe you with my tongue."  SAC ¶¶ 40-41.  However, what Eckhart neglects

to include in her description of this communication from Mr. Henry is her response: "I bet you

would, dirty boy.  Come n get it ;)".  *See* Copy of email from Jennifer Eckhart to Ed Henry,

dated October 21, 2015, attached as Exhibit D to Foti Decl. ¶ 7.

According to the Second Amended Complaint, over the next several months, Mr. Henry

continued to communicate with Eckhart, but contrary to the Second Amended Complaint's

suggestion that the communications were unwanted, the documentary evidence shows that

Eckhart welcomed and encouraged Mr. Henry's continued contact.  For example, early in 2016,

Eckhart sent Mr. Henry a playlist of songs they were to listen to during one of their encounters.

The playlist consisted of many sexual songs including songs like "Cockiness (Love It When You

Eat It)" which features the lyrics "I want you to be my sex slave . . . Set my whole body on fire".

Along with the playlist, Eckhart sent the message, "Think this is long enough?" in reference to

whether the playlist was long enough for their next sexual encounter.  *See* Copy of

correspondence from Jennifer Eckhart to Ed Henry, dated January 2, 2016, attached as Exhibit E

to Foti Decl. at ¶ 8.  And shortly thereafter, Eckhart sent Mr. Henry an email with a link to an

article about a man who has a vacuum cleaner tattooed around his crotch.  The article included

two pictures of the man displaying the tattoo, in one of them, the man is naked, holding his hands

over his private parts to hide his penis but allowing his tattoo to be visible.  In response to

Eckhart's email forwarding the link to the pictures, Mr. Henry responded, "yes and" to which

Eckhart replied jokingly, "WAY hotter than 'chief.'"  *See* Copy of email correspondence from

Jennifer Eckhart to Ed Henry, dated January 13, 2016, attached as Exhibit F to Foti Decl. at ¶ 9.

Eckhart's comment was a joking reference to a tattoo of Mr. Henry's that Eckhart would have

seen when she performed oral sex on him, an incident Eckhart now retroactively alleges was forced.

According to the Second Amended Complaint, Mr. Henry continued to send Eckhart sexually-charged messages, including references to bondage and obedience.  Significantly, one of those messages, which Eckhart alleges was sent on Valentine's Day, February 14, 2017, included Mr. Henry telling her "f--- you and your safe word" – a reference to a word upon which consenting adults agree will be a sign to the other to stop when engaged in certain forms of sexual activity.  SAC ¶ 50.

However, even more than these emails and texts, Eckhart's willing participation in their relationship is evident through her decision to provide Mr. Henry with numerous, wildly salacious, photographs she took of herself.  *See* Jennifer Eckhart photographs sent to Ed Henry, attached as Exhibits G-W to Foti Decl. at ¶ 10.  These photos include pictures of Eckhart scantily clad in lingerie with plunging necklines and thong underwear, lounging in sexually enticing poses on her bed or smiling seductively, pictures of her naked breasts, her naked buttocks in a thong thrust upward, and closeup photos of her vagina, one seemingly taken in the bath, and one where Eckhart is touching herself.  While some photos are more demure and others are extraordinarily graphic, all are sexually explicit.[3]  The majority of these photographs clearly are "selfies," taken by Eckhart of herself.  During the time that Eckhart was sharing these photographs with Mr. Henry, he was sending her sexual text messages.  SAC ¶¶ 48-53.

Notwithstanding the available evidence demonstrating Eckhart's active, willing participation in the relationship, she alleges that "at some point" in 2017,[4] Mr. Henry raped her.

---

[3] Since these Exhibits are filed publicly, we have obscured the images that show Eckhart's naked breasts, buttocks, or vagina.  *See* Exhibits I, J, M, and Q to Foti Decl. at ¶ 10.
[4] Significantly, Eckhart has not provided a more precise date of this alleged rape.

SAC ¶¶ 54-62.  According to Eckhart, Mr. Henry invited her to drinks at a restaurant supposedly frequented by Fox News employees, and Eckhart agreed.  SAC ¶ 54.  While having drinks, Mr. Henry apparently told Eckhart that Fox was awarding him with his own show and later invited her to take a walk with him back to his hotel.  SAC ¶¶ 55-56.  Eckhart agreed to walk Mr. Henry to his hotel and then to go to his room.  SAC ¶ 56.  Although the Second Amended Complaint fails to allege that Mr. Henry had any supervisory authority over Eckhart, who worked for Liz Claman in a completely different division of Fox News than Mr. Henry, Eckhart allegedly agreed to go out for drinks and then to go to his hotel room because she was afraid for her job.  There, according to Eckhart, Mr. Henry handcuffed her and took naked photographs of her in order to blackmail her in the future.  He then supposedly violently raped her.  SAC ¶¶ 58-62.  Despite claiming to have a precise date for the alleged rape (*see* SAC ¶ 63 (Eckhart claims to have texts from the next day)), Eckhart does not specify a date when this purported rape occurred. Thereafter, the Second Amended Complaint alleges no further contact between Eckhart and Mr. Henry and only a handful of subsequent incidents where Eckhart apparently saw Mr. Henry from a distance but did not interact with him.  Indeed, the only alleged subsequent interaction between the two was in late 2018 when Mr. Henry sent Eckhart a message asking why she had turned away from him, a picture of a football player, and a message that simply said "YO!".  SAC ¶¶ 68-70.

Over three years later, on June 12, 2020, Fox News terminated Eckhart's employment, effective June 26.  On June 25 Eckhart's counsel allegedly informed Fox News for the first time of Eckhart's allegations against Mr. Henry.  SAC ¶¶ 74-75.  On July 1, Fox News terminated Mr. Henry.  SAC ¶ 76.  There are no allegations that Mr. Henry was in any way involved with Eckhart's termination or even that he knew she was being terminated.

**ARGUMENT**

## I.   PLAINTIFF ECKHART'S TVPA CLAIM SHOULD BE DISMISSED

In enacting the TVPA, "Congress recognized that human trafficking, particularly of

women and children in the sex industry 'is a modern form of slavery, and it is the largest

manifestation of slavery today.'" *United States v. Walls*, 784 F. 3d 543, 548 (9th Cir. 2015)

(quoting 22 U.S.C. § 7101(b)(1)); *see also United States v. Todd*, 627 F. 3d 329, 333 (9th Cir.

2010) (Congress was focused on "the traffic in the sexual services of women based on importing

women from around the world by force or fraud").  The Sex Trafficking Act "criminalizes and

attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain."

*United States v. Evans,* 476 F. 3d 1176, 1179 (11th Cir. 2007).  A plaintiff suing under the Act

must show that the defendant knowingly and in interstate commerce "(1) recruited, enticed,

harbored, transported, provided, obtained, or maintained by any means a person; (2) knowing, or

in reckless disregard of the fact, that means of force, threats of force, fraud . . . or any

combination of such means will be used; (3) to cause the person to engage in a commercial sex

act."  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

Eckhart's allegations fail to plead that Mr. Henry "enticed" or "recruited" her within the

meaning of the TVPA.  Eckhart further fails to allege knowledge that means of force, threats of

force, or fraud would be used or that any "commercial sex act" was involved.  Accordingly, the

Court should dismiss the Second Amended Complaint's First Cause of Action alleging that Mr.

Henry violated the TVPA.

### A.   Eckhart Fails to Allege that Mr. Henry "Enticed or Recruited" Her

The core *actus reus* of a TVPA violation is "recruit[ing], entic[ing], harbor[ing],

transport[ing], provid[ing], obtain[ing], or maintain[ing]" victims of sex trafficking. *See Aguirre*

*v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 447 (E.D.N.Y. 2013) ("Plaintiff has failed to

10

demonstrate or explain how Defendant recruited, harbored, provided or obtained her services, a necessary element to prove trafficking under this statute . . . Without this element, Plaintiffs' trafficking claim under this statute is nothing more than her forced labor claim restated."). Words like "enticed" and "recruited" are not defined in the statute and courts therefore have interpreted these words consistent with their "ordinary meaning." *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 300 (S.D.N.Y. 2019). The word "entice" means "to attract artfully or adroitly or by arousing hope or desire," and "[to] attract or tempt by offering pleasure or advantage," whereas "recruit" means "to persuade to do." *Noble*, 335 F. Supp. 3d at 517 n.6. This alleged enticement or recruitment must precede the alleged "commercial sex act." *Shuvalova v. Cunningham,* No. 10-CV-02159, 2010 WL 5387770, at *4 (N.D. Cal. Dec. 22, 2010) (holding that plaintiffs failed to plead a TVPA claim where the only allegation regarding defendants' conduct *prior* to plaintiffs' arrival at the property was that one defendant "promised to take care of [plaintiffs] in a loving home").

While most cases involving TVPA allegations involve archetypal instances of sex trafficking and sex slavery, courts have acknowledged that non-archetypal allegations can also state a claim for TVPA violations. Although not controlling, cases concerning alleged TVPA violations by Harvey Weinstein are instructive on how courts analyze such claims. *See Noble*, 335 F. Supp. 3d 504; *David*, 431 F. Supp. 3d 290. In *Noble*, the plaintiff alleged extraordinary, specific, repeated, and persistent acts by Weinstein, the defendant. *Noble*, 335 F. Supp. 3d at 511-12. These acts included Weinstein allegedly (1) telling the plaintiff that he had a specific acting role in a major film for her, (2) having his assistant instruct plaintiff to write a narrative about herself and obtain detailed information from plaintiff, including a film reel, (3) having his assistant assure plaintiff that she would be contacted about the major film role, (4) later inviting

11

plaintiff to his hotel room specifically to discuss that film role, (5) telling plaintiff in his hotel room that he would "take care of everything" for plaintiff to obtain the film role, and (6) subsequently sexually assaulting the plaintiff.  *Id.*  On the basis of these extraordinary facts, the court concluded that Weinstein had sufficiently "enticed" and "recruited" the plaintiff.  *Id.* at 517; *see also David*, 431 F. Supp. 3d at 301 (finding that "enticement" element was met because the plaintiff plausibly alleged a "*modus operandi*" associated with the enticement).  Notably, while the TVPA forbids enticement through substantial specific promises, it does not prohibit "invites" or "asks."  *See Noble*, 335 F. Supp. 3d at 517-18.

Here, Eckhart fails to allege that Mr. Henry "enticed" or "recruited" her in violation of the TVPA.  As a threshold matter, Eckhart alleges three sexual encounters with Mr. Henry.  In the first instance, months after their initial communications, Eckhart agreed to meet Mr. Henry at his hotel for drinks and, after drinks, accepted Mr. Henry's invitation to his hotel room.  SAC ¶¶ 28-31.  Mr. Henry and Eckhart then had consensual sex.  SAC ¶ 32.  Eckhart does not allege that Mr. Henry improperly enticed Eckhart or that he ever even discussed his or her career prior to this admittedly consensual sexual encounter.  In fact, the only statement Eckhart attributes to Mr. Henry during this consensual encounter is a vague, non-specific comment that Mr. Henry could get Eckhart in a room with "really powerful people."  SAC ¶ 33.  That statement, however, came only after they had consensual sex, and thus, cannot be used to establish "enticement" for purposes of the TVPA.  Moreover, at the time of this encounter, Eckhart already was employed by Fox Business, allegedly working herself through the ranks, while Mr. Henry was just a correspondent for Fox News.  The Second Amended Complaint contains no allegation to support an argument that Mr. Henry had any authority over Eckhart or any ability to force Fox to affect Eckhart's position.  Moreover, the suggestion that Mr. Henry told Eckhart that he could get her

in a room with "really powerful people" does not suggest any *quid pro quo* exchange or provide any evidence of a promise to help Eckhart's career at Fox. The allegation does not rise to the level of "enticement" under the TVPA.

The second alleged sexual encounter between Eckhart and Mr. Henry purportedly took place in the Fox News' New York offices in September 2015. SAC ¶ 35. In this second instance, Mr. Henry allegedly told Eckhart to meet him in a guest office and Eckhart agreed. SAC ¶¶ 37-38. There, Eckhart waited until Mr. Henry finished a phone call and then performed oral sex on him during which Mr. Henry allegedly "physically used his hands" to force her head down. According to the Second Amended Complaint, Eckhart left right after performing oral sex. SAC ¶ 39. Again, Eckhart does not allege that Mr. Henry said anything to her about her career during or after this encounter; nor does she allege that Mr. Henry offered her anything of value to help her career or in any way threatened to hurt her career if she did not perform oral sex on him. Significantly, the only exchange the Second Amended Complaint references after this alleged encounter in Fox's offices, is a text from Mr. Henry, in which he states: "I'd like to wipe you with my tongue." SAC ¶ 41. Conveniently, the Second Amended Complaint fails to include Eckhart's reply to this text: "I bet you would, dirty boy. Come n get it ;)."

The third alleged sexual encounter purportedly took place "[a]t some point" in 2017 and involved what Eckhart now claims was a rape. SAC ¶ 54. According to the Second Amended Complaint, the events leading up to the alleged rape are as follows: Mr. Henry allegedly invited Eckhart for drinks at a restaurant supposedly frequented by Fox News employees where, apparently, Mr. Henry informed Eckhart he was being rewarded with "his very own show." SAC ¶¶ 54-55. Mr. Henry then "invited" Eckhart to his hotel room and Eckhart accepted, as she had done previously, of her own volition. SAC ¶ 56. At the hotel, Eckhart alleges that Mr.

Henry raped her.  SAC ¶¶ 58-62.  The Second Amended Complaint does not allege any other statements Mr. Henry made during drinks at the restaurant or in the hotel room that had anything to do with Eckhart's career or any supposed influence he could have on her career.  Indeed, according to the Second Amended Complaint, the only alleged comment that had anything to do with either Mr. Henry or Eckhart's work during that evening was the alleged statement by Mr. Henry that Fox was going to give him his own show.  However, beyond Eckhart's speculation that this supposed show would make Mr. Henry a very powerful man at Fox, the Second Amended Complaint sets forth no factual allegations as to what benefit Mr. Henry's show would have for Eckhart.  Specifically, it fails to allege that Mr. Henry connected his supposed promotion to any benefit he would provide Eckhart if she agreed to have sex with him.  Mr. Henry never offered to help Eckhart's career and never threatened her career.  The Second Amended Complaint's failure to mention anything along these lines supports the conclusion that Mr. Henry made no promises or offers that make out "enticement" for purposes of alleging a violation of the TVPA.[5]

Notwithstanding the claim that the circumstances leading up to these sexual encounters make out a violation of the TVPA, these circumstances are more accurately characterized as unextraordinary and commonplace "invitations" that do not arise to "enticement" under the TVPA.  Unlike the plaintiffs in the *Weinstein* cases, Eckhart was already a Fox News employee. There are no allegations suggesting that Mr. Henry promised or offered Eckhart any career advancement.  *See Noble*, 335 F. Supp. 3d at 517-18.  Indeed, there is no reason to believe Mr. Henry even had the power to affect Eckhart's career or ever told Eckhart that he had such power.

---

[5] Eckhart also alleges Mr. Henry sent her text messages, though since both the messages and the alleged rape are undated, it is impossible to glean from the allegations whether these messages could have possibly "enticed" Eckhart.  *Shuvalova,* No. 10-CV-02159, 2010 WL 5387770, at *4 ("enticement" must come before alleged sex act).

Eckhart even alleges that, between these alleged encounters, Mr. Henry was put on leave by Fox
News suggesting, if anything, that Mr. Henry had little to no power over decisions at Fox.  SAC
¶ 43.  Furthermore, unlike the *Weinstein* cases, there is no *modus operandi* alleged where any
means, fraudulent or otherwise, were used to allegedly entice Eckhart.  Instead, by  Eckhart's
own admission, Mr. Henry merely "invited" her to his hotel, and she accepted the invitation.
Because Eckhart fails to allege any enticement, her TVPA claim fails.

### B.     Eckhart Fails to Allege Mr. Henry Knew He Would Use Fraud or Force

In addition to failing to allege that Mr. Henry "enticed" Eckhart, Eckhart also fails to
allege that Mr. Henry knew he would use "fraud" or "force," as required to plead a violation of
the TVPA.  The TVPA requires showing that a defendant receive something of a value "knowing
that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex
act."  18 U.S.C.A. § 1591.  This element requires a plaintiff to allege "awareness, at the initial
recruitment or enticement stage, that certain prohibited means will be employed to achieve a
perverse end goal: a commercial sex act."  *Noble*, 335 F. Supp. 3d at 518.  This knowledge is
commonly pled by showing a defendant's "pattern of behavior" or a "*modus operandi*," such that
[the defendant] knew that he had a pattern of using fraud or force to cause commercial sex acts
with victims."  *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019).  In other words, the
plaintiff must allege that "if things go as [the defendant] has planned, force, fraud or coercion
will be employed to cause his victim to engage in a commercial sex transaction."  *Todd*, 627 F.3d
at 334.

While Eckhart alleges that "force" was used in at least one sexual encounter, Eckhart
does not allege that Mr. Henry knew before the encounter that he would force Eckhart into a
commercial sex act.  To show that Mr. Henry had prior knowledge that force would be used,

Eckhart must do more than allege that force was used. Courts have required that plaintiffs plead a pattern of behavior, or *modus operandi*, to prove prior knowledge. *See Noble*, 335 F. Supp. 3d at 518. Eckhart pleads no such pattern in this case, from which the Court could infer that Mr. Henry planned to use force "at the initial recruitment or enticement stage," as required by the TVPA. *See id*. Moreover, to the extent Eckhart seeks to rely on the selective text messages quoted in the Second Amended Complaint to establish the element of prior knowledge, those messages are incomplete and undated, leaving only speculation to establish their context and timing. Such blatant speculation is insufficient to meet the requirement that the Second Amended Complaint allege that Mr. Henry knew force would be used and, therefore, Eckhart's TVPA claim should be dismissed.

## C.    Eckhart Fails to Allege a "Commercial Sex Act"

Eckhart's TVPA claim likewise fails because she does not allege any "commercial sex act." The TVPA defines "commercial sex act' as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). As a result of this definition, courts have historically limited the application of the TVPA to economic activity and, in particular, sexual exploitation for profit. *See United States v. Campbell*, 111 F. Supp. 3d 340, 344-46 (W.D.N.Y. 2015) (TVPA was intended to regulate an "economic 'class of activities'"). As such, "commercial sex acts are necessarily economic in nature . . . and distinguishable from laws governing gender-motivated crimes of violence and not involving such economic activity." *Todd v. United States*, No. C11-0470-JLR-MAT, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012); *see also United States v. Morrison,* 529 U.S. 598, 613 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."). To sufficiently plead a commercial sex act, therefore, a plaintiff must allege that the alleged sex-trafficking victim was

16

"sexually exploited for profit." *See United States v. Marcus*, 487 F. Supp. 2d at 307 (wherein the government contended that it is consistent with the statute's purpose to focus inquiry of what is a "commercial sex act" on "whether a given individual has been sexually exploited for profit") *rev'd on other grounds*, 538 F. 3d 97 (2d Cir. 2008).  While, the TVPA covers broader transactions than simple monetary exchanges, there must nevertheless be something "'of value' in exchange for the sex acts that took place." *David*, 431 F. Supp. 3d at 303.

Again, the *Weinstein* cases are instructive in showing how courts apply the "commercial sex act" element of the TVPA to non-archetypal TVPA claims.  *See Noble*, 335 F. Supp. 3d at 521; *David*, 431 F. Supp. 3d at 303-05; *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *22 n.26 (S.D.N.Y. Jan. 28, 2019).  As outlined above, *Noble* concerned a situation where the defendant, both himself and through an agent, repeatedly promised the plaintiff a film role.  335 F. Supp. 3d at 517-18.  In analyzing whether this alleged exchange constituted a "commercial sex act," the court concluded that, "[the plaintiff's] reasonable expectation of receiving those things in the future, based on [Weinstein's] repeated representations that she would, is sufficient" to satisfy the element.  *Id*. at 521.  Subsequent cases have accepted the reasoning that a defendant making "repeated representations" to a plaintiff that the plaintiff would receive something valuable, like a film role, in exchange for sex is sufficient to plead a "commercial sex act."  *See Canosa*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *22 n.26.

In this case, Eckhart fails to plead that any of her alleged sex acts was remotely "commercial" in nature.  As discussed above, Eckhart alleges three sexual encounters: (1) consensual sex with Mr. Henry in his hotel, (2) oral sex in a Fox News office, and (3) the alleged rape.  Unlike in the *Weinstein* cases, however, Eckhart does not provide a single statement, from any of these alleged encounters, where Mr. Henry promised Eckhart anything of value in

17

exchange for sex.  *See Noble*, 335 F. Supp. 3d at 517-21.  Even when Mr. Henry allegedly said

that he could get Eckhart in the room with "really powerful people," this statement was made

only *after* the first consensual encounter and therefore cannot sustain an allegation that Mr.

Henry made this offer in exchange for sex.  *See* SAC ¶ 33.  Indeed, there is nothing to suggest

Mr. Henry ever said he would have the power to secure a promotion for Eckhart, help her receive

a raise, or advance her career in any way.  At most, the allegations would support the conclusion

that Eckhart agreed to have a sexual relationship with Mr. Henry with the vague hope that doing

so could aid her career.  But such a hope was not based on any promise or implication from Mr.

Henry that he would provide Eckhart with something of value.

After an exhaustive search, we are aware of no cases where the "commercial sex act"

element is satisfied without any alleged promise or suggestion that the defendant could confer a

valuable benefit on the plaintiff.  To find the element satisfied here would functionally mean that

any two individuals who have sex have engaged in a "commercial sex act" if one of the

individuals hoped that doing so would aid his or her career.  Any workplace romance could then

become a "commercial sex act."  Such a reading defies both logic and precedent.  Because

Eckhart fails to satisfy the "commercial sex act" element, her TVPA claim against Mr. Henry

should be dismissed.

## II.   PLAINTIFF'S NYHRL CLAIMS FAIL TO STATE A CLAIM FOR RELIEF AND ARE TIME-BARRED

Plaintiffs' Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action, alleging

violations of the NYSHRL and the NYCHRL, should be dismissed.  The direct claims against

Mr. Henry fail because they do not allege that Mr. Henry had the supervisory authority to hire

Eckhart or terminate her employment.  The aiding and abetting claims also fail because

Plaintiffs' allegations, even if true, do not establish that Mr. Henry aided and abetted a hostile

work environment nor retaliated against Eckhart.  Finally, Eckhart's NYSHRL and NYCHRL

claims are time-barred as Mr. Henry's alleged conduct occurred over three years ago.

### A.     Plaintiffs Fail to Allege Mr. Henry Was an Employer or Supervisor

Under the NYSHRL and NYCHRL, employers can be held liable for discriminatory or

retaliatory conduct.  *See* N.Y. Exec. Law § 296; New York City, N.Y., Code § 8-107.  In order to

qualify as an "employer" under the NYSHRL, an individual must have "1) . . . had the power of

the selection and engagement of the employee; 2) . . . made the payment of salary or wages to the

employee; 3) . . . had the power of dismissal over the employee; and 4) . . . had the power to

control the employee's conduct."  *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 348 (S.D.N.Y.

2009).  An individual employee may also be liable "as an 'employer,' but that is limited to

individuals with ownership interest or supervisors, who themselves, have the authority to hire

and fire employees."  *Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015)

(internal quotation marks omitted).  Even where a plaintiff alleges that an individual defendant

"controlled the terms of Plaintiff's work" that is insufficient under NYSHRL unless that

individual "had authority to hire or fire" the plaintiff.  *Spires v. MetLife Grp., Inc.*, No. 18-CV-

4464 (RA), 2019 WL 4464393, at *6 (S.D.N.Y. Sept. 18, 2019); *see also Hughes v. Twenty-First

Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018) (dismissing NYHRL claims where

the plaintiff did not "assert that [two individual defendants] had an ownership interest in Fox, nor

[did the plaintiff] allege that they had direct supervisory authority over [the plaintiff].").

While the NYCHRL is somewhat broader than the NYSHRL, it nevertheless includes

employees "only where [the employees] act with or on behalf of the employer in hiring, firing,

paying, or in administering the 'terms, conditions or privileges of employment' -- in other words,

in some agency or supervisory capacity."  *Priore v. New York Yankees*, 307 A.D.2d 67, 74 (1st

Dep't 2003).  It is therefore insufficient for a plaintiff to plead mere seniority, rather than

supervisory authority, and an individual being sued under the NYCHRL "must be found to

possess the power to do more than simply carry out personnel decisions made by others."  *Id.*;

*see also Palmer v. Cook*, 64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) ("Plaintiff does not

allege that Chalmers possessed any supervisory authority. Therefore, Plaintiff cannot sustain a

cause of action against Chalmers pursuant to NYCHRL.").

Here, Eckhart does not allege that Mr. Henry had authority to fire her nor could she make

such an allegation because Mr. Henry did not have such power.  Eckhart likewise does not allege

that Mr. Henry had any supervisory authority whatsoever and certainly no supervisory authority

over her as they did not even work in the same division of Fox News.  This pleading failure is

fatal to Eckhart's NYSHRL and NYCHRL claims against Mr. Henry.  Even if true, Plaintiffs'

allegations would, at most, show that Mr. Henry was an employee of Fox News senior to

Eckhart.  Such allegations of mere seniority are insufficient to establish liability under the

NYHRL.  *See Villar*, 135 F. Supp. 3d at 143; *Priore*, 307 A.D.2d at 74.  Eckhart's claims

alleging direct violations of the NYSHRL and NYCHRL, therefore, should be dismissed.

**B.     Eckhart Fails to Allege Mr. Henry Aided and Abetted any Hostile Work Environment Claim**

In addition to the alleged direct violations, Eckhart's claims that Mr. Henry aided and

abetted a hostile work environment, sexual harassment, and gender discrimination should be

dismissed because Mr. Henry cannot be held liable for "aiding and abetting" his own alleged

conduct.  The NYSHRL and the NYCHRL do allow, in certain contexts, for an individual to be

held liable for aiding and abetting discriminatory conduct.  *Krause v. Lancer & Loader Grp.*, 40

Misc.3d 385, 398 (Sup. Ct., N.Y. Cty. 2013).  Both statutes provide that "'it shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of

20

the acts forbidden under this article, or attempt to do so.'"  *Id.* at 323 n.7.  Therefore, "the

[NYCHRL] . . . is subject to the same analysis as the [NYSHRL]."  *Dunson v. Tri-Maint. &*

*Contractors, Inc.*, 171 F. Supp. 2d 103, 113 (E.D.N.Y. 2001).  This "aiding and abetting"

liability, however, "is only a viable theory where an underlying violation has taken place."

*Villar*, 135 F. Supp. 3d at 143 (internal quotation marks omitted).  A defendant cannot be held

liable "for aiding and abetting their own conduct."  *Malena v. Victoria's Secret Direct, LLC*, 886

F. Supp. 2d 349, 368 (S.D.N.Y. 2012).

 For example, in *DiPilato*,  662 F. Supp. 2d 333, the plaintiff alleged that the defendants

denied her application to become a 7-Eleven franchisee and employee on account of her sex, in

violation of the NYHRL and Title VII.  *Id.* at 345-46.  The plaintiff sued three individuals for

direct violations of the law and for aiding and abetting the violations.  *Id.*  According to the

plaintiff, one defendant named Lynch stated that the plaintiff's application should be denied

"because a single female over the age of forty (40) would not be suitable for such a franchise."

*Id.* at 344.  The other two individual defendants allegedly aided and abetted this violation by

failing to offer other explanations for the refusal of a franchise and did not dispel Lynch's

discriminatory motive.  *Id.* at 349.  The court concluded that the allegations against these two

defendants were insufficient to establish a discriminatory motive and they therefore could not be

held liable for aiding and abetting any NYHRL violations.  *Id.*  With respect to Lynch,

meanwhile, the court concluded that Lynch's alleged conduct discriminated on the basis of sex.

*Id.* at 353.  The only remaining defendants, however, were Lynch and 7-Eleven.  *Id.*  The court

therefore dismissed the aiding and abetting claims against Lynch because, "Lynch [could not] be

held liable under NYHRL for aiding and abetting her own alleged discriminatory conduct."  *Id.*;

*see also Trower v. Mount Sinai Hosp.*, No. 16-CV-4322 (PKC), 2018 WL 4283724, at *16

21

(S.D.N.Y. Sept. 6, 2018) ("[defendant] cannot be liable for aiding and abetting her own allegedly discriminatory conduct.").

In this case, Eckhart's claim that Mr. Henry aided and abetted a hostile work environment, sexual harassment, and gender discrimination should be dismissed because Mr. Henry cannot be held liable for aiding and abetting his own alleged conduct. Eckhart's allegations of discrimination consist of purported sexual encounters and text messages exchanged between Mr. Henry and Eckhart alone. Without allegations against others amounting to discrimination, Mr. Henry cannot be held liable for aiding and abetting his own alleged conduct. *See DiPilato*, 662 F. Supp. 2d at 353. An aiding and abetting violation cannot survive without an alleged underlying violation. *See Villar*, 135 F. Supp. 3d at 143. As a result, Plaintiffs' claims that Mr. Henry aided and abetted discriminatory conduct should be dismissed.

### C.   Plaintiff Fails to Allege Mr. Henry Retaliated Against Either Plaintiff or Aided and Abetted Any Retaliation

With respect to Plaintiff's claims that Mr. Henry retaliated and aided and abetted retaliation against her, the claims fail both because Eckhart fails to allege an underlying violation and because she fails to allege that Mr. Henry was in any way involved with employment decisions. To establish a case for retaliation under the NYSHRL, a plaintiff must show, "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). Under the NYCHRL, meanwhile, a plaintiff "must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation

omitted).  Under both statutes then, the plaintiff "must demonstrate some evidence that links her

complained-of treatment to a retaliatory motivation."  *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d

281, 287 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).  A plaintiff must

show that the protected activity caused her termination either "'(1) indirectly, by showing that

the protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by

the defendant.'"  *Malena*, 886 F. Supp. 2d at 364 (quoting *Gordon v. N.Y. City Bd. of Ed.*, 232

F.3d 111, 117 (2d Cir. 2000)).

To sustain a claim for aiding and abetting retaliation, a plaintiff must allege that the

employer committed the underlying primary violation and the individual defendant participated

in the retaliation.  *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013)

(NYSHRL and NYCHRL claim alleging aiding and abetting liability for discrimination and

retaliation could not be sustained where "Plaintiff [did] not offer[] any evidence that [the

individual defendant] played any role in any actionable discriminatory act committed against

him" and employer did not commit underlying retaliation).  In one case, the plaintiff credibly

alleged that he was terminated in retaliation because of his race by his employer and filed a

grievance with the employer's board of directors.  *Robles v. Goddard Riverside Cmty. Ctr.*, No.

08-Civ-4856 LTSJCF, 2009 WL 1704627, at *1-*2 (S.D.N.Y. June 17, 2009).  The board

members summarily denied the plaintiff's grievance and the plaintiff alleged that the individual

directors aided and abetted his retaliatory termination.  *Id.*  The court, however, dismissed

plaintiff's claims against the individual directors because an aiding and abetting claim requires

"that the defendant *actually participated* in the conduct giving rise to the claim".  *Id.* at *3

(emphasis in original).  The plaintiff's allegations "regarding the Defendant Board Members proffer[ed] [no] facts demonstrating any participation by any such defendant in [the] discharge decision" and were therefore dismissed.  *Id.*; *see also Nelson v. City of New York*, No. 11 CIV. 2732 JPO, 2013 WL 4437224, at *15 (S.D.N.Y. Aug. 19, 2013) (NYSHRL and NYCHRL claims could not be sustained where "Plaintiff [] proffered no evidence genuinely suggesting that [the defendant] had anything at all to do with the decision not to rehire Plaintiff.").

Here, Eckhart first fails because she does not sufficiently allege any underlying retaliation by Fox News.  As we anticipate Fox News will argue in its memorandum in support of its motion to dismiss, Plaintiff's allegations fail to state a claim that Eckhart's termination was retaliatory for her participation in a protected activity.  *See* Memorandum of Law in Support of Fox News Motion to Dismiss.  Because Eckhart fails to plead an underlying violation of the NYHRL, her aiding and abetting allegations necessarily fail.  *See Villar*, 135 F. Supp. 3d at 143.

Even if Eckhart did state a cause of action against Fox News, she fails to allege that Mr. Henry was involved in any of the alleged retaliatory conduct.  Eckhart alleges that Fox News retaliated against her and terminated her employment because she complained of a hostile work environment in February and then, many months later, engaged counsel who complained to Fox News about Mr. Henry.[6]  SAC ¶ 83.  Eckhart does not allege that Mr. Henry was in any way involved in the decision to terminate Eckhart, that Mr. Henry knew that Eckhart had hired counsel, or even that Mr. Henry knew Eckhart was being terminated.  Without these basic allegations of participation, there can be no claim for aiding and abetting retaliation.  *Robles*, No. 08-Civ.-4856 LTSJCF, 2009 WL 1704627, at *1-*3.  Eckhart's remaining claims of "retaliation" against Mr. Henry merely use the word "retaliate" without alleging any nexus between Mr.

---

[6] While Eckhart alleges that she complained of a "hostile work environment" to Fox News, she does not allege that she made allegations specifically regarding Mr. Henry.

Henry and Eckhart's termination.  *See* SAC ¶¶ 36, 54, 67.  Because Eckhart does not allege that

Mr. Henry participated in any retaliatory conduct, Mr. Henry cannot be held liable for aiding and

abetting retaliation, even if Plaintiffs do state a claim for retaliation against Fox News.

Plaintiff's claims alleging retaliation against Mr. Henry therefore should be dismissed.

### D.      Eckhart's Claims are Time-Barred by the Statutes of Limitations

Eckhart's NYSHRL and NYCHRL claims against Mr. Henry are time-barred as the

claims are based on alleged incidents that took place over three years ago.  In order to maintain a

claim for relief under the NYSHRL and NYCHRL statutes of limitations, a plaintiff must

commence a claim within three years of the actionable conduct.  *Taylor v. City of New York*, 207

F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d

229, 238 (2d Cir.2007)).  A plaintiff may overcome these statutes of limitations by alleging a

continuing violation, but to do so "'a plaintiff must at the very least allege that one act of

discrimination in furtherance of the ongoing policy occurred within the limitations period.'"

*Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting *Patterson v.

County of Oneida*, 375 F.3d 206, 220 (2d Cir.2004)).  The alleged discriminatory act taking place

within the statute of limitations must amount to an adverse employment action based on the

plaintiff's sex.  *Kassner*, 496 F.3d at 237 (claims were time-barred because alleged acts taking

place within the statute of limitations "either do not amount to an adverse employment action or

are insufficient factual allegations to infer that those actions were based upon [the plaintiff's]

age").  Consequently "petty slights or trivial inconveniences, [which] are not actionable," cannot

be used to plead a continuing violation.  *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62,

80 (1st Dep't 2009).  Rather, to comply with the statute of limitations by alleging a continuing

violation, a plaintiff must allege "a common policy under which all the actions were carried out." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013).

    *Corrado v. New York Unified Court Sys.* typifies how courts analyze statute of limitations questions in light of an alleged continuing violation.  163 F. Supp. 3d 1 (E.D.N.Y. 2016), *aff'd sub nom. Corrado v. New York State Unified Court Sys.*, 698 F. App'x 36 (2d Cir. 2017).   In *Corrado*, a plaintiff claimed that she was sexually harassed by a superior, who routinely made sexually-charged comments and often inappropriately kissed and touched the plaintiff.  *Id.* at 7. Two individual defendants allegedly participated in this sexual harassment and retaliation in violation of the NYHRL and aided and abetted such violations.  *Id.* at 6.  While these events mostly occurred more than three years before the plaintiff filed her lawsuit, the plaintiff alleged that the conduct amounted to a continuing violation.  *Id*.  In analyzing whether the alleged conduct constituted a continuing violation, the court noted that "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Id.* at 20.  Alleging a continuing violation "cannot save untimely claims for discrete discriminatory acts, even where those discrete acts are related to acts within the limitations period . . . [and] a plaintiff cannot establish a continuing violation merely because the claimant continues to feel the effects of a time-barred discriminatory act."  *Id*. at 20 (internal quotation marks and citations omitted).  Because the plaintiff's last alleged act that could constitute a NYHRL violation occurred three years and six months before the plaintiff filed the lawsuit, the court should dismiss the action as time barred.  *Id.* at 20-21.

    In this case, Eckhart's allegations concerning Mr. Henry are all barred by the NYSHRL and NYCHRL three-year statutes of limitations.  Plaintiffs filed their original Complaint on July 20, 2020 and therefore any allegations predating July 20, 2017 are time-barred unless Eckhart

can establish sufficient conduct within the three year period to constitute a continuing violation.
*See Kassner*, 496 F.3d at 237.  Though Eckhart leaves several allegations undated, she suggests
that the alleged rape and sexually-charged text communications occurred sometime in the first
half of 2017, outside the statutory period.  *See* SAC ¶¶ 47-64.  Mr. Henry's only alleged conduct
after July 20, 2017 are three innocuous messages, which do not rise to the level of harassment or
discrimination.  *See* SAC ¶¶ 65-70.  At most, these assertions demonstrate that Eckhart allegedly
continued to feel the effects of conduct alleged to occur before the limitations period.  Such
allegations are insufficient to state a claim for a continuing violation.  *See Corrado*, 163 F. Supp.
3d at 20-21.  Though Eckhart was terminated during the limitations period, she does not allege
that Mr. Henry was in any way involved in the decision to terminate Eckhart or even that Mr.
Henry was aware that she was being terminated.  Consequently, Eckhart's claims against Mr.
Henry of violations of the NYSHRL and NYCHRL  are time-barred and should be dismissed.

## III.    ECKHART'S GENDER-MOTIVATED VIOLENCE ACT CLAIM FAILS TO ALLEGE GENDER ANIMUS AND SHOULD BE DISMISSED

Eckhart's Tenth Cause of Action, concerning the GMVA, should be dismissed for failing
to sufficiently allege gender animus.  To sustain a claim for a violation of the GMVA, a plaintiff
must allege that "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2)
presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender;
(4) in part because of animus against plaintiff's gender; and [5] resulted in injury."  *Hughes*, 304
F. Supp. 3d at 455.  To plead gender-specific animus, a plaintiff must allege more than
"reprehensible conduct against female victims, [because] this factor alone cannot sustain a
GMVA claim."  *Id*.  Rather, a plaintiff must allege facts sufficient to show that the defendant was
motivated by "'feelings of animosity and malevolent ill will against women.'"  *Garcia v.
Comprehensive Ctr., LLC*, No. 17-CV-8970 (JPO), 2018 WL 3918180, at *5 (S.D.N.Y. Aug. 16,

2018) (quoting *Hughes*, 304 F. Supp. 3d at 455) (dismissing GMVA claim because failure to

show gender-specific animus is "fatal" to a GMVA claim).  To meet this burden, conclusory

allegations of animus are insufficient, and a plaintiff must offer "specific allegations that [the

defendant] harbored or expressed any animosity toward women."  *Hughes*, 304 F. Supp. 3d at

455 (dismissing GMVA claim where complaint contained only conclusory allegations of "gender

animus"); *see also Garcia*, No. 17-CV-8970 (JPO), 2018 WL 3918180, at *5 (same).

Since the GMVA requires gender-specific animus, courts routinely dismiss GMVA

claims, even where the plaintiffs allege "egregious" conduct by defendants.  *Hughes*, 304 F.

Supp. 3d at 455.  For example, in one case, the plaintiff alleged that the defendant sexually

assaulted her when the plaintiff was underage and physically forced her to engage in oral sex

with him.  *Cordero v. Epstein*, 869 N.Y.S.2d 725, 726 (Sup. Ct., N.Y. Cty. 2008).  Despite these

extreme allegations, the court dismissed GMVA claims because the plaintiff, "state[d] no facts to

support the required animus as it contain[ed] no more than the conclusory allegation that the

alleged crimes of violence were 'motivated by gender.'"  *Id.* at 727.  In another case, a plaintiff

alleged that, on multiple occasions, the defendant drugged and raped her, including while the

plaintiff was unconscious.  *Gottwald v. Sebert*, No. 653118/2014, 2016 WL 1365969, at *4 (Sup.

Ct., N.Y. Cty. Apr. 06, 2016).  The court held that, even if true, these allegations did not amount

to a GMVA violation because the facts did not show that the defendant was motivated by gender

animus and "[e]very rape is not a gender-motivated hate crime."  *Id.* at *21.  In yet another case,

the court dismissed GMVA claims even where defendant allegedly slapped the plaintiff, called

her a "bitch," and threatened to kill her.  *Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554

(Sup. Ct., N.Y. Cty. Apr. 22, 2005); *but see Breest v. Haggis*, 180 A.D.3d 83, 94 (2019)

(allegations of rape and sexual assault held sufficient to plead violation of GMVA).

Here, Eckhart's GMVA claim should be dismissed for failing to plead gender-motivated animus.  The Second Amended Complaint's only allegations concerning gender-motivated animus are that Defendant sexually assaulted Eckhart "at least in part [because of] an animus based on gender."  *See* SAC ¶ 142.  The only evidence supporting this claim of supposed gender animus is Defendant's alleged "sexually violent treatment of women."  *See* SAC ¶ 143.  These conclusory allegations rest on tautological reasoning and are precisely the sort of GMVA claims that courts routinely dismiss.  *See Hughes*, 304 F. Supp. 3d at 455; *Cordero*, 869 N.Y.S.2d at 726-27.  While the court in *Breest* sought to lower the GMVA pleading standard, Defendant respectfully submits that this Court should not follow *Breest* as that decision makes the gender-animus requirement of the GMVA superfluous for all cases alleging sexual assault.  This judicial reading renders elements of the GMVA mere surplusage and therefore should not be credited.  Eckhart's alleged GMVA violation should be dismissed.

## IV.    THE COURT SHOULD GRANT MR. HENRY'S MOTION FOR A MORE DEFINITE STATEMENT

As noted above, the Second Amended Complaint fails to set forth a date for the alleged rape and fails to date many of the text communications.  Without a precise date of the alleged rape, Eckhart's allegations are left too vague for Mr. Henry to affirmatively defend based on the applicable three-year statute of limitations.  In addition, Eckhart's failure to provide specific dates for the first sexual encounter or for the numerous snippets of texts messages she includes in the Second Amended Complaint undermines Mr. Henry's ability to defend against Eckhart's other claims, such as the "enticement" element of the TVPA.

A motion for a more definite statement may be filed when "a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  Whether "to grant a motion for a more definite statement is a matter within the

29

discretion of the trial court." *In re Argo Commc'ns Corp.*, 134 B.R. 776, 797 (Bankr. S.D.N.Y.

1991).  Such motions may be appropriate where a complaint falls short of the Federal Rule of

Civil Procedure's pleading requirements.  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y.

1992) (granting the defendant's motion for a more definite statement where the complaint

"fail[ed] to comply with Rule 8 in several ways"); *see also Straker v. Metro. Transit Auth.*, 333

F. Supp. 2d 91, 103 (E.D.N.Y. 2004) ("Because [the defendant] cannot reasonably be expected

to respond to Count III in its present form, the Court *sua sponte* directs [the plaintiff] to provide

a more definite statement as to that Count.").

      While motions for a more definite statement are frequently denied, one scenario in which

courts often grant such motions is when it is unclear in the complaint whether the alleged

conduct predates the applicable statute of limitations.  For example, in one case, a plaintiff

brought an action under the Family and Medical Leave Act, which has a three-year statute of

limitations.  *Meyer v. United Airlines, Inc.*, 624 F. Supp. 2d 923, 932 (N.D. Ill. 2008).  The

plaintiff's complaint included conduct from before and after the applicable statute of limitations

date and for certain alleged conduct, it was unclear whether the conduct predated or postdated

the statute of limitations date.  *Id*.  The court granted the defendant's motion for a more definite

statement, ruling that pleading requirements are designed "'to make ascertainable whether a

cause of action is barred by the statute of limitations, and that where so shown a complaint is

properly dismissed on motion.'"  *Id*. (quoting *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir.

1954)).  As such, "[w]hen a plaintiff's allegations span several years, some of which fall outside

of the statute of limitations period, courts may grant a motion for a more definite statement

regarding time."  *Id*.; *see also F.D.I.C. v. Mintz*, 816 F. Supp. 1541, 1547 (S.D. Fla. 1993)

(granting motion for a more definite statement where "as defendants state, some of the actions

may be barred by the statute of limitations"); *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1539 (S.D. Fla. 1989) ("given that the events in question span almost seven years, it is the opinion of this Court that a more definite statement regarding time and place is in order"); *Nelson v. Long Lines Ltd.*, No. C02-4083-MWB, 2003 WL 21356081, at *6 (N.D. Iowa June 11, 2003) (granting motion for a more definite statement because "for the purpose of testing sufficiency of a pleading, time may be material matter in ascertaining whether a cause of action is barred by the statute of limitations").

Here, Eckhart's allegations against Mr. Henry stem from an alleged rape that purportedly occurred "[a]t some point" in 2017.  As discussed *supra* 25-27, Eckhart cannot sustain an argument for a continuing violation and, therefore, if the claims under the NYSHRL and the NYCHRL occurred before July 20, 2017, they are time-barred.  Tellingly, Eckhart clearly has a date where this alleged rape supposedly occurred, noting that she has messages from "[t]he day after."  *See* SAC ¶ 63.  Eckhart's refusal then to set forth the date of the alleged rape suggests strongly not only that the claims are time-barred but also that she knows they are barred.

Eckhart's allegations also rely on various undated text messages.  *See* SAC ¶¶ 52-54. The undated allegations leave the Court to speculate that these messages took place before the alleged sex acts.  Mr. Henry cannot defend himself properly against claims that these messages "enticed" Eckhart in violation of the TVPA.  Accordingly, if this Court does not dismiss Eckhart's NYHRL claims, it should nevertheless require Eckhart to provide a date of the alleged rape so the Court can sufficiently analyze the NYHRL claims' timeliness.  *See Meyer*, 624 F. Supp. 2d at 932.  Moreover, if this Court does not dismiss Eckhart's allegation of sex trafficking, it should require that Eckhart provide dates for the messages in order to allow Mr. Henry to defend himself against a claim of improper enticement.  *See Shuvalova,* No. 10-CV-02159, 2010

WL 5387770, at *4 ("enticement" must come before alleged sex act).  A more definite statement

of time would more allow Mr. Henry to file a responsive pleading and would allow the Court to

analyze the sufficiency of Eckhart's claims.

## CONCLUSION

For the foregoing reasons, Mr. Henry respectfully submits that this Court should dismiss

each of Plaintiff's claims against him with prejudice[7] or order a more definite statement.


Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC


By:  /s/ Elkan Abramowitz
Elkan Abramowitz
Catherine M. Foti
Douglas Chalke
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

---

[7] Having already amended, Plaintiff should not be permitted to replead again.  The failure, even upon amendment, to state a viable claim shows that the deficiencies are "substantive" rather than merely "inartful" and leave to replead should therefore be denied.  *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000)); *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) ("In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile").  While plaintiffs liberally replead at least once, courts routinely dismiss cases after the plaintiff has had a chance to replead and the pleadings remain deficient. *See, e.g.*, *Jones v. H.H.C. Inc.*, No. 00CIV.6512 (DAB)(FM), 2003 WL 1960045, at *5 (S.D.N.Y. Apr. 8, 2003). Accordingly, Plaintiff's claims should be dismissed with prejudice.