UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHY AREU,

      Plaintiff,

  v.

FOX NEWS NETWORK, LLC, ED HENRY, SEAN HANNITY, TUCKER CARLSON and HOWARD KURTZ, in their individual and professional capacities,

      Defendants.

Case No. 20-CV-____ (RA)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ED HENRY'S MOTION TO DISMISS

Elkan Abramowitz
Catherine M. Foti
Douglas Chalke
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

# TABLE OF CONTENTS

                                                                                                                              **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ........................................................................................................................ 6

      I.        PLAINTIFF'S NYHRL CLAIMS FAIL TO STATE A CLAIM FOR
               RELIEF ........................................................................................................... 6

               A.  Plaintiff Fails to Allege Mr. Henry Was an Employer or Supervisor ................. 7

               B.  Plaintiff Fails to Allege that She Was an Employee Under the
                    NYHRL ............................................................................................................... 9

               C.  Plaintiff Fails to Allege Mr. Henry Aided and Abetted any Hostile
                    Work Environment Claim, Sexual Harassment, or Gender
                    Discrimination ................................................................................................... 10

               D.  Plaintiff Fails to Allege Mr. Henry Retaliated Against Her, Failed
                    to Hire Her, or Aided and Abetted Such Conduct ............................................ 12

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crean v. 125 W. 76th St. Realty Corp.*,
 2017 WL 217948 (S.D.N.Y. Jan. 17, 2017) .................................................................. 9

*Cuoco v. Moritsugu*,
 222 F.3d 99 (2d Cir.2000) ........................................................................................... 15

*DiPilato v. 7-Eleven, Inc.*,
 662 F. Supp. 2d 333 (S.D.N.Y. 2009) ..................................................................... 7, 11

*Dunson v. Tri-Maint. & Contractors, Inc.*,
 171 F. Supp. 2d 103 (E.D.N.Y. 2001) ......................................................................... 11

*Gordon v. N.Y. City Bd. of Ed.*,
 232 F.3d 111 (2d Cir. 2000) ........................................................................................ 13

*Hicks v. Baines*,
 593 F.3d 159 (2d Cir.2010) ......................................................................................... 13

*Hughes v. Twenty-First Century Fox, Inc.*,
 304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................... 7, 8, 10

*In re WorldCom, Inc. Sec. Litig.*,
 303 F. Supp. 2d 385 (S.D.N.Y. 2004) ......................................................................... 15

*Jones v. H.H.C. Inc.*,
 2003 WL 1960045 (S.D.N.Y. Apr. 8, 2003) ............................................................... 15

*Krause v. Lancer & Loader Grp.*,
 40 Misc.3d 385 (Sup. Ct., N.Y. Cty. 2013) ................................................................. 11

*Lopez v. Ctpartners Exec. Search Inc.*,
 173 F. Supp. 3d 12 (S.D.N.Y. 2016) ........................................................................... 15

*Malena v. Victoria's Secret Direct, LLC*,
 886 F. Supp. 2d 349 (S.D.N.Y. 2012) .................................................................. 11, 13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
 715 F.3d 102 (2d Cir. 2013) ........................................................................................ 13

*Nelson v. City of New York*,
 2013 WL 4437224 (S.D.N.Y. Aug. 19, 2013) ............................................................ 14

*Palmer v. Cook*,
  64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) (Sup. Ct., N.Y. Cty. 2019) ............................ 8

*Priore v. New York Yankees*,
  307 A.D.2d 67 (1st Dep't 2003) ...................................................................................... 8

*Robles v. Goddard Riverside Cmty. Ctr.*,
  2009 WL 1704627 (S.D.N.Y. June 17, 2009) ............................................................ 14, 15

*Spires v. MetLife Grp., Inc.*,
  2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ................................................................... 7

*Trower v. Mount Sinai Hosp.*,
  2018 WL 4283724 (S.D.N.Y. Sept. 6, 2018) .................................................................. 12

*Villar v. City of New York*,
  135 F. Supp. 3d 105 (S.D.N.Y. 2015) ......................................................................Passim

*Wang v. Phoenix Satellite Television US, Inc.*
  976 F. Supp. 2d 527 (S.D.N.Y. 2013) ................................................................... 9, 10, 13

*Weir v. Holland & Knight, LLP*,
  34 Misc. 3d 1207(A) (Sup. Ct., N.Y. Cty. 2011) ............................................................. 9

*White v. Pacifica Found.*,
  973 F. Supp. 2d 363 (S.D.N.Y. 2013) ............................................................................ 13

*Wilcox v. Cornell Univ.*,
  986 F. Supp. 2d 281 (S.D.N.Y. 2013) ............................................................................ 13

*Williams v. Kuramo Capital Mgmt., LLC*,
  36 Misc. 3d 1215(A) (Sup. Ct., Kings Cty. 2012) ........................................................... 9

**Statutes**

N.Y. Exec. Law § 296 ............................................................................................................ 7, 9

New York City, N.Y., Code § 8-107 ..................................................................................... 7, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

Defendant Edward "Ed" Henry respectfully submits this memorandum of law in support of his motion to dismiss the claims in Cathy Areu's Second Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).[1]

**PRELIMINARY STATEMENT**

Like her former co-plaintiff Jennifer Eckhart, Cathy Areu takes a parsimonious approach in attempting to bolster her meritless claims of harassment, choosing to quote only selective examples of messages exchanged with Mr. Henry. For example, although Areu describes a photograph Mr. Henry sent her of "a rubber glove where each finger appears to be a dildo and/or ribbed like a condom," she fails to mention the image she sent in response of a nude President Trump having a tube inserted into his buttocks which is connected to a bottle of Clorox with the caption, "I know it burns Mr. President, but just hang on tight. Your coronavirus treatment is almost complete." She also fails to include the fact that the many messages exchanged between the two were part of a friendly competition involving an exchange of memes trending on the internet. In fact, as Areu states in one message to Mr. Henry, which she also conveniently omits form her Second Amended Complaint: "You're like the nicest person on the planet . . . You're awesome" and "You let me win at GIF/meme wars."

The claims brought against Mr. Henry by Areu, who was never a Fox News Network, LLC ("Fox News") employee, are baseless. Mr. Henry did not harass Areu, and Mr. Henry had no authority to hire her or any other volunteer making guest appearances. Rather, Areu, who thought Mr. Henry was the "nicest person on the planet," used him as a sounding board for her concerns about the negative impact COVID was having on her guest appearances on Fox News.

---

[1] Areu has entitled the operative Complaint as her "Amended Complaint." However, it has been filed on the docket as Areu's "Second Amended Complaint" (*see* Dkt. No. 77). All references to the operative Complaint in this memorandum will be to the "Second Amended Complaint" as docketed.

The virus was steering the focus of news reports away from politics, Areu's field, to medicine, causing a significant decline in her television appearances and a coincidental decline in her audience across social media. Apparently, Areu's solution to this problem was to jump on the Eckhart bandwagon. Areu's desire to keep herself in the public eye, however, does not give her the right to manipulate the anti-discrimination laws in ways the New York legislatures never envisioned. Those laws are intended to protect against legitimate claims of discrimination suffered by employees that affect the conditions of their employment; they are not intended to be used as a public relations ploy.

Areu's Second Amended Complaint alleges a number of causes of action against Mr. Henry, for direct violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL" and together with the NYSHRL, "NYHRL"). Areu also alleges that Mr. Henry aided and abetted such violations. The claims that Mr. Henry violated the NYHRL, or aided and abetted such violations, cannot withstand scrutiny. In her Second Amended Complaint, Areu admits that she was never an employee of Fox News and that she actually never submitted an application to become an employee. Rather, she was a guest contributor, who, in April 2018, supposedly spoke to a myriad of employees about being brought on to be a paid contributor. According to Areu herself, however, nothing actually came of these 2018 conversations. Also, according to Areu, Mr. Henry had nothing to do with these conversations; he was not one of the "myriad" of people with whom she spoke in 2018, and he was not even someone she knew in 2018 when her supposed conversations over becoming a full time contributor fizzled out. Moreover, the Second Amended Complaint contains no facts to support any conclusion that Mr. Henry ever had the authority to hire Areu nor that she thought he did. After all, according to Areu, she had been in conversations with a Vice President of Fox

News about a position and thus was well aware of who wielded authority to hire in the organization. Thus, the Second Amended Complaint's allegations against Mr. Henry fail *ab initio* because he is not an "employer" under the statutes and therefore cannot be liable for any direct violations, and because Areu was never an employee. The aiding and abetting claims likewise fail because Plaintiff's allegations, even if true, do not establish that Mr. Henry aided and abetted a hostile work environment or that he retaliated against Areu. Since Areu does not establish the employer-employee relationship and does not allege Mr. Henry participated in the allegedly discriminatory conduct against Areu, each of Areu's causes of action should be dismissed.

Plaintiff's claims against Mr. Henry, alleging violations of the NYHRL cannot be sustained; therefore, the Second Amended Complaint should be dismissed in its entirety as against Mr. Henry.

## FACTUAL BACKGROUND

Ed Henry is a television and print journalist. He started his broadcasting career as a political analyst for a local Washington, D.C. radio station, WMAL, and quickly moved to work for CNN where he began covering the White House in 2006. In 2011, Mr. Henry left CNN to become the Chief White House Correspondent for Fox News. In late 2016, Mr. Henry also took a role of an occasional host for *Fox and Friends Weekend* and assumed his position as a more regular host for that show in 2018. Then, in December 2019, Mr. Henry became a co-host of *America's Newsroom.* He held that position until Fox News terminated him on July 1, 2020. *See* Declaration of Catherine M. Foti, dated October 19, 2020 ("Foti Decl.") at ¶ 2.

**Areu's Allegations**

According to Cathy Areu, her relationship with Mr. Henry began when she ran into him at a Fox News studio; they spoke, and she took a picture with him on her phone. SAC ¶ 168. Areu is not, and has never been, a Fox News employee. Rather, she is an unpaid contributor, who voluntarily agreed to appear as an on-air guest, which allowed her an opportunity for self-promotion. Areu alleges that, after that conversation, Mr. Henry started sending her inappropriate messages and images that she now claims were part of an attempt to seek sexual favors in exchange for giving her a job. According to the Second Amended Complaint, these messages included a video of "a female purportedly interviewing for a position [who] exposes her vagina, after which the male interviewer indicates that she got the job" which Mr. Henry sent with a text that read "Are you avail for anchor interview". SAC ¶¶ 170-72. Areu suggests that the photographs and videos she exchanged with Mr. Henry were unwelcome, and provides a list of other supposedly offensive communications, including "[a] photograph of a rubber glove where each finger appears to be a dildo and/or ribbed like a condom." SAC ¶ 170.

Areu, however, deliberately excludes her own communications with Mr. Henry that show the full picture. Rather than unwelcome, the remainder of those communications, which were not included in the Second Amended Complaint, show Areu willingly engaged in these exchanges whereby she and Mr. Henry sent trending social media images in an attempt to "one up" each other -- in Areu's own words, to "win" the day's "meme war". For example, in response to the "rubber glove" image, Areu sent a photoshopped image of a nude President Trump with a tube inserted into his buttocks along with the caption "I know it burns Mr. President, but just hang on tight. Your coronavirus treatment is almost complete." That is why, after the glove versus Trump exchange, Areu messaged Mr. Henry: "I win?" Mr. Henry then

responds, "My gloves already one," [*sic*] and Areu says, ". . . I saw those beauties." *See* Foti Decl. at ¶ 5; Exh. B. Conveniently, this portion of the exchange is not included in the Second Amended Complaint.

Around this same time, Areu, who was in Florida, sent videos of herself by the beach with a note: "Time to visit." *See* Foti Decl. at ¶ 4; Exh. A. Mr. Henry did not take her up on the offer. Areu next asks Mr. Henry for information concerning whether Fox News was hiring and whether he could reach out to members at Fox News about a job. Despite her repeated requests, Mr. Henry never once told Areu that he would, or for that matter could, get Areu a paid position at Fox News. Areu again messaged Mr. Henry for help, asking Mr. Henry to send an introductory email to "Lauren" and said "We need to get me officially in that Fox fam." Significantly, she next says to Mr. Henry, "You're like the nicest person on the planet . . . You're awesome" and "You let me win at GIF/meme wars." *See* Foti Decl. at ¶ 6; Exh. C. Mr. Henry says that Areu is beautiful to which Areu responds, "You know what a girl likes to hear" and "You made me blush." Areu then says that she will keep working on getting Mr. Henry's co-host fired so she and Mr. Henry "can be the best looking TV news couple ever." Areu sends another image and says, "I win today!!!!" *See* Foti Decl. at ¶ 7; Exh. D.

After Areu's continued requests, Mr. Henry finally agreed to speak with her on the phone after he was done broadcasting a show. Areu responds that Mr. Henry should "[w]ink twice as a secret symbol to [her]" while taping his show and then sends several images of actresses and models winking. *See* Foti Decl. at ¶ 8; Exh. E. Mr. Henry then did speak with Areu on the phone (SAC ¶ 174) during which Mr. Henry spoke to Areu about her background and told her that he had heard that Fox News was not hiring and that there was nothing Mr. Henry could do to get Areu hired. Despite being told this directly, Areu continued to message Mr. Henry, seeking

5

his assistance. SAC ¶ 175. For example, later that same day, Areu sent Mr. Henry messages like a link to her personal page on Fox News and said, "I'm super smart." Mr. Henry answers that he never said that Areu was not smart and asks whether Areu said that because he asked her what her specialty was when they spoke on the phone. Areu responds, "Perhaps." After this uncomfortable exchange, Mr. Henry and Areu's relationship cooled. *See* Foti Decl. at ¶ 9; Exh. F. Areu sends Mr. Henry multiple messages, including links to news stories saying things like "This is right up my alley." Areu also sent a meme with a picture of a Victoria Secret model wearing a scant mask. Mr. Henry did not reply to these messages. *See* Foti Decl. at ¶ 10; Exh. G.

Areu continued to seek Mr. Henry's help, sending him a gif of a text bubble saying "Hello! [heart] How are you?" Areu then texts, "Wait, you haven't written to me since we spoke. I sucked that bad?" to which Mr. Henry answers, "Nah you decided to be a jerk which made me sad" "Hope you're doing well". Areu asks what Mr. Henry means by "jerk" and Mr. Henry responds, "All good. Hope florida is fabulous". Areu again asks for specifics, but Mr. Henry does not reply. *See* Foti Decl. at ¶ 11; Exh. H.

There is nothing in Areu's Second Amended Complaint to suggest that he had the authority to hire anybody – he himself was an employee, a journalist, not an executive. Mr. Henry never solicited any further relationship with Areu; he never met her in private; he never took her up on her offers to visit her in Florida.

**ARGUMENT**

**I. PLAINTIFF'S NYHRL CLAIMS FAIL TO STATE A CLAIM FOR RELIEF**

Each of Plaintiff's six Causes of Action against Mr. Henry, alleging violations of the NYSHRL and the NYCHRL, should be dismissed. The direct claims against Mr. Henry fail because they do not allege that Mr. Henry had the supervisory authority to hire Plaintiff. The

aiding and abetting claims also fail because Plaintiff's allegations, even if true, do not establish that Mr. Henry aided and abetted any alleged wrongdoing.

### A. Plaintiff Fails to Allege Mr. Henry Was an Employer or Supervisor

Under the NYSHRL and NYCHRL, employers can be held liable for discriminatory or retaliatory conduct. *See* N.Y. Exec. Law § 296; New York City, N.Y., Code § 8-107. In order to qualify as an "employer" under the NYSHRL, an individual must have "1) . . . had the power of the selection and engagement of the employee; 2) . . . made the payment of salary or wages to the employee; 3) . . . had the power of dismissal over the employee; and 4) . . . had the power to control the employee's conduct." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 348 (S.D.N.Y. 2009). An individual employee may also be liable "as an 'employer,' but that is limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." *Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) (internal quotation marks omitted). Even where a plaintiff alleges that an individual defendant "controlled the terms of Plaintiff's work" that is insufficient under NYSHRL unless that individual "had authority to hire or fire" the plaintiff. *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *6 (S.D.N.Y. Sept. 18, 2019); *see also Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018) (dismissing NYSHRL and NYCHRL claims where the plaintiff did not "assert that [two individual defendants] had an ownership interest in Fox, nor [did the plaintiff] allege that they had direct supervisory authority over [the plaintiff].").

While the NYCHRL is somewhat broader than the NYSHRL, it nevertheless includes employees "only where [the employees] act with or on behalf of the employer in hiring, firing, paying, or in administering the 'terms, conditions or privileges of employment' -- in other words,

7

in some agency or supervisory capacity." *Priore v. New York Yankees*, 307 A.D.2d 67, 74 (1st Dep't 2003). It is therefore insufficient for a plaintiff to plead mere seniority, rather than supervisory authority, and an individual being sued under the NYCHRL "must be found to possess the power to do more than simply carry out personnel decisions made by others." *Id.*; *see also Palmer v. Cook*, 64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) ("Plaintiff does not allege that Chalmers possessed any supervisory authority. Therefore, Plaintiff cannot sustain a cause of action against Chalmers pursuant to NYCHRL.").

Here, Plaintiff does not allege that Mr. Henry had authority to hire Areu or that Mr. Henry had any supervisory authority whatsoever. This pleading failure is fatal to Plaintiff's NYSHRL and NYCHRL claims against Mr. Henry. Even if all the allegations set forth in Plaintiff's Second Amended Complaint were true, Plaintiff's allegations would, at most, show that Mr. Henry was an employee of Fox News whom Areu hoped could help her secure employment at Fox. Such allegations of mere seniority are, however, insufficient to establish liability under the NYSHRL or NYCHRL. *See Villar*, 135 F. Supp. 3d at 143; *Priore*, 307 A.D.2d at 74. Indeed, since Areu, by her own admission, was not an employee of Fox News, no one, even if employed by Fox, could be said to actually be "senior" to her since such a distinction is inapplicable. However, even if the argument could be made that anyone employed by Fox News is by definition "senior" to Areu, these allegations still are insufficient. The NYHRL do not impose employer liability on every employee whom a prospective employee hopes could help them secure employment. *See Hughes*, 304 F. Supp. 3d at 451. Plaintiff does not allege that Mr. Henry could hire her or that he had any supervisory authority whatsoever and, as such, Plaintiff fails to plead that Mr. Henry was an "employer" under New York law.

Plaintiff's claims alleging direct violations of the NYSHRL and NYCHRL, therefore, should be dismissed.

B.  **Plaintiff Fails to Allege that She Was an Employee Under the NYHRL**

The NYSHRL and NYCHRL provide that it is unlawful for "an employer" to discriminate against any "person" or "individual" "in compensation or in terms, conditions or privileges of employment." *See* N.Y. Exec. Law § 296; New York City, N.Y., Code § 8-107. While the statutes use the word "person" courts have routinely held that the provisions apply only to employees. *Weir v. Holland & Knight, LLP*, 34 Misc. 3d 1207(A) (Sup. Ct., N.Y. Cty. 2011) (argument that statutes apply to non-employees "is insupportable under the express terms of the statutes"); *Williams v. Kuramo Capital Mgmt., LLC*, 36 Misc. 3d 1215(A) (Sup. Ct., Kings Cty. 2012) ("Even though the word person is used in [the NYSHRL and the NYCHRL], [the statutes] still only refer to an employee because only employees can bring suit under [the statutes]"). Central to the question of whether someone is an employee is whether the purported employee was paid since "being . . . compensated by the putative employer [is an] essential condition[] to the existence of an employer-employee relationship." *Crean v. 125 W. 76th St. Realty Corp.*, No. 15CV3814-LTS-HBP, 2017 WL 217948, at *3 (S.D.N.Y. Jan. 17, 2017).

In assessing whether an individual has the right to assert NYSHRL and NYCHRL violations, the case of *Wang v. Phoenix Satellite Television US, Inc.* is instructive. 976 F. Supp. 2d 527 (S.D.N.Y. 2013). In *Wang*, a plaintiff brought an action in diversity jurisdiction, alleging a hostile work environment, sexual harassment, and retaliation in violation of the NYSHRL and NYCHRL, as well as failure-to-hire claims. *Id*. at 528-29. Plaintiff was an unpaid intern and alleged that the defendant corporation's bureau chief, who was a supervisor responsible for hiring and firing employees, sexually harassed the plaintiff and refused to hire her permanently

9

because she rejected her supervisor's sexual advances. *Id*. at 529-31. The court ruled that the plaintiff could not bring actions under the NYHRL because "the plain meaning of the NYCHRL, the case law, interpretations of analogous wording in Title VII and the NYSHRL, as well as the legislative history of the NYCHRL all confirm that the NYCHRL's protection of employees does not extend to unpaid interns." *Id*. at 537. In determining the existence of an employer-employee relationship, "[i]t is axiomatic in this Circuit that compensation is a threshold issue in determining the existence of [that] relationship." *Id.* at 532. The Court, therefore, dismissed all of the plaintiff's claims, except for her failure-to-hire claim. *Id.* at 529. Though the NYHRL was subsequently amended to include interns, it was never amended to include guest television contributors and such positions "fall[] outside the ambit of these amendments." *Hughes*, 304 F. Supp. 3d at 445.

Plaintiff, in this case, is plainly not an employee within the meaning of the NYSHRL or NYCHRL. As Plaintiff readily admits, she was never paid by Fox News and certainly never by Mr. Henry. SAC ¶ 47. While Plaintiff alleges that she wanted to be employed by Fox News, her wishing it does not make it so. *See Wang*, 976 F. Supp. 2d 528-32. Since Plaintiff fails to establish the "threshold issue" of remuneration, Plaintiff cannot plead the existence of an employer-employee relationship. *See id.* at 532. Without this necessary relationship Plaintiff's claims of hostile work environment, sexual harassment, and retaliation cannot stand. *Id*.; *see also Hughes*, 304 F. Supp. 3d at 445. Because Plaintiff does not plead that she was an employee within the meaning of the NYHRL, her claims should be dismissed.

> **C.      Plaintiff Fails to Allege Mr. Henry Aided and Abetted any Hostile Work Environment Claim, Sexual Harassment, or Gender Discrimination**

In addition to the alleged direct violations, Plaintiff's claims that Mr. Henry aided and abetted a hostile work environment, sexual harassment, and gender discrimination should be

dismissed because Mr. Henry cannot be held liable for "aiding and abetting" his own alleged conduct. The NYSHRL and the NYCHRL do allow, in certain contexts, for an individual to be held liable for aiding and abetting discriminatory conduct. *Krause v. Lancer & Loader Grp.*, 40 Misc.3d 385, 398 (Sup. Ct., N.Y. Cty. 2013). Both statutes provide that "'it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Id.* at 323 n.7. Therefore, "the [NYCHRL] . . . is subject to the same analysis as the [NYSHRL]." *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 113 (E.D.N.Y. 2001). This "aiding and abetting" liability, however, "is only a viable theory where an underlying violation has taken place." *Villar*, 135 F. Supp. 3d at 143 (internal quotation marks omitted). A defendant cannot be held liable "for aiding and abetting their own conduct." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012).

For example, in *DiPilato*, 662 F. Supp. 2d 333, the plaintiff alleged that the defendants denied her application to become a 7-Eleven franchisee and employee on account of her sex, in violation of the NYHRL and Title VII. *Id.* at 345-46. The plaintiff sued three individuals for direct violations of the law and for aiding and abetting the violations. *Id*. According to the plaintiff, one defendant named Lynch stated that the plaintiff's application should be denied "because a single female over the age of forty (40) would not be suitable for such a franchise." *Id.* at 344. The other two individual defendants allegedly aided and abetted this violation by failing to offer other explanations for the refusal of a franchise and did not dispel Lynch's discriminatory motive. *Id.* at 349. The court concluded that the allegations against these two defendants were insufficient to establish a discriminatory motive and they therefore could not be held liable for aiding and abetting any NYHRL violations. *Id*. With respect to Lynch,

11

meanwhile, the court concluded that Lynch's alleged conduct discriminated on the basis of sex. *Id.* at 353. The only remaining defendants, however, were Lynch and 7-Eleven. *Id.* The court therefore dismissed the aiding and abetting claims against Lynch because, "Lynch [could not] be held liable under NYHRL for aiding and abetting her own alleged discriminatory conduct." *Id.*; *see also Trower v. Mount Sinai Hosp.*, No. 16-CV-4322 (PKC), 2018 WL 4283724, at *16 (S.D.N.Y. Sept. 6, 2018) ("[defendant] cannot be liable for aiding and abetting her own allegedly discriminatory conduct.").

In this case then, Mr. Henry could only be liable for aiding and abetting discriminatory conduct if the discriminatory conduct were plausibly alleged against Fox News and that Mr. Henry participated in that discrimination. An aiding and abetting claim cannot survive without an alleged underlying violation by the employer or a defendant who did have authority to hire Plaintiff. *See Villar*, 135 F. Supp. 3d at 143. As we anticipate Fox News will argue in its memorandum in support of its motion to dismiss, no such viable claim exists. *See* Memorandum of Law in Support of Fox News Motion to Dismiss. Plaintiff's claims fail to allege that Mr. Henry aided or abetted any of the Fox News Defendants. As a result, Plaintiff's claims that Mr. Henry aided and abetted discriminatory conduct should be dismissed.

### D. Plaintiff Fails to Allege Mr. Henry Retaliated Against Her, Failed to Hire Her, or Aided and Abetted Such Conduct

With respect to Plaintiff's claims that Mr. Henry retaliated against Plaintiff, failed to hire her, or aided and abetted these violations, the claims fail both because Plaintiff fails to allege an underlying violation and because she fails to allege that Mr. Henry was in any way involved with the employment decisions. To establish a case for retaliation under the NYSHRL, a plaintiff must show, "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected

activity and the adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir.2010) (internal quotation marks omitted). Under the NYCHRL, meanwhile, a plaintiff "must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation omitted). For a failure-to-hire claim, "a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination." *Wang*, 976 F. Supp. 2d at 537. Under both the NYSHRL and the NYCHRL, the plaintiff "must demonstrate some evidence that links her complained-of treatment to a retaliatory motivation." *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 287 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted). A plaintiff must show that the protected activity caused her termination either "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Malena*, 886 F. Supp. 2d at 364 (quoting *Gordon v. N.Y. City Bd. of Ed.*, 232 F.3d 111, 117 (2d Cir. 2000).

      To sustain a claim for aiding and abetting retaliation, a plaintiff must allege that the employer committed the underlying primary violation and the individual defendant participated in the retaliation. *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013) (NYSHRL and NYCHRL claim alleging aiding and abetting liability for discrimination and retaliation could not be sustained where "Plaintiff [did] not offer[] any evidence that [the individual defendant] played any role in any actionable discriminatory act committed against

13

him" and employer did not commit underlying retaliation). In one case, the plaintiff credibly alleged that he was terminated in retaliation because of his race by his employer and filed a grievance with the employer's board of directors. *Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-Civ-4856 LTSJCF, 2009 WL 1704627, at *1-*2 (S.D.N.Y. June 17, 2009). The board members summarily denied the plaintiff's grievance, without explanation, and the plaintiff alleged that the individual directors aided and abetted his retaliatory termination. *Id*. The court, however, dismissed plaintiff's claims against the individual board members because an aiding and abetting claim requires "that the defendant *actually participated* in the conduct giving rise to the claim". *Id.* at *3 (emphasis in original). The plaintiff's allegations "regarding the Defendant Board Members proffer[ed] [no] facts demonstrating any participation by any such defendant in [the] discharge decision" and were therefore dismissed. *Id.*; *see also Nelson v. City of New York*, No. 11 CIV. 2732 JPO, 2013 WL 4437224, at *15 (S.D.N.Y. Aug. 19, 2013) (NYSHRL and NYCHRL claims could not be sustained where "Plaintiff [] proffered no evidence genuinely suggesting that [the defendant] had anything at all to do with the decision not to rehire Plaintiff.").

Here, Plaintiff first fails because she does not sufficiently allege any underlying retaliation or impermissible failure-to-hire by Fox News. As outlined in the Fox News Defendants' brief in support of its motion to dismiss, Plaintiff's allegations fail to state a claim for the decision to not employ Areu or that the decision was in any way a retaliation against Plaintiff for participating in a protected activity. *See* Memorandum of Law in Support of Fox News Motion to Dismiss. Because Plaintiff fails to plead an underlying violation of the NYHRL, her aiding and abetting allegations necessarily fail. *See Villar*, 135 F. Supp. 3d at 143.

14

Even if Plaintiff did state a cause of action against Fox News, Plaintiff nonetheless fails to allege that Mr. Henry was involved in any of the purported retaliatory conduct. Areu does not allege that Mr. Henry was involved in the decision not to hire her, nor can she. Plaintiff alleges that she was "retaliated" against because Fox News apparently "leaked" emails to the press and moved for sanctions against Plaintiff's former counsel. SAC ¶¶ 4-5. Mr. Henry, of course, was not involved in this alleged retaliatory conduct, nor was he even employed by Fox News at the time they allegedly occurred. Without these basic allegations of participation, there can be no claim for aiding and abetting retaliation. *Robles*, No. 08-civ-4856 LTSJCF, 2009 WL 1704627, at *1-*3. Without a viable primary claim and without allegations that Mr. Henry actively participated in the employment decisions, there can be no aiding and abetting liability. *See id*. Plaintiff's claims alleging retaliation and failure-to-hire against Mr. Henry, therefore, should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Henry respectfully submits that this Court should dismiss each of Plaintiff's claims with prejudice.[2]

                Respectfully submitted,

                MORVILLO ABRAMOWITZ GRAND
                IASON & ANELLO PC

                By: /s/ Elkan Abramowitz
                Elkan Abramowitz
                Catherine M. Foti
                Douglas Chalke
                565 Fifth Avenue
                New York, New York 10017

                Jayne C. Weintraub
                Jon A. Sale
                SALE & WEINTRAUB, P.A.
                2 South Biscayne Boulevard
                One Biscayne Tower – 21st Floor
                Miami, Florida 33131

                *Attorneys for Ed Henry*

---

[2] Having already amended twice, Plaintiff should not be permitted to replead again. The failure, even upon two amendments, to state a viable claim shows that the deficiencies are "substantive" rather than merely "inartful" and leave to replead should therefore be denied. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000)); *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) ("In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile"). While plaintiffs liberally replead at least once, courts routinely dismiss cases after the plaintiff has had a chance to replead and the pleadings remain deficient. *See, e.g.*, *Jones v. H.H.C. Inc.*, No. 00CIV.6512 (DAB)(FM), 2003 WL 1960045, at *5 (S.D.N.Y. Apr. 8, 2003). Accordingly, Plaintiff's claims should be dismissed with prejudice.