UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JENNIFER ECKHART,                          :
                                           :
                      Plaintiff,           :        Civil Case No. 1:20-cv-05593-RA
                                           :
        v.                                 :
                                           :
FOX NEWS NETWORK, LLC, and ED HENRY,       :
in his individual and professional capacities,  :
                                           :
                      Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S AMENDED COMPLAINT OF PLAINTIFF JENNIFER ECKHART**

October 19, 2020

Anthony J. Dick
J. Benjamin Aguiñaga
Ariel N. Volpe
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel. (202) 879-3939
Fax. (202) 879-1700
E-mail: ajdick@jonesday.com

Kathleen M. McKenna
Lloyd B. Chinn
Keisha-Ann G. Gray
Danielle J. Moss
Yonatan L. Grossman-Boder
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: KMcKenna@proskauer.com

*Attorneys for Defendant Fox News Network, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.    Eckhart's Allegations Against Ed Henry ................................................... 2

    B.    Eckhart's Claims Against Fox News .......................................................... 4

STANDARD OF REVIEW ............................................................................................. 5

ARGUMENT ................................................................................................................. 5

I.     Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News ................ 6

    A.    Fox News Did Not Commit Sex Trafficking ............................................. 7

    B.    Fox News Had No Reason to Know About Henry's Alleged
          Sex Trafficking ......................................................................................... 8

    C.    Fox News Did Not "Benefit From" Henry's Alleged Trafficking ............ 11

II.    Eckhart's Harassment Claims Are Time-Barred ............................................... 13

III.   Eckhart's Title VII Claims Are Barred For Failure to Exhaust
       Administrative Remedies ................................................................................... 15

IV.   Henry's Alleged Harassment Cannot Be Imputed to Fox News ....................... 17

V.    Eckhart Fails to State a Retaliation Claim ....................................................... 19

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.B. v. Hilton Worldwide Holdings Inc.*,
2020 WL 5371459 (D. Or. Sept. 8, 2020) ...................................................................9

*Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*,
2018 WL 2416568 (S.D.N.Y. May 29, 2018) ..........................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................10, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................8, 10, 18

*Benzinger v. Lukoil Pan Americas, LLC*,
447 F. Supp. 3d 99 (S.D.N.Y. 2020).......................................................................20

*Corley v. City of N.Y.*,
2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017).........................................................9

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012)......................................................................21

*Doe 4 v. Red Roof Inns, Inc.*,
2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) ...........................................................8

*Doe v. City of N.Y.*,
2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018) .............................................................9

*Doe v. Guthrie Clinic, Ltd.*,
2012 WL 531026 (W.D.N.Y. Feb. 17, 2012) ............................................................9

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)........................................................17

*Evert v. Wyo. Cnty. Cmty. Health Sys.*,
2017 WL 1832051 (W.D.N.Y. May 8, 2017)....................................................19, 20

*Fernandez v. Windmill Distrib. Co.*,
159 F. Supp. 3d 351 (S.D.N.Y. 2016)......................................................................19

*Flaherty v. Metromail Corp.*,
235 F.3d 133 (2d Cir. 2000)....................................................................................13

*Garcia v. Coll. of Staten Island*,
2012 WL 3930448 (E.D.N.Y. July 31, 2012)....................................................19, 20

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)........................................................11, 12, 13

*Gibb v. Tapestry, Inc.*,
2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) ..........................................................16

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hardy v. Lewis Gale Med. Ctr., LLC,*
    377 F. Supp. 3d 596 (W.D. Va. 2019) .................................................................16

*In re Citigroup Erisa Litig.,*
    2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ........................................................9

*J. B. v. G6 Hosp., LLC,*
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ...............................................8, 10

*Martini v. Fed. Nat'l. Mortg. Ass'n,*
    178 F.3d 1336 (D.C. Cir. 1999) ............................................................................16

*McGullam v. Cedar Graphics, Inc.,*
    2008 WL 3887604 (E.D.N.Y. Aug. 20, 2008) ................................................19, 20

*McGullam v. Cedar Graphics, Inc.,*
    609 F.3d 70 (2d Cir. 2010) ...................................................................................14

*Medina v. Waste Connections of N.Y., Inc.,*
    2019 WL 3532048 (S.D.N.Y. Aug. 2, 2019) .........................................................14

*Noble v. Weinstein,*
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ....................................................................7

*OffWhite Prods., LLC v. Off-White LLC,*
    2020 WL 4895362 (S.D.N.Y. Aug. 20, 2020) ........................................................8

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.,*
    712 F.3d 705 (2d Cir. 2013) ...................................................................................5

*Ramirez v. Michael Cetta Inc.,*
    2020 WL 5819551 (S.D.N.Y. Sept. 30, 2020) .....................................................21

*Ricchio v. McLean,*
    853 F.3d 553 (1st Cir. 2017) .................................................................................11

*Scott-Robinson v. City of N.Y.,*
    2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) ......................................................19

*Sotomayor v. City of N.Y.,*
    862 F. Supp. 2d 226 (E.D.N.Y. 2012) ..................................................................13

*Taylor v. City of N.Y.,*
    207 F. Supp. 3d 293 (S.D.N.Y. 2016) ..................................................................14

*Thea v. Kleinhandler,*
    807 F.3d 492 (2d Cir. 2015) .................................................................................13

*United States v. Afyare,*
    632 F. App'x 272 (6th Cir. 2016) ...........................................................................8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Varga v. Gen. Elec. Co.*,
   2020 WL 1064809 (N.D.N.Y. Mar. 5, 2020) ........................................................9

*Wilcox v. Cornell Univ.*,
   986 F. Supp. 2d 281 (S.D.N.Y. 2013) ..................................................................20

*Zakrzewska v. New Sch.*,
   14 N.Y.3d 469 (2010) .........................................................................................17

**STATUTES**

18 U.S.C. § 1591 ......................................................................................4, 6, 7, 8

18 U.S.C. § 1595 ......................................................................................... *passim*

42 U.S.C. § 2000e-5 .......................................................................................13, 15

**OTHER AUTHORITIES**

N.Y.C. Admin. Code § 8-107 ..............................................................................17

N.Y.C. Admin. Code § 8-502 ..............................................................................13

N.Y. C.P.L.R. § 214 ............................................................................................13

Fed. R. Civ. P. 12 ...........................................................................................5, 13

## PRELIMINARY STATEMENT

Fox News cannot be held liable for Ed Henry's alleged misconduct against Plaintiff Jennifer Eckhart because the company did not engage in any wrongdoing. As soon as the company learned of the allegations, it immediately investigated and then terminated Henry within days. Eckhart does not allege any facts to suggest that Fox News had any prior knowledge of Henry's alleged abuse, or even that the company could have known. Accordingly, her claims against Fox News must be dismissed.

Eckhart's primary theory, and her only valid hook for federal jurisdiction, is that Fox News violated the federal law against "sex trafficking" by employing Henry at the time he allegedly abused her. That claim is meritless. To hold the company liable for sex trafficking, Eckhart would need to show that the company was on notice that Henry was coercing her into commercial sex acts, and that the company benefited from that crime. But she does not allege any facts whatsoever to support either of those outlandish claims.

Eckhart also asserts harassment claims under Title VII and state and city law, but those claims are time-barred and equally meritless. The statute of limitations under Title VII is 300 days, and under New York state and city law it is three years. But the last acts of unlawful harassment that Eckhart alleges occurred in early 2017, and she did not file her claims until July 2020.

In any event, Eckhart's remaining claims would fail even if they were timely filed. Fox News cannot be held liable for harassment or a hostile work environment because Henry was not Eckhart's supervisor and the company had no reason to know about his misconduct against her. And Eckhart cannot state a claim for "retaliation" because she does not allege that she suffered any adverse action as a penalty for opposing unlawful discrimination.

1

## BACKGROUND

**A.    Eckhart's Allegations Against Ed Henry**

Eckhart worked for Fox News in its New York City offices beginning in January 2013. Dkt. 78 ¶¶ 9, 11. She alleges that she was unhappy with her job because she was required to "perform a variety of humiliating tasks" and was "belittled and mistreated" by the host of the show that she worked for on the Fox Business Network. *Id*. ¶¶ 13–15.

On June 12, 2020, Fox News gave Eckhart two weeks' notice that her job would be terminated. *Id*. ¶ 74. Thirteen days later, she told the company for the first time that she had been sexually harassed and abused years earlier by Ed Henry, who was then a Fox News correspondent based in Washington, DC. *Id*. ¶ 75. She alleged that they began a sexual relationship in 2014, which culminated in a violent rape in his hotel room in early 2017. *Id.* ¶¶ 20–41, 47–62, 75. In response to her allegations, Fox News immediately retained an outside law firm to conduct an independent investigation. *Id*. ¶ 75. Less than a week later, after receiving the preliminary results of the investigation, Fox News terminated Henry's employment. *Id*. ¶ 76.

According to Eckhart's allegations, she had three clandestine sexual encounters with Henry beginning in 2014. Although she did not work with him (he worked on a different show, on a different network, in a different city), they met when he began "following [her] on Twitter" and sending her flirtatious messages. *Id*. ¶¶ 19–20. She eventually agreed to meet him for a drink at his hotel while he was in town for work. *Id*. ¶¶ 28–29. Although she did not want to go out with him, she "felt pressured" to do so because of his "powerful" position at the company. *Id*. ¶¶ 27. When he asked her back to his hotel room, she agreed because she "was fearful of the repercussions of refusing." *Id*. ¶ 31. And then, "fearing that her career would be over if she refused," she "relented and had sexual intercourse with him." *Id*. ¶ 32.

In September 2015, when Henry was visiting the New York office, Eckhart acceded to his request to "remove her underwear while at work . . . and put them in an envelope for him." *Id.* ¶¶ 35–36. After he picked up the envelope, she agreed to meet him in a guest office on the 17th floor. *Id.* ¶ 37. Once there, she alleges that he sexually assaulted her by "subjecting her to forceful and unwanted kissing" and "physically forc[ing] her to perform oral sex on him." *Id.* ¶ 39.

At some point around Valentine's Day in 2017, Eckhart alleges that Henry sent her a series of graphic messages regarding bondage-related sex practices and asked her to meet him for a drink at a New York restaurant. *Id.* ¶¶ 50–54. At the restaurant, he told her that he was getting "his very own show" on the Fox News Channel, which made her "even more intimidated." *Id.* ¶¶ 54–55. Eckhart then agreed to accompany him to his hotel room to "discuss her career." *Id.* ¶ 56. Once she entered the hotel room, however, she "never could have imagined what would happen next." *Id.* ¶ 57. Henry "forced himself upon [her]," "forcefully ripped off her clothing," and "applied metal handcuffs to [her] wrists." *Id.* ¶ 58. He then began photographing her, ignored her pleas for him to stop, and "proceeded to forcefully rape [her]." *Id.* ¶¶ 60–61.

After the alleged rape in early 2017, Eckhart does not allege that Henry committed any other sexual misconduct against her. A year and a half later, after he saw her in the New York office in October 2018, he e-mailed her to ask, "Why'd you turn away today?" *Id.* ¶ 68. On another occasion, he sent her a message saying, "YO!" *Id.* ¶ 69. And another time, he texted her "an image of a football player doing 'the Heisman pose.'" *Id.* ¶ 70.

Based on these allegations, Eckhart filed suit against Henry and Fox News in July 2020. She also filed a charge with the EEOC, *id.* ¶ 4, which issued a right-to-sue letter on September 15. *Id.* Eckhart amended her complaint to add claims of discrimination and retaliation under Title VII. *Id.* ¶¶ 99–109.

B.     **Eckhart's Claims Against Fox News**

Eckhart asserts three types of claims against Fox News. *First*, she claims that Fox News is liable for "sex-trafficking" under 18 U.S.C. §1591(a). She contends that Henry committed a federal sex-trafficking offense by "enticing [her] to his hotel room based on the false pretense that he would discuss and aid her career progression," and then "engag[ing] in sexual acts with [her] in his hotel room without her consent." Dkt. 78 ¶¶ 87–89. She does not allege that Fox News knew about this crime, or knew that Henry had ever engaged in any type of violent sex act. But she claims that Fox News is liable because it benefited from participating in a "venture" with Henry by employing him. *Id.* ¶ 91. According to the complaint, "Fox News benefited from its involvement in the venture because it allowed Mr. Henry to continue to appear on Fox News and co-anchor shows, which resulted in Fox News continuing to make money." *Id.* ¶ 96.

*Second*, Eckhart asserts identical claims of harassment and hostile work environment under Title VII, as well as the New York State Human Rights Law (NYSHRL) and the New York City Human Rights Law (NYCHRL). Based on Henry's alleged conduct, she alleges that Fox News "subject[ed] [her] to disparate treatment based upon [her] gender, including . . . subjecting [her] to sexual assault and/or harassment and a hostile work environment." *Id.* ¶¶ 111, 126.

*Third*, Eckhart asserts claims of retaliation under Title VII, the NYSHRL, and the NYCHRL. She does not allege that she ever complained about sexual misconduct in the workplace until after Fox News fired her in June 2020. *Id.* ¶¶ 72–74. Instead, she claims that the company fired her because she complained about a general "toxic work environment" in February 2020. *Id.* ¶ 72. She also claims that, after she was fired and made her allegations against Henry, the company "retaliat[ed]" against her by terminating Henry and announcing the decision without telling her first, so that "she was left to learn of this decision from the media and Twitter." *Id.* ¶¶ 81, 83. She

4

does not explain how terminating Henry and announcing the decision—as any responsible company would have done—constitutes unlawful "retaliation" against her.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must assume the truth of Eckhart's factual allegations, but not her legal conclusions. To state a valid claim, she cannot rely on mere conclusory assertions, but instead must allege "concrete" facts that make her claims "plausible." *See PBGC v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013).

## ARGUMENT

All of Eckhart's claims against Fox News fail as a matter of law. *First*, her "sex trafficking" claim borders on frivolous. Even assuming that Henry committed a federal sex-trafficking crime by coercing her into a "commercial sex act," she does not allege any facts to show that Fox News "knowingly" participated in the crime. Nor does she allege facts to show that the company "should have known" that Henry would coerce her into a commercial sex act. Nor does she plausibly allege that the company derived any benefit from the crime.

*Second*, Eckhart's harassment claims are time-barred. The filing period is 300 days under Title VII, and three years under the NYSHRL and the NYCHRL. But the last act of unlawful harassment that she alleges occurred around Valentine's Day in 2017, and she did not file her claims until the summer of 2020. That is several months too late.

*Third*, even if Eckhart's harassment claims were timely, Henry's alleged conduct cannot be imputed to Fox News. Henry was not her supervisor, the company did not know about his misconduct against her, and she alleges no facts to suggest that the company *should* have known.

*Finally*, Eckhart fails to state a retaliation claim because she does not allege that she reported any unlawful discriminatory conduct until *after* she was fired. Although she claims that

the company "retaliated" against her by terminating Henry and announcing the decision without telling her first, that benign activity does not rise to the level of unlawful retaliation.

## I.   Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News

Eckhart asserts a claim against Fox News under 18 U.S.C. § 1595(a), which provides a civil cause of action for victims of sex-trafficking. Under federal law, a person is guilty of a sex-trafficking crime if he "entices" another person with knowledge or reckless disregard of the fact that "force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The same statute also makes it a crime to knowingly or recklessly "benefit[] . . . from participation in a venture which has engaged in" sex trafficking. *Id*. § 1591(a)(2). The statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id*. § 1591(e)(4).

When a company does not itself commit criminal sex trafficking, it cannot be held civilly liable unless it "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in" an act of criminal sex trafficking. *Id*. § 1595(a).

Here, Eckhart fails to state a sex-trafficking claim against Fox News for three reasons. First, the complaint does not state a valid claim that Fox News itself committed criminal sex trafficking. Eckhart does not even try to claim that Fox News knowingly "participat[ed]" in a sex-trafficking venture by "knowingly assisting, supporting, or facilitating" Henry's alleged acts of coercing her into a "commercial sex act." *Id*. § 1591(e)(4). Second, the complaint also fails to allege any facts showing that Fox News "knew or should have known" about Henry's alleged sex trafficking. Even taking Eckhart's allegations as true, Fox News had no reason to believe that Henry had ever committed the specific offense of coercing anyone into a commercial sex act. *Id*.

§ 1595(a). And third, the complaint does not allege that Fox News "benefit[ed] . . . from" the acts of sex trafficking that Henry allegedly committed. *Id*.

### A.      Fox News Did Not Commit Sex Trafficking

As a threshold matter, Fox News itself did not violate the federal criminal law against sex trafficking. A sex-trafficking crime requires knowing "participation" in a sex-trafficking venture. Dkt. 78 ¶¶ 91, 93. And the statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating" an act of direct sex trafficking. *Id*. § 1591(e)(4). This requires knowledge that specific unlawful means will be employed—i.e., "force, threats of force, fraud, [or] coercion"—to "cause" a victim "to engage in a commercial sex act." *Id*. § 1591(a).

Fox News did not knowingly assist any such crime. The complaint does not allege that Fox News knew that Henry ever had (or ever would) coerce Eckhart (or anyone else) into a commercial sex act. Instead, the complaint alleges only that Fox News "paid for Mr. Henry's interstate travel and the premises where the sexual assault [against Eckhart] was committed." Dkt. 78 ¶ 94. But merely paying for Henry's travel says nothing about how Fox News could have *known about*, let alone knowingly "assisted, supported, or facilitated," Henry's alleged offense against Eckhart. Indeed, this Court rejected exactly this type of claim in *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). In that case, the plaintiff sued Robert Weinstein for sex-trafficking because he allegedly paid for his brother Harvey's travel to Cannes, where Harvey engaged in sex trafficking. The court rejected the claim as a matter of law. Merely paying for Harvey's travel was not enough to make Robert liable, because there were no "specific factual allegations that plausibly allege[d] Robert knew of, or participated in, Harvey's alleged violation of Section 1591 in Cannes." *Id.* So too here: there is no factual allegation showing that Fox News knowingly

facilitated Henry's alleged crimes against Eckhart in violation of § 1591(a)(1). That is dispositive. *See also United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (unpub.).

### B.    Fox News Had No Reason to Know About Henry's Alleged Sex Trafficking

When a company does not itself commit sex trafficking, it cannot be held liable unless it "knew or should have known" that it was participating in a "venture" that "has engaged in" sex trafficking. *Id*. § 1595(a). As relevant here, this requires that the company knew or should have known that the venture used "force, fraud, [or] coercion" to compel another person into a "commercial sex act." *Id*. § 1591(a). Merely showing that the company "should have been aware of some nefarious conduct" is not enough, because that does not show that the company should have known specifically "that *human trafficking* was occurring." *J. B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *10–11 (N.D. Cal. Aug. 20, 2020) (emphasis added). Indeed, even knowledge about "prostitution" does not always establish scienter regarding a federal sex-trafficking offense, because prostitution does not necessarily involve the use of *coercion* to force people into commercial sex. *Doe 4 v. Red Roof Inns, Inc*., 2020 WL 1872336, at *3 (N.D. Ga. Apr. 13, 2020)).

To survive a motion to dismiss, a plaintiff must allege "concrete facts" showing that a reasonable defendant would have been aware of criminal sex trafficking. *Cf. OffWhite Prods., LLC v. Off-White LLC*, 2020 WL 4895362, at *4 (S.D.N.Y. Aug. 20, 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). This is a heavy burden. In one case, for example, the victim did not adequately allege that a hotel should have known of her trafficking even though she was raped multiple times at the hotel, including once after a middle-aged man took her to his room "in plain sight of motel staff." *J. B.*, 2020 WL 4901196, at *2, *10. Because the hotel did not see any indications of violence or other telltale signs of criminal trafficking, there was "an insufficient basis to infer constructive knowledge of a trafficking venture." *Id*. at *10. Likewise, in another

case, the victim did not sufficiently allege that a hotel should have known about her trafficking even though she "repeatedly" stayed in hotel rooms; she "was arrested at Defendants' hotels' properties"; she wore "'booty shorts' to open the front lobby door for frequent male guests"; and she left "used condoms, bottles of lubricant, and boxes of condoms" in her rooms. *A.B. v. Hilton Worldwide Holdings Inc*., 2020 WL 5371459, at *11 (D. Or. Sept. 8, 2020). Again, these allegations were not enough because they did not put the hotel on notice that the victim engaged in "commercial sex *as a result of fraud, force, or coercion*." *Id*. (emphasis added).

In a variety of other contexts, courts have likewise recognized that it is not enough for a plaintiff to make the conclusory assertion that the defendant "should have known" about specified misconduct. *See, e.g.*, *Varga v. Gen. Elec. Co*., 2020 WL 1064809, at *3 (N.D.N.Y. Mar. 5, 2020) (plaintiff "fail[ed] to satisfy the *Twombly* and *Iqbal* pleading standards," since "[t]he court cannot plausibly infer that defendants knew or should have known" about financial risk); *Doe v. City of N.Y.*, 2018 WL 3824133, at *7 (E.D.N.Y. Aug. 9, 2018) (dismissing claim because plaintiff "has not pleaded factual allegations that make it plausible that the [defendant] knew or should have known of [perpetrators'] propensity to commit sexual assaults"); *Corley v. City of N.Y.*, 2017 WL 4357662, at *11 (S.D.N.Y. Sept. 28, 2017) ("pleading that officials were apprehensive falls short of pleading that a reasonable officer should have known of a serious harm"); *Doe v. Guthrie Clinic, Ltd*., 2012 WL 531026, at *7 (W.D.N.Y. Feb. 17, 2012) (dismissing for lack of any "credible, nonconclusory allegation that any defendant knew or should have known that [a nurse] would breach her duty of confidentiality"); *In re Citigroup Erisa Litig*., 2009 WL 2762708, at *25 (S.D.N.Y. Aug. 31, 2009) (dismissing ERISA claim because "allegation that the [defendant] 'knew or should have known' of Citigroup's 'massive subprime exposure' is no more than a "'naked

9

assertion[ ]' devoid of 'further factual enhancement.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly*, 550 U.S. at 557)).

Here, Eckhart does not allege any facts showing that Fox News knew or should have known that Henry ever had coerced, or ever would coerce, anyone into a commercial sex act. By her own account, Eckhart did not report any of Henry's alleged misconduct for over three years. Dkt. 78 ¶¶ 50, 75. And with respect to the final incident (the alleged rape in the hotel room), Eckhart admits that she "never could have imagined" that it would happen. *Id*. ¶ 57. She does not allege any facts to explain how *Fox News* could have expected that it would happen. To the contrary, there was no way the company reasonably could have known that Henry had ever engaged in any coercive sex act until *after* Eckhart reported her allegations over three years later. And once she did, she admits that the company immediately investigated and terminated Henry within days. *Id*. ¶¶ 75–76.

Before her alleged assault, Eckhart does not allege that Henry had ever coerced anyone into a sex act—much less a *commercial* sex act—much less that Fox News had reason to be aware of it. The closest the complaint comes is the bare allegation that Fox News supposedly "knew that Mr. Henry engaged in a pattern and practice of sexual misconduct with women" because, at some unspecified point, "multiple" unidentified "women" supposedly "complained that Mr. Henry had subjected them to sexual harassment and/or unwanted sexual messages." *Id.* ¶¶ 45, 92. There are no facts alleged to support this claim, including when the complaints were supposedly made and who at the company supposedly knew about them. But even accepting this vague and baseless assertion as true, it does not show that Fox News should have known that Henry would *commit a federal sex-trafficking offense*. Sending unwelcome sexual messages is a far cry from *coercing victims into commercial sex acts*, as § 1595(a) requires. *See J. B.*, 2020 WL 4901196, at *10 ("[W]hile Plaintiff's allegations suggest that [defendant] quite possibly should have been aware of

10

some nefarious conduct, they do not suggest that [it] should have known that the venture constituted sex trafficking that violated the TVPRA.").

In any event, even if non-sex-trafficking allegations were relevant, the complaint does not allege any concrete facts showing that Fox News learned of these allegations before Henry allegedly assaulted Eckhart. At best, the complaint asserts that the company knew about vague "misconduct" by Henry "as early as 2017." Dkt. 78 ¶ 78. But the three sexual encounters between Henry and Eckhart allegedly occurred in "2014," "September 2015," and sometime around "Valentine's Day" in "2017." *Id*. ¶¶ 20–34, 35–41, 50–62. Thus, even if non-trafficking allegations somehow could have put the company on notice of *criminal sex trafficking*, they are still irrelevant because Eckhart does not allege facts showing that they were reported before Henry assaulted her.

In short, Eckhart's claim fails because the complaint fails to allege any facts showing that Fox News "knew or should have known" about Henry's alleged criminal sex-trafficking activity.

### C.    Fox News Did Not "Benefit From" Henry's Alleged Trafficking

Even if it were assumed that Fox News somehow knew or should have known that Henry was allegedly engaged in criminal sex trafficking, Eckhart's claim still fails because she fails to allege any facts showing that Fox News "benefit[ed] . . . from" participating in the trafficking. 18 U.S.C. § 1595(a). As this Court has recognized, a company cannot be held liable unless there is a causal connection between sex trafficking and some resulting "benefit[]" to the company. The "benefit" must arise from the defendant's "participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). For example, if a defendant knowingly facilitates trafficking in exchange for money, there is a causal link because the defendant earns money as a result of the trafficking it facilitates. *Cf. Ricchio v. McLean*, 853 F.3d 553, 555–56 (1st Cir. 2017).

The defendant can thus be held liable due to the "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss*, 383 F. Supp. 3d at 169.

By contrast, a company cannot be held liable merely for employing a person who engages in sex trafficking, if the company obtains *no benefit whatsoever* from the unlawful trafficking activity. In *Geiss*, for example, the court considered a claim against the Weinstein Company, which allegedly benefited from participating in a venture with Harvey Weinstein by employing him as a filmmaker while he was engaged in sex trafficking. The court rejected the claim. Although Weinstein's "movies and influence generated revenue" for the company, and the company *de facto* facilitated his trafficking activity, the company did not benefit in any way "from" his trafficking. *Id*. The "controlling question" was whether Weinstein benefited the company "*because of* [the company's] facilitation of [his] sexual misconduct." *Id*. The answer was no. The fact that he was engaged in unlawful sex trafficking did nothing to help the company. To the contrary, he benefited the company "*in spite of* his alleged predations," not "*because of*" them. *Id*. at 169–70.

The same is true here. Based on the allegations in the complaint, Fox News simply employed Ed Henry and benefited from his services as a reporter and television co-anchor. The company did not benefit in any way from any of his alleged sex-trafficking acts, which he allegedly committed without the company's knowledge—and to the company's obvious *detriment*. Eckhart alleges only that Fox News "received value from Mr. Henry's services and benefited financially from his continued employment." Dkt. 78 ¶ 91. And she claims that Fox News benefited "because it allowed Mr. Henry to continue to appear on Fox News and co-anchor shows, which resulted in Fox News continuing to make money." *Id*. ¶ 96. But this does not establish the "controlling" point that Henry benefited Fox News *because of* his alleged sex trafficking. *Geiss*, 383 F. Supp. 3d at 169. To the contrary, the benefits that Henry provided were unrelated to his "alleged predations."

*Id.* at 169–70. Thus, even accepting the complaint's allegations as true, Fox News did not "benefit[] . . . from" the alleged sex trafficking, and cannot be liable for that reason.

## II.    Eckhart's Harassment Claims Are Time-Barred

Eckhart's harassment claims against Fox News are time-barred because she did not file them until more than three years after Henry allegedly harassed her. Under Title VII, "a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)). And "[i]n general, the statute of limitations under the NYSHRL and the NYCHRL is three years." *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 248−49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). As the Second Circuit has recognized, "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). And here, the complaint makes clear that Eckhart filed her claims too late.

As noted above, the harassing conduct that Eckhart alleges consists of three sexual encounters, along with sexually explicit messages that he sent around the same time. The last encounter (the rape allegedly committed by Henry in his hotel room) occurred "at some point" in 2017 following an exchange of text messages around "Valentine's Day," which makes it February or March 2017 at the latest. Dkt. 78 ¶¶ 50–62. But Eckhart did not file suit until July 20, 2020. *See* Dkt. 1. It is thus clear that her claims are time-barred. She filed more than two years after the expiration of the 300-day filing period under Title VII. And she filed several months after the expiration of the three-year period under the NYCHRL, and the NYSHRL.

If the court has any doubt on the time bar, it should direct Eckhart to amend her complaint to specify the dates of her allegations. It would be pointless and inefficient to go through costly

discovery on this, since the critical dates are entirely within Eckhart's own knowledge. *Cf. Medina v. Waste Connections of N.Y., Inc.*, 2019 WL 3532048, at *4 (S.D.N.Y. Aug. 2, 2019) (Abrams, J.) ("The Court notes that several allegations . . . fail to provide dates, making it difficult to determine whether or not they are barred by the statute of limitations. Accordingly, if Plaintiff opts to amend his complaint, he must provide specific dates for allegations in order for the Court to determine whether they are timely.").

The continuing-violation doctrine cannot revive Eckhart's time-barred claims because she does not allege any continuous course of related conduct within the limitations period. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010); *see also Taylor v. City of N.Y.*, 207 F. Supp. 3d 293, 309 n.10 (S.D.N.Y. 2016) (Abrams, J.) ("For hostile work environment claims, courts apply the same standard for a continuing violation under Title VII, § 1981, NYSHRL, and NYCHRL."). By her own account, Eckhart did not have any interaction with Henry for more than a year and a half after the alleged rape in early 2017. And even then, Henry's alleged comments were entirely non-sexual in nature. After Eckhart saw him in the office on "October 5, 2018," he e-mailed her asking, "Why'd you turn away today?" Dkt. 78 ¶ 68. He then sent her a message three weeks later stating "YO!" *Id.* ¶ 69. And he later sent her another message showing a football player doing "the Heisman pose." *Id.* ¶ 70.

Not only were these comments non-sexual in nature, but they were far too remote in time to be part of a single continuing course of conduct stretching back to the alleged sexual encounters in 2014, 2015, and 2017. *See McGullam*, 609 F.3d at 78 (continuing-violation doctrine did not apply where the only comment within the limitations period took place almost a year later and was "not lewd," though it may have been offensive); *Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, 2018 WL 2416568, at *14 (S.D.N.Y. May 29, 2018) (no continuing violation because

"[t]he pre-limitations harassing behavior was largely sexual in nature," whereas the defendant's comments during the limitations period were not).

### III.   Eckhart's Title VII Claims Are Barred For Failure to Exhaust Administrative Remedies

Even assuming Eckhart had timely filed a Title VII charge with the EEOC, she cannot pursue her Title VII claim in court because she has not exhausted the statutory pre-filing requirements. In particular, the statute does not allow a plaintiff to file suit in court unless 180 days have passed since the filing of a charge with the EEOC, or the EEOC has investigated the charge and dismissed it. In this case, however, neither requirement has been met. Eckhart did not file her EEOC charge until July or August, which means that the 180-day period will not expire until January or February. And because the EEOC admittedly did not conduct any investigation of her EEOC charge, that failing precludes the agency from issuing a valid right-to-sue letter.

Under Title VII, a private plaintiff may not file suit in court unless she first files a charge with the EEOC to give the agency a chance to investigate and decide whether to bring its own enforcement proceeding. Accordingly, a "civil action may be brought" by the plaintiff only if the agency has "dismissed" the charge or has not filed a civil action "within one hundred and eighty days." 42 U.S.C. § 2000e-5(f)(1). The statute does not allow the agency to dismiss a charge without investigating. To the contrary, the agency has a mandatory duty to investigate first: After a charge is filed, the agency "*shall* make an investigation thereof." *Id*. ¶ 2000e-5(b) (emphasis added). And only then, "[i]f the Commission determines *after such investigation* that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge." *Id*. (emphasis added). The statutory scheme thus gives effect to Congress's intention that the EEOC should have primary responsibility for investigating and prosecuting alleged violations of Title VII, and that "recourse

to the private lawsuit will be the exception and not the rule." *Martini v. Fed. Nat'l. Mortg. Ass'n*, 178 F.3d 1336, 1346 (D.C. Cir. 1999).

Despite the clear statutory text, the EEOC has purported to "authorize[] itself" to issue early right-to-sue letters *before* the agency has conducted any investigation and *before* the 180-day period expires. *Gibb v. Tapestry, Inc*., 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018). But the "plain language" of Title VII bars this practice. *Id*. at *6. "The EEOC cannot, by its own hand, abrogate its congressional mandate." *Id.* Accordingly, if the 180-day period has not expired and the EEOC has not conducted any investigation, then the issuance of "an early right-to-sue letter presents 'a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC.'" *Id.* at *5 (citation omitted); *see also Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 607–11 (W.D. Va. 2019) (surveying cases and holding that "the EEOC's regulation is invalid and the Title VII claims of those Plaintiffs who received right-to-sue letters from the EEOC in fewer than 180 days must be remanded to the EEOC").

Here, the EEOC did not issue a valid right-to-sue letter because the 180-day period has not yet run and the agency did not conduct any investigation of Eckhart's charges. By Eckhart's own account, she did not decide to pursue her claims until around July 2020. Dkt. 1 ¶ 43. Thus, even assuming she immediately filed her EEOC charges in July or August, the 180-day period would not expire until January or February 2021. Although the EEOC issued an early right-to-sue letter on September 15 (Dkt. 78 ¶ 4), that letter is invalid because the 180-day period had not yet expired and there is no indication that the agency conducted any investigation as required by law. This type of early and perfunctory right-to-sue letter is unlawful and does not satisfy the administrative-exhaustion requirements that Title VII imposes. *See Tapestry*, 2018 WL 6329403 at *6, and *Martini*, 178 F.3d at 1346. Eckhart's Title VII claims are thus premature.

## IV.   Henry's Alleged Harassment Cannot Be Imputed to Fox News

Even assuming Eckhart's claims are somehow not time-barred, she fails to state a claim that Fox News can be held liable for any of Henry's alleged harassment. It is well established that an employee's harassing conduct cannot be imputed to an employer under the NYCHRL except in three limited circumstances: (1) "where the offending employee 'exercised managerial or supervisory responsibility'" over the victim; (2) "where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'"; and (3) "where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent it.'" *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010), quoting N.Y.C. Admin. Code § 8-107(13)). *See also Erasmus v. Deutsche Bank Ams. Holding Corp*., 2015 WL 7736554, at *8 & n.14 (S.D.N.Y. Nov. 30, 2015) (recognizing that the grounds for imputation are even narrower under Title VII and the NYSHRL). Here, Eckhart does not allege facts that bring her claims within any of these three categories.

*First*, Eckhart does not allege that Henry was her manager or supervisor. To the contrary, the Complaint alleges that another individual, Brad Hirst, was Eckhart's "supervisor." Dkt. 78 ¶ 72. Henry never even worked with Eckhart, much less supervised her, because they were based in different cities and worked on different shows on different networks. He worked in Washington as a "[c]orrespondent" and "co-anchor" on shows that aired on the Fox News Channel. *Id*. ¶¶ 20, 71. And she worked in New York on *The Claman Countdown*, a show on Fox News Channel's sister network, the "Fox Business Network." *Id*. ¶¶ 11, 19. Their first contact was through a private message on Twitter, an outside means of communication. *Id*. ¶ 21. Fox News thus cannot be liable for Henry's alleged conduct on the theory that he exercised supervisory authority over Eckhart.

*Second*, the complaint also does not allege that Fox News had any knowledge of Henry's alleged misconduct against Eckhart until more than three years after it occurred. As noted above, Henry committed the last act of alleged harassment against Eckhart in early 2017, and she did not report it to the company until thirteen days after she was informed she would be terminated in June 2020. *Id.* ¶¶ 54, 75. Once she reported it, the company immediately investigated and terminated Henry's employment within days. *Id*. ¶¶ 75–76. Fox News thus cannot be held liable for Henry's alleged misconduct based on the theory that the company knew about it and failed to prevent it.

*Third*, the complaint does not allege any facts to suggest that Fox News should have known about Henry's harassment of Eckhart. As noted, the alleged harassment occurred in 2014, 2015, and early 2017. *Id.* ¶¶ 20–34, 35–41, 50–62. But the complaint fails to allege any facts showing that Fox News received any allegations of similar sexual misconduct by Henry before he allegedly harassed Eckhart. Instead, the complaint points out that the company knew in "May 2016" that Henry "engaged in an affair with a Las Vegas stripper." *Id.* ¶¶ 42–43. But that affair was not unlawful, nor did it occur in the workplace. Otherwise, the complaint makes only the vague and baseless allegation that, at some unspecified time, "multiple" unidentified "women" supposedly "complained that Mr. Henry had subjected them to sexual harassment and/or unwanted sexual messages." *Id*. ¶ 45. But this vague allegation is inadequate under *Iqbal* and *Twombly*. It does not offer any concrete supporting facts such as who the women were, when they complained, or who at the company knew about the complaints. Much less does it allege that the other incidents involved anything like the severe misconduct alleged here, as would have been required to put the company on notice that Henry might commit *violent assault and rape*. The complaint thus fails to show that Fox News should have known that Henry might commit the type of abuse Eckhart alleges. And the company cannot be held liable for misconduct it had no reason to expect.

V.      **Eckhart Fails to State a Retaliation Claim**

Eckhart fails to state a retaliation claim because she does not allege that she was fired for engaging in any protected activity. Although she alleges that Henry began harassing her in 2014, she does not allege that she reported his alleged misconduct until 13 days *after* Fox News informed her that it was terminating her employment in June 2020. Dkt. 78 ¶¶ 74–75. Thus, if anything, it could be inferred that she brought her claims against the company to retaliate for being fired, but not the other way around.

Under Title VII, as well as the NYSHRL and the NYCHRL, a plaintiff cannot bring a retaliation claim unless she can show that she suffered an adverse action for engaging in "protected activity." *Scott-Robinson v. City of N.Y.*, 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016). Under all three statutes, protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Id.* (quoting *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 367 (S.D.N.Y. 2016) (applying standard to NYCHRL and NYSHRL claims)). Thus, importantly, "complain[ing] of an employment practice" is not protected unless the plaintiff "reasonably believes [it] violates the law." *Id.*

It is not a protected activity to "complain[] about poor treatment in the workplace that is unrelated to any trait" protected by the anti-discrimination laws. *Evert v. Wyo. Cnty. Cmty. Health Sys.*, 2017 WL 1832051, at *6 (W.D.N.Y. May 8, 2017). For example, "generalized complaints of unfair treatment" are not protected. *McGullam v. Cedar Graphics, Inc.*, 2008 WL 3887604, at *9 (E.D.N.Y. Aug. 20, 2008), *aff'd*, 609 F.3d 70 (2d Cir. 2010). Nor is it a protected activity to complain about "rude words" or an "improper tone" in the workplace, because such complaints are not based on any "reasonable inference of unlawful discrimination," and therefore do not lead a "[defendant] to understand that [race or gender were] the nature of" the complaint. *Garcia v.*

*Coll. of Staten Island*, 2012 WL 3930448, at *7 (E.D.N.Y. July 31, 2012), *report and recommendation adopted*, 2012 WL 3929985 (E.D.N.Y. Sept. 10, 2012).

Eckhart does not allege that she engaged in any protected activity that caused Fox News to fire her. According to her complaint, Henry began harassing her in 2014 but she did not inform the company about it until shortly after she was fired six years later. Fox News informed her that it was terminating her employment on June 12, 2020, and she reported her allegations against Henry shortly thereafter on June 25. Dkt. 78 ¶¶ 74–75. Before that time, she does not allege that she ever reported any misconduct that she reasonably believed to be unlawful discrimination.

To be sure, Eckhart does allege that she complained in general terms to her supervisor in February 2020 that she was "experiencing a toxic work environment at Fox News." *Id.* ¶ 72. But she conspicuously does *not* allege that this complaint about a "toxic environment" had anything to do with Henry or was related to her gender in any way. And it is clear that she had many complaints about her work environment that had nothing to do with unlawful discrimination: she alleges that she was "belittled and mistreated" and subject to "frequent yelling and berating" from show staff. *Id.* ¶¶ 14–16. But while this alleged "poor treatment" could be called "rude" and "unfair," it was not plausibly discriminatory, and thus complaining about it does not qualify as a "protected activity." *Garcia*, 2012 WL 3930448, at *7; *Evert*, 2017 WL 1832051, at *6; *McGullam*, 2008 WL 3887604, at *9.

Accordingly, because Eckhart does not allege that she engaged in protected activity before she was fired, she fails to state a retaliation claim. *See Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 127 (S.D.N.Y. 2020) (dismissing NYSHRL and NYCHRL retaliation claims where plaintiff did not "suggest that the alleged adverse action post-dated, must less was caused by, the vague complaints about discrimination she claims to have made"); *Wilcox v. Cornell Univ.*,

20

986 F. Supp. 2d 281, 287–88 (S.D.N.Y. 2013) (dismissing NYCHRL, NYSHRL, and Title VII retaliation claims, noting that "[b]ecause th[e] adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints"); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 685 (S.D.N.Y. 2012) (dismissing NYCHRL and NYSHRL retaliation claims "because the complaint and Defendants' response all occurred *before* Plaintiff first engaged in protected activity") (emphasis in original).

Perhaps recognizing this problem, Eckhart tries to claim that Fox News retaliated against her *after* she reported Henry's alleged harassment on June 25, by which point she had already been fired. Specifically, she asserts that the company "retaliat[ed]" against her by "terminating Mr. Henry" and sending around an "internal memo" about his termination without even "notifying [her]" ahead of time, leaving her "to learn of this decision from the media and Twitter." Dkt. 78 ¶¶ 81, 83. But this does not plausibly constitute unlawful retaliation against Eckhart.

As a matter of law, unlawful retaliation does not occur unless the employer takes some adverse action, which (at the very least under the NYCHRL) must be "reasonably likely to deter a person from engaging in [a protected activity]." *Ramirez v. Michael Cetta Inc.*, 2020 WL 5819551, at *20 (S.D.N.Y. Sept. 30, 2020). Neither is true here. Fox News obviously did not take any adverse employment action against Eckhart after she complained on June 25, because it had already fired her on June 12. And even more clearly, the company's decision to investigate Henry and then terminate him is not "reasonably likely" to "deter" anyone from reporting unlawful harassment. Eckhart does not explain how the company's decision to terminate the person she accused of misconduct caused her any harm whatsoever. Nor does she claim that the internal memo announcing Henry's termination even mentioned her name, much less said anything negative about her that could plausibly be construed as retaliatory conduct. Far from engaging in retaliation, the

company acted responsibly and appropriately in responding to allegations of serious violations of company policy.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Eckhart's claims against Fox News with prejudice.


Dated:   October 19, 2020


By:     */s/ Kathleen M. McKenna*
        Kathleen M. McKenna, Esq.
        Lloyd B. Chinn, Esq.
        Keisha-Ann G. Gray, Esq.
        Danielle J. Moss, Esq.
        Yonatan L. Grossman-Boder
        PROSKAUER ROSE LLP
        Eleven Times Square
        New York, New York 10036-8299
        (212) 969-3000
        kmckenna@proskauer.com

        Anthony J. Dick
        J. Benjamin Aguiñaga
        Ariel N. Volpe
        JONES DAY
        51 Louisiana Ave., NW
        Washington, DC 20001
        Tel. (202) 879-3939
        Fax. (202) 879-1700
        E-mail: ajdick@jonesday.com

        *Attorneys for Defendant*
        *Fox News Network, LLC*