**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

JENNIFER ECKHART,                                    :

                                                             :      Civil Case No. 1:20-cv-05593 (RA)

                      Plaintiff,            :

                                                           :

                     v.                                :

                                                                 :

FOX NEWS NETWORK, LLC and ED HENRY,         :
in his individual and professional capacities,     :

                                                             :

                      Defendants.        :
--------------------------------------------------------------X

 

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' RULE 11 MOTION**
**<u>FOR SANCTIONS</u>**

<br>

                                **WIGDOR LLP**

                                Douglas H. Wigdor
                                Michael J. Willemin

                                85 Fifth Avenue
                                New York, NY 10003
                                Telephone: (212) 257-6800
                                Facsimile: (212) 257-6845
                                dwigdor@wigdorlaw.com
                                mwillemin@wigdorlaw.com

                                *Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 6

I.     Ms. Eckhart's and Ms. Areu's Related Claims Against Ed Henry and Fox ...................... 6

II.    The Original Complaint Is Filed and Proskauer Serves a Rule 11 Motion ........................ 9

ARGUMENT ............................................................................................................... 11

I.     Legal Standards ............................................................................................................ 6

II.    Wigdor Cannot Be Sanctioned Pursuant to Rule 11 ........................................................ 9

III.   Even Assuming, For the Sake of Argument, That Wigdor Could Be Sanctioned
       Pursuant to Rule 11, Sanctions Are Inappropriate in this Case ...................................... 16

       A.    Conspiracy Theories Cannot Form the Basis for Rule 11 Motions ...................... 16

       B.    Ms. Areu's Claims Were Properly Joined with Ms. Eckhart's ............................. 20

       C.    The Fox Defendants' Sexist Argument that Ms. Areu Is Lying Because She
             Sent Friendly Messages does not Support a Request for Sanctions ...................... 24

       D.    Ms. Areu's Claim that She Was an Employee if Fox New or an Applicant for
             Employment is Not Frivolous ............................................................................... 26

IV.   The Rule 11 Motion Was Filed for an Improper Purpose ................................................ 27

CONCLUSION ........................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Abdelhamid v. Altria Grp., Inc.*,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007) .................................................................................... 12

*Achtman v. Kirby, McInerney & Squire LLP*,
    464 F.3d 328 (2d Cir. 2006) ......................................................................................... 3, 22

*Barnhart v. Town of Parma*,
    252 F.R.D. 156 (W.D.N.Y. 2008) ........................................................................................ 22

*Baskett v. Autonomous Research LLP, et al.*,
    No. 17 Civ. 9237 (VSB), 2018 WL 4757962 (S.D.N.Y. Sep. 28, 2018) .................................. 11

*Blesedell v. Mobil Oil Co.*,
    708 F. Supp. 1408, (S.D.N.Y. 1989) ............................................................................... 21, 22

*Bouveng v. NYG Capital LLC*,
    175 F. Supp. 3d 280 (S.D.N.Y. 2016) ................................................................................. 18

*Brown Jordan Int'l, Inc. v. Carmicle*,
    No. 14 Civ. 60629, 2015 WL 11660246 (S.D. Fla. June 3, 2015) ........................................... 11

*Campbell v. Chadbourne & Parke LLP*,
    No. 16 Civ. 6832 (JPO), 2017 WL 2589389 (S.D.N.Y. June 14, 2017) .................................. 11

*Chambers v. NASCO*,
    501 U.S. 32 (1991) ............................................................................................................ 25

*E. Gluck Corp. v. Rothenhaus*,
    252 F.R.D. 175 (S.D.N.Y. 2008) ......................................................................................... 11

*Falow v. Cucci*,
    No. 00 Civ. 4754 (GBD), 2003 WL 22999458 (S.D.N.Y. Dec. 19, 2003) ............................. 25

*Fong v. Rego Park Nursing Home*,
    No. 95 Civ. 4445 (SJ), 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996) ................................. 21, 22

*Grammer v. Mercedes Benz of Manhattan*,
    No. 12 Civ. 6005 (LTS)(JCF), 2014 WL 1040991 (S.D.N.Y. Mar. 13, 2014) .................... 5, 17

*GTFM Inc. v. Int'l Basic Source*,
    No. 01 Civ. 6203 (RWS), 2002 WL 42884 (S.D.N.Y. Jan. 11, 2002) ................................... 25

*Guzman v. News Corp.*,
    No. 09 Civ. 09323 (LGS), 2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013) .......................... 4, 24

*Hagan v. City of New York*,
    39 F. Supp. 3d 481 (S.D.N.Y. 2014)...................................................................... 21

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ............................................................................. 15

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018)........................................................... 4, 9, 26

*In re Itel Sec. Litig.*,
    791 F.2d 672 (9th Cir. 1986) ............................................................................. 14

*Jackson v. Rohm & Haas Co.*,
    No. 05 Civ. 4988, 2006 WL 680933 (E.D. Pa. Mar. 9, 2006)........................... 13, 14

*Keller v. Loews Corp.*,
    69 A.D.3d 451 (1st Dep't 2010) .......................................................................... 11

*Lawrence v. Richman Grp. of CT LLC*,
    620 F.3d 153 (2d Cir. 2010)........................................................................... 2, 13

*Luv N' Care, Ltd. et al., v. Shiboleth LLP*,
    No. 16 Civ. 3179 (AJN), 2017 WL 3671039 (S.D.N.Y., Aug. 8, 2017) ................... 25

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
    211 F.3d 697 (2d Cir. 2000)........................................................................... 3, 22

*Maale v. Kirchgessner*,
    No. 08 Civ. 80131, 2011 WL 743040 (S.D. Fla. Feb. 24, 2011)............................ 16

*McLaughlin v. Macquarie Capital (USA) Inc., No. 17 Civ. 9023 (RA)*,
    2018 WL 3773992 (S.D.N.Y. Aug. 7, 2018)......................................................... 11

*Microbot Med., Inc. v. All. Inv. Mgmt. Ltd.*,
    No. 19 Civ. 03782 (GBD)(RWL), 2020 WL 5755061 (S.D.N.Y. Aug. 18, 2020)................ 17

*Miller v. Blattner*,
    676 F. Supp. 2d 485 (E.D. La. 2009) .................................................................. 11

*Nakash v. U.S. Dep't of Justice*,
    708 F. Supp. 1354 (S.D.N.Y. 1988)..................................................................... 12

*Park v. Seoul Broad. Sys. Co.*,
 No. 05 Civ. 8956 (BSJ)(DFE), 2008 WL 619034 (S.D.N.Y. Mar. 6, 2008) ...................... 2, 12

*Peer v. Lewis*,
 606 F.3d 1306 (11th Cir. 2010) ...................................................................... 15, 16

*Polo Ralph Lauren Corp. v. Chinatown Gift Shop*,
 855 F. Supp. 648 (S.D.N.Y. 1994) ....................................................................... 23

*Quadrozzi v. City of New York*,
 127 F.R.D. 63 (S.D.N.Y. 1989) ....................................................................... 5, 17

*Rifkinson v. CBS, Inc.*,
 No. 94 Civ.7985 (KTD)(JCF), 1997 WL 634514 (S.D.N.Y. Oct. 14, 1997) ......................... 21

*Robert Reiser & Co. v. Scriven*,
 130 F. Supp. 3d 488 (D. Mass. 2015) ..................................................................... 11

*Rodick v. City of Schenectady*,
 1 F.3d 1341 (2d Cir. 1993)................................................................................. 12

*Safe-Strap Co., Inc. v. Koala Corp.*,
 270 F. Supp. 2d 407 (S.D.N.Y. 2003)...................................................................... 26

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
 No. 16 Civ. 7084 (GBD), 2017 WL 4640149 (S.D.N.Y. July 26, 2017) ............................... 25

*St. Amant v. Bernard*,
 859 F.2d 379 (5th Cir. 1988) ............................................................................. 15

*Sussman v. Bank of Israel*,
 56 F.3d 450 (2d Cir. 1995).................................................................................. 18

*Tobia v. The United Grp. of Cos., Inc.*,
 No. 15 Civ. 1208 (BKS)(DEP), 2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016)........... 4, 25, 26

*U.S. ex rel. Cieszynsky v. Lifewatch Servs., Inc.*,
 No. 13 Civ. 4052 (SIS), 2016 WL 2771798 (N.D. Ill. May 13, 2016).................................. 11

*United Mine Workers of America v. Gibbs*,
 383 U.S. 715 (1966)......................................................................................... 21

## **Statutes**

28 U.S.C. § 1367(a) ............................................................................................ 22

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... passim

Fed. R. Civ. P. 20 .................................................................................................... 20, 21

New York Rule of Professional Conduct 3.2.......................................................... 1, 2

New York Rule of Professional Conduct 3.3(f)(ii)................................................. 1, 2

**Other Authorities**

Fed. Prac. & Proc. Civ. § 1337.1 (4th ed.)............................................................. 15

Wigdor LLP ("Wigdor" or the "Firm") respectfully submits this memorandum of law in opposition to the motion filed by Fox News Network, LLC ("Fox News" or the "Company"), Tucker Carlson, Sean Hannity, Howard Kurtz and Gianno Caldwell (collectively, the "Fox Defendants") pursuant to Fed. R. Civ. P. 11 (the "Rule 11 Motion").

## PRELIMINARY STATEMENT

It goes without saying that any defendant, in any litigation, is entitled under the law to put on a defense. However, from the moment that Fox Defendants and Defendant Ed Henry (collectively, "Defendants") learned that Ms. Eckhart, and later Ms. Areu, had retained legal counsel in connection with their claims, Defendants have gone far beyond merely "defending themselves." Instead, they have engaged in a litany of harassing and retaliatory conduct unrivaled by any litigation in which the Firm has been involved.

It also goes without saying that an attorney is prohibited from engaging in harassing and retaliatory litigation, *see* New York Rule of Professional Conduct 3.2 (prohibited activity includes engaging in conduct that "serves merely to harass or maliciously injure another"), or "undignified or discourteous conduct" "[i]n appearing as a lawyer" before the Court, *see* N.Y. Rule of Professional Conduct 3.3(f)(ii). However, in this case, far from curbing Defendants' campaign of harassment and retaliation, Defendants' attorneys have instead facilitated and exacerbated it.

The Fox Defendants' Rule 11 Motion was signed by Kathleen McKenna, Esq., a partner at Proskauer Rose, LLP ("Proskauer"). During the parties' August 28, 2020 status conference, Ms. McKenna stated – correctly – that "Rule 11, we know, [ ], is a very serious motion to make – very serious." Ex. A, 11:17-18.[1] Indeed, "[c]ourts have cautioned litigants that Rule 11

---

[1]      "Ex. __" refer to the Exhibits to the October 23, 2020 Declaration of Michael J. Willemin ("Willemin Decl.") filed in opposition to the Rule 11 motion.

sanctions are reserved for extraordinary circumstances." *Park v. Seoul Broad. Sys. Co.*, No. 05 Civ. 8956 (BSJ)(DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008).

As the Rule 11 Motion makes clear, however, this case does not even come close to an "extraordinary circumstance" that would warrant sanctions. Rather, when stripped of conclusory, speculative and *ad hominem* attacks against Wigdor, the sole support for the Rule 11 Motion is: (i) a dispute over whether this Court has jurisdiction over the claims asserted by Cathy Areu in the original Complaint; and (ii) the Fox Defendants' disagreement with the merits of Ms. Areu's claims that would not even pass the smell test on a motion for summary judgment, much less a motion to dismiss and much, much less a motion for sanctions. As a matter of black-letter law, these are not the sorts of disputes that should ever be the subject of a motion for sanctions. Proskauer knows this. Ms. McKenna knows this. Thus, we submit that the filing of the Rule 11 Motion, particularly in light of the surrounding context and conduct of defense counsel in this case, violates New York Rules of Professional Conduct 3.2 and 3.3(f)(ii). The Rule 11 Motion was filed to harass and retaliate against Ms. Areu and her counsel and, to put it bluntly, is discourteous and unprofessional. It is also meritless.

***First***, as Proskauer knows, Wigdor cannot be sanctioned under Rule 11 in this case as a matter of law. Rule 11 requires that before a party or an attorney can be sanctioned, it *must* be afforded the due process of a 21-day period to cure any purported deficiencies in the original Complaint. *See* FRCP 11(c)(2); *see also Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 159 (2d Cir. 2010) ("Rule 11(c)(2) permits sanctions to be imposed on a party who has violated Rule 11(b) only after that party is provided with notice of the pleading defect and afforded an opportunity to correct or withdraw the defective filing."). Wigdor was never provided with an opportunity to cure any alleged deficiencies because Ms. Areu unilaterally (not

at the direction or encouragement of Wigdor) decided to retain new counsel prior to the expiration of the 21-day safe harbor period.  As such, Wigdor was not authorized, and could not have ethically acted, to "cure" any supposed deficiencies in the Complaint and, therefore, cannot be sanctioned under Rule 11.

***Second***, the allegations in the original Complaint are not sanctionable under the law. Wigdor had a non-frivolous basis for asserting that this Court had subject matter jurisdiction over Ms. Areu's claims.  Ms. Areu and Plaintiff Jennifer Eckhart were both sexually harassed and, in Ms. Eckhart's case, sexually assaulted and raped, by Mr. Henry.  The allegations in the original Complaint make clear that Fox News was on notice of Mr. Henry's sexually inappropriate behavior before he raped Ms. Eckhart and sexually harassed Ms. Areu and that Fox News' general apathy towards sexual harassment contributed to the harassment suffered by both women.  In short, supplemental jurisdiction existed over Ms. Areu's claims because "the facts underlying [Ms. Eckhart's] federal and [Ms. Areu's] state claims substantially overlapped." *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

More to the point, even if the Court would ultimately have declined to exercise supplemental jurisdiction, the argument in support of supplemental jurisdiction is nowhere near sanctionable, particularly given that when the original Complaint was filed there was no question that: (i) Ms. Areu would eventually be able to assert federal claims under Title VII; and (ii) the Title VII claims would have been properly joined to Ms. Eckhart's under the relevant caselaw.

Wigdor also cannot be sanctioned because Ms. Areu sent friendly communications to her harassers.  It is 2020, not 1920.  The assertion that Ms. Areu must be lying about being sexually harassed because she engaged in friendly communication with her harasser – and, on top of that,

3

that Wigdor was required to infer from that communication that Ms. Areu *must* be lying – is

offensive and disgusting.  Similar arguments have been asserted by sexual harassers in the past

and properly rejected by courts, most recently by the jury that sent Harvey Weinstein to prison.

Notably, it also has been rejected by Judges in this district.  *See*, *e.g.*, *Guzman v. News Corp.*,

No. 09 Civ. 09323 (LGS), 2013 WL 5807058, at *14 (S.D.N.Y. Oct. 28, 2013) ("Civility toward

a harasser does not excuse harassment or signify subjective acceptance, particularly in an

employment setting").  In any event, Defendants' self-serving, pre-discovery denial of some of

Ms. Areu's allegations cannot possibly form the basis for a motion for sanctions.  *See Tobia v.*

*The United Grp. of Cos., Inc.*, No. 15 Civ. 1208 (BKS)(DEP), 2016 WL 5417824, at *27

(N.D.N.Y. Sept. 22, 2016) (holding that a Fed. R. Civ. P. 11 motion cannot act as a vehicle for a

defendant's request that a court resolve contested factual disputes that could only "be fully

evaluated on a motion for summary judgment").

Nor can Wigdor be sanctioned because Fox News claims that Ms. Areu was neither an

employee nor an applicant for employment.  As the original and Amended Complaints plainly

allege, Ms. Areu was one or the other, and therefore entitled to the protection of the relevant anti-

discrimination statutes.  The fact that Fox News would even make this argument is baffling given

that the exact same "applicant" argument was rejected the last time Fox News made it, on a

motion to dismiss before the Honorable William H. Pauly, III.  *See Hughes v. Twenty-First*

*Century Fox, Inc.*, 304 F. Supp. 3d 429, 446 (S.D.N.Y. 2018) ("It is undisputed that Fox [News]

extends contributor contracts to certain candidates.  Despite the opaque process of determining

who becomes a contributor, the 'only way that Fox [News] can winnow people and consider

people . . . is to put them on [a program].' . . . And if Fox [News] routinely puts an individual on

a program – signaling to that individual that he or she is qualified enough to appear with

4

regularity – it cannot then seek an end-run to a failure-to-hire claim simply because no formal application process exists.").

   **Third**, lacking any legitimate basis to seek sanctions, the Fox Defendants and their counsel advance a conspiracy theory, namely, that Wigdor filed Ms. Areu's claims "to create pressure for a settlement in the unrelated case of one of its preexisting clients, [Ms.] Eckhart." Def. Br., at p. 1.  The Fox Defendants also accuse Wigdor of "us[ing]" Ms. Areu's allegations to "create media attention around the false narrative of 'institutional apathy' to sexual misconduct." Def. Br., at p. 10.  Literally no evidence is submitted to substantiate these claims, and it should go without saying that counsel for one party cannot obtain sanctions against counsel for another based on their own, unsupported speculations about bad faith.  *See, e.g., Quadrozzi v. City of New York*, 127 F.R.D. 63, 81 (S.D.N.Y. 1989) (allegations of improper purpose "supported only by hindsight and guesswork, cannot support sanctions under Rule 11"); *Grammer v. Mercedes Benz of Manhattan*, No. 12 Civ. 6005 (LTS)(JCF), 2014 WL 1040991, at *7 (S.D.N.Y. Mar. 13, 2014) (denying sanctions under Rule 11 because "[a]side from speculation and conjecture, [d]efendants offer no evidence to support the existence of any nefarious motive on [plaintiff's] part").

   **Finally**, the fact that the Rule 11 Motion was filed by Proskauer is telling.  Proskauer generally, and its partners Ms. McKenna and Lloyd Chinn (both of whom have appeared in this action) specifically, have a history of filing retaliatory litigation, including preemptive retaliatory actions, retaliatory counterclaims and retaliatory Rule 11 motions.  It is inconceivable that so many of Proskauer's litigation opponents have truly engaged in unlawful or sanctionable conduct.  Proskauer's pattern of conduct further suggests that the Rule 11 Motion was filed for an improper purpose.  Moreover, several of these frivolous acts of retaliatory litigation have been

5

directed at Wigdor and its clients.  We submit that, in this case, Proskauer will continue to engage in this improper conduct until and unless a strong message is sent that harassing and retaliatory litigation tactics will not be tolerated.

## FACTUAL BACKGROUND

### I.   MS. ECKHART'S AND MS. AREU'S RELATED CLAIMS AGAINST ED HENRY AND FOX

On June 25, 2020, Ms. Eckhart, through counsel, put Fox News on notice that she had retained legal counsel in connection with her claims against Mr. Henry and Fox News.  Ex. B, at ¶ 75.  Specifically, Wigdor described to Fox News how Mr. Henry groomed, psychologically manipulated and coerced Ms. Eckhart – who was only 24 years old at the time, just barely half of Mr. Henry's age – into having a sexual relationship with him, and that, when she would not comply voluntarily, he sexually assaulted and violently raped her.  *Id.*, at ¶¶ 20, 31-33, 39 and 58-62.  Of note, while raping Ms. Eckhart, Mr. Henry restrained her in metal handcuffs against her will, and left her injured, bruised and battered with bloody wrists.  *Id.*, at ¶¶ 58-59 and 63.

The Rule 11 Motion claims that Ms. Eckhart demanded $10,000,000 to resolve her claims against Fox News and Mr. Henry.  Def. Br., at p. 8.  Although $10,000,000 would have been entirely appropriate given what she experienced – it is doubtful that anyone would subject themselves to a violent rape and sexual assault for any amount of money – the claim that she demanded $10,000,000 is misleading.  Ms. Eckhart actually demanded $7,500,000 to resolve her claims.  Willemin Decl., at ¶ 2.  Ms. Eckhart's settlement proposal also included an "additional $2,500,000 to be donated to a to-be-named support group / charity for victims of sexual assault." *Id.*  If the Fox Defendants and their counsel were going to include settlement discussions in Court filings – which is completely inappropriate – the least they could have done is be truthful and accurate in their representations.

6

Fox News, as is its right, declined to respond to Ms. Eckhart's settlement proposal. Then, on July 1, 2020, Fox News leaked to the press that it had terminated Mr. Henry. Ex. B, at ¶ 76. In callous disregard for Ms. Eckhart's status as a victim of sexual violence, Fox News did not even notify Ms. Eckhart of the fact that it would be terminating Mr. Henry. *Id.*, at ¶ 81. Thus, she was left to learn of this decision from the media and Twitter. *Id.*, at ¶ 81. Fox News also sent an internal memo to thousands of Fox News employees about the decision without consulting with or notifying Ms. Eckhart and downplayed Mr. Henry's actions by describing them generically as "sexual misconduct." *Id.*, at ¶ 76. This only served to greatly increase the trauma that Ms. Eckhart has experienced and continues to experience. *Id.*, at ¶ 82.

Moreover, far from having "done the right thing" by terminating Mr. Henry, Fox News' decision was simply a public relations stunt in an effort to "get out ahead" of this lawsuit. *Id.*, at ¶¶ 76-77. Indeed, Fox News knew that Mr. Henry had engaged in sexual misconduct as far back as early 2017. *Id.*, at ¶78. At that time, when Fox News was conducting a company-wide investigation into issues of sexual harassment, multiple women came forward to complain that Mr. Henry had engaged in sexually inappropriate conduct towards them. *Id.*, at ¶ 78. Upon information and belief, this was known to Fox News' Executive Vice President of Human Resources, Kevin Lord, as well as Fox News President and Executive Editor, Jay Wallace, and Fox Business Network President, Lauren Petterson. *Id.*, at ¶ 78.

To make matters worse, these concerns were raised ***after*** Mr. Henry has already been suspended for four months in 2016 for having an affair with a Las Vegas stripper. *Id*., at ¶ 42. Fox failed to take any meaningful disciplinary action or terminate Mr. Henry. Instead, as reported by NPR:

> After the scandal in 2016, [Mr.] Henry revived his career. He became the substitute host of *Fox & Friends Weekend* and a chief

national correspondent.  In December, he became the co-host of the morning show *America's Newsroom*.  That revival was conditioned on Henry's completion of a sexual addiction rehabilitation program according to several former colleagues.

His career resurgence became a source of consternation for some co-workers.  Several former colleagues tell NPR that over the years, [Mr.] Henry proved aggressively flirtatious with younger, female Fox staffers.  He sometimes sent graphic notes and even graphic images to them, according to these colleagues.

***In 2017, a written complaint was filed to senior Fox executives warning against giving Henry greater profile on the air***, including as a substitute host and anchor, according to a former colleague with knowledge of those events.

***The complaint said the prospect of Henry's greater prominence on Fox was crushing for female colleagues after the network had promised sweeping changes following Ailes' ouster.***  Among those with whom the complaint was shared: Jay Wallace, Fox's chief news executive, and Kevin Lord, the chief human relations executive who was brought in with the mandate to help transform the culture.

*See* https://www.npr.org/2020/07/01/885956385/fox-news-host-newly-fired-for-sexual-misconduct-had-inspired-earlier-warning (last accessed October 22, 2020) (emphasis added).

Armed with this information and these complaints, Fox News did nothing to curtail Mr. Henry's career and, as a result, he was free to continue to sexually harass and eventually rape Ms. Eckhart, and later sexually harass Ms. Areu.  Ex. B, at ¶¶ 2, 42 and 78-79; Ex. C, at ¶¶ 168, 170 and 176.

   To that end, immediately after Fox News leaked its decision to terminate Mr. Henry, Ms. Areu sent an email to Amy Sohnen, Senior Vice President of Talent Development at Fox News. *See* Dkt. No. 68, Ex. A.  The email stated, *inter alia*, "Is now a good time to show you Ed[ ] [Henry's] pornographic texts to me?  He's not the only one BTW."  *Id.*  As it turned out, from the end of 2019 through the spring of 2020, well after Fox News was on notice of Mr. Henry's

proclivity for sexually inappropriate conduct, Mr. Henry had in fact sent Ms. Areu a slew of pornographic and sexually inappropriate texts.  Ex. C, at ¶¶ 168 and 170.  One of the photographs – a "closeup" photograph of a woman's vagina being "clamped" closed by four clothespins – was particularly pertinent to Ms. Eckhart's claims of sexual violence.  *Id*., at ¶ 170. Ms. Areu also alleged that she was sexually harassed by other employees of Fox News.  *Id.*, *passim*.

## II.   THE ORIGINAL COMPLAINT IS FILED AND PROSKAUER SERVES A RULE 11 MOTION

Ms. Areu retained the Firm to represent her, and, as is our practice, we contacted Defendants to determine whether they were interested in a pre-litigation resolution *via* mediation.  Willemin Decl., at ¶ 3.  To be clear, at no time did Ms. Areu make any monetary demand on her own behalf or Ms. Eckhart's.  *Id.*

The Complaint was filed on July 20, 2020.  Dkt. No. 1.  Wigdor did not file Ms. Areu's claims with Ms. Eckhart's in furtherance of some convoluted conspiracy theory.  Rather, Ms. Areu's claims were filed with Ms. Eckhart's because Wigdor believed (and still believes) that the Court could have exercised supplemental jurisdiction over Ms. Areu's claims given the substantial overlap between and interrelatedness of Ms. Eckhart's claims and Ms. Areu's. Willemin Decl., at ¶ 4.  Both Ms. Areu and Ms. Eckhart allege that: (i) they were sexually harassed and/or assaulted by Mr. Henry; and (ii) Fox News' apathy towards sexual harassment generally, and Mr. Henry's reported misconduct in particular, gave him a platform from which he could engage in such conduct.  *See infra*, at pp. 19-20.

On August 7, 2020, Proskauer served on Wigdor a safe harbor letter attaching a draft memorandum of law in support of a Rule 11 motion.  Ex. D; Ex. E.  The memorandum cited various documents and evidence that Proskauer refused to provide to Wigdor.  Willemin Decl.,

at ¶ 5.  Nevertheless, it was clear from the face of the motion that it was entirely without merit. Indeed, the motion asserted a claim for sanctions based on: (i) a dispute over whether this Court has jurisdiction over the claims asserted by Ms. Areu in the original Complaint; and (ii) disputes regarding the merits (specifically, whether Ms. Areu is lying about being sexually harassed and whether she was an applicant or employee of Fox News under the relevant law).  Ex. E.

Wigdor was working to draft an amended complaint in response to the potential Rule 11 motion.  Willemin Decl., at ¶ 6.  However, on August 22, 2020, the Firm was notified by email by James A. Vagnini, Esq., of the law firm Valli, Kane & Vagnini LLP ("VKV") that VKV had been retained by Ms. Areu to take over the litigation of this matter.  *Id.*  The email further stated, "As confirmed by your filings last night, Ms. Areu advised us that Defendants intend to file a Rule 11 motion and you are preparing an amended complaint in response.  She has asked that any and all work relating to her claims be handled by us going forward, including the amendment of the complaint.  Please forward us all correspondence relating to Defendants' intended Rule 11 motion."  Ex. F.  Ms. Areu's request for substitution of counsel was granted. Dkt. No. 36.  On September 11, 2020, Ms. Areu amended her allegations *via* the Amended Complaint.  *See* Dkt. No. 38.  The Rule 11 Motion was filed on September 29, 2020.  Dkt. No. 52.

A status conference was held on October 7, 2020, after which the Court severed Ms. Eckhart's claims from Ms. Areu's with the consent of all parties.  *See* Dkt. No. 75.  The Court had previously determined that the cases would proceed as "related cases" and will be on parallel discovery tracks.  *See* Ex. 92, 10:6-9 (the Court: "I'll let you know that even if I were to sever the cases, I would keep them both as related cases and, to the extent that they move to discovery, would have them on parallel tracks").

Proskauer generally, and its partners Ms. McKenna and Mr. Chinn (both of whom have appeared in this action) specifically, have a history of filing retaliatory litigation, including preemptive retaliatory actions, retaliatory counterclaims and retaliatory Rule 11 motions.[2] Wigdor is very familiar with Proskauer's practice in this regard, as several of these retaliatory actions have been taken against Wigdor and its clients.

## ARGUMENT

## I.   LEGAL STANDARDS

Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, e.g.*, *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008) (observing that

---

[2]     *See, e.g.*, *Bertram v. Proskauer Rose LLP*, No. 17 Civ. 00901 (ABJ) (D.D.C., 2017) (Partner Connie Bertram alleged that she was subjected to gender discrimination and that she was retaliated against by Proskauer after making complaints and retaining counsel, whose defense team was led by Ms. McKenna.  The retaliation included threats of termination.); *Campbell v. Chadbourne & Parke LLP*, No. 16 Civ. 6832 (JPO), 2017 WL 2589389, at *1 (S.D.N.Y. June 14, 2017) (Proskauer client represented by Ms. McKenna asserted a counterclaim for a purported breach of fiduciary duty against a gender discrimination claimant); *Baskett v. Autonomous Research LLP, et al.*, No. 17 Civ. 9237 (VSB), 2018 WL 4757962 (S.D.N.Y. Sep. 28, 2018) (Proskauer client represented by Mr. Chinn filed motion for sanctions against a gender discrimination and Sarbanes-Oxley Act whistleblower employee plaintiff for utilizing company documents in opposition to a pre-discovery motion for summary judgment (the documents demonstrated that the motion and some of the representations underlying it were meritless).  Both motions by the defendant employer were denied.); *Keller v. Loews Corp.*, 69 A.D.3d 451, 451 (1st Dep't 2010) (Proskauer client asserted a counterclaim for a purported breach of fiduciary duty against a religious disability discrimination claimant); *Tapestry, Inc. v. Gibb*, Index No. 653042/2018 (N.Y. Sup. Ct.) (Within three weeks after a multi-year employee of Stuart Weitzman filed a sexual harassment lawsuit, the company, represented by Proskauer, responded by firing him without notice and filing suit against him – for a purported breach of contract – through which it sought to claw back *all* of the compensation it had paid to him as an employee.); *McLaughlin v. Macquarie Capital (USA) Inc.*, No. 17 Civ. 9023 (RA), 2018 WL 3773992 (S.D.N.Y. Aug. 7, 2018) (Proskauer client responded to a discrimination lawsuit by filing a declaratory judgment action against the claimant in AAA (seeking a determination that it had not discriminated against the claimant)); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14 Civ. 60629, 2015 WL 11660246, at *4 (S.D. Fla. June 3, 2015) (Proskauer client commenced litigation against a former employee for purportedly making unauthorized disclosures of confidential information); *U.S. ex rel. Cieszynsky v. Lifewatch Servs., Inc.*, No. 13 Civ. 4052 (SIS), 2016 WL 2771798, at *1 (N.D. Ill. May 13, 2016) (Proskauer client filed a counterclaim against a whistleblower claimant for purportedly misappropriating its confidential information by disclosing it to the government in connection with his whistleblowing activities.); *Miller v. Blattner*, 676 F. Supp. 2d 485, 489 (E.D. La. 2009) ("Proskauer client asserted counterclaims against a claimant who alleged he was not paid a portion of his bonus."); *Robert Reiser & Co. v. Scriven*, 130 F. Supp. 3d 488, 491 (D. Mass. 2015) (Proskauer client filed a preemptive action against an employee who asserted claims for retaliation and violations of wage and hour laws.); *National Academy of Recording Arts & Sciences, Inc. v. Deborah Dugan*; AAA No. 01-20-0000-3932 (Proskauer client filed a statement of claim with the American Arbitration Association against its former president and CEO less than two weeks after she filed her Charge of Discrimination with the EEOC regarding, *inter alia*, sexual harassment, her complaints of the Recording Academy's lack of diversity and her efforts to promote and advance diversity initiatives, unequal and discriminatory pay that was substantially less than her male predecessors, corruption in the Recording Academy's award nomination process and retaliation to which she was subjected for engaging in protected activity.).

courts maintain a high bar for establishing a Rule 11 violation "given judicial concern for encouraging zealous advocacy"); *Park*, 2008 WL 619034, at *1 ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.").  Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous.  *See Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) ("'When divining the point at which an argument turns from merely losing to losing and sanctionable' *courts must 'resolve all doubts in favor of the signer of the pleading.'*") (emphasis added) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

In *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1368-70 (S.D.N.Y. 1988), the court cautioned against using Rule 11 as a tactical device:

> [a]llowing adversaries an unrestricted ability to initiate a process in which competent attorneys must justify, under the threat of sanctions, actions taken in good faith, does not serve the purposes of Rule 11.  The Rule was intended to reduce, rather than contribute to, such abuse of the legal system.  That is why requests for sanctions must be treated seriously and controlled appropriately.  A request for sanctions under Rule 11 is not a tactical device.  Asserting a request for strategic reasons when there is any colorable argument supporting an adversary's position constitutes an improper purpose within the meaning of the Rule.

*Id.*  (quotations and citations omitted).  In its notes regarding the 1993 Amendments to Fed. R. Civ. P. 11, the Advisory Committee likewise cautioned against using motions for sanctions to threaten opposing parties, explaining that:

> [Motions for sanctions under Rule 11] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

In the face of these warnings, and Ms. McKenna's stated understanding that Rule 11 is "very serious," the Fox Defendants filed the Rule 11 Motion solely to intimidate, harass and retaliate against Plaintiffs' and their counsel.  As described *infa*, at pp. 16-26, this frivolous Rule 11 Motion must be denied.

## II.   <u>WIGDOR CANNOT BE SANCTIONED PURSUANT TO RULE 11</u>

As a threshold matter, Wigdor cannot be sanctioned pursuant to Rule 11 because doing so would violate Rule 11's critical and mandatory due process provision.  Specifically, Rule 11 provides alleged offenders with 21 days to "withdraw[ ] or appropriately correct[ ]" the supposedly frivolous pleading at issue.  Fed. R. Civ. P. 11(c)(2).  As such, a party is not even permitted to file a Rule 11 against a party who has not been afforded 21 days to cure a purportedly offensive pleading.  *See*, *e.g.*, *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) ("This section provides filers with a 'safe harbor' from sanctions, in that a Rule 11(c)(2) motion not only must specify the conduct for which sanctions are sought but ***must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document.***") (emphasis added); *Jackson v. Rohm & Haas Co.*, No. 05 Civ. 4988, 2006 WL 680933, at *4 (E.D. Pa. Mar. 9, 2006), *aff'd*, 366 F. App'x 342 (3d Cir. 2010) ("***Once the safe harbor period has expired***, the violation is complete, and sanctions are appropriate.") (emphasis added).

There is no dispute that Wigdor was never provided with the 21-day cure period required under Rule 11.  The Rule 11 Motion was initially served on Wigdor on August 7, 2020.  Thus, the 21-day safe harbor period was set to expire on August 28, 2020.  Ms. Areu, however, disengaged Wigdor and retained new counsel on August 22, 2020.  Through her new counsel, Ms. Areu explicitly told Wigdor that it was no longer authorized to do work on her behalf.  Upon

receipt of this email, Wigdor was ethically prohibited from engaging in any additional work on Ms. Areu's behalf, including, of course, any work to "withdraw[ ] or appropriately correct[ ]" the Complaint. Accordingly, Wigdor never received the due process that is a prerequisite for even the filing of a motion for sanctions, much less the granting of such a motion. For this reason alone, the Rule 11 Motion must be denied as to Wigdor.

The Fox Defendants do not – and could not – argue that Wigdor received the 21-day safe harbor period required by Rule 11. Instead, they contend that "an attorney's violation is complete at the time the frivolous pleading is 'present[ed] to the Court.'" Def. Br., at p. 30. To begin, that is not even what Rule 11 says. Nowhere does Rule 11 say that a "violation" is supposedly "complete" at any particular point in time. In fact, neither the word "violation" nor the word "complete" appear in the provision of Rule 11 cited by the Fox Defendants (Rule 11(b)). Moreover, the case law makes clear that "the violation is complete" only "*[o]nce the safe harbor period has expired*." *Jackson*, 2006 WL 680933. Here, Wigdor did not get the benefit of the safe harbor period and it cannot be said that any purported violation is "complete," much less complete and sanctionable.

The Fox Defendants cite only one decision, *In re Itel Sec. Litig.*, 791 F.2d 672 (9th Cir. 1986), in support of their claim that Wigdor can be sanctioned under Rule 11. However, the citation to *In re Itel* is completely disingenuous because that decision was rendered in 1986, *seven years before the 21-day cure period was added to Rule 11. See* Advisory Committee notes, 1993 Amendments. Moreover, it is clear from the opinion in *In re Itel* that the sanctioned attorney repeatedly engaged in sanctionable conduct throughout the course of an entire litigation and had substantial opportunity to correct his behavior. *In re Itel Sec. Litig.*, 791 F.2d 672. As such, the *In re Itel* decision is completely irrelevant to this motion.

14

Equally misleading is the Fox Defendants' citation to 5A Wright & Miller, Fed. Prac. & Proc. Civ. § 1337.1 (4th ed.) for the proposition that "courts properly have held that an attorney cannot immunize himself from the imposition of sanctions under Rule 11 simply by withdrawing from the case." Def. Br., at p. 30. Incredibly, the Fox Defendants cite to the Wright & Miller treatise, but intentionally fail to identify for the Court the cases upon which the treatise relied in making this statement. The reason they failed to do so is obvious – the case law does not support their frivolous Rule 11 Motion.

The Wright & Miller treatise cites to three cases. One, *St. Amant v. Bernard*, 859 F.2d 379 (5th Cir. 1988), predates the 1993 Amendments that added the safe harbor provision. Moreover, the attorney in *St. Amant* did not seek to withdraw as counsel until four months after the offensive pleading was filed. *Id.*, at 384. The second case, *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005), affirmatively supports Wigdor's position herein. Indeed, the Court in *Holgate* expressly held that it was able to sanction the withdrawing attorney at issue only because he was afforded the 21-day period to cure:

> We hold that Levinson received all the process due to him when Baldwin initially satisfied the safe harbor requirements of Rule 11 . . . ***During the entire safe harbor period in 2002, Levinson was still acting as the Holgates' counsel and therefore had ample ability and opportunity to avoid Rule 11 sanctions by withdrawing or otherwise correcting the offending paper.***

*Id.*, at 678.

The third case cited in the Wright & Miller treatise, *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010), conclusively demonstrates the frivolous nature of the Rule 11 Motion as it expressly rejected the argument made by the Fox Defendants herein:

> While the filing of a meritless claim is normally the purview of Rule 11, Rule 11 cannot be extended to Rosenbaum's conduct without vitiating the intent of Rule 11(c)(2)'s safe harbor

> provision.[ ]  The purpose of Rule 11(c)(2)'s safe harbor provision
> is to allow an attorney who violates Rule 11 to correct the alleged
> violation within twenty-one days without being subject to
> sanctions.  Fed.R.Civ.P. 11 advisory committee note of 1993.  ***This
> provision assumes that the attorney who filed the offensive
> pleading is still in the case.***  When the attorney who violated Rule
> 11 withdraws from the case prior to opposing counsel obtaining
> clear evidence of the violation, ***a party cannot move for sanctions
> under Rule 11 because the offending attorney no longer has the
> authority to correct or withdraw the challenged pleading.***

*Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010); *see also Maale v. Kirchgessner*, No. 08

Civ. 80131, 2011 WL 743040, at *5 (S.D. Fla. Feb. 24, 2011) ("EAPD had already withdrawn

from the case prior to opposing counsel moving for sanctions and, therefore, EAPD 'no longer

ha[d] the authority to correct or withdraw the challenged pleading.'  Accordingly, under the

controlling precedent of *Peer,* EAPD's Objection to the Report must be sustained and the Report

rejected as it relates to Rule 11 sanctions against EAPD.").

Accordingly, the Fox Defendants' Rule 11 Motion must be denied as to Wigdor.

## III.   EVEN ASSUMING, FOR THE SAKE OF ARGUMENT, THAT WIGDOR COULD BE SANCTIONED PURSUANT TO RULE 11, SANCTIONS ARE INAPPROPRIATE IN THIS CASE

### A.   Conspiracy Theories Cannot Form the Basis for Rule 11 Motions

The purported crux of the Fox Defendants' Rule 11 Motion is, at best, a conspiracy

theory that is not based on a shred of evidence and, at worst, an attempt to mislead the Court.

Indeed, to be clear, Ms. Areu never, at any time, conveyed a demand to resolve her claims

against the Fox Defendants.  Willemin Decl., at ¶ 3.  Rather, as is entirely routine, prior to the

filing of this action Wigdor contacted Ms. McKenna, who was already representing Fox News in

relation to Ms. Eckhart's claims, in an attempt to determine whether the Fox Defendants were

interested in trying to resolve Ms. Areu's claims prior to litigation.  When Ms. McKenna

indicated that the Fox Defendants were not interested in resolving Ms. Areu's claims, the Complaint was filed.  No demand was ever conveyed.

Nevertheless, the very first sentence of the Fox Defendants' memorandum of law states that "Plaintiff Cathy Areu's claims rest on a series of fabrications designed to extort a multimillion-dollar settlement out of Fox News."  Def. Br., at p. 1.  Later on, in an effort to lend support to the conspiracy theory that Ms. Areu was engaged in extortion, the Fox Defendants speculate – without any basis whatsoever – that Wigdor filed Ms. Areu's claims in federal court not to resolve Ms. Areu's claims, but rather "to stir up media attention and to create pressure for a settlement in the unrelated case of one of its preexisting clients, Jennifer Eckhart."  Def. Br., at p. 1.  The Fox Defendants also accuse Wigdor of "us[ing]" Ms. Areu's allegations to "create media attention around the false narrative of 'institutional apathy' to sexual misconduct."  Def. Br., at p. 10.

Counsel's own purported view of Wigdor's motives cannot possibly support a Rule 11 motion.  If it could, any attorney could accuse their opposing counsel of acting with malicious motives and secure sanctions.  That is not the law.  Rather, allegations of improper purpose "supported only by hindsight and guesswork, cannot support sanctions under Rule 11." *Quadrozzi*, 127 F.R.D., at 81; *see also Grammer*, 2014 WL 1040991, at *7 (denying sanctions under Rule 11 because "[a]side from speculation and conjecture, [d]efendants offer no evidence to support the existence of any nefarious motive on Grammer's part"); *Microbot Med., Inc. v. All. Inv. Mgmt. Ltd.*, No. 19 Civ. 03782 (GBD)(RWL), 2020 WL 5755061, at *10 (S.D.N.Y. Aug. 18, 2020), *report and recommendation adopted*, No. 19 Civ. 3782 (GBD)(RWL), 2020 WL 5600852 (S.D.N.Y. Sept. 17, 2020) (denying motion for sanctions where the plaintiff "points to no facts" demonstrating an improper purpose.").

In any event, this conspiracy theory makes no sense, and there is literally no support whatsoever for the claim that Ms. Areu's claims were improperly filed in federal court to "stir up media attention" and put pressure on Fox News to resolve Ms. Eckhart's claims. To begin, there is no reason to believe – nor do the Fox Defendants even claim – that the media would have been less interested in writing on Ms. Areu's and Ms. Eckhart's claims if they were brought as two separate actions. In fact, if the goal were to create as much media coverage as possible, the wiser course would have been to file the cases separately and sequentially, rather than at the same time. That would have created two "rounds" of press coverage rather than one.

Moreover, the Fox Defendants do not allege – nor could they – that Wigdor ever made any demand on Ms. Eckhart's behalf after filing the Complaint.[3] If Wigdor filed Ms. Areu's claims in federal court to pressure Fox News into settling Ms. Eckhart's claims, surely Wigdor would have made a demand or attempted to revisit settlement of Ms. Eckhart's claims after the Complaint was filed. That never happened.

The claim that Wigdor somehow improperly filed Ms. Areu's allegations to bring media attention to a "false" narrative of institutional apathy towards sexual harassment is equally preposterous. Ms. Areu's allegations are hardly necessary to bring such media attention to the very real apathy that Fox News has shown towards sexual harassment. This is, remember, Fox News. The entire #MeToo movement started when Gretchen Carlson, and later at least 20 other women, accused Roger Ailes, then-President of Fox News, of sexual misconduct.[4] Shortly

---

[3]      Of course, even if another demand had been made, "[i]t is hardly unusual for a would-be plaintiff to seek to resolve disputes without resorting to legal action; prelitigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do not suffice to show an improper purpose if nonfrivolous litigation is eventually commenced." *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 324 (S.D.N.Y. 2016) (quoting *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995)).

[4]      *See, e.g.*, https://www.huffpost.com/entry/roger-ailes-accusers-list_n_57a9fa19e4b06e52746db865?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAKBoT5EVz5byL5C3PTw_bFuiYFj_tfFu_8-

afterwards, Bill Shine, who Fox News installed as Co-President of the company after Ailes'
departure, left the Company following accusations that he covered up sexual harassment
allegations.[5]  Later, reports were published about the history of sexual harassment of Fox News'
biggest star, Bill O'Reilly, including reports that Fox News offered him a massive contract
notwithstanding its knowledge of his conduct.[6]  Then, Fox News promoted Suzanne Scott, the
Company's current Chief Executive Officer, notwithstanding the fact that a litany of individuals
had alleged that she too covered up claims of sexual harassment.[7]  In the last month alone, two
additional major Fox News stars (one now former, one current) have been accused of sexual
harassment.[8]  Indeed, ***prior*** to the filing of the Complaint, the media had already reported about
the fact that Fox News was aware that Mr. Henry had engaged in sexual misconduct.[9]

        Divorced from Fox News' wild and baseless conspiracy theories, the facts are simple:
Ms. Areu's claims were filed with Ms. Eckhart's because Wigdor believed (and still believes)
that the Court could have exercised supplemental jurisdiction over Ms. Areu's claims given the
substantial overlap between and interrelatedness of Ms. Eckhart's claims and Ms. Areu's.  Both
Ms. Areu and Ms. Eckhart allege that: (i) they were sexually harassed and/or assaulted by Mr.
Henry; and (ii) Fox News' apathy towards sexual harassment generally, and Mr. Henry's
reported misconduct in particular, gave him a platform from which he could engage in such
conduct.  The Fox Defendants can argue that the Court would not have had supplemental

---

CM4sV3saOcGXxlHbzlflEQ9igZfouMZ44JnFFDgtKEfUKTgbPSfqEXo8SXforen7F5Oj0H73PcB7PXT7tU4Ys5O
1gXoSPf-FLQ-0zY0s_f2GqDAWt0tuuCWq-ZtK1ohdwSrZW_-dH.

[5]        *See, e.g.*, https://www.nytimes.com/2018/07/05/us/politics/bill-shine-fox-news.html.
[6]        *See, e.g.*, https://www.nytimes.com/2017/04/01/business/media/bill-oreilly-sexual-harassment-fox-
news.html; https://www.nytimes.com/2017/10/21/business/media/bill-oreilly-sexual-harassment.html.
[7]        *See, e.g.*,https://www.theguardian.com/media/2018/may/17/suzanne-scott-who-is-she-fox-news-ceo-
female-miniskirt-rule
[8]        *See, e.g.*, https://www.cnn.com/2020/10/01/media/kimberly-guilfoyle-fox-allegations/index.html;
https://www.businessinsider.com/fox-news-analyst-andrew-napolitano-accused-of-sexual-assault-2020-9.
[9]        *See* https://www.npr.org/2020/07/01/885956385/fox-news-host-newly-fired-for-sexual-misconduct-had-
inspired-earlier-warning.

jurisdiction over Ms. Areu's claims.  However, the Fox Defendants cannot take the "extraordinary" step of securing sanctions against Wigdor by presenting a convoluted and nonsensical conspiracy theory that has no basis in fact, much less a basis convincing enough to warrant the extraordinary measure of sanctions.

**B.**      **Ms. Areu's Claims Were Properly Joined with Ms. Eckhart's**

Defendants' argument that Ms. Areu could not bring her claims in federal court in conjunction with Ms. Eckhart's finds no support in the law and certainly does not establish that the joint filing was frivolous.  The latter point is important.  It is the Fox Defendants' burden not just to establish the absence of jurisdiction, but rather to establish that the assertion of jurisdiction and joinder was sanctionable.

To begin, Ms. Areu's claims were properly joined with Ms. Eckhart's in the Complaint as both sets of claims arose from a common nucleus of operative facts, involving similar misconduct by the same defendant, Mr. Henry, and the implicit ratification of such conduct by Fox News.  Rule 20 of the Federal Rules of Civil Procedure sets forth the standard of joinder of plaintiffs in an action:

> Persons may join in one action as plaintiffs if:
>
> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

As the Supreme Court has recognized, "the impulse [for joinder] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; ***joinder of claims,***

20

***parties and remedies is strongly encouraged***." *United Mine Workers of America v. Gibbs,* 383

U.S. 715, 724 (1966) (emphasis added).  In order for two plaintiffs to properly join their claims

in the same action, they must show that "(1) the right to relief asserted by each plaintiff must

relate to or arise out of the same transaction or occurrence or series of transactions or

occurrences; and (2) there must be some question of law or fact common to all of the parties

arising in the action." *Fong v. Rego Park Nursing Home*, No. 95 Civ. 4445 (SJ), 1996 WL

468660, at *2 (E.D.N.Y. Aug. 7, 1996).

Here, Ms. Eckhart and Ms. Areu satisfy both showings.  As an initial matter, the claims

of Ms. Eckhart and Ms. Areu largely involve misconduct of a similar type by the same actors,

Defendants Henry and Fox News.  Moreover, Ms. Eckhart's claims are buttressed by proof that

Ms. Eckhart was sexually harassed and assaulted by Mr. Henry and Fox News' responsibility

and liability for this conduct, and *vice versa*.  *See, e.g., Rifkinson v. CBS, Inc.*, No. 94 Civ.7985

(KTD)(JCF), 1997 WL 634514, at *2 (S.D.N.Y. Oct. 14, 1997) (evidence of discriminatory

behavior towards other women relevant to plaintiff's disparate treatment claim);  *Hagan v. City

of New York*, 39 F. Supp. 3d 481, 496 (S.D.N.Y. 2014) (plaintiff could prove individual

discrimination case by showing acts of discrimination against others in protected group).

That Ms. Areu also alleges that others sexually harassed her does not undercut the

argument that the claims are properly joined.  The additional allegations only lend further

support to Ms. Eckhart's claim that Fox News is apathetic towards acts of sexual harassment.

Furthermore, there is no requirement that ***all*** of Ms. Eckhart's and Ms. Areu's claims arise from

the same facts or occurrences.  The court's decision in *Blesedell v. Mobil Oil Co.*, 708 F. Supp.

1408, (S.D.N.Y. 1989) is instructive.  In *Blesedell*, the court explained that Rule 20 "does not

require that ***all*** questions of law and fact raised by the dispute be common.  On the contrary, Rule

20(a) provides for a joinder of parties if there is **any** question of law or fact common to all." *Id.*, at 1422 (emphasis in original). Thus, the court found that the plaintiffs' claims were properly joined, despite differences as to the specifics of their claims, where they were all subject to the same discriminatory policy by the same agent of their employer. The same can be said in this case. *See also Fong*, 1996 WL 468660, at *3 (finding joinder appropriate despite the fact that "plaintiffs held different positions at Rego Park and were terminated at different times and under different circumstances" where they all alleged they were subject to the same type of misconduct); *Barnhart v. Town of Parma*, 252 F.R.D. 156, 161 (W.D.N.Y. 2008) (finding joinder appropriate "considering the overlap in actors (same department, same supervisor, same Town Supervisor), conduct (same-sex harassment and retaliation), time frame and efforts to redress the conduct (complaints to the Town Supervisor)").

For similar reasons, the claim of supplemental jurisdiction was not frivolous. A court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action with ... original jurisdiction that they form part of the same case or controversy" as the federal claims. 28 U.S.C. § 1367(a). Thus, courts routinely exercise such supplemental jurisdiction over claims where they "derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006). In making this determination, the Second Circuit has "traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Id.* (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, as explained above, the facts underlying Ms. Areu's claims substantially overlap with those that underlie Ms. Eckhart's, and both Plaintiffs' claims will necessarily rely on much

of the same evidence.  The claims of both Plaintiffs arise out of the same pattern of ratification of sexual harassment perpetrated by Fox News.  Thus, "to litigate them in two separate actions would be an unwarranted waste of time and judicial resources."  *Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648, 651 (S.D.N.Y. 1994).

To the latter point, the Court has indicated that while the claims have been severed, Ms. Eckhart's and Ms. Areu's lawsuits will be treated as "related."  Rule 13(a)(1) of the Southern District's Local Rules for the Division of Business Among District Judges provides that in determining whether two claims should be treated as related, a judge will consider whether: "(A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses."  Notably, Rule 13(a)(2)(A) states that "[c]ivil cases shall not be deemed related merely because they involve common legal issues or the same parties."  It is inconceivable that the Fox Defendants continue to argue that the assertion of supplemental jurisdiction is sanctionable given that the Court has determined that Ms. Eckhart's and Ms. Areu's cases will be treated as "related."  The implication is that the Fox Defendants and their counsel believe that it is frivolous for the Court to treat the claims as related.

Finally, as a practical matter, the original Complaint alleged that Ms. Areu would be filing a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII. Ex. G, at ¶ 43.  The original Complaint also alleged that Ms. Areu would seek to amend this Complaint to add Title VII claims against Fox News.  *Id.*  The Title VII claim – which was asserted by successor counsel prior to the expiration of the safe harbor period –

unquestionably provides the Court with federal subject matter jurisdiction.  Thus, any purported

jurisdictional issues have been cured.

    **C.**    **The Fox Defendants' Sexist Argument that Ms. Areu Is Lying Because She**
          **<u>Sent Friendly Messages does not Support a Request for Sanctions</u>**

The Fox Defendants further assert that sanctions are warranted because Ms. Areu is

purportedly lying about being sexually harassed and that Wigdor somehow should have known

she was lying.

To begin, the Fox Defendants' Rule 11 Motion on this point is based almost entirely on

the claim that Ms. Areu must be lying because she sent certain texts and emails that are

inconsistent with the claim that she was sexually harassed.  This argument – the "Harvey

Weinstein" defense – is an offensive and sexist argument that will likely repulse a jury and

absolutely cannot support a claim for sanctions.  *Cf*, *Guzman*, 2013 WL 5807058, at *14

("Civility toward a harasser does not excuse harassment or signify subjective acceptance,

particularly in an employment setting").

In any event, while Ms. Areu should never have had to explain herself in the context of

an amended complaint, she has filed an amended complaint and an opposition to the Fox

Defendants' Rule 11 Motion, which are adopted by reference herein, that address and cures (to

the extent necessary) each of the "points" made by defense counsel related to harassment.  *See*

Dkt. No. 77; Dkt. No. 100.

Finally, a defendant's self-serving accusation that a plaintiff is "lying" is insufficient to

support a motion for sanctions, particularly at this stage.  Of course, if the law were otherwise,

Rule 11 motions (and sanctions) would go from being an "extraordinary step" to routine.  This is

particularly the case when Rule 11 motions are made prior to discovery.  The decision in *Luv N'*

*Care, Ltd. et al., v. Shiboleth LLP* is instructive:

> Only after discovery has been completed will the Court properly
> have before it evidence regarding the veracity of Plaintiffs'
> allegations. Accordingly, the prevailing approach of courts faced
> with this situation, where a defendant files a sanctions motion at
> the outset of a case on the ground that the plaintiff's allegations are
> false, is to deny the motion.

*Luv N' Care, Ltd. et al., v. Shiboleth LLP*, No. 16 Civ. 3179 (AJN), 2017 WL 3671039, *13

(S.D.N.Y., Aug. 8, 2017) (quoting *Chambers v. NASCO*, 501 U.S. 32, 56 n.19 (1991) ("[I]t is

anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be

determined at the end of the litigation.")); *see also Sid Bernstein Presents, LLC v. Apple Corps

Ltd.*, No. 16 Civ. 7084 (GBD), 2017 WL 4640149, at *8 (S.D.N.Y. July 26, 2017) (declining to

impose sanctions even though the "Plaintiff ha[d] failed to state a plausible claim"); *Falow v.

Cucci*, No. 00 Civ. 4754 (GBD), 2003 WL 22999458, at *8 (S.D.N.Y. Dec. 19, 2003) (declining

to grant a pre-answer motion for sanctions despite finding that the "plaintiff's claims and his

supporting arguments were not strong ones"); *GTFM Inc. v. Int'l Basic Source*, No. 01 Civ. 6203

(RWS), 2002 WL 42884, at *2 (S.D.N.Y. Jan. 11, 2002) (holding that a "motion for sanctions

under Rule 11 [was] premature" because it could not "be resolved until after jurisdictional

discovery ha[d] been conducted").

Here, the impropriety of the Rule 11 Motion is highlighted by the fact that it relies

heavily on the introduction of extrinsic "evidence" (without providing Ms. Areu the opportunity

to take discovery and adduce actual evidence) in an attempt to convince the Court that Ms. Areu

is lying and that she intentionally omitted material facts from the Complaint. In *Tobia*, 2016 WL

5417824, at *27, as in this case, the defendants sought sanctions "on the grounds that [p]laintiffs

lack[ed] evidentiary support for their claims, [p]laintiffs' claims [were] not warranted by existing

law, and the [c]omplaint was presented for an improper purpose." In support of its motion for

sanctions, the defendant cited to extrinsic evidence that it claimed was dispositive of the plaintiffs' claims. *Id.* The court denied the motion for sanctions, holding that the "impact of the [extrinsic evidence] can only be fully evaluated on a motion for summary judgment." *Id.* (citing *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 420 (S.D.N.Y. 2003) ("[T]o the extent that [defendant] moves for the dismissal of this action as a sanction for various alleged violations of Rule 11, the [c]ourt denies that motion because it is an improper substitute for a motion for summary judgment.")).

### D. Ms. Areu's Claim that She Was an Employee of Fox News or an Applicant for Employment is Not Frivolous

The Fox Defendants claim that Wigdor should be sanctioned because Ms. Areu alleged that she was an employee of Fox News or an applicant for employment. This argument is without merit. Under nearly identical circumstances, Fox News filed a motion to dismiss claims brought by another "contributor," and the motion was denied by the Honorable William H. Pauly, III. *See Hughes*, 304 F. Supp. 3d, at 446 ("It is undisputed that Fox [News] extends contributor contracts to certain candidates. Despite the opaque process of determining who becomes a contributor, the 'only way that Fox [News] can winnow people and consider people . . . is to put them on [a program].' . . . And if Fox [News] routinely puts an individual on a program – signaling to that individual that he or she is qualified enough to appear with regularity – it cannot then seek an end-run to a failure-to-hire claim simply because no formal application process exists.").

In any event, the Amended Complaint, Dkt. No. 77 at ¶¶ 42-58, plainly alleges that Ms. Areu was an employee of Fox News or an applicant for employment, curing any purported pleading deficiencies.

## IV.     <u>THE RULE 11 MOTION WAS FILED FOR AN IMPROPER PURPOSE</u>

Proskauer's history of filing retaliatory litigation – particularly in cases involving Wigdor – cannot and should not be overlooked.  For far too often, Proskauer has engaged in these transparent intimidation tactics, which send a message to victims of sexual harassment (and any counsel that would represent them) that, if they come forward, they will be attacked, not only by their harassers, but also by their harasser's legal counsel.  This will, and likely has, had a chilling effect, forestalling victims of discrimination from seeking redress for their legitimate claims.  Here, Proskauer knew that the Rule 11 Motion was without merit, and it could not possibly have believed that it would be granted.  It filed it anyway to harass Plaintiffs and Wigdor and to send a message to other individuals of the treatment they are likely to receive should they come forward.

The Firm is not seeking reimbursement of our costs and fees in connection with opposing the Rule 11 Motion (although we respectfully submit that it is within the power of the Court to award such relief).  We do, however, request a determination not only denying the Rule 11 Motion, but also making clear that the service and filing of the Rule 11 Motion was an improper abuse of the litigation process on the part of the Fox Defendants and Proskauer.  Otherwise, we fear that the Rule 11 Motion will only be the first of many abusive litigation tactics that we see in this case.

## **CONCLUSION**

For the foregoing reasons the Rule 11 Motion should be denied.

Dated: October 23, 2020
  New York, New York     Respectfully submitted,

               **WIGDOR LLP**

               By: _____
                  Douglas H. Wigdor
                  Michael J. Willemin

               85 Fifth Avenue
               New York, NY 10003
               Telephone: (212) 257-6800
               Facsimile: (212) 257-6845
               dwigdor@wigdorlaw.com
               mwillemin@wigdorlaw.com

               *Counsel for Plaintiff*