UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| JENNIFER ECKHART, | : | |
| | : | |
| Plaintiff, | : | Civil Case No. 1:20-cv-05593-RA |
| | : | |
| v. | : | |
| | : | |
| FOX NEWS NETWORK, LLC, and ED HENRY, | : | |
| in his individual and professional capacities, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S THIRD AMENDED COMPLAINT OF PLAINTIFF JENNIFER ECKHART**

---

November 23, 2020

Anthony J. Dick
J. Benjamin Aguiñaga
Ariel N. Volpe
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel. (202) 879-3939
Fax. (202) 879-1700
E-mail: ajdick@jonesday.com

Kathleen M. McKenna
Lloyd B. Chinn
Keisha-Ann G. Gray
Danielle J. Moss
Yonatan L. Grossman-Boder
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: KMcKenna@proskauer.com

*Attorneys for Defendant Fox News Network, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 2

    A.    Eckhart's Allegations Against Ed Henry .................................................................. 2

    B.    Eckhart's Claims Against Fox News .......................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ............................................................................................................................ 5

I.    Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News ............................... 6

    A.    Fox News Did Not Commit Sex Trafficking ............................................................ 7

    B.    Fox News Had No Reason to Know About Henry's Alleged
           Sex Trafficking ......................................................................................................... 8

    C.    Fox News Did Not "Benefit From" Henry's Alleged Criminal
           Sex Trafficking ....................................................................................................... 11

II.    Eckhart's Harassment Claims Are Time-Barred ............................................................ 12

III.    Eckhart's Title VII Claims Are Barred For Failure to Exhaust
       Administrative Remedies ................................................................................................ 14

IV.    Henry's Alleged Harassment Cannot Be Imputed to Fox News ..................................... 16

V.    Eckhart Fails to State a Retaliation Claim ...................................................................... 19

VI.    Eckhart Fails to State a Claim for Unlawful Dissemination or
       Publication of an Intimate Image .................................................................................... 24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
 2020 WL 5371459 (D. Or. Sept. 8, 2020) ...................................................................9

*Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*,
 2018 WL 2416568 (S.D.N.Y. May 29, 2018) ............................................................14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................................................9, 18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................................................8, 9, 18

*Benzinger v. Lukoil Pan Ams., LLC*,
 447 F. Supp. 3d 99 (S.D.N.Y. 2020).........................................................................21

*Corley v. City of New York*,
 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017)............................................................9

*Davis-Bell v. Columbia Univ.*,
 851 F. Supp. 2d 650 (S.D.N.Y. 2012).......................................................................21

*Doe 4 v. Red Roof Inns, Inc.*,
 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) .............................................................8

*Doe v. City of New York*,
 2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018) ..............................................................9

*Doe v. Guthrie Clinic, Ltd.*,
 2012 WL 531026 (W.D.N.Y. Feb. 17, 2012) ..............................................................9

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)...........................................................16

*Evert v. Wyo. Cnty. Cmty. Health Sys.*,
 2017 WL 1832051 (W.D.N.Y. May 8, 2017).............................................................19

*Fernandez v. Windmill Distrib. Co.*,
 159 F. Supp. 3d 351 (S.D.N.Y. 2016)........................................................................19

*Flaherty v. Metromail Corp.*,
 235 F.3d 133 (2d Cir. 2000)......................................................................................12

*Garcia v. Coll. of Staten Island*,
 2012 WL 3930448 (E.D.N.Y. July 31, 2012)............................................................20

*Gaughan v. Rubenstein*,
 261 F. Supp. 3d 390 (S.D.N.Y. 2017)........................................................................23

*Geiss v. Weinstein Co. Holdings LLC*,
 383 F. Supp. 3d 156 (S.D.N.Y. 2019)..................................................................11, 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gibb v. Tapestry, Inc.*,
  2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) ........................................................15

*Hardy v. Lewis Gale Med. Ctr., LLC*,
  377 F. Supp. 3d 596 (W.D. Va. 2019) ................................................................15

*Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*,
  2012 WL 3808902 (N.D. Ohio Aug. 8, 2012) ....................................................22

*In re Citigroup Erisa Litig.*,
  2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ......................................................9

*J. B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ................................................8, 10

*Martini v. Fed. Nat'l. Mortg. Ass'n*,
  178 F.3d 1336 (D.C. Cir. 1999) ....................................................................15, 16

*McGullam v. Cedar Graphics, Inc.*,
  2008 WL 3887604 (E.D.N.Y. Aug. 20, 2008) ....................................................19

*McGullam v. Cedar Graphics, Inc.*,
  609 F.3d 70 (2d Cir. 2010) ..........................................................................13, 14

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ..................................................................7

*OffWhite Prods., LLC v. Off-White LLC*,
  2020 WL 4895362 (S.D.N.Y. Aug. 20, 2020) ......................................................8

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ................................................................................4

*Ramirez v. Michael Cetta Inc.*,
  2020 WL 5819551 (S.D.N.Y. Sept. 30, 2020) ....................................................22

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ..............................................................................11

*Scott-Robinson v. City of New York*,
  2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) ....................................................19

*Sotomayor v. City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) ................................................................12

*Taylor v. City of New York*,
  207 F. Supp. 3d 293 (S.D.N.Y. 2016) ................................................................13

*Thea v. Kleinhandler*,
  807 F.3d 492 (2d Cir. 2015) ..............................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ........................................................7

*United States* v. *Bowen*,
    527 F.3d 1065 (10th Cir. 2008) ........................................................21

*Varga v. Gen. Elec. Co.*,
    2020 WL 1064809 (N.D.N.Y. Mar. 5, 2020) ..........................................9

*Wilcox v. Cornell Univ.*,
    986 F. Supp. 2d 281 (S.D.N.Y. 2013)...............................................21

*Zakrzewska v. New Sch.*,
    14 N.Y.3d 469 (2010) .................................................................16

**STATUTES**

18 U.S.C. § 1591 .............................................................................3, 6, 7, 8

18 U.S.C. § 1595 ...........................................................................6, 8, 10, 11

42 U.S.C. § 2000e-5..........................................................................12, 14

N.Y.C. Admin. Code § 8-107 ...................................................................16

N.Y.C. Admin. Code § 8-502 ...................................................................12

N.Y. C.P.L.R. § 214 ...............................................................................12

N.Y. Civ. Rights Law § 52-b ...............................................................5, 24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 .............................................................................4, 5, 22

Fed. R. Civ. P. 12 ...............................................................................4, 13

## PRELIMINARY STATEMENT

Plaintiff Jennifer Eckhart's Third Amended Complaint does nothing to cure the deficiencies that required her claims to be dismissed as a matter of law. Fox News cannot be held liable for Ed Henry's alleged misconduct against Eckhart because the company did not engage in any wrongdoing. As soon as the company learned of Eckhart's allegations, it immediately investigated and then terminated Henry within days. Eckhart does not allege any facts showing that Fox News knew about Henry's alleged abuse beforehand, or even that the company could have known. Accordingly, her claims against Fox News must be dismissed.

Eckhart's primary theory, and her only valid hook for federal jurisdiction, is that Fox News violated the federal law against "sex trafficking" by employing Henry. That claim is meritless. To hold the company liable for sex trafficking, Eckhart needs to show that the company was on notice that Henry was engaged in *coercive commercial sex acts*, and that the company itself benefited from those crimes. But she does not allege any facts whatsoever to support that outlandish theory.

Eckhart also asserts harassment claims under Title VII and state and city law, but those claims are time-barred and equally meritless. The statute of limitations under Title VII is 300 days, and under New York state and city law it is three years. But the last acts of unlawful harassment that Eckhart alleges occurred in February 2017, and she did not file her claims until July 2020.

In any event, Eckhart's remaining claims would fail even if they were timely filed. Fox News cannot be held liable for harassment or a hostile work environment because Henry was not Eckhart's supervisor and the company had no reason to know about his alleged misconduct against her. And Eckhart cannot state a claim for "retaliation" because she does not allege that she suffered any adverse action as a penalty for opposing unlawful discrimination. Finally, Eckhart cannot recover against Fox News for court filings made by Henry and his separately-retained counsel after Fox News fired him.

## BACKGROUND

**A.    Eckhart's Allegations Against Ed Henry**

Eckhart worked for Fox News in its New York City offices beginning in January 2013. Dkt. 113 ¶¶ 21, 23. She alleges that she was unhappy with her job because she was required to "perform a variety of humiliating tasks" and was "belittled and mistreated" by the female host of the show that she worked for on the Fox Business Network. *Id*. ¶¶ 25–27.

On June 12, 2020, Fox News gave Eckhart two weeks' notice that her job would be terminated. *Id*. ¶ 94. Thirteen days later, she told the company for the first time that she had been sexually harassed and abused years earlier by Ed Henry, who was then a Fox News correspondent based in Washington, DC. *Id*. ¶¶ 182–87. Eckhart did not work with Henry (he worked on a different show, on a different network, in a different city). *Id.* ¶¶ 36–37. According to Eckhart's allegations, she had three clandestine sexual encounters with Henry beginning in 2014, which culminated in a violent rape in his hotel room in early 2017. *Id.* ¶¶ 183–86, 36–75. In response to her allegations, Fox News immediately retained an outside law firm to conduct an independent investigation. *Id*. ¶ 188. Less than a week later, after receiving the preliminary results of the investigation, Fox News terminated Henry's employment. *Id*.

After the alleged rape in February 2017, Eckhart does not allege that Henry committed any other sexual misconduct against her. A year and a half later, after he saw her in the New York office in October 2018, he e-mailed her to ask, "Why'd you turn away today?" *Id*. ¶ 85. On another occasion, he sent her a message saying, "YO!" *Id*. ¶ 86. And another time, he texted her "an image of a football player doing 'the Heisman pose.'" *Id*. ¶ 87.

Based on these allegations, Eckhart filed suit against Henry and Fox News in July 2020. She also filed a charge with the EEOC, *id*. ¶ 16, which issued a right-to-sue letter on September 15. *Id.* Eckhart amended her complaint to add claims under Title VII. *Id.* ¶¶ 226–36.

## B.   Eckhart's Claims Against Fox News

Eckhart asserts three types of claims against Fox News. *First*, she claims that Fox News is liable for "sex-trafficking" under 18 U.S.C. § 1591(a). She contends that Henry committed a federal sex-trafficking offense by "entic[ing] [her] to his hotel room" and "engag[ing] in sexual acts with [her] in his hotel room without her consent." Dkt. 113 ¶¶ 214–16. She does not allege that Fox News knew about this crime, or knew that Henry had ever engaged in any type of coercive sex act. But she claims that Fox News is liable because it benefited from participating in a "venture" with Henry by employing him. *Id*. ¶ 218. According to the complaint, "Fox News benefited from its involvement in the venture because it allowed Mr. Henry to continue to appear on Fox News," which "monetarily benefited Fox News as the network continued to make money." *Id*. ¶ 223.

*Second*, Eckhart asserts identical claims of harassment and hostile work environment under Title VII, as well as the New York State Human Rights Law (NYSHRL) and the New York City Human Rights Law (NYCHRL). Based on Henry's alleged conduct, she alleges that Fox News "subject[ed] [her] to disparate treatment based upon [her] gender, including . . . subjecting [her] to sexual assault and/or harassment, rape and a hostile work environment." *Id*. ¶¶ 238, 253.

*Third*, Eckhart asserts claims of retaliation under Title VII, the NYSHRL, and the NYCHRL. She does not allege that she ever complained about sexual misconduct in the workplace until after Fox News fired her in June 2020. *Id*. ¶¶ 90–91. Instead, she claims that the company fired her because she complained about a general "toxic work environment" in February 2020,

although she concedes that she "did not explicitly mention sexual harassment or misconduct" at that time. *Id*. ¶¶ 90–94. She also claims that, after she was fired and made her allegations against Henry, the company "retaliat[ed]" by terminating Henry and announcing it without telling her first, so that "she was left to learn of this decision from the media, Twitter and former work colleagues." *Id*. ¶¶ 190–91.

Eckhart also claims the company "intended to subject Ms. Eckhart to retaliation" by its "choice of counsel," and by "steer[ing]" Henry to hire an attorney and "worked" with her to "prepare harassing and retaliatory litigation." *Id.* ¶¶ 209–10. Eckhart then alleges the company engaged in two apparent retaliatory litigation tactics: (1) serving and filing a Rule 11 motion that was "aimed at Ms. [Catherine] Areu and Wigdor LLP," *id.* ¶¶ 193–96; and (2) somehow "ratif[ying]" Henry's counsel's independent decision to file a motion to dismiss that included intimate photographs that Eckhart allegedly sent to him, *id.* ¶¶ 197, 206, 209.

*Finally*, Eckhart asserts a state-law claim against Fox News for the unlawful publication or dissemination of intimate images. This claim is again based on Henry's separate motion to dismiss, in which he reproduced various "sensitive photographs" that Eckhart allegedly sent to him. *Id.* ¶¶ 206, 273–76.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must assume the truth of Eckhart's factual allegations, but not her legal conclusions. To state a valid claim, she cannot rely on mere conclusory assertions, but instead must allege "concrete" facts that make her claims "plausible." *See PBGC v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013).

## ARGUMENT

All of Eckhart's claims against Fox News fail as a matter of law. *First*, her "sex trafficking" claim borders on frivolous. Even assuming that Henry committed a federal sex-trafficking crime by coercing her into a "commercial sex act," she does not allege any facts to show that Fox News "knowingly" participated in the crime. Nor does she allege facts to show that the company "should have known" that Henry would coerce her into a commercial sex act. Nor does she plausibly allege that the company derived any benefit from the crime.

*Second*, Eckhart's harassment claims are time-barred. The filing period is 300 days under Title VII, and three years under state law. But the last act of alleged harassment occurred in February 2017, and she did not file her claims until July 2020. That is several months too late.

*Third*, even if Eckhart's harassment claims were timely, Henry's alleged conduct cannot be imputed to Fox News. Henry was not her supervisor, the company did not know about his misconduct against her, and she alleges no facts to suggest that the company *should* have known.

*Fourth*, Eckhart fails to state a retaliation claim because she does not allege that she reported any unlawful discriminatory conduct until *after* she was fired. Although she claims that the company "retaliated" against her by terminating Henry and announcing the decision without telling her first, that benign activity does not rise to the level of unlawful retaliation. Nor can seeking Rule 11 sanctions against a *different* plaintiff be punished as retaliation.

*Finally*, Eckhart fails to state a claim against Fox News for the unlawful publication of intimate images. Fox News had nothing to do with the publication, and the state law does not apply to filings in federal court in any event. N.Y. Civ. Rights Law § 52-b; *see* Dkt. 113 ¶¶ 273–76.

## I.     Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News

Eckhart asserts a claim against Fox News under 18 U.S.C. § 1595(a), which provides a civil cause of action for victims of sex-trafficking. Under federal law, a person is guilty of a sex-trafficking crime if he "entices" another person with knowledge or reckless disregard of the fact that "force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The same statute also makes it a crime to knowingly or recklessly "benefit[] . . . from participation in a venture which has engaged in" sex trafficking. *Id*. § 1591(a)(2). The statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id*. § 1591(e)(4).

When a company does not itself commit criminal sex trafficking, it cannot be held civilly liable unless it "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in" an act of criminal sex trafficking. *Id*. § 1595(a).

Here, Eckhart fails to state a sex-trafficking claim against Fox News for three reasons. First, the complaint does not state a valid claim that Fox News itself committed criminal sex trafficking. Eckhart does not even try to claim that Fox News knowingly "participat[ed]" in a sex-trafficking venture by "knowingly assisting, supporting, or facilitating" Henry's alleged acts of coercing her into a "commercial sex act." *Id*. § 1591(e)(4). Second, the complaint also fails to allege any facts showing that Fox News "knew or should have known" about Henry's alleged sex trafficking. Even taking Eckhart's allegations as true, Fox News had no reason to believe that Henry had ever committed the specific offense of coercing anyone into a commercial sex act. *Id*. § 1595(a). And third, the complaint does not allege that Fox News "benefit[ed] . . . from" the acts of sex trafficking that Henry allegedly committed. *Id*.

### A.      Fox News Did Not Commit Sex Trafficking

As a threshold matter, Fox News itself did not violate the federal criminal law against sex trafficking. A sex-trafficking crime requires knowing "participation" in a sex-trafficking venture. Dkt. 78 ¶¶ 91, 93. And the statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating" an act of direct sex trafficking. 18 U.S.C. § 1591(e)(4). This requires knowledge that specific unlawful means will be employed—i.e., "force, threats of force, fraud, [or] coercion"—to "cause" a victim "to engage in a commercial sex act." *Id*. § 1591(a).

Fox News did not knowingly assist any such crime. There is no allegation that Fox News knew that Henry ever coerced Eckhart (or anyone else) into a commercial sex act. Instead, Eckhart alleges only that Fox News "paid for Mr. Henry's interstate travel and the premises where the sexual assault [against Eckhart] was committed." Dkt. 113 ¶ 221. But merely paying for travel says nothing about how Fox News could have *known about*, let alone knowingly "assisted, supported, or facilitated," Henry's alleged offense against Eckhart. Indeed, this Court rejected exactly this type of claim in *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). In that case, Robert Weinstein was sued for sex-trafficking because he paid for his brother Harvey's travel to Cannes, where Harvey engaged in sex trafficking. The court rejected the claim as a matter of law. Paying for Harvey's travel was not enough to make Robert liable, as there were no "specific factual allegations that plausibly allege[d] Robert knew of, or participated in, Harvey's alleged violation of Section 1591 in Cannes." *Id.* So too here: there is no allegation showing that Fox News knowingly facilitated Henry's alleged crimes against Eckhart in violation of § 1591(a)(1). That is dispositive. *See also United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (unpub.).

**B.      Fox News Had No Reason to Know About Henry's Alleged Sex Trafficking**

When a company does not itself commit sex trafficking, it cannot be held liable unless it "knew or should have known" that it was participating in a "venture" that "has engaged in" sex trafficking. 18 U.S.C. § 1595(a). As relevant here, this requires that the company knew or should have known that the venture used "force, fraud, [or] coercion" to compel another person into a "commercial sex act." *Id*. § 1591(a). Merely showing that the company "should have been aware of some nefarious conduct" is not enough, because that does not show that the company should have known specifically "that *human trafficking* was occurring." *J. B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *10–11 (N.D. Cal. Aug. 20, 2020) (emphasis added). Indeed, even knowledge about "prostitution" does not always establish scienter regarding a federal sex-trafficking offense, because prostitution does not necessarily involve the use of *coercion* to force people into commercial sex. *Doe 4 v. Red Roof Inns, Inc*., 2020 WL 1872336, at *3 (N.D. Ga. Apr. 13, 2020).

To survive a motion to dismiss, a plaintiff must allege "concrete facts" showing that a reasonable defendant would have been aware of criminal sex trafficking. *Cf. OffWhite Prods., LLC v. Off-White LLC*, 2020 WL 4895362, at *4 (S.D.N.Y. Aug. 20, 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). This is a heavy burden. In one case, for example, the victim did not adequately allege that a hotel should have known of her trafficking even though she was raped multiple times at the hotel, including once after a middle-aged man took her to his room "in plain sight of motel staff." *J. B.*, 2020 WL 4901196, at *2, *10. Because the hotel did not see any indications of violence or other telltale signs of criminal trafficking, there was "an insufficient basis to infer constructive knowledge of a trafficking venture." *Id*. at *10. Likewise, in another case, the victim did not sufficiently allege that a hotel should have known about her trafficking even though she "repeatedly" stayed in hotel rooms; she "was arrested at Defendants' hotels'

properties"; she wore "'booty shorts' to open the front lobby door for frequent male guests"; and she left "used condoms, bottles of lubricant, and boxes of condoms" in her rooms. *A.B. v. Hilton Worldwide Holdings Inc*., 2020 WL 5371459, at *11 (D. Or. Sept. 8, 2020). Again, these allegations were not enough because they did not put the hotel on notice that the victim engaged in "commercial sex *as a result of fraud, force, or coercion*." *Id*. (emphasis added).

In a variety of other contexts, courts have likewise recognized that it is not enough for a plaintiff to make the conclusory assertion that the defendant "should have known" about specified misconduct. *See, e.g.*, *Varga v. Gen. Elec. Co*., 2020 WL 1064809, at *3 (N.D.N.Y. Mar. 5, 2020) (plaintiff "fail[ed] to satisfy the *Twombly* and *Iqbal* pleading standards," since "[t]he court cannot plausibly infer that defendants knew or should have known" about financial risk); *Doe v. City of New York*, 2018 WL 3824133, at *7 (E.D.N.Y. Aug. 9, 2018) (dismissing claim because plaintiff "has not pleaded factual allegations that make it plausible that the [defendant] knew or should have known of [perpetrators'] propensity to commit sexual assaults"); *Corley v. City of New York*, 2017 WL 4357662, at *11 (S.D.N.Y. Sept. 28, 2017) ("pleading that officials were apprehensive falls short of pleading that a reasonable officer should have known of a serious harm"); *Doe v. Guthrie Clinic, Ltd*., 2012 WL 531026, at *7 (W.D.N.Y. Feb. 17, 2012) (dismissing for lack of any "credible, nonconclusory allegation that any defendant knew or should have known that [a nurse] would breach her duty of confidentiality"); *In re Citigroup Erisa Litig*., 2009 WL 2762708, at *25 (S.D.N.Y. Aug. 31, 2009) (dismissing ERISA claim because "allegation that the [defendant] 'knew or should have known' of Citigroup's 'massive subprime exposure' is no more than a "naked assertion[ ]" devoid of "further factual enhancement."'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly*, 550 U.S. at 557)).

Here, Eckhart does not allege any facts showing that Fox News knew or should have known that Henry ever had coerced, or ever would coerce, anyone into a commercial sex act. By her own account, Eckhart did not report Henry's alleged misconduct for over three years, Dkt. 113 ¶¶ 64, 90, 182, and did not report the alleged rape until after she was terminated, *id.* ¶ 185. And with respect to the final incident (the alleged rape in the hotel room in February 2017), Eckhart admits she "never could have imagined" that it would happen. *Id.* ¶ 67. She does not allege any facts to explain how *Fox News* could have expected that it would happen. To the contrary, there was no way the company reasonably could have known that Henry had ever engaged in any coercive sex act until *after* Eckhart reported her allegations over three years later. And once she did, she admits that the company immediately investigated and terminated Henry within days. *Id.* ¶¶ 182, 188.

Before her alleged assault, Eckhart does not allege that Henry had ever coerced anyone into a sex act—much less a *commercial* sex act—or that Fox News had reason to be aware of it. The closest the complaint comes is the bare assertion that Fox News supposedly "knew" that some unidentified women had accused Henry of "sexually inappropriate conduct" and "sexual misconduct." *Id.* ¶¶ 111, 219. Even accepting that baseless and conclusory assertion as true (*but see infra* pp. 17–18), it does not show that Fox News should have known that Henry would *commit a federal sex-trafficking offense*. Sending unwelcome sexual messages and making unwanted sexual advances are a far cry from *coercing victims into commercial sex acts*, as § 1595(a) requires. *See J. B.*, 2020 WL 4901196, at *10 ("[W]hile Plaintiff's allegations suggest that [defendant] quite possibly should have been aware of some nefarious conduct, they do not suggest that [it] should have known that the venture constituted sex trafficking that violated the TVPRA."). Thus, in short, Eckhart's claim fails because the complaint fails to allege any facts showing that Fox News "knew or should have known" that Henry was engaged in criminal sex-trafficking activity.

### C.       Fox News Did Not "Benefit From" Henry's Alleged Criminal Sex Trafficking

Even if it were assumed that Fox News somehow knew or should have known that Henry was allegedly engaged in criminal sex trafficking, Eckhart's claim still fails because she fails to allege any facts showing that Fox News "benefit[ed] . . . from" participating in the trafficking. 18 U.S.C. § 1595(a). As this Court has recognized, a company cannot be held liable unless there is a causal connection between sex trafficking and some resulting "benefit[]" to the company. The "benefit" must arise from the defendant's "participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). For example, if a defendant knowingly facilitates trafficking in exchange for money, there is a causal link because the defendant earns money as a result of the trafficking it facilitates. *Cf. Ricchio v. McLean*, 853 F.3d 553, 555–56 (1st Cir. 2017). The defendant can thus be held liable due to the "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss*, 383 F. Supp. 3d at 169.

By contrast, a company cannot be held liable merely for employing a person who engages in sex trafficking, if the company obtains *no benefit whatsoever* from the unlawful trafficking activity. In *Geiss*, for example, the court considered a claim against the Weinstein Company, which allegedly benefited from participating in a venture with Harvey Weinstein by employing him as a filmmaker while he was engaged in sex trafficking. The court rejected the claim. Although Weinstein's "movies and influence generated revenue" for the company, and the company *de facto* facilitated his trafficking activity, the company did not benefit in any way "from" his trafficking. *Id*. The "controlling question" was whether Weinstein benefited the company "*because of* [the company's] facilitation of [his] sexual misconduct." *Id*. The answer was no. The fact that he was

11

engaged in unlawful sex trafficking did nothing to help the company. To the contrary, he benefited the company "*in spite of* his alleged predations," not "*because of*" them. *Id.* at 169–70.

The same is true here. Based on the allegations in the complaint, Fox News simply employed Ed Henry and benefited from his services as a reporter and television co-anchor. The company did not benefit in any way from any of his alleged sex-trafficking acts, which he allegedly committed without the company's knowledge—and to the company's obvious *detriment*. Eckhart alleges only that Fox News "received value from Mr. Henry's services and benefited financially from his continued employment." Dkt. 113 ¶ 218. And she claims that Fox News benefited "because it allowed Mr. Henry to continue to appear on Fox News and anchor some of its most highly-rated programs, which monetarily benefited Fox News as the network continued to make money." *Id.* ¶ 223. But this does not establish the "controlling" point that Henry benefited Fox News *because of* his alleged sex trafficking. *Geiss*, 383 F. Supp. 3d at 169. To the contrary, the benefits that Henry provided were unrelated to his "alleged predations." *Id.* at 169–70. Thus, even accepting the complaint's allegations as true, Fox News did not "benefit[] . . . from" the alleged sex trafficking, and cannot be liable for that reason.

## II.    Eckhart's Harassment Claims Are Time-Barred

Eckhart's harassment claims against Fox News are time-barred because she did not file them until more than three years after Henry allegedly harassed her. Under Title VII, "a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)). And "[i]n general, the statute of limitations under the NYSHRL and the NYCHRL is three years." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248−49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). As the

Second Circuit has recognized, "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015). And here, the complaint makes clear that Eckhart filed her claims too late.

As noted above, the harassing conduct that Eckhart alleges consists of three sexual encounters, along with sexually explicit messages sent around the same time. The last encounter (the rape allegedly committed by Henry in his hotel room) occurred in February 2017 followed by an exchange of text messages on "Valentine's Day." Dkt. 113 ¶¶ 78–80. But Eckhart did not file suit until July 20, 2020. *See* Dkt. 1. It is thus clear that her claims are time-barred. She filed more than two years after the expiration of the 300-day filing period under Title VII. And she filed several months after the expiration of the three-year period under the NYCHRL and the NYSHRL.

The continuing-violation doctrine cannot revive Eckhart's time-barred claims because she does not allege any continuous course of related conduct within the limitations period. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010); *see also Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 n.10 (S.D.N.Y. 2016) (Abrams, J.) ("For hostile work environment claims, courts apply the same standard for a continuing violation under Title VII, § 1981, NYSHRL, and NYCHRL."). By her own account, Eckhart did not have any interaction with Henry for more than a year and a half after the alleged rape in early 2017. And even then, Henry's alleged comments were entirely non-sexual in nature. After Eckhart saw him in the office on "October 5, 2018," he e-mailed her asking, "Why'd you turn away today?" Dkt. 113 ¶ 85. He then sent her a message three weeks later stating "YO!" *Id*. ¶ 86. And he later sent her another message showing a football player doing "the Heisman pose." *Id*. ¶ 87.

Not only were these comments non-sexual in nature, but they were far too remote in time to be part of a single continuing course of conduct stretching back to the alleged sexual encounters

in 2014, 2015, and 2017. *See McGullam*, 609 F.3d at 78 (continuing-violation doctrine did not apply where the only comment within the limitations period took place almost a year later and was "not lewd," though it may have been offensive); *Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, 2018 WL 2416568, at *14 (S.D.N.Y. May 29, 2018) (no continuing violation because "[t]he pre-limitations harassing behavior was largely sexual in nature," whereas the defendant's comments during the limitations period were not).

### III.   Eckhart's Title VII Claims Are Barred For Failure to Exhaust Administrative Remedies

Eckhart's Title VII claim is also barred because she failed to exhaust the statutory pre-filing requirements. A plaintiff may not sue in court unless she files a charge with the EEOC and the agency either investigates and dismisses the charge, or 180 days elapse. Neither happened here. Eckhart did not file her EEOC charge until July or August 2019, which means that the 180-day period did not end until January or February 2020. And because the EEOC admittedly did not investigate her charge, the agency had no authority to issue a valid right-to-sue letter.

Under Title VII, a private plaintiff may not file suit in court unless she first files a charge with the EEOC to give the agency a chance to investigate and decide whether to bring its own enforcement proceeding. Accordingly, a "civil action may be brought" by the plaintiff only if the agency has "dismissed" the charge or has not filed a civil action "within one hundred and eighty days." 42 U.S.C. § 2000e-5(f)(1). The statute does not allow the agency to dismiss a charge without investigating. To the contrary, the agency has a mandatory duty to investigate first: After a charge is filed, the agency "*shall* make an investigation thereof." *Id*. § 2000e-5(b) (emphasis added). And only then, "[i]f the Commission determines *after such investigation* that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge." *Id*. (emphasis added). The statutory scheme thus gives effect to Congress's intention that the EEOC should have primary

responsibility for investigating and prosecuting alleged violations of Title VII, and that "recourse to the private lawsuit will be the exception and not the rule." *Martini v. Fed. Nat'l. Mortg. Ass'n*, 178 F.3d 1336, 1346 (D.C. Cir. 1999).

Despite the clear statutory text, the EEOC has purported to "authorize[] itself" to issue early right-to-sue letters *before* the agency has conducted any investigation and *before* the 180-day period expires. *Gibb v. Tapestry, Inc*., 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018). But the "plain language" of Title VII bars this practice. *Id*. at *6. "The EEOC cannot, by its own hand, abrogate its congressional mandate." *Id*. Accordingly, if the 180-day period has not expired and the EEOC has not conducted any investigation, then the issuance of "an early right-to-sue letter presents 'a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC.'" *Id*. at *5 (citation omitted); *see also Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 607–11 (W.D. Va. 2019) (surveying cases and holding that "the EEOC's regulation is invalid and the Title VII claims of those Plaintiffs who received right-to-sue letters from the EEOC in fewer than 180 days must be remanded to the EEOC").

Here, the EEOC did not issue a valid right-to-sue letter because the 180-day period had not yet run and the agency did not conduct any investigation of Eckhart's charges. By Eckhart's own account, she did not decide to pursue her claims until around July 2020. Dkt. 1 ¶ 43. Thus, even assuming she immediately filed her EEOC charges in July or August, the 180-day period would not expire until January or February 2021. Although the EEOC issued an early right-to-sue letter on September 15 (Dkt. 113 ¶ 16), that letter is invalid because the 180-day period had not yet expired and there is no indication that the agency conducted any investigation as required by law. This type of early and perfunctory right-to-sue letter is unlawful and does not satisfy the administrative-exhaustion requirements that Title VII imposes. *See Tapestry*, 2018 WL 6329403

at *6; *Martini*, 178 F.3d at 1346. Eckhart's Title VII claims are thus premature, and they must be dismissed or remanded back to the EEOC so that the agency has an opportunity to investigate for the full statutory period.

## IV.   Henry's Alleged Harassment Cannot Be Imputed to Fox News

Even assuming Eckhart's claims are somehow not time-barred, she fails to state a claim that Fox News can be held liable for any of Henry's alleged harassment. It is well established that an employee's harassing conduct cannot be imputed to an employer under the NYCHRL except in three limited circumstances: (1) "where the offending employee 'exercised managerial or supervisory responsibility'" over the victim; (2) "where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'"; and (3) "where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010) (quoting N.Y.C. Admin. Code § 8-107(13)); *see also Erasmus v. Deutsche Bank Ams. Holding Corp.*, 2015 WL 7736554, at *8 & n.14 (S.D.N.Y. Nov. 30, 2015) (recognizing that the grounds for imputation are even narrower under Title VII and the NYSHRL). Here, Eckhart alleges no facts to fit in these categories.

*First*, Eckhart does not allege that Henry was her manager or supervisor (or that he managed or supervised anyone at Fox News). To the contrary, the Complaint alleges that another individual, Brad Hirst, was Eckhart's "manager." Dkt. 113 ¶ 29. Henry never even worked with Eckhart, much less supervised her, because they were based in different cities and worked on different shows on different networks. He worked in Washington as a "[c]orrespondent" and "co-anchor" on shows that aired on the Fox News Channel. *Id.* ¶¶ 36, 89. And she worked in New York on *Countdown to the Closing Bell*, a show on Fox News Channel's sister network, the "Fox

Business Network." *Id*. ¶¶ 23, 32. Their first contact was through a private message on Twitter, an outside means of communication. *Id*. ¶ 37. Fox News thus cannot be held liable on the theory that Henry exercised supervisory authority over Eckhart.

*Second*, the Complaint also does not allege that Fox News knew of Henry's alleged misconduct against Eckhart until more than three years after it occurred. As noted, the last act of misconduct against Eckhart was in February 2017, and she did not report it to the company until thirteen days after she was informed she would be terminated in June 2020. *Id*. ¶¶ 64–78, 94, 182. Once she reported it, the company immediately investigated and terminated Henry's employment within days. *Id*. ¶¶ 182, 188. Fox News thus cannot be held liable for Henry's alleged misconduct based on the theory that the company knew about it and failed to prevent it.

*Third*, the Complaint does not allege any facts to suggest that Fox News should have known about Henry's alleged harassment. The harassment allegedly occurred in 2014, 2015, and early 2017. *Id.* ¶¶ 36–52, 53–59, 61–75. But the Complaint does not allege any facts showing that Fox News received any allegations of similar misconduct by Henry before that. Instead, the Complaint points out that the company knew in 2016 that Henry had "a 10-month long affair with a Las Vegas stripper." *Id.* ¶ 112. But that affair was not unlawful, nor did it occur in the workplace. Likewise, the Complaint alleges that Fox News knew that Henry was "seeking treatment for sex addiction." *Id*. ¶ 131. But again, that provides no basis to think that he would commit *workplace* misconduct.

The Complaint also alleges that an unidentified person filed "a written complaint to senior Fox [News] executives warning against giving [Mr.] Henry greater profile on the air," as it "was crushing for female colleagues." *Id.* ¶ 113. But that complaint related to the stripper controversy. It said nothing about workplace misconduct. Nor does Eckhart allege otherwise.

The Complaint makes the vague and baseless allegation that, at some unspecified time, "multiple" unidentified "women" supposedly "complain[ed] that Mr. Henry had engaged in sexually inappropriate conduct towards them" during an investigation conducted by an outside law firm that Fox News retained "in mid-2016." *Id*. ¶ 111. But this vague assertion is not only false, it is also inadequate under *Iqbal* and *Twombly*. It offers no supporting facts such as who the women were, the nature of the "sexually inappropriate conduct" they alleged, or even whether the misconduct occurred in the workplace. It also does not allege any specific time for *when* the supposed reports were made to the law firm conducting the investigation. The only time specified is that Fox News *retained the law firm* to begin investigating unrelated allegations "in mid-2016." *Id*. The Complaint makes the conclusory assertion that "these women came forward to complain *before* Ms. Eckhart was raped by Mr. Henry." *Id*. But it provides no facts to support that assertion. And it conspicuously says nothing whatsoever about when the outside law firm supposedly *told Fox News* about the purported allegations.

In the alternative, Eckhart attempts to bolster her case by vaguely alleging it was an "open secret" that "Mr. Henry had engaged in a pattern and practice of sexual misconduct." *Id.* ¶¶ 114–18, 131. Importantly, however, she does not allege any occasion when Fox News was or could have been aware of any alleged misconduct by Henry. Rather, Eckhart recounts a handful of allegations recently made against Henry by various individuals, several of whom never even worked at Fox News. Notably, Eckhart does not allege that any of them reported any alleged misconduct to Fox News, or that Fox News otherwise learned about it. *Id.* ¶¶ 134–81. And Eckhart's references to allegations against *other* Fox News on-air personalities do nothing to advance her claim that the company had reason to know that *Henry* would assault her. *Id.* ¶¶ 95–109.

In any event, none of the allegations of the other incidents involved anything like the severe misconduct alleged here, as would have been required to put the company on notice that Henry might commit *violent assault and rape* as he allegedly did in 2017. The Complaint thus fails to show that Fox News should have known that Henry might commit the type of abuse Eckhart alleges. And the company cannot be held liable for misconduct it had no reason to expect.

## V.    Eckhart Fails to State a Retaliation Claim

Eckhart fails to state a retaliation claim because she does not plausibly allege she was fired for engaging in protected activity. Although she alleges that Henry began harassing her in 2014, she does not allege that she reported his alleged misconduct until 13 days *after* Fox News informed her that it was terminating her employment in June 2020. Dkt. 113 ¶¶ 94, 182. Thus, if anything, it could be inferred that she brought her claims to retaliate for being fired, not the other way around.

Under Title VII, the NYSHRL, and the NYCHRL, a plaintiff cannot bring a retaliation claim unless she suffered an adverse action for engaging in "protected activity." *Scott-Robinson v. City of New York*, 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016). Under all three statutes, protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Id*. (quoting *Fernandez v. Windmill Distrib. Co*., 159 F. Supp. 3d 351, 367 (S.D.N.Y. 2016) (applying standard to NYCHRL and NYSHRL claims)). Thus, "complain[ing] of an employment practice" is not protected unless the plaintiff "reasonably believes [it] violates the law." *Id*.

It is not a protected activity to "complain[] about poor treatment in the workplace that is unrelated to any trait" protected by the anti-discrimination laws. *Evert v. Wyo. Cnty. Cmty. Health Sys*., 2017 WL 1832051, at *6 (W.D.N.Y. May 8, 2017). For example, "generalized complaints of unfair treatment" are not protected. *McGullam v. Cedar Graphics, Inc*., 2008 WL 3887604, at *9 (E.D.N.Y. Aug. 20, 2008), *aff'd*, 609 F.3d 70 (2d Cir. 2010). Nor is it a protected activity to

complain about "rude words" or an "improper tone" in the workplace, because such complaints are not based on any "reasonable inference of unlawful discrimination," and therefore do not lead a "[defendant] to understand that [race or gender were] the nature of" the complaint. *Garcia v. Coll. of Staten Island*, 2012 WL 3930448, at \*7 (E.D.N.Y. July 31, 2012), *report and recommendation adopted*, 2012 WL 3929985 (E.D.N.Y. Sept. 10, 2012).

Eckhart does not allege that she engaged in any protected activity that caused Fox News to fire her. Fox News informed her that it was terminating her employment on June 12, 2020, and she reported her allegations against Henry shortly thereafter on June 25. Dkt. 113 ¶¶ 94, 182. Before then, she does not allege that she ever reported any misconduct that she reasonably believed to be unlawful discrimination.

To be sure, Eckhart does allege that she complained in general terms to her supervisor, Mr. Hirst, and Denise Collins, the Senior Vice President of Human Resources, in February 2020 that she was "experiencing" a "toxic work environment" "at Fox News." *Id.* ¶ 90. But this complaint had nothing to do with unlawful discrimination or harassment, as she concedes that she "did not explicitly mention sexual harassment or misconduct." *Id.* Instead, she complained about being "belittled and mistreated" and subject to "frequent berating" by Ms. Claman, for reasons having nothing to do with sexual harassment. *Id.* ¶¶ 26–28. Indeed, Eckhart alleges that "[o]n numerous occasions," Mr. Hirst "would order the production staff lunch as a way of 'celebrating' Ms. Claman's absence, thereby admitting to the toxic abuse to which Ms. Eckhart and her staff would often be subjected." *Id.* ¶ 29. Accordingly, while the "poor treatment" that Eckhart complained about could be called "rude" and "unfair," it was not plausibly discriminatory, and thus complaining about it does not qualify as a "protected activity." *Garcia*, 2012 WL 3930448, at \*7.

Eckhart makes the conclusory assertion that Collins and Hirst "should have and, upon information and belief, did understand [her] to be 'complaining' about unlawful harassment." Dkt. 113 ¶ 90. But inferences must be based on the facts alleged, and must be "reasonable." *United States* v. *Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008). And here it is not reasonable to infer that anyone would have understood Eckhart's complaints regarding *Ms. Claman*'s supposedly "toxic" but *nonsexual* behavior to say anything about alleged *sexual* harassment by *Henry*.

Eckhart says that during her exit interview she was asked a standard question about whether "she had been sexually harassed and/or assaulted while employed by Fox News," which she claims shows that Fox News "[c]learly . . . understood Ms. Eckhart's February 2020 complaints to encompass [] unlawful [sexual] harassment." Dkt. 113 ¶ 94. But again, that inference is unreasonable. Asking this type of question is a "best practice" followed by many employers, and it does not remotely suggest that Fox News understood Eckhart to have ever complained about harassment.

Accordingly, because Eckhart does not allege that she engaged in protected activity before she was fired, she fails to state a retaliation claim. *See Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 127 (S.D.N.Y. 2020) (dismissing NYSHRL and NYCHRL retaliation claims where plaintiff did not "suggest that the alleged adverse action post-dated, much less was caused by, the vague complaints about discrimination she claims to have made"); *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 287–88 (S.D.N.Y. 2013) ("Because th[e] adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints."); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 685 (S.D.N.Y. 2012) (dismissing NYCHRL and NYSHRL retaliation claims "because the complaint and Defendants' response all occurred *before* Plaintiff first engaged in protected activity").

21

Perhaps recognizing this problem, Eckhart tries to claim that Fox News retaliated against her *after* she reported Henry's alleged harassment on June 25, by which point she had already been fired. She has four basic theories of post-termination retaliation, but none of them holds water.

*First*, she asserts that the company "retaliat[ed]" against her by "terminating Mr. Henry" and sending around an "internal memo" about his termination without "notifying [her]" ahead of time, leaving her "to learn of this decision from the media, Twitter and former work colleagues." Dkt. 113 ¶¶ 190–91. But unlawful retaliation does not occur unless the employer takes some genuine adverse action, which (at the very least under the NYCHRL) must be "reasonably likely to deter a person from engaging in [a protected activity]." *Ramirez v. Michael Cetta Inc.*, 2020 WL 5819551, at *20 (S.D.N.Y. Sept. 30, 2020). And the company's decision to investigate Henry and then terminate him was not "reasonably likely" to deter *Eckhart* from reporting unlawful harassment. Eckhart does not explain how the company's decision to terminate the person she accused of misconduct caused her any harm whatsoever. She does not claim that the announcement of Henry's termination even mentioned her, much less said anything about her that could plausibly be construed as retaliatory. Far from engaging in retaliation, the company acted appropriately in responding to allegations of serious violations of company policy.

*Second*, Eckhart alleges that Fox News "retaliat[ed]" against her by serving and filing a motion for Rule 11 sanctions "aimed at Ms. Areu and Wigdor LLP." Dkt. 113 ¶¶ 193–96. But that sanctions motion had nothing to do with Eckhart. And in any event, a Rule 11 motion is expressly authorized by the Federal Rules and cannot be penalized as "retaliatory." *See* Case No. 20-cv-8678, Dkt. 4 at 22–23; *Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*, 2012 WL 3808902, at *5 (N.D. Ohio Aug. 8, 2012) (dismissing claim of retaliation based on sanctions request because "[w]hat plaintiff complains is retaliation is actually a process the Rules expressly allow"); *see also*

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 421 n.4 (S.D.N.Y. 2017) (filing of motions, including a motion to strike, "as part of . . . defenses in litigation[]," not retaliatory).

*Third*, Eckhart seeks to place blame on Fox News for *Henry's* motion to dismiss, which included "intimate photographs" she allegedly sent to him during their affair. Dkt. 113 ¶¶ 197–98, 206. But the company had nothing to do with that. Eckhart makes the baseless and conclusory allegation that "Fox News was aware of and ratified the retaliatory decision to file [] highly sensitive photographs." *Id.* ¶ 206. But she alleges no facts to substantiate those false assertions. As to "ratification," Eckhart does not allege that Fox News has done or said anything to endorse or affirm Henry's filing. And even if Fox News had been "aware" Henry's planned filing (which it was not), Eckhart does not cite any authority for how that would make the company liable for it. Eckhart separately asserts that Fox News somehow "steered" Henry to his attorney and "worked with [her] to prepare harassing and retaliatory litigation." *Id.* ¶¶ 208–09. But again, this is just a baseless smear. Not only does the Complaint fail to allege any facts to back it up, but it cannot reasonably be inferred given that Fox News *fired* Henry and is not in any way "working with" him.

Finally, Eckhart is wrong to say that her retaliation claim is in any way "supported by [Fox News's] choice of counsel" at Proskauer Rose. *Id.* ¶ 210. Hiring a defense lawyer is not unlawful retaliation. And as explained elsewhere, it is categorically false to claim that Proskauer has any "history of filing retaliatory litigation." *Id*. Eckhart's cited examples do not remotely support that contention. *See* Dkt. 112 at 24–25; Dkt. 78 at 6; *Macquarie Holdings (U.S.A.), Inc. v. McLaughlin*, 17-CV-9023(RA) (S.D.N.Y. Nov. 19, 2020) (confirming arbitration sanctions against former employee where she "and her attorneys made 'false and misleading allegations,' presented frivolous arguments, and spoliated evidence")

**VI.    Eckhart Fails to State a Claim for Unlawful Dissemination or Publication of an Intimate Image**

Eckhart fails to state a claim against Fox News under New York's new prohibition against the dissemination or publication of intimate images. As noted above, Fox News had nothing to do with the filing of the images in Henry's motion to dismiss, nor does Henry allege any facts plausibly suggesting otherwise. And in any event, New York state law does not purport to impose liability on parties for filings made in the course of federal litigation.

As an initial matter, the New York statute at issue provides a cause of action only against the "*individual*" who "disseminated or published" the intimate photograph. N.Y. Civ. Rights Law § 52-b(1) (emphasis). But Eckhart does not allege that Fox News disseminated or published anything. Henry did. Any liability would thus attach solely to Henry, not Fox News.

In any event, New York's prohibition against publishing intimate images does not purport to interfere with filings in federal litigation. Federal courts have a range of sanctions and other tools available to address improper filings on their own docket, and state law cannot intrude on this field. Nor does it. By its own terms, the New York statute does not apply to the "dissemination or publication of an intimate still or video image made during lawful and common practices of law enforcement, *legal proceedings* or medical treatment." *Id.* § 52-b(3)(b) (emphasis added). Eckhart apparently acknowledges that filing such materials in federal litigation is not "uncommon" or "unlawful," as she herself publicly filed intimate text messages and photographs that Henry allegedly sent to her. By the same token, Henry's filing of responsive images that *she* sent to *him* cannot possibly be deemed unlawful without imposing a glaring double standard—especially since Henry took care to blur out the explicit parts, which Eckhart did not do in her own complaint.

Even if Henry should not have filed such images on a motion to dismiss (as opposed to a motion for summary judgment), the stage of litigation where images are filed cannot make the

24

difference for whether they are prohibited under state law. There is no question that the images are relevant to the claims and defenses in this lawsuit, and Henry also made a colorable argument (even if ultimately unsuccessful) as to why they could be considered on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Eckhart's claims against Fox News with prejudice.


Dated:   November 23, 2020


By:   */s/ Kathleen M. McKenna*
Kathleen M. McKenna, Esq.
Lloyd B. Chinn, Esq.
Keisha-Ann G. Gray, Esq.
Danielle J. Moss, Esq.
Yonatan L. Grossman-Boder, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
(212) 969-3000
kmckenna@proskauer.com

Anthony J. Dick, Esq.
J. Benjamin Aguiñaga, Esq.
Ariel N. Volpe, Esq.
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel. (202) 879-3939
Fax. (202) 879-1700
E-mail: ajdick@jonesday.com

*Attorneys for Defendant*
*Fox News Network, LLC*