UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER ECKHART,

                          Plaintiffs,

                    v.                                    Case No. 20-CV-5593 (RA)

FOX NEWS NETWORK, LLC, and ED HENRY, in his
individual and professional capacities,

                          Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ED HENRY'S
MOTION TO DISMISS, MOTION TO STRIKE, MOTION FOR SANCTIONS,
AND MOTION FOR A MORE DEFINITE STATEMENT**

Elkan Abramowitz
Catherine M. Foti
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT .....................................................................1

FACTUAL BACKGROUND ..........................................................................5

    Eckhart's Allegations ...............................................................................5

ARGUMENT ................................................................................................13

    I.      PLAINTIFF ECKHART'S TVPA CLAIM SHOULD BE DISMISSED .............13

        A.  Eckhart Fails to Allege that Mr. Henry "Enticed or Recruited" Her ...............14

        B.  Eckhart Fails to Allege Mr. Henry Knew He Would Use Fraud
              or Force ............................................................................ 18

        C.  Eckhart Fails to Allege a "Commercial Sex Act" ................................21

    II.     PLAINTIFF'S NYHRL CLAIMS FAIL TO STATE A CLAIM FOR
         RELIEF AND ARE TIME-BARRED ..........................................................23

        A.  Eckhart Fails to Allege Mr. Henry Was an Employer or Supervisor ...............24

        B.  Eckhart Fails to Allege Mr. Henry Aided and Abetted any Hostile
              Work Environment Claim .........................................................25

        C.  Eckhart Fails to Allege Mr. Henry Retaliated Against Her or
              Aided and Abetted Any Retaliation ..............................................27

        D.  Eckhart's Claims are time-Barred by the Statutes of Limitations....................30

    III.   ECKHART'S GENDER-MOTIVATED VIOLENCE ACT CLAIM
         FAILS TO ALLEGE GENDER ANIMUS AND SHOULD BE
         DISMISSED ....................................................................................32

    IV.   THE PHOTOGRAPHS ARE OUTSIDE THE AMBIT OF THE CRL .................34

V.      THE COURT SHOULD STRIKE IRRELEVANT AND
        INFLAMMATORY ALLEGATIONS FROM THE THIRD
        AMENDED COMPLAINT ......................................................................... 36

        A. Plaintiff's Inclusion of Irrelevant and Unsupported Allegations
           Concerning Pseudonymous Witnesses and Non-Fox Employees
           Should be Stricken................................................................................. 37

        B. Plaintiff's Inclusion of Outrageous and Unsupported Allegations
           About Defense Counsel Should Be Stricken as Irrelevant and
           Prejudicial ............................................................................................. 38

VI.     THE COURT SHOULD AWARD MR. HENRY SANCTIONS ........................... 39

VII.    THE COURT SHOULD GRANT MR. HENRY'S MOTION FOR A
        MORE DEFINITE STATEMENT ............................................................... 40

CONCLUSION.................................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Jenkins*,
    2005 WL 6584554 (Sup. Ct., N.Y. Cty. Apr. 22, 2005) ............................................ 34

*Aguirre v. Best Care Agency, Inc.*,
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ....................................................................... 14

*Ardolf v. Weber*,
    332 F.R.D. 467 (S.D.N.Y. 2019) ............................................................................... 18

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011) ....................................................................... 30

*Breest v. Haggis*,
    180 A.D.3d 83 (2019) ................................................................................................ 34

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ................................................................................... 36, 39

*Canosa v. Ziff*,
    2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) .......................................................... 21, 22

*Cordero v. Epstein*,
    869 N.Y.S.2d 725 (Sup. Ct., N.Y. Cty. 2008) ...................................................... 33, 34

*Corrado v. New York Unified Court Sys*
    163 F. Supp. 3d 1 (E.D.N.Y. 2016) ....................................................................... 31, 32

*Corrado v. New York Unified Court Sys*
    698 F. App'x 36 (2d Cir. 2017) ................................................................................. 31

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000) ........................................................................................ 42

*David v. Weinstein Co. LLC*,
    431 F. Supp. 3d 290 (S.D.N.Y. 2019) ................................................................. Passim

*DeLuca v. AccessIT Grp., Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010) ....................................................................... 6, 9

*DiPilato v. 7-Eleven, Inc.*,
    662 F. Supp. 2d 333 (S.D.N.Y. 2009) ................................................................. 24, 26

*Dunson v. Tri-Maint. & Contractors, Inc.*,
   171 F. Supp. 2d 103 (E.D.N.Y. 2001) .......................................................................... 25

*Emmons v. City Univ. of New York*,
   715 F. Supp. 2d 394 (E.D.N.Y. 2010) ......................................................................... 25

*Garcia v. Comprehensive Ctr., LLC*,
   2018 WL 3918180 (S.D.N.Y. Aug. 16, 2018) ............................................................ 33

*Gaughan v. Rubenstein*,
   261 F. Supp. 3d 390 (S.D.N.Y. 2017) ................................................................... 29, 30

*G–I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) ......................................................................... 37

*Giroux v. Foley*,
   2020 WL 1677073 (D. Vt. Apr. 6, 2020) .................................................................... 37

*Goodyear Tire & Rubber Co. v. Haeger*,
   137 S. Ct. 1178 (2017) ................................................................................................ 39

*Gordon v. N.Y. City Bd. of Ed.*,
   232 F.3d 111 (2d Cir. 2000) ........................................................................................ 27

*Gottwald v. Sebert*,
   2016 WL 1365969 (Sup. Ct., N.Y. Cty. Apr. 06, 2016) ............................................ 33

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) ........................................................................................ 27

*Hughes v. Twenty-First Century Fox, Inc.*,
   304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................. 24, 33, 34

*In re Argo Commc'ns Corp.*,
   134 B.R. 776 (Bankr. S.D.N.Y. 1991) ....................................................................... 40

*In re WorldCom, Inc. Sec. Litig.*,
   303 F. Supp. 2d 385 (S.D.N.Y. 2004) ........................................................................ 42

*Jackson v. New York State*,
   523 F. App'x 67 (2d Cir. 2013) ................................................................................... 31

*Kassner v. 2nd Ave. Delicatessen Inc.*,
   496 F.3d 229 (2d Cir.2007) .............................................................................. 30, 31, 32

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) .................................................................................. 40

*Krause v. Lancer & Loader Grp.*,
    40 Misc.3d 385 (Sup. Ct., N.Y. Cty. 2013) ............................................................. 25

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) ..................................................................... 42

*Low v. Robb*,
    2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ........................................................... 39

*Malena v. Victoria's Secret Direct, LLC*,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012) .............................................................. 25, 27

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ................................................................................. 27

*Nelson v. City of New York*,
    2013 WL 4437224 (S.D.N.Y. Aug. 19, 2013) ....................................................... 28

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................ Passim

*Oram v. SoulCycle LLC*,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013) .............................................................. 36, 39

*Palmer v. Cook*,
    64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) ................................................... 24

*Patterson v. County of Oneida*,
    375 F.3d 206 (2d Cir. 2004) ................................................................................. 31

*Priore v. New York Yankees*,
    307 A.D.2d 67 (1st Dep't 2003) ...................................................................... 24, 25

*Robles v. Goddard Riverside Cmty. Ctr.*,
    2009 WL 1704627 (S.D.N.Y. June 17, 2009) .................................................. 28, 30

*RSM Production Corp. v. Fridman*,
    643 F.Supp.2d 382 (S.D.N.Y. 2009) .................................................................... 39

*Shuvalova v. Cunningham*,
    2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ............................................ 14, 17, 42

*Spires v. MetLife Grp., Inc.*,
    2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ....................................................... 24

*Steffes v. Stepan Co.*,
    144 F.3d 1070 (7th Cir. 1998) .............................................................................. 28

*Straker v. Metro. Transit Auth.*,
  333 F. Supp. 2d 91 (E.D.N.Y. 2004)..................................................................40

*Taylor v. City of New York*,
  207 F. Supp. 3d 293 (S.D.N.Y. 2016)...............................................................30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................6

*Todd v. United States*,
  2012 WL 2952084 (W.D. Wash. June 26, 2012)...............................................21

*Trower v. Mount Sinai Hosp.*,
  2018 WL 4283724 (S.D.N.Y. Sept. 6, 2018) ....................................................26

*U.S. v. N.Y.C. Trans. Auth.*,
  97 F.3d 672 (2d Cir. 1996)...........................................................................29, 30

*United States v. Campbell*,
  111 F. Supp. 3d 340 (W.D.N.Y. 2015) .............................................................21

*United States v. Evans*,
  476 F. 3d 1176 (11th Cir. 2007) .......................................................................13

*United States v. Marcus*,
  487 F. Supp. 2d 289 (E.D.N.Y. 2007)...............................................................21

*United States v. Marcus*
  538 F. 3d 97 (2d Cir. 2008)................................................................................21

*United States v. Morrison*,
  529 U.S. 598 (2000) ..........................................................................................21

*United States v. Todd*,
  627 F. 3d 329 (9th Cir. 2010).......................................................................13, 19

*United States v. Walls*,
  784 F. 3d 543 (9th Cir. 2015)............................................................................13

*Villar v. City of New York*,
  135 F. Supp. 3d 105 (S.D.N.Y. 2015).........................................................Passim

*White v. Pacifica Found.*,
  973 F. Supp. 2d 363 (S.D.N.Y. 2013) ...............................................................28

*Wilcox v. Cornell Univ.*,
  986 F. Supp. 2d 281 (S.D.N.Y. 2013) ...............................................................27

*Williams v. New York City Hous. Auth.*,
 61 A.D.3d 62 (1st Dep't 2009) ......................................................................... 31

## **Statutes**

18 U.S.C. § 1591 ......................................................................................................... 18

18 U.S.C. § 1591(e)(3) ............................................................................................... 21

22 U.S.C. § 7101(b)(1) .............................................................................................. 13

N.Y. Exec. Law § 296 ............................................................................................... 24

New York City, N.Y., Code § 8-107 ......................................................................... 24

New York Civil Rights Law § 52-b ................................................................ 3, 34, 35

## **Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 6

Fed. R. Civ. P. 12(e) ............................................................................................. 1, 40

Fed. R. Civ. P. 12(f) ........................................................................................... 36, 39

Fed. R. Civ. P. 12(f)(2) ............................................................................................... 1

Defendant Edward "Ed" Henry respectfully submits this memorandum of law in support of his motion to dismiss the claims in Jennifer Eckhart's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), his motion to strike portions of the allegations pursuant to FRCP 12(f)(2) and accompanying request for sanctions pursuant to the Court's inherent authority, and his motion for a more definite statement pursuant to FRCP 12(e).

## PRELIMINARY STATEMENT

"Come n get it ;)" Jennifer Eckhart cheerfully declares in response to an email from Ed Henry stating he would "like to wipe [her] with [his] tongue." Conveniently, Eckhart neglected to include this response when she referenced the email in her TAC as an example of a purportedly unwanted sexual overture. Specifically, Eckhart claims that Mr. Henry sent her unwanted "lewd and extremely graphic" messages including one in which he said, "I'd like to wipe you with my tongue." TAC ¶¶ 58-59. Eckhart, however, fails to mention that in response she exclaimed: "I bet you would, dirty boy. Come n get it ;)." Eckhart likewise fails to mention the numerous pornographic photos that she sent to Mr. Henry, evidencing that Eckhart was a willing, consenting, and enthusiastic participant in their relationship. These photos include photos of Eckhart posing seductively, photos of her naked breasts, photos of her buttocks in a thong, and closeups of her vagina. Eckhart took all of these photos herself and, based on the timeline suggested by the TAC, sent these photos to Mr. Henry both before and after the alleged assault. Unfortunately, the TAC is replete with examples such as this where Eckhart has cherry-picked communications, selectively quoted only portions of those communications, and failed to include crucial evidence of her interactions with Mr. Henry to paint a false and libelous narrative of what was clearly a consensual relationship between two adults.

By her own account, Jennifer Eckhart never accused Ed Henry of any wrongdoing until after she was informed by Fox News Network, LLC ("Fox News") that she was being terminated and not until the day before her last day of employment.  Only then, after more than three years had passed from the end of their relationship, and in what was clearly a desperate attempt to save her job after apparently failing to meet the terms of a performance improvement plan, did Eckhart mention Mr. Henry's name.  The reason Eckhart had never before complained about Mr. Henry is because her allegations are false.  Although Mr. Henry and Eckhart did have a relationship, that relationship was completely consensual, and Eckhart engaged in it willingly and enthusiastically.  Mr. Henry did not harass, nor did he ever assault, Eckhart, and Eckhart's claims to the contrary are meritless.

After Eckhart's first three complaints failed to state viable causes of action against Mr. Henry, Mr. Henry moved to dismiss Eckhart's claims.  *See* Dkt. 84.  Recognizing that she did not state viable claims, Eckhart filed her TAC, rather than respond to Mr. Henry's motion.  *See* Dkt. 113.  This third amendment, however, has done nothing to address the fatal flaws of Eckhart's original complaints and instead inserts numerous additional spurious and unrelated allegations. These new allegations include fabricated misconduct that Mr. Henry allegedly committed against anonymous third parties, identified as "Jane Does," which have been publicly repudiated.  Even after a Jane Doe informed Eckhart and her counsel that the allegations in the Third Amendment Complaint were false, Eckhart refused to remove those specious allegations.  Eckhart and her counsel are now relying on a complaint which they know to be false – a clear ethical violation.

In addition, the TAC adds other shockingly inappropriate allegations, which are both untrue and irrelevant to the proceedings.  For example, Eckhart alleges a conspiracy theory between attorneys for Fox News and attorneys for Mr. Henry whereby the attorneys purportedly

conspired to retaliate against plaintiffs who accuse Fox News of wrongdoing.  Such allegations are completely unfounded and should not be countenanced by this Court.

The TAC alleges a number of causes of action.  Specifically, Eckhart asserts claims against Mr. Henry under the Trafficking Victims Protection Act ("TVPA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL" and together with the NYSHRL, "NYHRL"), under the Gender-Motivated Violence Act ("GMVA"), and under the New York Civil Rights Law ("CRL") § 52-b.  Each of the causes of action asserted against Mr. Henry is meritless, fails to state a claim, and should be dismissed.

First, the claim that Mr. Henry engaged in "sex trafficking" in violation of the TVPA is utterly devoid of merit and should be dismissed.  Even where all the allegations in the TAC are taken as true, Eckhart does not allege that Mr. Henry "enticed" or "recruited" her to engage in a "commercial sex act" nor that he knew that "fraud" or "force" would be used to require a "commercial sex act."  Indeed, there is nothing in the TAC to suggest that the alleged sex act was in any way "commercial" in nature.  Moreover, Eckhart's failure to specify the date of many of the alleged communications further undermines any argument that she properly alleged a claim.

Second, the claims that Mr. Henry violated the NYHRL, or aided and abetted such violations, cannot withstand scrutiny.  As a threshold matter, Mr. Henry is not an "employer" under the statutes and therefore cannot be liable for any direct violations.  The aiding and abetting claims also fail because Eckhart's allegations, even if true, do not establish that Mr. Henry aided and abetted a hostile work environment or that he retaliated against her.  Finally, even if Eckhart's claims were sufficient to sustain a cause of action for violation of the NYHRL, the claims all arose from interactions that occurred more than three years prior to July 20, 2020, the date Eckhart filed her original complaint, and, therefore, are time-barred.

3

Third, the claim that Mr. Henry violated New York's GMVA is similarly unsustainable. To allege such a violation, a plaintiff needs to allege "gender animus" beyond the alleged sexual misconduct.  Eckhart does not allege any facts sufficient to show that Mr. Henry harbored animus towards women, nor can she.

Fourth, the claim that Mr. Henry violated the CRL by making legal filings in support of his original motion to dismiss is utterly frivolous.  In response to Eckhart's Second Amended Complaint, Mr. Henry moved to dismiss and attached images, which Eckhart concedes she sent to Mr. Henry and which Eckhart incorporated by reference.  As a threshold matter, the CRL specifically excludes such legal filings from the ambit of its protections.  Additionally, before attaching the images, Mr. Henry took care to redact any nudity from the images and, thus, the published images would not violate the CRL even if such legal filings were not protected.

Fifth, in the event that the Court does not dismiss Eckhart's claims, it should strike from the pleadings the numerous irrelevant and scurrilous allegations that Eckhart added to her TAC. The allegations that should be stricken include those attributed to anonymous witnesses, many of which Eckhart and her counsel know to be false, those relating to allegations concerning non-Fox employees, and the baseless conspiracy theory that Eckhart alleges between counsel for Fox News and counsel for Mr. Henry.

Sixth, the nature of the allegations Mr. Henry seeks to strike are so egregious that this Court should exercise its inherent authority to sanction Plaintiff in an amount at least sufficient to cover the costs of making this motion to strike.

Seventh, the Court should nevertheless grant Mr. Henry's motion for a more definite statement so it can assess the sufficiency of the TVPA allegations and so Mr. Henry can respond properly to the allegations concerning the time and place of any alleged assault.

4

Eckhart's claims against Mr. Henry cannot be sustained; therefore, the TAC should be dismissed in its entirety with prejudice and to the extent any portion of the TAC is not dismissed, the Court should order the additional scurrilous allegations struck from the TAC, award Mr. Henry sanctions, and order that Eckhart provide Mr. Henry with a more definite statement.

## FACTUAL BACKGROUND

Ed Henry is a television and print journalist.  He started his broadcasting career as a political analyst for a local Washington, D.C. radio station, WMAL, and quickly moved to work for CNN where he began covering the White House in 2006.  In 2011, Mr. Henry left CNN to become the Chief White House Correspondent for Fox News.  In late 2016, Mr. Henry also took on the role of an occasional host for *Fox & Friends Weekend* and assumed his position as a more regular host for that show in 2018. Then, in December 2019, Mr. Henry became a co-host of *America's Newsroom*.  He held that position until Fox News terminated him on July 1, 2020. *See* Declaration of Catherine M. Foti, dated December 7, 2020 ("Foti Decl.") at ¶ 2.

**Eckhart's Allegations**

In January 2013, Jennifer Eckhart began working as a Freelance Administrative Assistant to Liz Claman.  TAC ¶ 23.  Liz Claman is an anchor at the Fox Business Network, a division of Fox News Media separate from the division for which Mr. Henry worked.  *See* Foti Decl. at ¶ 2. According to the TAC, Mr. Henry started following Eckhart on Twitter at some point in 2014, seemingly out of the blue.  In actuality, the first contact Mr. Henry had with Eckhart was on December 18, 2013, when Eckhart, who apparently had been following Mr. Henry on Twitter, commented on one of Mr. Henry's tweets about the film Anchorman 2.  *See* Tweet between Ed Henry and Jennifer Eckhart, dated December 18, 2013, attached as Exhibit A to Foti Decl. at ¶ 3 ("LOVE Ron Burgundy. Huge fan. But have we NOT seen. enough. cross-promotions. ?"

Eckhart replies "@edhenrytv It's really ruining a good thing." Mr. Henry then responds
"@JenniferEckhart folks know he's not a real anchor right? ha").[1]  Mr. Henry had never met
Eckhart and did not know who she was.  Only after Eckhart commented on his tweet did Mr.
Henry learn that Eckhart worked for Fox Business and begin following Eckhart on Twitter.
Indeed, about two hours after Eckhart communicated with Mr. Henry on Twitter, Mr. Henry
reached out to Eckhart over email and Eckhart responded, "Ha! Big fan of yours….Thanks for
the follow :)".  *See* Copy of email correspondence from Jennifer Eckhart to Ed Henry, dated
December 18, 2013, attached as Exhibit B to Foti Decl. at ¶ 4.

      According to Eckhart, sometime in 2014, she received a private message from Mr. Henry
that read "beautiful" to which Eckhart responded telling Mr. Henry that she was a fan of his and
that it would be an honor to meet him.  TAC ¶¶ 37-38.  Mr. Henry replied by telling Plaintiff
Eckhart that he was in New York and inviting her to meet him in the green room, a common area
where people congregate before going on air.  TAC ¶ 39.  Plaintiff Eckhart agreed, and the two
had their picture taken.  TAC ¶ 40.

      Although Mr. Henry disagrees with the sequence of events leading up to the picture he
took with Eckhart, he agrees that they did take a picture and recalls that Eckhart then posted it
publicly on Twitter.  *See* Foti Decl. at ¶ 5.  As the TAC also alleges, the parties exchanged an
email in which Mr. Henry used the words "hard to get."  TAC ¶ 42.  However, contrary to the
TAC's description of that email, the instigator of any flirtation between the parties was Eckhart,
not Mr. Henry.  The TAC alleges the following: Mr. Henry sent Eckhart a message asking her to

---

[1] Although normally courts are not entitled to consider extrinsic evidence in determining a motion to dismiss, they must consider documents incorporated into a complaint by reference.  *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)* (when ruling on rule 12(b)(6) motions to dismiss, "courts must consider . . . documents incorporated into the complaint by reference . . . .".); *DeLuca v. AccessIT Grp., Inc.,* 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) (same).  By including a portion of a communication between the parties in the TAC, the plaintiffs have incorporated that communication by reference and, therefore, the Court should consider the remainder of the communication.

send him the picture of the two of them together; Mr. Henry replied, "You are way more beautiful in person;" Mr. Henry asked Eckhart to "get drinks with him;" Eckhart refused, and Mr. Henry, who was "intent on pursuing her despite her rejections, wrote to her in in an email, 'Yep.  Hard to get.'"  TAC ¶¶ 41-42.  In actuality, after taking the photo, Mr. Henry reached out to Eckhart using an email he guessed would be her work email address at Fox Business and asked, "this you? :)" to which Eckhart flirtatiously replies, "Maybe :)."  Only then does Mr. Henry answer "hard to get," to which Eckhart replies "Very hard."  Then, after Mr. Henry indicates amusement with a reply that simply says "ha," Eckhart invites him to communicate with her using her personal email address: "Try me here:" Jennifer@jennifereckhart.com.  *See* Email between Ed Henry and Jennifer Eckhart, dated June 13, 2014, attached as Exhibit C to Foti Decl. at ¶ 6.

While the TAC is vague as to the timing of the next interaction between Mr. Henry and Eckhart, it alleges that Mr. Henry invited Eckhart out for drinks, and Eckhart eventually agreed. TAC ¶¶ 43-44.  The two met at a hotel bar for drinks and then, according to Eckhart, returned to Mr. Henry's hotel room and had consensual sex.  TAC ¶¶ 45-49.  There is no allegation that Mr. Henry discussed work or advancing Eckhart's career prior to this consensual encounter.  Only after Eckhart had sex with Mr. Henry does he supposedly say he could get her in the room with "really powerful people" which she now claims means he could help her career.  TAC ¶ 50. After this first alleged sexual encounter, Eckhart alleges another encounter took place at the Fox News offices.  According to Eckhart, Mr. Henry told her to put her underwear in an envelope for him to retrieve and Eckhart did so.  TAC ¶ 54.  Later that day, Eckhart agreed to meet Mr. Henry in a Fox News guest office in the middle of the day where Mr. Henry allegedly forced Eckhart to perform oral sex.  TAC ¶¶ 55-57.  According to the TAC, Eckhart supposedly ran out of the

room "in a state of shock, panic, and fear." TAC ¶ 57.  Eckhart claims she was so upset after this interaction that, thereafter, she avoided Mr. Henry even though "he continued to send her lewd and extremely graphic," messages such as: "I'd like to wipe you with my tongue." TAC ¶¶ 57-58.  However, what Eckhart neglects to include in her description of this communication from Mr. Henry is her inviting response: "I bet you would, dirty boy.  Come n get it ;)." *See* Copy of email from Jennifer Eckhart to Ed Henry, dated October 21, 2015, attached as Exhibit D to Foti Decl. ¶ 7.

According to the TAC, over the next several months, Mr. Henry continued to communicate with Eckhart, but contrary to the TAC's suggestion that the communications were unwanted, the documentary evidence shows that Eckhart welcomed and encouraged Mr. Henry's continued contact.  For example, early in 2016, Eckhart sent Mr. Henry a playlist of songs they were to listen to during one of their encounters. The playlist consisted of many sexual songs including songs like "Cockiness (Love It When You Eat It)" which features the lyrics "I want you to be my sex slave . . . Set my whole body on fire".  Along with the playlist, Eckhart sent the message, "Think this is long enough?" in reference to whether the playlist was long enough for their next sexual encounter.  *See* Copy of correspondence from Jennifer Eckhart to Ed Henry, dated January 2, 2016, attached as Exhibit E to Foti Decl. at ¶ 8.  And shortly thereafter, Eckhart sent Mr. Henry an email with a link to an article about a man who has a vacuum cleaner tattooed around his crotch.  The article included two pictures of the man displaying the tattoo, in one of them, the man is naked, holding his hands over his private parts to hide his penis but allowing his tattoo to be visible.  In response to Eckhart's email forwarding the link to the pictures, Mr. Henry responded, "yes and" to which Eckhart replied jokingly, "WAY hotter than 'chief.'" *See* Copy of email correspondence from Jennifer Eckhart to Ed Henry, dated January 13, 2016, attached as

Exhibit F to Foti Decl. at ¶ 9.  Eckhart's comment was a joking reference to a tattoo of Mr. Henry's that Eckhart would have seen when she consensually performed oral sex on him, an incident Eckhart now retroactively alleges was forced.

According to the TAC, Mr. Henry continued to send Eckhart sexually-charged messages, including references to bondage and obedience.  Eckhart appears to concede that she solicited these messages from Mr. Henry.  TAC ¶ 61.  However, even more than the emails and texts, Eckhart's willing participation in their relationship is evident through her decision to provide Mr. Henry with numerous, wildly salacious, photographs she took of herself.[2]  *See* Foti Decl. at ¶ 10; Dkt. 85, Exs. 7-21.  These photos include pictures of Eckhart scantily clad in lingerie with plunging necklines and thong underwear, lounging in sexually enticing poses on her bed and smiling seductively, pictures of her naked breasts, her naked buttocks in a thong thrust upward, and closeup photos of her vagina, one seemingly taken in the bath, and one where Eckhart is touching herself.  *See id.* at ¶ 10; Dkt. 85, Exs. 7-21. While some photos are more demure and others are extraordinarily graphic, all are sexually explicit.  The majority of these photographs appear to be "selfies," taken by Eckhart of herself.[3]  *Id.*  During the time that Eckhart was

---

[2] Examples of these photographs were filed in connection with Mr. Henry's original motion to dismiss and remain on the docket under seal, pursuant to this Court's October 21 Order, Dkt. 91.  Although the Court stated, in response to Eckhart's motion to seal, that the photographs were not permitted to be considered in connection with the motion to dismiss, Mr. Henry respectfully disagrees with the Court's conclusion.  Eckhart specifically alleges in the TAC that Mr. Henry took nude photographs in order to use them to blackmail her (*see* TAC ¶ 71) and that he asked her to send him nudes photographs of herself, which she did.  *See* TAC ¶ 119.  Eckhart, therefore, has opened the door to the Court's review of these photographs, which are not extrinsic to the TAC but rather incorporated by reference.  Indeed, as demonstrated in footnote 1, *supra*, the fact that Eckhart references in the TAC the very photographs Mr. Henry submitted in support of his motion to dismiss, attempts to make excuses for why she sent them, and attempts to disavow a number of them, requires that the Court consider them. *See DeLuca,* 695 F.Supp.2d at 60.  Given the Court's previous order, even though Mr. Henry believes he was well within his right to attach these photographs in connection with his current motion as well, he has not separately re-submitted them.  Still, Mr. Henry respectfully requests that the Court review these photographs, again clearly incorporated by reference into the TAC, when considering the current motion to dismiss.

[3] Eckhart alleges that some of these photographs are of other women, which she downloaded from the Internet and sent to Mr. Henry.  TAC ¶ 198.  Whether or not the photographs are of Eckhart, Eckhart concedes that she sent the

sharing these photographs with Mr. Henry, he was sending her sexual text messages.  TAC ¶¶ 60-63, 77-80. All evidence that their relationship was completely consensual.

Notwithstanding the available evidence demonstrating Eckhart's active, willing participation in the relationship, she alleges that in February 2017,[4] Mr. Henry raped her.  TAC ¶¶ 64-74.  According to Eckhart, Mr. Henry invited her to drinks at a restaurant supposedly frequented by Fox News employees, and Eckhart agreed.  TAC ¶ 64.  While having drinks, Mr. Henry apparently told Eckhart that Fox was awarding him with his own show and then supposedly offered to introduce her to his agent and to have her on his yet non-existent show as a guest.  Mr. Henry then allegedly invited Eckhart to take a walk with him back to his hotel and even though she did not want to go, Eckhart agreed to walk Mr. Henry to his hotel and then to go to his room.  TAC ¶¶ 65-66.  Although the TAC fails to allege that Mr. Henry had any supervisory authority over Eckhart, who worked for Liz Claman in a completely different division of Fox News than Mr. Henry, Eckhart allegedly agreed to go out for drinks and then to go to his hotel room because she was afraid for her job.  There, according to Eckhart, Mr. Henry handcuffed her and took naked photographs of her in order to blackmail her.  He then supposedly violently raped her.  TAC ¶¶ 68-74.  Despite claiming to have a precise date for the alleged rape (*see* TAC ¶ 76 (Eckhart claims to have texts from the next day)), Eckhart does not specify the date of this purported rape. After this alleged rape, which according to the TAC occurred prior to Valentine's Day, February 14, 2017, Mr. Henry continued to message Eckhart to which Eckhart responded suggesting she deserved special treatment for Valentine's Day.  TAC ¶¶ 76-80.

---

photographs to Mr. Henry in an effort to fool Mr. Henry into believing the photographs were of Eckhart.  *Id*.  It is therefore nonsensical to now claim that Mr. Henry "likely knew" the photographs were not of Eckhart.

[4] Significantly, Eckhart has not provided a more precise date of this alleged rape.

The TAC alleges no further contact between Eckhart and Mr. Henry and only a handful of subsequent incidents where Eckhart apparently saw Mr. Henry from a distance but did not interact with him.  Indeed, the only alleged subsequent interaction between the two was in late 2018 when Mr. Henry sent Eckhart a message asking why she had turned away from him, a picture of a football player, and a message that simply said "YO!".  TAC ¶¶ 85-87.

Over three years later, on June 12, 2020, Fox News terminated Eckhart's employment, effective June 26.  On June 25, Eckhart's counsel allegedly informed Fox News for the first time of Eckhart's allegations against Mr. Henry.  TAC ¶¶ 182-83.  On July 1, Fox News terminated Mr. Henry.  TAC ¶ 188.  There are no allegations that Mr. Henry was in any way involved with Eckhart's termination or even that he knew she was being terminated.

After Eckhart commenced this lawsuit, Mr. Henry moved to dismiss Eckhart's Second Amended Complaint.  *See* Dkt. 84.  In support of this motion, Mr. Henry attached emails and photographs, which Eckhart had sent Mr. Henry and had incorporated by reference in her pleadings.  *See* Dkt. 85.  The nude photographs that Eckhart had sent Mr. Henry were redacted to shield the nudity.  *See id*.  Eckhart then moved on an emergency basis for an order to have the photographs filed under seal, which the Court granted.  *See* Dkt. 91.  Then, rather than respond to the motion, Eckhart filed her TAC.  *See* Dkt. 113.

This TAC added allegations, not included in Eckhart's previous pleadings, attributed to women who are not plaintiffs, and which are not relevant to any of Eckhart's causes of action. *See* TAC ¶¶ 134-64.  For example, the TAC alleges that an individual identified as Brooke Hammerling, who was not a Fox News employee, received sexual messages from Mr. Henry. *See* TAC ¶ 134-35.  Plaintiff does not allege that Mr. Henry ever offered Ms. Hammerling anything of value or attempted to entice her in any way.  *See* TAC ¶¶ 134-39.  The TAC

11

similarly alleges that a woman named Roxie Marroquin sought out Mr. Henry as a mentor, suggesting that "maybe [he] c[ould] teach [her] a few things about the industry." *See* TAC ¶ 141. Mr. Henry, however, never suggested to Ms. Marroquin he could advance her career. *See* TAC ¶¶ 140-48. The allegations concerning Ms. Marroquin also suggest that Mr. Henry wrongfully sought to silence Ms. Marroquin. *See* TAC ¶¶ 146-48. In fact, as with Eckhart's own allegations, Eckhart fails to tell the whole story about Ms. Marroquin, who actually was investigated for attempting to extort Mr. Henry and visited by the FBI who warned her against continuing her extortionate conduct. *See* Foti Decl. at ¶ 11.

These new allegations also include statements attributed to anonymous "Jane Does." TAC ¶¶ 149-64. None of these women alleges that Mr. Henry sexually assaulted them or that Mr. Henry ever attempted to entice them by offering them anything of value. Regarding Jane Doe 2, the TAC alleges only that Mr. Henry sent her an inappropriate picture and that Mr. Henry and Jane Doe 4 supposedly exchanged messages but there were "[n]o real issues" after Jane Doe 4 stopped responding. *See* TAC ¶¶ 151, 164. Indeed, while the TAC alleges that Mr. Henry "coerced" Jane Doe 1 into having sex with him (*see* TAC ¶ 157), Jane Doe 1 has publicly repudiated this allegation, making clear that her relationship with Mr. Henry was completely consensual. *See* Diana Falzone, *The Sexual Assault Lawsuit Against Ed Henry Just Took a Wild Turn*, The Daily Beast (Nov. 15, 2020), attached as Exhibit G to Foti Decl. at ¶ 12. In fact, Jane Doe 1 informed Eckhart's counsel that the allegations concerning her relationship with Mr. Henry in the TAC and those considering Jane Doe 3 (which apparently were repeated by Jane Doe 1 and not directly reported by Jane Doe 3) are false. Yet, even though Jane Doe 1 specifically repudiated the allegations and Mr. Henry requested that Eckhart withdraw them, Eckhart refused to do so. *See id*; *see also,* Foti Decl. at ¶ 13. Similarly, the TAC baselessly

suggests that counsel for Mr. Henry and counsel for Fox News conspired to retaliate against Eckhart and quotes from an wholly unrelated allegation against Fox News and another employee, commenced over three years ago, having nothing to do with claims of sexual harassment.  *See* TAC ¶¶ 206-10.  The TAC fails to allege how these false allegations are relevant to its claims.

## ARGUMENT

## I.    PLAINTIFF ECKHART'S TVPA CLAIM SHOULD BE DISMISSED

In enacting the TVPA, "Congress recognized that human trafficking, particularly of women and children in the sex industry 'is a modern form of slavery, and it is the largest manifestation of slavery today.'" *United States v. Walls*, 784 F. 3d 543, 548 (9th Cir. 2015) (quoting 22 U.S.C. § 7101(b)(1)); *see also United States v. Todd*, 627 F. 3d 329, 333 (9th Cir. 2010) (Congress was focused on "the traffic in the sexual services of women based on importing women from around the world by force or fraud").  The Sex Trafficking Act "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans,* 476 F. 3d 1176, 1179 (11th Cir. 2007).  A plaintiff suing under the Act must show that the defendant knowingly and in interstate commerce "(1) recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud . . . or any combination of such means will be used; (3) to cause the person to engage in a commercial sex act."  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

Eckhart's allegations fail to plead that Mr. Henry "enticed" or "recruited" her within the meaning of the TVPA.  Eckhart further fails to allege knowledge that means of force, threats of force, or fraud would be used or that any "commercial sex act" was involved.  The Court should dismiss the TAC's First Cause of Action alleging that Mr. Henry violated the TVPA.

### A.      Eckhart Fails to Allege that Mr. Henry "Enticed or Recruited" Her

The core *actus reus* of a TVPA violation is "recruit[ing], entic[ing], harbor[ing],

transport[ing], provid[ing], obtain[ing], or maintain[ing]" victims of sex trafficking. *See Aguirre*

*v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 447 (E.D.N.Y. 2013) ("Plaintiff has failed to

demonstrate or explain how Defendant recruited, harbored, provided or obtained her services, a

necessary element to prove trafficking under this statute . . . Without this element, Plaintiffs'

trafficking claim under this statute is nothing more than her forced labor claim restated.").

Words like "enticed" and "recruited" are not defined in the statute and courts therefore have

interpreted these words consistent with their "ordinary meaning."  *David v. Weinstein Co. LLC*,

431 F. Supp. 3d 290, 300 (S.D.N.Y. 2019).  This alleged enticement or recruitment must precede

the alleged "commercial sex act."  *Shuvalova v. Cunningham*, 2010 WL 5387770, at *4 (N.D.

Cal. Dec. 22, 2010) (holding that plaintiffs failed to plead a TVPA claim where the only

allegation regarding defendants' conduct *prior* to plaintiffs' arrival at the property was that one

defendant "promised to take care of [plaintiffs] in a loving home").

While most cases involving TVPA allegations involve archetypal instances of sex

trafficking and sex slavery, courts have acknowledged that non-archetypal allegations can also

state a claim for TVPA violations.  Though not controlling, cases concerning alleged TVPA

violations by Harvey Weinstein are instructive on how courts analyze such claims.  *See Noble*,

335 F. Supp. 3d 504; *David*, 431 F. Supp. 3d 290.  In *Noble*, the plaintiff alleged extraordinary,

specific, repeated, and persistent acts by Weinstein, the defendant.  *Noble*, 335 F. Supp. 3d at

511-12.  These acts included Weinstein allegedly (1) telling the plaintiff that he had a specific

acting role in a major film for her, (2) having his assistant instruct plaintiff to write a narrative

about herself and obtain detailed information from plaintiff, including a film reel, (3) having his

assistant assure plaintiff that she would be contacted about the major film role, (4) later inviting

plaintiff to his hotel room specifically to discuss that film role, (5) telling plaintiff in his hotel room that he would "take care of everything" for plaintiff to obtain the film role, and (6) subsequently sexually assaulting the plaintiff.  *Id.*  On the basis of these extraordinary facts, the court concluded that Weinstein had sufficiently "enticed" and "recruited" the plaintiff.  *Id.* at 517; *see also David*, 431 F. Supp. 3d at 301 (finding that "enticement" element was met because the plaintiff plausibly alleged a "*modus operandi*" associated with the enticement).  Notably, while the TVPA forbids enticement through substantial specific promises, it does not prohibit "invites" or "asks."  *See Noble*, 335 F. Supp. 3d at 517-18.

Here, Eckhart fails to allege that Mr. Henry "enticed" or "recruited" her in violation of the TVPA.  As a threshold matter, Eckhart alleges three sexual encounters with Mr. Henry.  In the first instance, months after their initial communications, Eckhart agreed to meet Mr. Henry at his hotel for drinks and, after drinks, accepted Mr. Henry's invitation to his hotel room.  TAC ¶¶ 44-48.  Mr. Henry and Eckhart then had consensual sex.  TAC ¶ 49.  Eckhart does not allege that Mr. Henry improperly enticed Eckhart or that he ever even discussed offering to do anything to advance her career prior to this admittedly consensual sexual encounter.[5]  In fact, the only statement Eckhart attributes to Mr. Henry during this consensual encounter is a vague, non-specific comment that Mr. Henry could get Eckhart in a room with "really powerful people."  TAC ¶ 50.  That statement, however, came only after they had consensual sex, and thus, cannot be used to establish "enticement" for purposes of the TVPA.  Moreover, at the time of this encounter, Eckhart already was employed by Fox Business, allegedly working herself through the ranks, while Mr. Henry was just a correspondent for Fox News.  The TAC contains no

---

[5] Although the TAC now suggests that Eckhart had sex with Mr. Henry this first time "against her will," in every version of her complaint, including this current one, she clearly has admitted that she consented to this sexual encounter.

allegation to support an argument that Mr. Henry had any authority over Eckhart or any ability to force Fox to affect Eckhart's position.  Finally, the suggestion that Mr. Henry told Eckhart that he could get her in a room with "really powerful people" does not suggest any *quid pro quo* exchange or provide any evidence of a promise to help Eckhart's career at Fox.  The allegation does not rise to the level of "enticement" under the TVPA.

The second alleged sexual encounter between Eckhart and Mr. Henry purportedly took place in the Fox News' New York offices in September 2015.  TAC ¶ 53.  In this second instance, Mr. Henry allegedly told Eckhart to meet him in a guest office and Eckhart agreed.  TAC ¶¶ 55-56.  There, Eckhart waited until Mr. Henry finished a phone call and then performed oral sex on him during which Mr. Henry allegedly "physically used his hands" to force her head down.  According to the TAC, Eckhart left right after performing oral sex.  TAC ¶ 57.  Again, Eckhart does not allege that Mr. Henry said anything to her about her career during or after this encounter; nor does she allege that Mr. Henry offered her anything of value to help her career or in any way threatened to hurt her career if she did not perform oral sex on him.  Significantly, the only exchange the TAC references after this alleged encounter, is a text from Mr. Henry, in which he states: "I'd like to wipe you with my tongue."  TAC ¶ 58.  Conveniently, the TAC fails to include Eckhart's reply to this text: "I bet you would, dirty boy. Come n get it ;)."

The third alleged sexual encounter purportedly took place in February 2017 and involved what Eckhart now claims was a rape.  TAC ¶ 64.  According to the TAC, the events leading up to the alleged rape are as follows: Mr. Henry allegedly invited Eckhart for drinks at a restaurant supposedly frequented by Fox News employees where, apparently, Mr. Henry informed Eckhart he was being rewarded with "his very own show."  TAC ¶¶ 64-65.  Mr. Henry then "invited"

Eckhart to his hotel room and Eckhart accepted, as she had done previously, of her own volition. TAC ¶ 66.  At the hotel, Eckhart alleges that Mr. Henry raped her.  TAC ¶¶ 68-74.

Although none of the previous three complaints made any mention of Mr. Henry suggesting he could help Eckhart in any way with her career, the TAC suddenly alleges that Mr. Henry offered to introduce Eckhart to his agent and to have her on his alleged new show as a frequent guest even though no new show actually had been developed for him.  TAC  ¶ 65. However, beyond Eckhart's speculation that this supposed show would make Mr. Henry a very powerful man at Fox, the TAC sets forth no factual allegations as to this supposed new show, which clearly never materialized, nor the nature of the show or what power Mr. Henry actually would have to control the content of the show.  Moreover, although Eckhart suddenly recalls that Mr. Henry promised to have her on this speculative show as a guest, she, as a Fox Producer, knew better than anyone who had power at Fox News to determine guest appearances.[6]  The TAC also fails to allege that Mr. Henry ever suggested that Eckhart was required to submit to having sex with him in exchange for any career benefit nor that Mr. Henry ever threatened her career if she did not have sex with him.  The TAC's failure to mention anything along these lines supports the conclusion that Mr. Henry made no promises or offers that make out "enticement" for purposes of alleging a violation of the TVPA.[7]

---

[6] The fact that Eckhart failed to make any mention of Mr. Henry's supposed offer to have her on his own show as a frequent guest in her first three versions of the complaint is obvious – Plaintiff's allegations in this regard are completely baseless and nonsensical.  Mr. Henry had not been promised his own show in 2017 and did not anchor his own show until 2020.  Moreover, Mr. Henry was a political commentator and Plaintiff had no experience as a political commentator.  Thus, as a Fox employee, Eckhart would have known that she never would have been chosen as the person to make any appearance, let alone frequent appearances, to engage in high level political analysis.

[7] Eckhart also alleges Mr. Henry sent her text messages, though since the messages are undated and the alleged rape is placed sometime in early February 2017, without more precision, and without clarity as to the sequence of these messages as they relate to the alleged rape, it is impossible to glean from the allegations whether these messages could have possibly "enticed" Eckhart.  *Shuvalova,* No. 10-CV-02159, 2010 WL 5387770, at *4 ("enticement" must come before alleged sex act).

Notwithstanding the claim that the circumstances leading up to these sexual encounters make out a violation of the TVPA, these circumstances are more accurately characterized as unextraordinary and commonplace "invitations" that do not arise to "enticement" under the TVPA.  Unlike the plaintiffs in the *Weinstein* cases, Eckhart was already a Fox News employee. There are no allegations suggesting that Mr. Henry promised or offered Eckhart any career advancement.  *See Noble*, 335 F. Supp. 3d at 517-18.  Indeed, there is no reason to believe Mr. Henry even had the power to affect Eckhart's career or ever told Eckhart that he had such power. Eckhart even alleges that, between these alleged encounters, Mr. Henry was put on leave by Fox News suggesting, if anything, that Mr. Henry had little to no power over decisions at Fox.  TAC ¶ 3.  Furthermore, unlike the *Weinstein* cases, there is no *modus operandi* alleged where any means, fraudulent or otherwise, were used to allegedly entice Eckhart.  Instead, by Eckhart's own admission, Mr. Henry merely "invited" her to his hotel, and she accepted the invitation.

**B.      Eckhart Fails to Allege Mr. Henry Knew He Would Use Fraud or Force**

In addition to failing to allege that Mr. Henry "enticed" Eckhart, Eckhart also fails to allege that Mr. Henry knew he would use "fraud" or "force," as required to plead a violation of the TVPA.  The TVPA requires showing that a defendant receive something of a value "knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C.A. § 1591.  This element requires a plaintiff to allege "awareness, at the initial recruitment or enticement stage, that certain prohibited means will be employed to achieve a perverse end goal: a commercial sex act."  *Noble*, 335 F. Supp. 3d at 518.  This knowledge is commonly pled by showing a defendant's "pattern of behavior" or a "*modus operandi*," such that [the defendant] knew that he had a pattern of using fraud or force to cause commercial sex acts with victims."  *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019).  In other words, the plaintiff must allege that "if things go as [the defendant] has planned, force, fraud or coercion

will be employed to cause his victim to engage in a commercial sex transaction." *Todd*, 627 F.3d at 334.

While Eckhart alleges that "force" was used in at least one sexual encounter, Eckhart does not allege that Mr. Henry knew before the encounter that he would force Eckhart into a commercial sex act. To show that Mr. Henry had prior knowledge that force would be used, Eckhart must do more than allege that force was used. Courts have required that plaintiffs plead a pattern of behavior, or *modus operandi*, to prove prior knowledge that fraud or force would be used. *See Noble*, 335 F. Supp. 3d at 518. In the *Weinstein* cases, for example, Harvey Weinstein was alleged to have fraudulently coerced women to have sex with him by promising film roles, and "engaged in a pattern of doing the same with other women over decades." *David*, 431 F. Supp. 3d at 301. From this pattern of behavior, the Court could properly infer Harvey Weinstein's intent when engaging in similar practices.

In an apparent recognition that her original pleadings did not adequately plead a *modus operandi*, the TAC adds allegations concerning various other women, in an attempt to satisfy this element of the TVPA. *See* TAC ¶ 134-81. These allegations are largely fabricated, as evidenced by the fact that a number of the allegations have been publicly repudiated by the women alleged to be involved. *See* Ex. G to Foti Decl. at ¶ 12. Even if the allegations were true, however, they would still fail to plead a *modus operandi*. An adequately pled *modus operandi* allows courts to infer that a defendant's intent to use fraud or force, based on the defendant's prior pattern of using the same fraud or force. *See David*, 431 F. Supp. 3d at 301.

Here, however, none of the other women identified in the TAC alleges that Mr. Henry used fraud or force to coerce them into engaging in a commercial sex act. The allegations relating to Ms. Hammerling, who did not work at Fox, do not allege any fraud, coercion, or

19

enticements nor do any of these allegations support a claim that Mr. Henry could have affected her career.  *See* TAC ¶ 135.  Likewise, the allegations regarding Ms. Marroquin, who also did not work at Fox News, set forth only that Ms. Marroquin sought out Mr. Henry to teach her about the industry, not that he ever offered her anything of value.  *See* TAC ¶ 141.  With respect to two of the four Jane Does, Eckhart alleges only that Mr. Henry sent one an inappropriate picture and exchanged messages with another prior to her working at Fox News who admits that she had "[n]o real issues" with Mr. Henry after she came to work at Fox News.  *See* TAC ¶¶ 151, 164.  The allegations regarding the other two Jane Does have been publicly repudiated by the women alleged to be involved.  *See* Ex. G to Foti Decl. at ¶ 12.  Specifically Jane Doe 1 never claimed that Mr. Henry forced her into any sexual encounter and actually told Eckhart that any relationship she had with Mr. Henry was entirely consensual.  In addition, Jane Doe 1 never told Eckhart that Mr. Henry invited Jane Doe 3 to a hotel room but only that Jane Doe 3 and Mr. Henry had drinks.  *See id*.  The TAC does not allege that Mr. Henry improperly enticed or offered anything of value to these women in exchange for a commercial sex act.  *See* TAC ¶¶ 149-61.  Indeed, it apparently fails to allege any actual facts on which the Court may rely.  Not only are the claims about these additional women irrelevant; the allegations are false.

There is no *modus operandi* from which this Court could infer that Mr. Henry ever had an intent to use fraud or force with Eckhart.  Eckhart pleads no pattern in this case, from which the Court could infer that Mr. Henry planned to use force "at the initial recruitment or enticement stage," as required by the TVPA.  *See Noble*, 335 F. Supp. 3d at 518; *David*, 431 F. Supp. 3d at 301.  Moreover, to the extent Eckhart seeks to rely on the selective text messages quoted in the TAC to establish this element, those messages are incomplete and undated, leaving only

speculation to establish their context and timing.  Such blatant speculation is insufficient to meet

the requirement that the TAC allege that Mr. Henry knew force would be used.

### C. Eckhart Fails to Allege a "Commercial Sex Act"

Eckhart's TVPA claim likewise fails because she does not allege any "commercial sex

act."  The TVPA defines "commercial sex act' as "any sex act, on account of which anything of

value is given to or received by any person." 18 U.S.C. § 1591(e)(3).  As a result of this

definition, courts have historically limited the application of the TVPA to economic activity and,

in particular, sexual exploitation for profit.  *See United States v. Campbell*, 111 F. Supp. 3d 340,

344-46 (W.D.N.Y. 2015) (TVPA was intended to regulate an "economic 'class of activities'").

As such, "commercial sex acts are necessarily economic in nature . . . and distinguishable from

laws governing gender-motivated crimes of violence and not involving such economic activity."

*Todd v. United States*, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012); *see also United

States v. Morrison,* 529 U.S. 598, 613 (2000) ("Gender-motivated crimes of violence are not, in

any sense of the phrase, economic activity.").  To sufficiently plead a commercial sex act,

therefore, a plaintiff must allege that the alleged sex-trafficking victim was "sexually exploited

for profit."  *See United States v. Marcus*, 487 F. Supp. 2d 289, 307 (E.D.N.Y. 2007) (wherein the

government contended that it is consistent with the statute's purpose to focus inquiry of what is a

"commercial sex act" on "whether a given individual has been sexually exploited for profit")

*rev'd on other grounds*, 538 F. 3d 97 (2d Cir. 2008).  While, the TVPA covers broader

transactions than simple monetary exchanges, there must nevertheless be something "'of value'

in exchange for the sex acts that took place."  *David*, 431 F. Supp. 3d at 303.

Again, the *Weinstein* cases are instructive in showing how courts apply the "commercial

sex act" element of the TVPA to non-archetypal TVPA claims.  *See Noble*, 335 F. Supp. 3d at

521; *David*, 431 F. Supp. 3d at 303-05; *Canosa v. Ziff*, 2019 WL 498865, at *22 n.26 (S.D.N.Y.

Jan. 28, 2019).  As outlined above, *Noble* concerned a situation where the defendant, both himself and through an agent, repeatedly promised the plaintiff a film role.  335 F. Supp. 3d at 517-18.  In analyzing whether this alleged exchange constituted a "commercial sex act," the court concluded that, "[the plaintiff's] reasonable expectation of receiving those things in the future, based on [Weinstein's] repeated representations that she would, is sufficient."  *Id*. at 521. Subsequent cases have accepted that a defendant making "repeated representations" to a plaintiff that the plaintiff would receive something valuable, like a film role, in exchange for sex is sufficient to plead a "commercial sex act."  *See Canosa*, 2019 WL 498865, at *22 n.26.

In this case, Eckhart fails to plead that any of her alleged sex acts was remotely "commercial" in nature.  As discussed above, Eckhart alleges three sexual encounters: (1) consensual sex with Mr. Henry in his hotel, (2) oral sex in a Fox News office, and (3) the alleged rape.  Unlike in the *Weinstein* cases, however, Eckhart does not provide a single statement, from any of these alleged encounters, where Mr. Henry promised Eckhart anything of value in exchange for sex.  *See Noble*, 335 F. Supp. 3d at 517-21.  Even when Mr. Henry allegedly said that he could get Eckhart in the room with "really powerful people," this statement was made only *after* the first consensual encounter and therefore cannot sustain an allegation that Mr. Henry made this offer in exchange for sex.  *See* TAC ¶ 50.  Moreover, the allegations that Mr. Henry supposedly invited Eckhart to be a guest on his still-non-existent show or that he said he would introduce her to his agent are not alleged to have been made in exchange for sex.  Indeed, there is no claim that Mr. Henry ever said he would have the power to secure a promotion for Eckhart, help her receive a raise, or advance her career in any way if Eckhart agreed to engage in a sexual act with him.  At most, the allegations would support the conclusion that Eckhart agreed to have a sexual relationship with Mr. Henry with the vague hope that doing so could aid her

22

career.  But such a hope was not based on any promise or implication from Mr. Henry that, in exchange for doing so, he would provide Eckhart with something of value.

Finally, as for the additional six women referenced in the TAC, only two of these women actually allegedly had any type of sexual encounter with Mr. Henry and neither of those women allegedly received anything of value in exchange for the purported sex act.  The only allegation that one of the women received something of value were gifts Mr. Henry allegedly gave Jane Doe 1 – the very person who has demanded that Eckhart remove the references to her from the TAC because any encounter with Mr. Henry was consensual.  *See* Ex. G to Foti Decl. at ¶ 12.

After an exhaustive search, we are aware of no cases where the "commercial sex act" element is satisfied without any alleged promise or suggestion that the defendant could confer a valuable benefit on the plaintiff.  To find the element satisfied here would functionally mean that any two individuals who have sex have engaged in a "commercial sex act" if one of the individuals hoped that doing so would aid his or her career.  Any workplace romance could then become a "commercial sex act."  Such a reading defies both logic and precedent.

## II.   PLAINTIFF'S NYHRL CLAIMS FAIL TO STATE A CLAIM FOR RELIEF AND ARE TIME-BARRED

Plaintiff's causes of action alleging violations of the NYSHRL and the NYCHRL, should be dismissed.  The direct claims against Mr. Henry fail because they do not allege that Mr. Henry had authority to hire Eckhart or terminate her employment.  The aiding and abetting claims also fail because Plaintiff's allegations, even if true, do not establish that Mr. Henry aided and abetted a hostile work environment nor retaliated against Eckhart.  Finally, Eckhart's NYSHRL and NYCHRL claims are time-barred as Mr. Henry's alleged conduct occurred over three years ago.

### A.    Eckhart Fails to Allege Mr. Henry Was an Employer or Supervisor

Under the NYSHRL and NYCHRL, employers can be held liable for discriminatory or retaliatory conduct.  *See* N.Y. Exec. Law § 296; New York City, N.Y., Code § 8-107.  In order to qualify as an "employer" under the NYSHRL, an individual must have "1) . . . had the power of the selection and engagement of the employee; 2) . . . made the payment of salary or wages to the employee; 3) . . . had the power of dismissal over the employee; and 4) . . . had the power to control the employee's conduct."  *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 348 (S.D.N.Y. 2009).  An individual employee may also be liable "as an 'employer,' but that is limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees."  *Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) (internal quotation marks omitted).  Even where a plaintiff alleges that an individual defendant "controlled the terms of Plaintiff's work" that is insufficient under NYSHRL unless that individual "had authority to hire or fire" the plaintiff.  *Spires v. MetLife Grp., Inc.*, 2019 WL 4464393, at *6 (S.D.N.Y. Sept. 18, 2019); *see also Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 451 (S.D.N.Y. 2018) (dismissing NYHRL claims where the plaintiff did not "assert that [two individual defendants] had an ownership interest in Fox, nor [did the plaintiff] allege that they had direct supervisory authority over [the plaintiff].").  "Since the NYSHRL 'uses virtually identical language' to the applicable NYCHRL provision, 'claims under both statutes are subject to the same analysis.'"  *Hughes*, 304 F. Supp. 3d at 450-51 (quoting *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 421 (E.D.N.Y. 2010)); *see also Palmer v. Cook*, 64 Misc. 3d 1222(A) (Sup. Ct., N.Y. Cty. 2019) (plaintiff could sustain a NYCHRL claim because the plaintiff did "not allege that [defendant] possessed any supervisory authority" over plaintiff); *Priore v. New York Yankees*, 307 A.D.2d 67, 74 (1st Dep't 2003).

Here, Eckhart does not allege that Mr. Henry had authority to fire her nor could she make such an allegation because Mr. Henry did not have such power.  Eckhart likewise does not allege that Mr. Henry had any supervisory authority whatsoever and certainly no supervisory authority over her as they did not even work in the same division of Fox News.  This pleading failure is fatal to Eckhart's NYSHRL and NYCHRL claims against Mr. Henry.  Even if true, Plaintiff's allegations would, at most, show that Mr. Henry was an employee of Fox News senior to Eckhart.  Such allegations of mere seniority are insufficient to establish liability under the NYHRL.  *See Villar*, 135 F. Supp. 3d at 143; *Priore*, 307 A.D.2d at 74.

## B.    Eckhart Fails to Allege Mr. Henry Aided and Abetted any Hostile Work Environment Claim

In addition to the alleged direct violations, Eckhart's claims that Mr. Henry aided and abetted a hostile work environment, sexual harassment, and gender discrimination should be dismissed because Mr. Henry cannot be held liable for "aiding and abetting" his own alleged conduct.  The NYSHRL and the NYCHRL do allow, in certain contexts, for an individual to be held liable for aiding and abetting discriminatory conduct.  *Krause v. Lancer & Loader Grp.*, 40 Misc.3d 385, 398 (Sup. Ct., N.Y. Cty. 2013).  Both statutes provide that "'it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'"  *Id.* at 323 n.7.  Therefore, "the [NYCHRL] . . . is subject to the same analysis as the [NYSHRL]."  *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 113 (E.D.N.Y. 2001).  This "aiding and abetting" liability, however, "is only a viable theory where an underlying violation has taken place." *Villar*, 135 F. Supp. 3d at 143 (internal quotation marks omitted).  A defendant cannot be held liable "for aiding and abetting their own conduct."  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012).

For example, in *DiPilato*, 662 F. Supp. 2d 333, the plaintiff alleged that the defendants denied her application to become a 7-Eleven franchisee and employee on account of her sex, in violation of the NYHRL and Title VII. *Id.* at 345-46. The plaintiff sued three individuals for direct violations of the law and for aiding and abetting the violations. *Id.* According to the plaintiff, one defendant named Lynch stated that the plaintiff's application should be denied "because a single female over the age of forty (40) would not be suitable for such a franchise." *Id.* at 344. The other two individual defendants allegedly aided and abetted this violation by failing to offer other explanations for the refusal of a franchise and did not dispel Lynch's discriminatory motive. *Id.* at 349. The court concluded that the allegations against these two defendants were insufficient to establish a discriminatory motive and therefore they were not liable for aiding and abetting any NYHRL violations. *Id.* With respect to Lynch, meanwhile, the court concluded that Lynch's alleged conduct discriminated on the basis of sex. *Id.* at 353. The only remaining defendants, however, were Lynch and 7-Eleven. *Id.* The court therefore dismissed the aiding and abetting claims against Lynch because, "Lynch [could not] be held liable under NYHRL for aiding and abetting her own alleged discriminatory conduct." *Id.*; *see also Trower v. Mount Sinai Hosp.*, 2018 WL 4283724, at *16 (S.D.N.Y. Sept. 6, 2018) ("[defendant] cannot be liable for aiding and abetting her own allegedly discriminatory conduct.").

Eckhart's allegations of discrimination consist of purported sexual encounters and text messages exchanged between Mr. Henry and Eckhart alone. Without allegations against others amounting to discrimination, Mr. Henry cannot be held liable for aiding and abetting his own alleged conduct. *See DiPilato*, 662 F. Supp. 2d at 353. An aiding and abetting violation cannot survive without an alleged underlying violation. *See Villar*, 135 F. Supp. 3d at 143.

26

C.      Eckhart Fails to Allege Mr. Henry Retaliated Against Her or Aided and
        Abetted Any Retaliation

With respect to Plaintiff's claims that Mr. Henry retaliated and aided and abetted

retaliation against her, the claims fail both because Eckhart fails to allege an underlying violation

and because she fails to allege that Mr. Henry was in any way involved with employment

decisions.  To establish a case for retaliation under the NYSHRL, a plaintiff must show, "(1)

participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an

adverse employment action; and (4) a causal connection between the protected activity and the

adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010) (internal

quotation marks omitted).  Under the NYCHRL, meanwhile, a plaintiff "must show that she took

an action opposing her employer's discrimination and that, as a result, the employer engaged in

conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v.*

*Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation

omitted).  Under both statutes then, the plaintiff "must demonstrate some evidence that links her

complained-of treatment to a retaliatory motivation." *Wilcox v. Cornell Univ.*, 986 F. Supp. 2d

281, 287 (S.D.N.Y. 2013) (internal quotation marks and alterations omitted).  A plaintiff must

show that the protected activity caused her termination either "'(1) indirectly, by showing that

the protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by

the defendant.'" *Malena*, 886 F. Supp. 2d at 364 (quoting *Gordon v. N.Y. City Bd. of Ed.*, 232

F.3d 111, 117 (2d Cir. 2000)).

To sustain a claim for aiding and abetting retaliation a plaintiff must allege that the

employer committed the underlying primary violation and the individual defendant participated

27

in the retaliation.  *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013)

(NYSHRL and NYCHRL claim alleging aiding and abetting liability for discrimination and

retaliation could not be sustained where "Plaintiff [did] not offer[] any evidence that [the

individual defendant] played any role in any actionable discriminatory act committed against

him" and employer did not commit underlying retaliation).  In one case, the plaintiff credibly

alleged that he was terminated in retaliation because of his race and filed a grievance with the

employer's board of directors.  *Robles v. Goddard Riverside Cmty. Ctr.*, 2009 WL 1704627, at

*1-*2 (S.D.N.Y. June 17, 2009).  The board members summarily denied the plaintiff's grievance

and the plaintiff alleged that the individual directors aided and abetted his retaliatory termination.

*Id*.  The court, however, dismissed plaintiff's claims against the individual directors because an

aiding and abetting claim requires "that the defendant *actually participated* in the conduct giving

rise to the claim".  *Id.* at *3 (emphasis in original).  The plaintiff's allegations "regarding the

Defendant Board Members proffer[ed] [no] facts demonstrating any participation by any such

defendant in [the] discharge decision" and were therefore dismissed.  *Id.*; *see also Nelson v. City

of New York*, 2013 WL 4437224, at *15 (S.D.N.Y. Aug. 19, 2013) (NYSHRL and NYCHRL

claims could not be sustained where "Plaintiff [] proffered no evidence genuinely suggesting that

[the defendant] had anything at all to do with the decision not to rehire Plaintiff.").

Concerning the TAC's allegation that Mr. Henry "retaliated" against Eckhart by filing

redacted pictures of Eckhart in support of Mr. Henry's motion to dismiss, that argument is

without merit.  Courts presume that filings made in connection with a legal proceeding fall

outside the scope of retaliation actions.  *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir.

1998) ("it will be the rare case in which conduct occurring within the scope of litigation

constitutes retaliation").  In one case, a plaintiff alleged that her former employer wrongfully

retaliated against her for engaging in a protected activity. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 (S.D.N.Y. 2017). The plaintiff also alleged retaliation against an individual defendant, in part because of legal filings, which the individual defendant filed in his defense. *Id.* at 420 n.4. The court rejected the plaintiff's allegations against the individual defendant both because "the TAC [did] not allege that [the individual defendant] played any role in either alleged adverse employment action," and because the individual defendant's legal filings "which were filed as part of their defenses in litigations commenced by Plaintiff, do not constitute an adverse action for purposes of stating a retaliation." *Id.*; *see also U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ( "reasonable defensive measures" are not retaliation because "[a]t some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee.")

Here, Eckhart first fails because she does not sufficiently allege any underlying retaliation by Fox News. As Fox News demonstrated in its memorandum in support of its motion to dismiss the TAC, Plaintiff's allegations fail to state a claim that Eckhart's termination was retaliatory for her participation in a protected activity. *See* Dkt. 118 at 19-23. Because Eckhart fails to plead an underlying violation of the NYHRL, her aiding and abetting allegations necessarily fail. *See Villar*, 135 F. Supp. 3d at 143.

Even if Eckhart did state a cause of action against Fox News, she fails to allege that Mr. Henry was involved in any of the alleged retaliatory employment decisions. Eckhart alleges that Fox News retaliated against her and terminated her employment because she complained of a hostile work environment in February and then, many months later, engaged counsel who complained to Fox News about Mr. Henry.[8] TAC ¶ 182. Eckhart does not allege that Mr. Henry

---

[8] While Eckhart alleges that she complained of a "hostile work environment" to Fox News, she concedes that she did not make any allegations specifically regarding Mr. Henry. TAC ¶ 90.

was in any way involved in the decision to terminate Eckhart, that Mr. Henry knew that Eckhart had hired counsel, or even that Mr. Henry knew Eckhart was being terminated.  Without these basic allegations of participation, there can be no claim for aiding and abetting retaliation. *Robles*, 2009 WL 1704627, at \*1-\*3.  Eckhart's remaining claims of "retaliation" against Mr. Henry merely use the word "retaliate" without alleging any nexus between Mr. Henry and Eckhart's termination.  *See* TAC ¶¶ 54, 62, 64.  Mr. Henry, therefore, cannot be held liable for aiding and abetting retaliation, even if Plaintiff does state a claim against Fox News.

Finally, the redacted photographs that Mr. Henry filed in connection with his first motion to dismiss were plainly not retaliation.  In addition to the fact that Mr. Henry was never Eckhart's employer (a fact which is fatal to Eckhart's claim), the redacted photographs which Mr. Henry filed were exhibits in support of a proper legal filing.  Mr. Henry has a right to defend himself and Eckhart cannot state a retaliation claim simply because these defensive measures are averse to her interests, even if she finds their contents embarrassing or even humiliating.  *See Gaughan*, 261 F. Supp. 3d at 420 n.4; *N.Y.C. Trans. Auth.*, 97 F.3d at 677.

### D.      Eckhart's Claims are Time-Barred by the Statutes of Limitations

Eckhart's NYSHRL and NYCHRL claims against Mr. Henry are time-barred as the claims are based on alleged incidents that took place over three years ago.  In order to maintain a claim for relief under the NYSHRL and NYCHRL statutes of limitations, a plaintiff must commence a claim within three years of the actionable conduct.  *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir.2007)).  A plaintiff may overcome these statutes of limitations by alleging a continuing violation, but to do so "'a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.'" *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting *Patterson v.*

30

*County of Oneida*, 375 F.3d 206, 220 (2d Cir.2004)).  The alleged discriminatory act taking place within the statute of limitations must amount to an adverse employment action based on the plaintiff's sex.  *Kassner*, 496 F.3d at 237 (claims were time-barred because alleged acts taking place within the statute of limitations "either do not amount to an adverse employment action or are insufficient factual allegations to infer that those actions were based upon [the plaintiff's] age").  Consequently "petty slights or trivial inconveniences, [which] are not actionable," cannot be used to plead a continuing violation.  *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80 (1st Dep't 2009).  Rather, to comply with the statute of limitations by alleging a continuing violation, a plaintiff must allege "a common policy under which all the actions were carried out." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013).

 *Corrado v. New York Unified Court Sys.* typifies how courts analyze statute of limitations questions in light of an alleged continuing violation.  163 F. Supp. 3d 1 (E.D.N.Y. 2016), *aff'd sub nom. Corrado v. New York State Unified Court Sys.*, 698 F. App'x 36 (2d Cir. 2017).  In *Corrado*, a plaintiff claimed that she was sexually harassed by a superior, who routinely made sexually-charged comments and often inappropriately kissed and touched the plaintiff.  *Id.* at 7. Two individual defendants allegedly participated in, and aided and abetted, this unlawful sexual harassment and retaliation.  *Id.* at 6.  While these events mostly occurred more than three years before the plaintiff filed her lawsuit, the plaintiff alleged that the conduct amounted to a continuing violation.  *Id.*  In analyzing whether the alleged conduct constituted a continuing violation, the court noted that "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Id.* at 20.  Alleging a continuing violation "cannot save untimely claims for discrete discriminatory acts, even where those discrete acts are related to acts within the

31

limitations period . . . [and] a plaintiff cannot establish a continuing violation merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Id*. at 20 (internal quotation marks and citations omitted). Because the plaintiff's last alleged act that could constitute a NYHRL violation occurred three years and six months before the plaintiff filed the lawsuit, the court dismissed the action as time barred. *Id.* at 20-21.

In this case, Eckhart filed her original Complaint on July 20, 2020 and therefore any allegations predating July 20, 2017 are time-barred unless Eckhart can establish sufficient conduct within the three-year period to constitute a continuing violation. *See Kassner*, 496 F.3d at 237. The TAC alleges that the last sexual encounter between Eckhart and Mr. Henry occurred in February 2017 and that Mr. Henry sent the final sexually-charged text message on February 14, 2017. *See* TAC ¶¶ 64, 78-80. Mr. Henry's only alleged conduct after July 20, 2017 are three innocuous messages, which do not rise to the level of harassment or discrimination. *See* TAC ¶¶ 85-87. At most, these assertions demonstrate that Eckhart purportedly continued to feel the effects of conduct alleged to occur before the limitations period. Such allegations are insufficient to state a claim for a continuing violation. *See Corrado*, 163 F. Supp. 3d at 20-21. Though Eckhart was terminated during the limitations period, she does not allege that Mr. Henry was in any way involved in the decision to terminate Eckhart or even that Mr. Henry was aware that she was being terminated.

## III.   ECKHART'S GENDER-MOTIVATED VIOLENCE ACT CLAIM FAILS TO ALLEGE GENDER ANIMUS AND SHOULD BE DISMISSED

Eckhart's Tenth Cause of Action, concerning the GMVA, should be dismissed for failing to sufficiently allege gender animus. To sustain a claim for a violation of the GMVA, a plaintiff must allege that "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender;

(4) in part because of animus against plaintiff's gender; and [5] resulted in injury." *Hughes*, 304 F. Supp. 3d at 455. To plead gender-specific animus, a plaintiff must allege more than "reprehensible conduct against female victims, [because] this factor alone cannot sustain a GMVA claim." *Id*. Rather, a plaintiff must allege facts sufficient to show that the defendant was motivated by "'feelings of animosity and malevolent ill will against women.'" *Garcia v. Comprehensive Ctr., LLC*, 2018 WL 3918180, at *5 (S.D.N.Y. Aug. 16, 2018) (quoting *Hughes*, 304 F. Supp. 3d at 455) (dismissing GMVA claim because failure to show gender-specific animus is "fatal" to a GMVA claim). To meet this burden, conclusory allegations of animus are insufficient, and a plaintiff must offer "specific allegations that [the defendant] harbored or expressed any animosity toward women." *Hughes*, 304 F. Supp. 3d at 455 (dismissing GMVA claim where complaint contained only conclusory allegations of "gender animus"); *see also Garcia*, 2018 WL 3918180, at *5 (same).

Since the GMVA requires gender-specific animus, courts routinely dismiss GMVA claims, even where the plaintiffs allege "egregious" conduct by defendants. *Hughes*, 304 F. Supp. 3d at 455. For example, in one case, the plaintiff alleged that the defendant sexually assaulted her when the plaintiff was underage and physically forced her to engage in oral sex with him. *Cordero v. Epstein*, 869 N.Y.S.2d 725, 726 (Sup. Ct., N.Y. Cty. 2008). Despite these extreme allegations, the court dismissed GMVA claims because the plaintiff, "state[d] no facts to support the required animus as it contain[ed] no more than the conclusory allegation that the alleged crimes of violence were 'motivated by gender.'" *Id.* at 727. In another case, a plaintiff alleged that, on multiple occasions, the defendant drugged and raped her, including while the plaintiff was unconscious. *Gottwald v. Sebert*, 2016 WL 1365969, at *4 (Sup. Ct., N.Y. Cty. Apr. 06, 2016). The court held that, even if true, these allegations did not amount to a GMVA

violation because the facts did not show that the defendant was motivated by gender animus and "[e]very rape is not a gender-motivated hate crime." *Id.* at *21. In yet another case, the court dismissed GMVA claims even where defendant allegedly slapped the plaintiff, called her a "bitch," and threatened to kill her. *Adams v. Jenkins*, 2005 WL 6584554 (Sup. Ct., N.Y. Cty. Apr. 22, 2005); *but see Breest v. Haggis*, 180 A.D.3d 83, 94 (2019) (allegations of rape and sexual assault held sufficient to plead violation of GMVA).

Here, Eckhart's GMVA claim should be dismissed for failing to plead gender-motivated animus. The TAC's only allegations concerning gender-motivated animus are that Defendant sexually assaulted Eckhart "at least in part [because of] an animus based on gender." *See* TAC ¶ 269. The only evidence supporting this claim of supposed gender animus is Defendant's alleged "sexually violent and abusive treatment of women." *See* TAC ¶ 270. These conclusory allegations rest on tautological reasoning and are precisely the sort of GMVA claims that courts routinely dismiss. *See Hughes*, 304 F. Supp. 3d at 455; *Cordero*, 869 N.Y.S.2d at 726-27. While the court in *Breest* sought to lower the GMVA pleading standard, Defendant respectfully submits that this Court should not follow *Breest* as that decision makes the gender-animus requirement of the GMVA superfluous for all cases alleging sexual assault. This judicial reading renders elements of the GMVA mere surplusage and therefore should not be credited.

## IV.   THE PHOTOGRAPHS ARE OUTSIDE THE AMBIT OF THE CRL

Eckhart's suggestion that, by filing photographs she sent Mr. Henry in connection with his motion to dismiss the Second Amended Complaint, Mr. Henry illegally disseminated "revenge porn" is frivolous and clearly devoid of merit. The New York Civil Rights Law prohibits publishing photographs, taken with the expectation that the photographs would remain private, of a person's "unclothed or exposed intimate parts . . . for the purpose of harassing, annoying or alarming such person." CRL § 52-b(1). The law expressly excludes "publication of

34

an intimate . . . image made during lawful and common practices of law enforcement, *legal proceedings* or medical treatment." *Id.* § 52-b(3)(b) (emphasis added).  Eckhart's claim therefore fails for three independent reasons: (1) the photographs did not display unclothed or exposed intimate parts, (2) the purpose of filing the photographs was not to harass, annoy, or alarm Eckhart, and (3) the court filings fall squarely within an explicit exception.

First, Mr. Henry took care to redact any nudity from the photographs filed with the Court. *See* Dkt. 85.  Because all nudity was intentionally redacted the photographs did not display "unclothed or exposed intimate parts" and thus do not even fall within the purview of the Civil Rights Law.  *See* CRL § 52-b(1).   Second, as Mr. Henry argued in support of his motion to dismiss, Plaintiff had incorporated those pictures by reference by including specific allegations concerning nude pictures Mr. Henry had of Eckhart and alleging these pictures were taken by Mr.Henry to blackmail her. *See* Dkt. 84 at 4 n.2.  However, as the photographs demonstrate, and as Eckhart now concedes, she actually took and sent naked and salacious photographs of herself to Mr. Henry (*see* TAC ¶ 198), undermining any claim of supposed blackmail. Thus, the pictures themselves were appropriately included to demonstrate that, as with her other allegations, Eckhart had chosen to cherry-pick the facts. Thus, the purpose of filing the photographs was not to harass, annoy, or alarm Eckhart; Mr. Henry was defending himself and well within his rights to use the photographs to do so.  Finally, even if the redactions or the purpose for including them did not remove the photographs from the law's protection, the publication still would not have violated the Civil Rights Law because such filings in "legal proceedings" are clearly and explicitly exempted by the statute.  *See id.* § 52-b(3)(b).

V.     **THE COURT SHOULD STRIKE IRRELEVANT AND INFLAMMATORY ALLEGATIONS FROM THE THIRD AMENDED COMPLAINT**

In an obvious attempt to further smear Mr. Henry, Eckhart added allegations to the TAC that are completely irrelevant to the case at hand or included solely to prejudice the defendants, all of which the Court should strike from the TAC.  Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  Although motions to strike are generally disfavored, such motions will be granted if the allegations "have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones.'" *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) (citation omitted); *see also Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019) ("Although motions to strike material *solely* 'on the ground that the matter is impertinent and immaterial' are disfavored, when material is also 'scandalous,' no such presumption applies.").  "Stated differently, a court may strike matter from a complaint where its material is prejudicial." *Oram*, 979 F. Supp. 2d at 511.

In the latest version of the complaint, Eckhart adds two categories of immaterial and prejudicial allegations.  First, the allegations concerning Ms. Hammerling by unidentified "Jane Doe" witnesses should be stricken because these unrelated allegations are unfairly prejudicial and unreliable, as the unnamed individuals do not have claims before the court.  Recent media reports claiming that one of these pseudonymous witnesses has objected to the TAC's portrayal of her claims further demonstrates the prejudice of including these unverifiable allegations.  Second, allegations about defense counsel's strategies and tactics in other litigation should be struck as these baseless allegations are irrelevant to Plaintiff's claims and serve only to prejudice the public.

A.      **Plaintiff's Inclusion of Irrelevant and Unsupported Allegations Concerning Pseudonymous Witnesses and Non-Fox Employees Should be Stricken**

Plaintiff's inclusion of allegations related to four "Jane Does" who supposedly received texts or "inappropriate[]" messages from Mr. Henry (TAC ¶ 150; *see* ¶¶ 149-164) should be stricken as both immaterial and prejudicial.  Allegations of what may have occurred between Mr. Henry and any other individual is completely irrelevant to this suit, which centers upon only what happened with Eckhart.  The fact that the Jane Doe witnesses are anonymous makes the allegations even more prejudicial because they are the type of "amorphous, unspecific" allegations that "cannot be defended against," as Mr. Henry is not provided with essential information necessary to identify who supposedly made these allegations.  *See G–I Holdings, Inc. v. Baron & Budd,* 238 F. Supp. 2d 521, 555-56 (S.D.N.Y. 2002) (granting motion to strike allegations that partner at defendant firm suggested to unspecified female employee that she should have sex with firm clients because allegations were irrelevant and also prejudicial)*.  The only purpose for including these allegations is to "harm [Mr. Henry] in the public eye and . . . influence prospective jury members." *Id.* at 556.

Alleged conduct by a defendant against anonymous individuals not before the Court has repeatedly been found to be irrelevant and prejudicial.  For example, in *Giroux v. Foley*, another court in this Circuit determined that "allegations of torts committed [by defendant] against unnamed individuals" should be stricken from the plaintiff's complaint.  2020 WL 1677073, at *7 (D. Vt. Apr. 6, 2020) (granting motion to strike the Complaint's "unfairly prejudicial and superfluous allegations regarding unnamed individuals not before the court").  The *Giroux* court found that since "Plaintiff cannot recover for Defendant's alleged conduct involving other individuals and has no standing to bring claims on those individuals' behalf," the references to other potential unidentified victims was "superfluous" and had the potential to cause unnecessary

prejudice.  *Id.*  The same reasoning holds here, where the "Jane Doe" individuals are not otherwise involved in this suit and are included only to further smear Mr. Henry.

The TAC's inclusion of allegations attributed to "Jane Doe 1" are especially troublesome because there is independent reason to believe that these allegations are simply false.  In a recent media article, the individual identified as Jane Doe 1 publicly disclaimed the allegations attributed to her, telling a reporter that these allegations were "inaccurate," and several aspects were simply false.  *See* Exhibit G to Foti Decl. at ¶ 12.  This public repudiation is particularly disturbing since it demonstrates that, not only are these allegations false, but Eckhart and her counsel know them to be false.  *See* Foti Decl. at ¶ 13.

In addition to the pseudonymous witnesses, Eckhart also includes completely irrelevant allegations concerning a date Mr. Henry had with Brooke Hammerling and an encounter with Roxie Marroquin, both of whom have no relationship with Fox News nor have any information relevant to any of the claims alleged in the TAC.  The fact that Mr. Henry dated other people, many of whom did not work with him, or met them for drinks, has nothing to do with Eckhart's claim and has been included only for its salacious and prejudicial value.  The Court, therefore, should strike paragraphs 134 through 164 of the TAC.[9]

### B.    Plaintiff's Inclusion of Outrageous and Unsupported Allegations About Defense Counsel Should Be Stricken as Irrelevant and Prejudicial

The addition of several unfounded and outrageous allegations about the litigation tactics employed by Defendants' counsel also should be stricken.  *See* TAC ¶¶ 206-210.  The TAC includes a variety of unsupported and purely inflammatory allegations claiming that the two Defendants' law firms were supposedly retained to engage in "retaliatory litigation."  TAC ¶¶

---

[9] In addition to striking the sections laying out the allegations related to the six additional women, Mr. Henry also asks that the Court strike the portions of paragraphs 97 and 117 that discuss these individuals.

206, 209-210.  As is obvious, allegations relating to counsel's representation of other clients, in other matters, involving wholly unrelated conduct and different causes of action, has absolutely nothing to do with Eckhart's case.  Nor does speculation about why counsel may have been retained or their litigation strategy have any bearing on Eckhart's claims.  These outrageous allegations are irrelevant to Eckhart's causes of action and are a quintessential example of allegations that "serves no purpose except to inflame the reader."  *Oram,* 979 F. Supp. 2d at 511.

Additionally, the allegations from an unrelated case against Fox (TAC ¶¶ 207-208) should be stricken because these claims, from a now-dismissed case, are immaterial to this matter.  "It is well settled under Second Circuit law that allegations in a complaint 'that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f).'" *Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012), *citing RSM Production Corp. v. Fridman,* 643 F.Supp.2d 382, 403 (S.D.N.Y.2009) (collecting cases).  The allegations plaintiff cites from the *Brown* case do not in any way relate to Mr. Henry, nor even to allegations of sexual harassment; these allegations are fully immaterial to this action, and "serve no purpose except to inflame the reader."  *Low*, 2012 WL 173472, at *9.

## VI.     THE COURT SHOULD AWARD MR. HENRY SANCTIONS

The Court should use its inherent power to sanction Eckhart and her counsel for including false and prejudicial allegations concerning other woman and defense counsel in the TAC and for refusing to remove statements they have been told are inaccurate.  The Court's inherent powers allow for the imposition of sanctions.  *See Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017) (internal citations omitted) (upholding award of attorneys' fees as sanction for bad faith conduct because "Federal courts possess certain 'inherent powers' including 'the ability to fashion an appropriate sanction for conduct which abuses the judicial

process."). Here, Eckhart and her counsels' decided to include allegations in the amended complaint about other women that they appear to not even have vetted prior to their inclusion and to have included the allegations about defense counsel, which appear to be made up of whole cloth, clearly supports an award of sanctions. Moreover, counsel's blatant refusal to remove allegations attributed to Jane Doe 1, after being specifically told *by Jane Doe 1 herself* that the allegations attributed to her in the TAC are "inaccurate" and false, *see* Ex. G to Foti Decl. at ¶ 12, is the type of bad faith conduct that should be condemned. The inclusion of these inaccurate and prejudicial allegations has required defense counsel to move to strike the allegations, and, accordingly, Mr. Henry asks the Court to award him the costs of preparing the motion to strike. *See Haeger,* 137 S. Ct. at 1186.

## VII.   THE COURT SHOULD GRANT MR. HENRY'S MOTION FOR A MORE DEFINITE STATEMENT

In response to Plaintiff's Second Amended Complaint, Mr. Henry filed a motion for a more definite statement, in addition to his motion to dismiss. Plaintiff's TAC fails to rectify her pleading deficiencies.

A motion for a more definite statement may be filed when "a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Whether "to grant a motion for a more definite statement is a matter within the discretion of the trial court." *In re Argo Commc'ns Corp.*, 134 B.R. 776, 797 (Bankr. S.D.N.Y. 1991). Such motions may be appropriate where a complaint falls short of the Federal Rule of Civil Procedure's pleading requirements. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992) (granting the defendant's motion for a more definite statement where the complaint "fail[ed] to comply with Rule 8 in several ways"); *see also Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 103 (E.D.N.Y. 2004) ("Because [the defendant] cannot reasonably be expected

to respond to Count III in its present form, the Court *sua sponte* directs [the plaintiff] to provide a more definite statement as to that Count.").

Here, Eckhart was on notice of her complaint's deficiencies, through Mr. Henry's motions concerning Eckhart's Second Amended Complaint, which noted that Eckhart fails to provide a precise date for the alleged rape and leaves many alleged communications from Mr. Henry undated, making it impossible to discern whether the alleged communications predated or postdated the alleged rape. *See* Dkt. 84 at 29-32. On her TAC, Eckhart adds that the alleged rape apparently occurred sometime in February 2017, however, Eckhart still refuses to provide an exact date despite apparently knowing the date. *See* TAC ¶ 76 (Eckhart claims to have texts from the "next day"). In this revised pleading, Eckhart also reordered numerous alleged communications, in an apparent concession that those communications in fact postdated the alleged rape and therefore could not possibly have "enticed" Eckhart in violation of the TVPA. *See* TAC ¶¶ 76-79. Still, however, even though she must have them, Eckhart has continued to refuse to provide dates for numerous snippets of texts messages. *See* TAC ¶¶ 61-63.

Without a date for the alleged rape, Mr. Henry, and the Court, are unable to assess the import of any subsequent communication between Eckhart and Mr. Henry. Furthermore, without dates for these undated text communications, the Court is unable to examine whether such communications could have improperly enticed Eckhart in violation of the TVPA. If this Court does not dismiss Eckhart's allegation of sex trafficking with prejudice, it should therefore require that Eckhart provide dates for the messages to allow Mr. Henry to defend himself against a claim of improper enticement. *See Shuvalova*, 2010 WL 5387770, at *4 ("enticement" must come before alleged sex act). A more definite statement would allow Mr. Henry to file a responsive pleading and would allow the Court to analyze the sufficiency of Eckhart's claims.

**CONCLUSION**

For the foregoing reasons, Mr. Henry respectfully submits that this Court should dismiss each of Plaintiff's claims against him with prejudice.[10]  If the Court does not dismiss the Third Amended Complaint in its entirety, this Court should strike the immaterial and scandalous allegations in the Third Amended Complaint, order sanctions reimbursing Mr. Henry for the cost of making the  motion to strike, and order that the plaintiff provide him with a more definite statement.

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC


By:  /s/ Elkan Abramowitz
Elkan Abramowitz
Catherine M. Foti
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

---

[10] Having already substantively amended, Plaintiff should not be permitted to replead again.  The failure, even upon multiple amendments, to state a viable claim shows that the deficiencies are "substantive" rather than merely "inartful" and leave to replead should therefore be denied.  *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000)); *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) ("In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile").