UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER ECKHART,

                Plaintiff,

                v.

FOX NEWS NETWORK, LLC, and ED HENRY, in his individual and professional capacities,

                Defendants.

Case No. 20-CV-5593 (RA)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ED HENRY'S  MOTION TO DISMISS, MOTION TO STRIKE, MOTION FOR SANCTIONS, AND MOTION FOR A MORE DEFINITE STATEMENT**

Elkan Abramowitz
Catherine M. Foti
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................... iii

ARGUMENT ...........................................................................1

    I.   THE TAC FAILS TO PLEAD A CLAIM UNDER THE TVPA..................................1

        A.  The TAC Does Not Allege Mr. Henry Improperly Enticed Eckhart
            to Engage in a "Commercial Sex Act" ....................................................1

        B.  The TAC Fails to Allege Mr. Henry Knew Fraud or Force Would
            be Used...........................................................................................4

    II.  THE TAC FAILS TO PLEAD ANY NYHRL VIOLATION ........................................5

        A.  Mr. Henry is not Individually Liable Under the NYHRL ........................5

        B.  The TAC Fails to Allege Mr. Henry Aided and Abetted a Hostile
            Work Environment.......................................................................8

        C.  The TAC Fails to State a Claim Against Mr. Henry for Retaliation .....................9

            i.   *The Exhibits attached in support of Mr. Henry's motions were*
               *incorporated by reference in the TAC* ...........................................11

        D.  The TAC's NYHRL Discrimination Claims are Time-Barred............................14

    III. THE TAC DOES NOT ALLEGE A GMVA VIOLATION .......................................16

    IV. THE TAC DOES NOT ALLEGE AN UNLAWFUL DISSEMINATION
        OF AN INTIMATE IMAGE ...................................................................18

    V.  PLAINTIFF'S IRRELEVANT AND INFLAMMATORY ALLEGATIONS
        SHOULD BE STRICKEN FROM THE TAC........................................................20

        A.  Plaintiff's Inclusion of Pseudonymous Witnesses and Non-Fox
            Employees is Prejudicial and Should be Stricken.................................20

        B.  Plaintiff's Unsupported Allegations About Defense Counsel's
            Conduct are Rank Speculation and Should Be Stricken as Prejudicial ................22

C.  Plaintiff's Prejudicial Conduct Warrants Sanctions ................................................23

VI. A MORE DEFINITIVE STATEMENT IS WARRANTED .......................................24

CONCLUSION....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Adams v. Jenkins*,
2005 WL 6584554 (Sup. Ct., N.Y. Cty. Apr. 22, 2005) .................................................. 17, 18

*Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*,
2018 WL 2416568 (S.D.N.Y. May 29, 2018) .......................................................................... 15

*Barbato v. Bowden*,
63 A.D.3d 1580 (4th Dep't 2009) ............................................................................................ 9

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) .................................................................................................. 20

*Breest v. Haggis*,
180 A.D.3d 83 (1st Dep't 2019) ............................................................................................ 16

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) .................................................................................................... 20

*Burlington Northern & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ................................................................................................................ 10

*Cordero v. Epstein*,
869 N.Y.S.2d 725 (Sup. Ct., N.Y. Cty. 2008) .................................................................. 17, 18

*Corrado v. New York Unified Court Sys.*,
163 F. Supp. 3d 1 (E.D.N.Y. 2016) ....................................................................................... 15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .................................................................................................... 12

*Crisonino v. New York City Hous. Auth.*,
985 F. Supp. 385 (S.D.N.Y. 1997) ........................................................................................ 16

*David v. Weinstein Co. LLC*,
431 F. Supp. 3d 290 (S.D.N.Y. 2019) ................................................................................... 1, 2

*DeLuca v. AccessIT Grp., Inc.*,
695 F.Supp.2d 54 (S.D.N.Y. 2010) ....................................................................................... 12

*DeWitt v. Lieberman*,
48 F.Supp.2d 280 (S.D.N.Y.1999) .......................................................................................... 9

*DiBella v. Hopkins*,
 403 F.3d 102 (2d Cir. 2005) ............................................................................. 16

*DiPilato v. 7-Eleven, Inc.*,
 662 F. Supp. 2d 333 (S.D.N.Y. 2009) ............................................................. 8, 9

*Drew v. Plaza Const. Corp.*,
 688 F. Supp. 2d 270 (S.D.N.Y. 2010) ............................................................... 14

*Emmons v. City Univ. of New York*,
 715 F. Supp. 2d 394 (E.D.N.Y. 2010) ............................................................... 6

*Gallo v. Prudential Residential Servs.*,
 22 F.3d 1219 (2d Cir.1994) ............................................................................... 16

*Gaughan v. Rubenstein*,
 261 F. Supp. 3d 390 (S.D.N.Y. 2017) ......................................................... 10, 11

*Geiss v. Weinstein Co. Holdings LLC*,
 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................................. 2

*Gottwald v. Sebert*,
 2016 WL 1365969 (Sup. Ct., N.Y. Cty. Apr. 06, 2016) ................................ 17, 18

*Henry-Offor v. City Univ. of New York*
 2012 WL 2317540 (S.D.N.Y. June 15, 2012) ..................................................... 8

*Huett v. Weinstein Co. LLC*
 2018 WL 6314159 (C.D. Cal. Nov. 5, 2018) ....................................................... 4

*Hughes v. Twenty-First Century Fox, Inc.*,
 304 F. Supp. 3d 429 (S.D.N.Y. 2018) ...................................................... 6, 17, 18

*Jain v. McGraw-Hill Companies, Inc.*,
 827 F. Supp. 2d 272 (S.D.N.Y. 2011) ................................................................. 9

*Kelly v. L.L. Cool J.*,
 145 F.R.D. 32 (S.D.N.Y. 1992) ........................................................................ 24

*Lopez-Serrano v. Rockmore*,
 132 F. Supp. 3d 390 (E.D.N.Y. 2015) .......................................................... 12, 13

*Low v. Robb*,
 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ....................................................... 23

*McGullam v. Cedar Graphics, Inc.*,
 609 F.3d 70 (2d Cir. 2010) ............................................................................... 15

*Medical Exp. Amb. Corp. v. Kirkland*,
    79 AD.3d 886 (2d Dep't 2010) ........................................................................... 9

*Musah v. Houslanger & Assocs., PLLC*,
    2012 WL 5835293 (S.D.N.Y. Nov. 16, 2012) .................................................... 17

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ......................................................................................... 14

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 ................................................................................. 1, 2, 4

*Oram v. Soul Cycle LLC*,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013) ............................................................. 23

*Petrosky v. N.Y. State Dep't of Motor Vehicles*,
    72 F. Supp. 2d 39 (N.D.N.Y. 1999) .................................................................. 17

*Priore v. New York Yankees*,
    307 A.D.2d 67 (1st Dep't 2003) ..................................................................... 6, 8

*Robinson v. Brooklyn Coll.*,
    2010 WL 3924012 (E.D.N.Y. Sept. 29, 2010) ................................................. 14

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
    2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) .................................................. 13

*Shuvalova v. Cunningham*,
    2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) .................................................. 24

*Spires v. MetLife Grp., Inc.*,
    2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ................................................... 7

*Straker v. Metro. Transit Auth.*,
    333 F. Supp. 2d 91 (E.D.N.Y. 2004) ............................................................... 25

*Strauss v. Dep't of Educ.*,
    26 AD.3d 67 (3d Dep't 2005) ........................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 12

*Todd v. United States*,
    2012 WL 2952084 (W.D. Wash. June 26, 2012) ................................................ 3

*Townsend v. Benjamin Enterprises, Inc.*,
    679 F.3d 41 (2d Cir. 2012) ............................................................................... 7

*U.S. v. N.Y.C. Trans. Auth.*,
  97 F.3d 672 (2d Cir. 1996) ................................................................................. 11

*United States v. Campbell*,
  111 F. Supp. 3d 340 (W.D.N.Y. 2015) .................................................................. 3

*United States v. Morrison*,
  529 U.S. 598 (2000) .............................................................................................. 3

*Villar v. City of New York*,
  135 F. Supp. 3d 105 (S.D.N.Y. 2015) ................................................................ 7, 8

*Wheeler v. Twenty-First Century Fox*,
  322 F. Supp. 3d 445 (S.D.N.Y. 2018) ................................................................. 12

## **<u>Statutes</u>**

N.Y. Civ. Rights Law §52-b ........................................................................ 18, 19, 20

## **<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 12

Fed. R. Civ. P. 12(e) ........................................................................................... 25

Fed. R. Civ. P. 12(f) ........................................................................................... 12

In his memorandum of law in support of his motion to dismiss, Defendant Ed Henry demonstrated that Plaintiff Jennifer Eckhart's claims that Mr. Henry violated the TVPA, the NYHRL, the GMVA, and the N.Y. Civ. Rights Law were meritless and should be dismissed.[1] Mr. Henry also demonstrated that portions of the TAC should be stricken, that sanctions are warranted, and that Plaintiff should provide a more definite statement.  In her Opposition to Mr. Henry's motions ("Opposition" or "Opp."), Eckhart makes several unavailing arguments.  These arguments universally fail and cannot save the TAC from dismissal.  Because Eckhart's allegations fail to state a claim, even upon substantive amendment, her claims should be dismissed with prejudice.  If the Court does not dismiss the TAC in its entirety, it should nevertheless grant Mr. Henry's motions to strike and for a more definite statement.

## ARGUMENT

I.    **THE TAC FAILS TO PLEAD A CLAIM UNDER THE TVPA**

    A.    **The TAC Does Not Allege Mr. Henry Improperly Enticed Eckhart to Engage in a "Commercial Sex Act"**

In his opening memorandum Mr. Henry argued that the TAC failed properly to allege that Mr. Henry "enticed" the Plaintiff as required to state a claim under the TVPA.  *See* Dkt. 124 at 13-23.  Plaintiff's Opposition failed to confront the clear pleading deficiencies in her claim that Mr. Henry violated the TVPA.  Specifically, the TAC fails to allege that Mr. Henry improperly "enticed" Eckhart in exchange for a "commercial sex act."  In her Opposition, Eckhart accurately describes that courts interpreting the TVPA give "entice" its ordinary meaning, "which is to attract artfully or adroitly or by arousing hope or desire, and to attract or tempt by offering pleasure or advantage."  *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 300 (S.D.N.Y. 2019) (Abrams, J.) (quoting *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517

---

[1] Capitalized terms herein have the same meaning as in Mr. Henry's opening brief.

(S.D.N.Y. 2018)).  Eckhart ignores, however, the necessity that such "offers" be made *in exchange* for a commercial sex act, and the TAC fails to plead such an exchange or any such commercial sex act.  Indeed, the TAC concedes that Eckhart and Mr. Henry were already engaged in a consensual sexual relationship prior to any alleged "enticement."  *See* TAC ¶ 49.  This fact alone makes *David* distinguishable, because in *David* the plaintiff's TVPA claims were premised on the allegation that the defendant fraudulently enticed the plaintiff to meet with him for the first time on the false promise of being able to help her career and instead forced the plaintiff to have sex with him at that meeting.  *See David*, 431 F. Supp. 3d at 300-01.  Plaintiff's Opposition, moreover, does not address how her wrongful interpretation of the TVPA would open the door to TVPA lawsuits and prosecutions beyond the dictates of the statute and beyond what is constitutionally permissible.

In support of her argument that she has pled a TVPA violation, Eckhart cites to several *Weinstein* cases which, taken together, in fact demonstrate the inapplicability of the TVPA to the case at bar.  *See* Opp. 10-13.  In each case cited by Eckhart, the plaintiff pled that the defendant made fraudulent promises of career advancements to the plaintiffs, in exchange for the plaintiffs engaging in a commercial sex act with the defendant.  *See Noble*, 335 F. Supp. 3d at 517; *David*, 431 F. Supp. 3d at 300; *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019).  Significantly, in none of the cases was the plaintiff already engaged in a consensual sexual relationship prior to any alleged "enticement."  Furthermore, these cases relied on the fact that the defendant made fraudulent promises specifically in exchange for a commercial sex act.  In this case, by contrast, Eckhart relies on vague, after-the-fact statements like Mr. Henry supposedly saying he could get Eckhart "in a room with some really powerful people."  *See* TAC ¶ 50.  The TAC provides no reason for the Court to conclude that such vague

statements were offered in exchange for anything, much less in exchange for a "commercial sex act," particularly where the TAC concedes that the parties were already engaged in a consensual sexual relationship. Eckhart cites no case concluding that a TVPA violation is adequately pled in such an instance.

Even if the Court were to find that Mr. Henry "enticed" Eckhart, there was no "commercial sex act" within the meaning of the TVPA. The TVPA, enacted by Congress through the commerce clause, applies only to economic transactions. *See United States v. Campbell*, 111 F. Supp. 3d 340, 344-46 (W.D.N.Y. 2015) (TVPA was intended to regulate an "economic 'class of activities'"); *Todd v. United States*, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012) ("commercial sex acts are necessarily economic in nature . . . and distinguishable from laws governing gender-motivated crimes of violence and not involving such economic activity."). Without this economic exchange, enforcement of the TVPA through the commerce clause is unconstitutional. *United States v. Morrison,* 529 U.S. 598, 613 (2000) (holding that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity," and therefore their regulation under the commerce clause was unconstitutional). Here, Eckhart does not allege that her sex with Mr. Henry was remotely "commercial" in nature. As outlined in Mr. Henry's moving brief, Eckhart's allegations would at most sustain the inference that she had a vague hope that having sex with Mr. Henry would aid her career, but that hope was not based on any commercial exchange or on anything said by Mr. Henry. Finding that the TAC's allegations amount to a "commercial sex act" would broaden the TVPA to include any workplace romance where one party allegedly *hoped* that the romance would aid his or her career. This interpretation would stretch the TVPA beyond the limits of Congress's power to regulate interstate commerce and should not be countenanced. *See Morrison,* 529 U.S. at 613.

### B.      The TAC Fails to Allege Mr. Henry Knew Fraud or Force Would be Used

As Mr. Henry also argues in his opening memorandum (*see* Dkt. 124 at 18-21), the TAC likewise fails to plead that Mr. Henry knew fraud or force would be used, which is a necessary element of the TVPA.  *See Noble*, 335 F. Supp. 3d at 515.  Plaintiff's Opposition argues that the Court can infer that Mr. Henry knew that he would use fraud or force simply because Eckhart alleges that Mr. Henry used fraud or force.  Opp. 13-16.  This argument is wrong on the law and rests on circular reasoning.  Indeed, contrary to Eckhart's argument, the cases she cites universally hold that more than alleged action is needed to plead knowledge, such as allegations of a pattern of behavior or *modus operandi*.  For example, Plaintiff misinterprets *Huett v. Weinstein Co. LLC* as meaning that knowledge is assumed where the defendant perpetrated the conduct.  Opp. 13-14.  That is not, however, the holding of *Huett*.  *Huett actually* held that a plaintiff sufficiently pled the knowledge element where the pleading "sufficiently allege[d] that [d]efendant engaged in a pattern of conduct."  2018 WL 6314159, at *2 (C.D. Cal. Nov. 5, 2018).  The court then said that the defendant in that case was necessarily aware *of this pattern* because he was  alleged to have perpetrated it.  *Id*.  In  other words, *Huett* holds that a defendant is necessarily aware of his own alleged pattern, but the court still found it necessary to find the existence of that pattern in order to find the knowledge element satisfied.  *Id*.  Similarly, in *Noble*, the court found that the defendant's "pattern of behavior" was sufficient to "plausibly allege that [the defendant] was aware, when he enticed and recruited [the plaintiff] throughout 2014 to work for him as an actress, that his promises had no factual basis."  335 F. Supp. 3d at 518.  Contrary to Eckhart's contentions, therefore, she must allege more than merely that Mr. Henry used fraud or force in order to plead that Mr. Henry *knew* fraud or forced would be used particularly where they had already begun a consensual relationship.

4

While Eckhart argues that Mr. Henry's position would render the TVPA only applicable to serial abusers, this is untrue.  If a plaintiff can present other facts evidencing, for example, a defendant's fraudulent intent, such evidence could satisfy the TVPA.  Merely alleging that Mr. Henry used fraud or force, however, is insufficient to plead the knowledge element.  Perhaps recognizing the flaw in her pleading, Eckhart attempts, unsuccessfully, to plead that Mr. Henry had a pattern of using "force" with women.  Opp. 15; TAC ¶¶ 140-44, 156-57.  The only other incident that even plausibly alleges "force," however, is the claim that Jane Doe 1 supposedly told Plaintiff that Mr. Henry once "slapped her face."  TAC ¶156.  However, that allegation has been publicly repudiated by the woman alleged to be involved, who stated that, contrary to Plaintiff's spurious allegations, her relationship with Mr. Henry was entirely consensual.  *See* Dkt. 125, Ex. G.  By its very terms, the TVPA does not apply to consensual sexual conduct, no matter its nature, and, thus, allegations of consensual acts cannot be used to meet the pleading requirements for a TVPA claim.  Eckhart also seeks to rely on the selective text messages quoted in the TAC to establish the element of prior knowledge, but those messages are incomplete and undated, while also doing nothing to show intent or motive.  The lack of pattern alleged in the TAC, along with failing to otherwise plead the knowledge element, is fatal to Eckhart's TVPA claim.

## II.     THE TAC FAILS TO PLEAD ANY NYHRL VIOLATION

### A.     Mr. Henry is not Individually Liable Under the NYHRL

In his opening memorandum, Mr. Henry moved to dismiss Eckhart's claims  that he is individually liable under the NYCHRL and NYSHRL.  In her Opposition, Eckhart argues that the Court should reject the holdings of the previous SDNY cases, that cases stand for propositions directly contrary to their clear holdings, and that the Court should ignore other apposite case law.  The Court should reject all of Eckhart's arguments.  Clear precedent

demonstrates that Mr. Henry is not individually liable under either the NYCHRL or the NYSHRL because he was never Eckhart's employer or supervisor.

In arguing that Mr. Henry is individually liable under the NYCHRL, Plaintiff's argument rests on the notion that *Hughes v. Twenty-First Century Fox, Inc.* was wrongly decided and misapplied prior case law.  Opp. 18 n.5.  This argument also is wrong.  In *Hughes*, the plaintiff asserted NYCHRL and NYSHRL claims against individual defendants, alleging individual liability for the statutes' violations.  304 F. Supp. 3d 429, 450 (S.D.N.Y. 2018).  The Court noted that the law acknowledges that individual liability is governed by the same principles under both the NYCHRL and NYSHRL.  *Id.* at 450-51 (citing *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 421 (E.D.N.Y. 2010)).  The Court thus concluded that because the plaintiff did not "assert that [the individual defendants] had an ownership interest in Fox, nor [did] it allege that they had direct supervisory authority over [the plaintiff]" there could be no individual liability under either the NYCHRL or NYSHRL.  *Id.* at 451.  Contrary to Eckhart's suggestion, moreover, *Hughes* is far from a standalone case, as numerous decisions require a plaintiff to plead managerial or supervisory authority to plead individual liability under the NYCHRL, as explicitly required in the NYCHRL itself.  *See, e.g.*, *Priore v. New York Yankees*, 307 A.D.2d 67, 74 (1st Dep't 2003) (individual liability under NYCHRL exists only where the defendant "act[s] with or on behalf of the employer in hiring, firing, paying, or in administering the 'terms, conditions or privileges of employment' – in other words, in some agency or supervisory capacity").  Contrary to Eckhart's suggestion, therefore, "[t]here is no indication in the [NYCHRL], explicit or implicit, that it was intended to afford a separate right of action against any and all fellow employees based on their independent and unsanctioned contribution to a hostile environment."  *Id.*

With respect to the NYSHRL, Eckhart's arguments are even more misleading.  Eckhart contends that, in order to be individually liable under the NYSHRL, Mr. Henry need only "have the power to do more than carry out personnel decisions made by others."  Opp. 19.  Setting aside that Eckhart does not even plead that Mr. Henry had such power, Eckhart blatantly misstates the law.  Indeed, in the very next sentence of the case upon which Eckhart relies, the court states that the individual was only directly liable under the NYSRL because "there was no dispute that [the individual defendant] had an ownership interest in the company and the power to hire and fire employees." *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012).  This confirms, along with a litany of other cases and contrary to Plaintiff's deceptive characterization, that the NYSHRL requires an individual to have the authority to hire and fire the plaintiff in order to be directly liable under the statute.  *See Villar v. City of New York*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015) (an individual employee may also be liable "as an 'employer,' but that is limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees"); *Spires v. MetLife Grp., Inc.*, 2019 WL 4464393, at *6 (S.D.N.Y. Sept. 18, 2019) (Abrams, J.).

In this case then, Mr. Henry bears no individual liability under the NYCHRL or the NYSHRL since Mr. Henry clearly did not serve in any managerial or supervisory capacity over Eckhart and certainly did not have the ability to hire or fire her.  Eckhart's only argument in favor of individual liability is that Mr. Henry allegedly told Eckhart that Mr. Henry would have the power to bring Eckhart onto Mr. Henry's "new show," if that show were to ever materialize.  Opp. 19; TAC ¶ 65.  Even if it were true that Mr. Henry said this, the statement that Mr. Henry may one day be able to help book Eckhart on a television program does not, in any way, show that Mr. Henry had supervisory authority over Eckhart at the time or that he would even have

supervisory authority over her at a later date.  *See Priore*, 307 A.D.2d at 74 (focusing on individual defendant's actual authority, not alleged stated authority).  These allegations certainly do not suggest that Mr. Henry ever had an ownership interest in Fox News or the ability to terminate Eckhart's employment, as required by the NYHRL.  *See Villar*, 135 F. Supp. 3d at 143.

**B.    The TAC Fails to Allege Mr. Henry Aided and Abetted a Hostile Work Environment**

Plaintiff's argument that Mr. Henry aided and abetted NYHRL violations hinges on her argument that Mr. Henry could be held liable for aiding and abetting his own conduct.  Again, Eckhart misstates and misapplies the law.  For example, Eckhart cites *Henry-Offor v. City Univ. of New York* for the proposition that Mr. Henry can be held liable for aiding and abetting his own conduct, regardless of any culpability from Fox News.  Opp. 20.  In *Henry-Offor*, however, the Court only allowed for potential aiding and abetting liability against the individual defendant after dismissing the claims against the employer because it ruled that the employer was protected by sovereign immunity, not because the plaintiff failed to state a claim against the employer.  *See* 2012 WL 2317540, at *5 (S.D.N.Y. June 15, 2012).  *Henry-Offor*, therefore, only applies where an employer may be shielded from liability for non-substantive reasons, such as sovereign immunity, but where the plaintiff nonetheless states a violation of the NYHRL against the employer.  *See id*.

In contrast to the inapplicable cases Plaintiff cites, the law is clear that claims against an individual defendant must be dismissed where the plaintiff substantively fails to separately state a NYHRL claim against the employer.  Indeed, in his moving brief, Mr. Henry described the analogous factual and legal holdings of *DiPilato v. 7-Eleven, Inc.*, which held that an individual defendant could not "be held liable under NYHRL for aiding and abetting [their] own alleged discriminatory conduct," where the plaintiff pled NYHRL violations against the individual

employee and the employer.  662 F. Supp. 2d 333, 353 (S.D.N.Y. 2009).  In her Opposition,

Eckhart makes no attempt to distinguish *DiPilato* from the TAC's allegations because she

cannot.  Indeed, the fact that an individual employee cannot be held liable for aiding and abetting

without a valid separate claim against the employer is widely recognized in New York law.  *See*

*Medical Exp. Amb. Corp. v. Kirkland*, 79 AD.3d 886, 888 (2d Dep't 2010) (no aiding and

abetting liability where there was no legal basis for holding the employer liable); *Barbato v.*

*Bowden*, 63 A.D.3d 1580, 1581-82 (4th Dep't 2009) (individual defendant is not liable for

"aiding and abetting" where no violation of the NYHRL by another party had been established);

*Strauss v. Dep't of Educ.*, 26 AD.3d 67, 73 (3d Dep't 2005) ("[W]here no violation of the

[NYHRL] by another party has been established, we find that an individual employee cannot be

held liable for aiding or abetting such a violation."); *Jain v. McGraw-Hill Companies, Inc.*, 827

F. Supp. 2d 272, 276–77 (S.D.N.Y. 2011) ("[NYHRL] require[s] 'that liability must first be

established as to the employer/principal before accessorial liability can be found as to an alleged

aider and abettor'" (quoting *DeWitt v. Lieberman,* 48 F.Supp.2d 280, 293 (S.D.N.Y.1999)).

 Here, the TAC's aiding and abetting claims against Mr. Henry fail because they

improperly seek to hold Mr. Henry liable for aiding and abetting his own alleged misconduct.

Eckhart, in effect, asks the court to read out this pleading requirement from the NYHRL by

stating, in entirely conclusory fashion, that Mr. Henry's actions "aided" Fox in establishing the

alleged hostile work environment.  Without separate and substantive allegations of misconduct

against the employer, however, Mr. Henry cannot be held liable for aiding and abetting any

alleged NYHRL violations.  *See DiPilato*, 662 F. Supp. 2d at 353; *Kirkland*, 79 AD.3d at 888.

 **C.**  **The TAC Fails to State a Claim Against Mr. Henry for Retaliation**

 Mr. Henry moved to dismiss the retaliation claim on the grounds that the TAC fails to

allege that he ever took, or aided, an adverse employment action against Eckhart.  In her

Opposition, Eckhart concedes that Mr. Henry was not in any way involved with the decision to terminate Eckhart and therefore could not be liable for aiding and abetting that alleged retaliation.  Eckhart, however, then argues that the claim should stand because Mr. Henry retaliated against Eckhart by filing a motion to dismiss and attaching exhibits, including redacted images of Eckhart, citing a string of cases supposedly supporting her argument.  None of the cited cases, however, supports this specious argument.  Rather, each of the cases on which Plaintiff relies to make her argument concerns instances where an employer initiated *frivolous* litigation against a plaintiff in retaliation for instigating litigation against the employer.  Opp. 22-23.  Although Mr. Henry disputes the premise that merely filing a litigation is retaliatory, the fact is Mr. Henry has not filed any litigation against Eckhart, much less any frivolous or retaliatory litigation.  Instead, consistent with the rules and procedures of this Court, Mr. Henry filed a motion to dismiss and attached exhibits which Mr. Henry, at minimum, has a good-faith argument should be considered on the motion to dismiss as incorporated in Plaintiff's TAC by reference.  *See infra* § II.C.i.  Eckhart cites no case supporting an argument that a plaintiff states a claim for retaliation under such circumstances because none exists.

Plaintiff next argues that the dispositive cases which Mr. Henry cited in his moving brief are apparently distinguishable because the Supreme Court supposedly subsequently changed the definition of "adverse action."  Opp. 23 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  This argument, however, is easily disposed of.  It is clear that *Burlington* did not substantively change the definition of "adverse action" as courts, including this Court, have continued to hold that filings made in defense of a lawsuit fall outside the ambit of the NYHRL.  *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 n.4 (S.D.N.Y. 2017) (rejecting a plaintiff's retaliation claim because the individual defendant's legal filings "which

were filed as part of their defenses in litigations commenced by Plaintiff, do not constitute an adverse action for purposes of stating a retaliation."); *U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) ( "reasonable defensive measures" are not retaliation because "[a]t some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee.").

Eckhart's retaliation claim thus relies on the argument that filing redacted images of Eckhart in connection with the motion to dismiss amounted to such an unreasonable filing that the Court should disregard clear precedent and create an entirely new sort of retaliation claims under the NYHRL.  *See Gaughan*, 261 F. Supp. 3d at 420 n.4.  Such an argument necessarily fails as arguments that Mr. Henry makes in his own defense in this litigation are not retaliation. As argued below, not only were these Exhibits non-retaliatory, but they were also incorporated by reference into the TAC and, as such, the Court should properly consider the Exhibits on this motion to dismiss.

       i.    *The Exhibits attached in support of Mr. Henry's motions were incorporated by reference in the TAC*

Plaintiff's Opposition argues not only that filing the photographs was retaliatory (which is wrong), but that the Court may not consider the emails that she herself quotes or the photographs she discusses in the TAC.  Indeed, Plaintiff seems to suggest that the photographs are "irrelevant" to her allegations, despite the fact that the TAC makes explicit reference to photographs allegedly in Mr. Henry's possession.  *See* Opp. 30; TAC ¶ 71.  In making the argument that photographs possessed by Mr. Henry are apparently irrelevant to her claims, she effectively concedes that she included the allegations regarding the photographs to inflame,

rather than inform her own claims.[2]  Regardless, the direct references to the communications and photographs attached to Mr. Henry's motions incorporate those Exhibits by reference.

Generally, at the motion to dismiss stage, courts consider documents incorporated in a complaint by reference, in addition to the language of the complaint and the complaint's exhibits. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on rule 12(b)(6) motions to dismiss, "courts must consider . . . documents incorporated into the complaint by reference . . . ."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *DeLuca v. AccessIT Grp., Inc.,* 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010).  By including portions of communications between the parties, and relying on their contents in crafting her allegations, Eckhart incorporated the communications by reference allowing the Court to consider their contents at the pleading stage.  *See, e.g.*, TAC ¶¶ 61-63; 197-99.

Included in documents that courts can consider on a motion to dismiss, when incorporated by reference in a pleading, are text communications and emails between parties.  In one case, a plaintiff included text communications between the plaintiff and the defendant in alleging wrongful retaliation under the FLSA.  *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015).  The court found that, by quoting various portions of the text messages in the pleadings and using their contents to form the basis for retaliation claims, the messages were "both incorporated by reference in and integral to the amended complaint."  *Id.*; *see Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 451 n.3 (S.D.N.Y. 2018) ("Though the text message . . . [was] not attached to the Amended Complaint, this Court may consider [the message] because [it was] incorporated into the Amended Complaint by reference, . . . and documents possessed by or known to the Plaintiff and upon which he relied in bringing the suit.)

---

[2] To the extent that such allegations were intended only to inflame rather than support Plaintiff's claims, those allegations should be stricken pursuant to Fed. R. Civ. P. 12(f).

(internal quotation marks and alterations omitted); *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099, at *1-2 (S.D.N.Y. Dec. 19, 2019) (multiple emails between the parties were incorporated in the complaint by reference and properly considered in ruling to dismiss the plaintiff's claims).

Here, Plaintiff incorporated several communications in the TAC by reference, attached as Exhibits to Mr. Henry's motions to dismiss.  For example, the TAC quotes an email exchanged with Eckhart where Mr. Henry says, "I'd like to wipe you with my tongue."  TAC ¶ 59.  Eckhart uses this communication in alleging that Mr. Henry created a hostile work environment.  TAC ¶¶ 237-41.  However, Plaintiff deliberately omitted the rest of the email thread, in which Eckhart responds, "I bet you would, dirty boy. Come n get it ;)."  Dkt. 125, Ex. D.  By quoting piecemeal from the email chain and relying on its contents to support a cause of action, Eckhart incorporated the email chain by reference.  *See Scalercio-Isenberg*, 2019 WL 6916099, at *1-2; *Lopez-Serrano*, 132 F. Supp. 3d at 400.  This same reasoning applies to the other text communications and images which Eckhart sent to Mr. Henry since those communications contextualize the communications selectively quoted in the TAC.  Plaintiff alleges that Mr. Henry harassed her, made unwanted advances, and allegedly took photographs to "blackmail" her.  Such allegations necessarily reference, and rely on as integral to the TAC, the communications and photographs sent between Eckhart and Mr. Henry and they are essential to analyzing the validity of Eckhart's claims.  Because the Exhibits are incorporated by reference in the TAC, the Court can properly consider them on a motion to dismiss.[3]

---

[3] Eckhart also argues that this Court has already ruled on the issue of incorporation by reference, in its ruling regarding Eckhart's motion to seal the exhibits.  This ruling, however, only concerned the redacted images not the email and text communications and was based on the parties' letters concerning the sealing issue.  Mr. Henry

**D.      The TAC's NYHRL Discrimination Claims are Time-Barred**

In contending that her discrimination claims are not barred by the applicable Statute of

Limitations, Eckhart concedes, as she must, that her claims can only survive a motion to dismiss

if Mr. Henry's conduct constituted a continuing violation under the law.  Opp. 24-26.  Eckhart

also concedes that her only allegations concerning Mr. Henry that took place within the

limitations period are from late 2018 when Mr. Henry sent Eckhart a message asking why she

had turned away from him, a picture of a football player, and a message that simply said "YO!".

Opp. 25; TAC ¶¶ 83-88.  Such allegations fail to state a claim under the NYHRL for

discrimination because, contrary to Eckhart's contentions, they do not contribute to a hostile

work environment or form a part of a common practice or policy.  Opp. 25-26; *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Eckhart's argument that Mr. Henry's innocuous text messages create a continuing

violation rests on a series of inapposite cases.  While emails and text communications could,

undoubtably, in certain circumstances create a continuing violation, those circumstances are not

present in this case.  In *Robinson v. Brooklyn Coll.*, for example, the court held that the plaintiff

plausibly alleged a continuing violation because at least one of the emails constituting the

plaintiff's discrimination claim was sent during the limitations period.  2010 WL 3924012, at *5

(E.D.N.Y. Sept. 29, 2010).  Unlike in the case at bar, however, this email contained overtly

disparaging and insulting language and was thus appropriately pled as continuing discrimination.

*See id.*  Likewise, in *Drew v. Plaza Const. Corp.*, the plaintiff alleged that the defendant

demeaned him *on a daily basis* throughout the limitations because of the plaintiff's race, clearly

establishing a continuing violation under the law.  688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010).

---

believes that, once this issue is fully briefed and argued, the Court will conclude the documents were incorporated
by reference in the TAC.

Eckhart, meanwhile, makes no such allegations of a continuing violation and instead relies on two or three innocuous messages allegedly sent during the limitations period.

In other words, Plaintiff cites no case suggesting that merely communicating with the plaintiff during the limitations period is sufficient to establish a continuing violation. In fact, the case law directly opposes such a conclusion. For example, as outlined in Mr. Henry's moving brief, the case law is clear that "a plaintiff cannot establish a continuing violation merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016) (internal quotation marks omitted). Eckhart attempts to distinguish *Corrado,* asserting that it is inapposite because Eckhart alleges that Mr. Henry's conduct was "ongoing" whereas *Corrado* concerned "discrete acts." Opp. 27 n.9. New York law, however, does not allow a plaintiff to circumvent the Statute of Limitations by merely asserting that discrimination is "ongoing." Rather, at the very least, Plaintiff must allege with specificity that there were some discriminatory or harassing messages sent within the limitations period and not simply two or three completely innocuous greetings. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 78 (2d Cir. 2010) (no continuing violation where the only comment within the limitations period took place almost a year later and was offensive, though "not lewd"); *Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, 2018 WL 2416568, at *14 (S.D.N.Y. May 29, 2018) (no continuing violation because "[t]he pre-limitations harassing behavior was largely sexual in nature," whereas the defendant's comments during the limitations period were not).

Eckhart's assertion that the communications are a continuing violation because, had Eckhart responded, Mr. Henry would have harassed her are utterly conclusory and without factual or legal support. Indeed, under Eckhart's interpretation of the law, Mr. Henry could be

accused of engaging in a continuing violation merely by saying "Hello" because such a greeting is apparently similar to other greetings Mr. Henry made to Eckhart during the limitations period. This interpretation is clearly contrary to the clear case law and to rational understanding. Moreover, such an interpretation would mean any time individuals are required to communicate as part of their continued employment, the limitations period would never run, no matter the nature of the ongoing communications.  Again, this result is untenable and clearly not supported by any interpretation of the case law.

## III.    THE TAC DOES NOT ALLEGE A GMVA VIOLATION

Eckhart's GMVA claim rests primarily on the assertion that Eckhart does not separately need to plead gender-motivated animus under the GMVA, where the plaintiff alleges rape.  In making this argument, Eckhart relies on the *Breest v. Haggis* opinion from New York's First Department.  Opp. 27-28; 180 A.D.3d 83 (1st Dep't 2019).  *Breest*, however, is not binding precedent on this Court, because the New York Court of Appeals has yet to rule on this issue. *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) ("In the absence of authoritative law from the state's highest court, [the Court] must . . . predict how the New York Court of Appeals would resolve the state law question").

Furthermore, while the Second Circuit also has not directly ruled on whether a plaintiff must separately plead gender animus under the GMVA, it has strongly suggested that, under the GMVA, gender-animus must be pled separately from the alleged rape.  For example, one of the principal cases on which Plaintiff relies notes that the GMVA was heavily inspired by the federal Violence Against Women Act.  *Crisonino v. New York City Hous. Auth.*, 985 F. Supp. 385, 391 (S.D.N.Y. 1997).  *Crisonino* then further concludes that, because the GMVA is inspired by federal laws gender animus is a question of the defendant's specific motivation, similar to Title VII.  *Id.* (citing *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994)); *see*

*also Hughes*, 304 F. Supp. 3d at 455.  In the absence of guidance from the New York Court of

Appeals concerning interpretation of New York state law, this Court should follow guidance

from this Circuit.  *Musah v. Houslanger & Assocs., PLLC*, 2012 WL 5835293, at *3 (S.D.N.Y.

Nov. 16, 2012) ("[A]bsent a contrary holding by the New York Court of Appeals, the Second

Circuit's holding[s] . . . [are] binding authority . . . for federal district courts within the Circuit.");

*Petrosky v. N.Y. State Dep't of Motor Vehicles*, 72 F. Supp. 2d 39, 65 (N.D.N.Y. 1999) ("[T]he

most important precedential authority presented [as between lower New York courts and Second

Circuit case law] is that from the Second Circuit as this Court is bound by its decisions of law.").

The clear precedent from federal courts in this Circuit requires the Plaintiff to plead gender

animus separately from the alleged rape because that is what the New York Court of Appeals

would likely conclude (a conclusion also supported by a number of New York state court case).

Because Plaintiff must plead gender-specific animus, her allegations fall woefully short

of stating a claim under the GMVA.  As noted in Mr. Henry's moving brief, courts routinely

dismiss GMVA claims even where a plaintiff alleges "egregious" conduct if the plaintiff has not

separately pled that the defendant harbors gender-specific animus.  *Hughes*, 304 F. Supp. 3d at

455.  These cases include those where the plaintiff alleged that a defendant forced her to perform

oral sex on him when the plaintiff was underage, *Cordero v. Epstein*, 869 N.Y.S.2d 725, 726

(Sup. Ct., N.Y. Cty. 2008), where the defendant allegedly drugged and raped the plaintiff on

multiple occasions, *Gottwald v. Sebert*, 2016 WL 1365969, at *4 (Sup. Ct., N.Y. Cty. Apr. 06,

2016), and where the defendant allegedly slapped the plaintiff, called her a "bitch," and

threatened to kill her, *Adams v. Jenkins*, 2005 WL 6584554 (Sup. Ct., N.Y. Cty. Apr. 22, 2005).

Allegations such as these are insufficient to state a claim under the GMVA because they amount

to "no more than the conclusory allegation that the alleged crimes of violence were 'motivated

by gender.'"  *Cordero*, 869 N.Y.S.2d at 727.  In other words, "[e]very [alleged] rape is not a

gender-motivated hate crime."  *Gottwald*, 2016 WL 1365969, at *9.

  In her Opposition, Eckhart does not even attempt to distinguish the clear law which

shows that Eckhart's GMVA allegations are insufficient.  Instead, Eckhart relies on the same

types of allegations that courts routinely dismiss.  For example, Eckhart alleges that the court can

infer gender animus because Mr. Henry allegedly called her a "whore," Opp. 28, despite the fact

that courts have held that language like this is insufficient to plead gender animus.  *See Adams*,

2005 WL 6584554.  Eckhart then even suggests that Mr. Henry's gender-specific animus can be

inferred from his alleged relationship with Jane Doe 1, despite the fact that Jane Doe 1 has

publicly stated that her relationship with Mr. Henry was entirely consensual.  *See* Dkt. 125, Ex.

G.  Such allegations do not state a claim for gender-specific animus and Eckhart's GMVA claim

should therefore be dismissed.  *See, e.g.*, *Hughes*, 304 F. Supp. 3d at 455.

## IV. THE TAC DOES NOT ALLEGE AN UNLAWFUL DISSEMINATION OF AN INTIMATE IMAGE

  In arguing that she has stated a claim against Mr. Henry for unlawful dissemination of a

private image under N.Y. Civ. Rights Law §52-b ("§52-b"), Plaintiff makes a series of

misleading and legally spurious arguments.  Eckhart first falsely suggests that Mr. Henry failed

to redact nudity from the filed images by stating that Mr. Henry merely "attempted" to redact the

images.  Opp. 29.  This suggestion is patently and verifiably false as the docket shows that all

nudity was, in fact, redacted from the images.  Dkt. 85, Exs. G-U.  Eckhart then argues that, even

though all nudity was unquestionably redacted from each image, the images are nonetheless

covered by §52-b because Eckhart was unclothed in the original, unredacted image.  Opp. 29.

Eckhart's only argument in favor of such an illogical reading of the statute is the statute's

apparent use of a disjunctive "or" between "unclothed" and "intimate."  Eckhart's argument that

this phrasing means that the statute covers images where the nudity is redacted ignores the possibility that "unclothed or intimate" was simply meant to cover instances of unclothed nudity that a defendant argues were not "intimate."  As such, Eckhart's argument that §52-b covers images with no visible nudity fails.

Regardless, Eckhart's §52-b arguments necessarily also fail because the images fall within an explicit exception to the statute allowing for publication of images published "during lawful and common practices of . . . legal proceedings."  N.Y. City Admin. Code §52-6(2)(b). Eckhart attempts to circumvent this clearly applicable exception seemingly by arguing that this section would only apply on a motion for summary judgment, rather than a motion to dismiss, and Mr. Henry's motivation can be inferred because he opposed sealing the exhibit.  The gravamen of Eckhart's argument, in other words, is that Eckhart should have virtually unlimited latitude in publicly attacking Mr. Henry's reputation and character, but Mr. Henry does not have the right to defend himself against these attacks publicly.  Eckhart cites no case law to support her argument that §52-6(2)(b)'s protections do not apply to motions to dismiss.  Indeed, this procedural distinction fails to withstand any scrutiny.  As Mr. Henry has argued, *supra* § II.C, he has, at bottom, a good-faith basis to argue that such images are incorporated by reference into Eckhart's pleadings.  Even if the court disagrees that the documents were incorporated by reference, holding that Mr. Henry is therefore exposed to potentially criminal liability would put defendants in an impossible bind where they would need to choose between their right to defend themselves with incorporated documents, and risk exposing themselves to criminal liability if the court disagrees.

Eckhart's argument, meanwhile, that Mr. Henry's intent can be inferred by the fact that he opposed sealing the document, ignores the fact that there is a presumption to public accessibility

of documents in litigations to which there is a presumption of public access.[4]  *See Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139-41 (2d Cir. 2016).  Under the law, Mr. Henry has the right to defend himself  and his intent was just that.  Mr. Henry is entitled to deny Eckhart's false allegations and use the legitimate tools available to him to defend himself.  Eckhart's attempt to twist Mr. Henry's legitimate defense positions into a policy statement  that Eckhart was "'asking' to be raped" is baseless, offensive, and categorically false.  Eckhart's claim under §52-b should be dismissed as frivolous.

## V.     PLAINTIFF'S IRRELEVANT AND INFLAMMATORY ALLEGATIONS SHOULD BE STRICKEN FROM THE TAC

The TAC's irrelevant and unsupported allegations related to other alleged witnesses and defense counsel's supposed litigation tactics should be stricken from the complaint, as both categories of allegations serve no purpose other than to prejudice Mr. Henry in the eyes of the public and the potential jury pool.

### A.     Plaintiff's Inclusion of Pseudonymous Witnesses and Non-Fox Employees is Prejudicial and Should Be Stricken

In his opening memorandum Mr. Henry demonstrated that the inclusion of allegations related to four "Jane Doe" individuals, along with allegations related to two named women who did not work at Fox, must be stricken from the TAC as they are both immaterial and prejudicial. In response, Eckhart argues that these allegations are not relevant to either her hostile work

---

[4] Eckhart also argues that Mr. Henry improperly failed to redact Eckhart's phone number from two of the emails attached to his moving papers.  Opp. 21.  First, the telephone number was part and parcel of the text of the email which was incorporated by reference into the complaint and, therefore appropriately attached as an exhibit to Mr. Henry's moving papers.  Second, Mr. Henry was under no obligation to redact Eckhart's phone number. In fact, the SDNY ECF rules provide scenarios in which a party must redact personal information, and situations where a party should consider redacting the information, even though it is not strictly required.  A party's phone number appears on neither list.  *See* SDNY ECF Rules 21.3 and 21.4, available at:
https://nysd.uscourts.gov/sites/default/files/pdf/ecf_rules/ECF%20Rules%20020119%20Final%20v3%20new%20links.pdf.

environment or her GMVA claims.  As a preliminary matter, it is simply not the case that a plaintiff alleging a hostile work environment opens the door to include claims related to any additional non-party witness.  The cases cited by Plaintiff do not support such a conclusion, nor do they address the additional prejudice caused by the very fact that the allegations are pseudonymous and unverifiable.  *See* Dkt. 124 at 37-38.

Even accepting Plaintiff's argument that other witness accounts might somehow be relevant to a hostile work environment claim, the alleged other witness accusations which Eckhart included in the TAC are simply not relevant to her claims.  Indeed, the majority of the allegations sought to be stricken (including those of Jane Does 3 and 4[5], Ms. Hammerling, and Ms. Marroquin) involve individuals who *were not employees of Fox*, and therefore their allegations cannot have any relevance to whether a hostile work environment existed at Fox. Nor do the allegations by Jane Doe 1 have any relevance to Ms. Eckhart's claims, as Jane Doe 1 herself has acknowledged publicly in the media that her relationship with Mr. Henry was consensual and her conduct was not coerced.  *See* Dkt. 125, Ex. G.  Conduct within a consensual relationship not involving Ms. Eckhart is simply not relevant to Plaintiff's hostile work environment allegation.  These arguments belie the fact that Plaintiff included these allegations not because they have any relevance to her claims here (they do not), but instead solely for the purpose of prejudicing Mr. Henry.  Similarly, none of the challenged allegations involving other individuals include allegations of specific gender-based animus, and therefore do not meet the high bar for demonstrating gender-based animus relevant to the GMVA claim.  *See supra* § IV.

Moreover, Plaintiff attempts to sweep aside the significant prejudicial impact of including these unrelated allegations in the TAC by claiming that any prejudice will be cured through

---

[5] While Jane Doe 4 currently works at Fox News, the allegations of Mr. Henry's interactions with Jane Doe 4 involve only conduct that occurred prior to her employment at Fox. *See* TAC ¶¶ 163-64.

discovery.  This argument misses the point.  The inclusion of these allegations is not prejudicial solely because they are pseudonymous, but rather because the inclusion of unrelated allegations concerning Mr. Henry's interactions with other women, both named and unnamed, are included solely to bias the public against Mr. Henry.  Providing additional information in the course of discovery will do nothing to cure this public prejudice.

Eckhart's inclusion of allegations regarding Jane Doe 1 are further prejudicial because, as Plaintiff acknowledges, several of these allegations have been personally disclaimed by Jane Doe 1.  Opp. at 34.  Plaintiff's only response is to claim, based on law from other circuits, that "current employees are often fearful of retribution." Opp. at 34-35.  This argument makes no sense here, where Jane Doe 1 *herself* went to the media to publicly state that the allegations in the TAC were false.  This is not a case where an employee was coerced into cooperating with their employer; indeed, there is no indication that Jane Doe 1 has had *any* interaction with the company, especially given that she remains unidentified.  Instead, Jane Doe 1 voluntarily disclaimed these allegations to the public.  Allowing these false and inaccurate claims to remain in the TAC serves only to further prejudice Mr. Henry.

> **B.      Plaintiff's Unsupported Allegations About Defense Counsel's Conduct are Rank Speculation and Should Be Stricken as Prejudicial**

Plaintiff's allegations that defense counsel has engaged in retaliatory litigation tactics are rank speculation, the inclusion of which serves no purpose other than to prejudice the reader. Plaintiff's claim that these allegations are appropriate because "Plaintiff must establish a relationship between Fox and Henry" (Opp. at 35) is disingenuous, at best.  The *only* facts cited in these paragraphs are that Mr. Henry's lawyers represented another individual from Fox in unrelated litigation brought by Eckhart's counsel (TAC ¶¶ 206-209), and that Fox's attorneys have previously represented unrelated clients in unrelated cases brought by Eckhart's counsel

(TAC ¶ 210).  Plaintiff fails to detail a single allegation supporting any coordination between Fox and Mr. Henry's counsel, nevertheless detailing any "referral" agreement or any collaboration to "jointly publish" photographs.  Opp. at 35.  These unfounded, untrue, and baseless claims "serve[] no purpose except to inflame the reader," and therefore should be stricken.  *See Oram v. Soul Cycle LLC,* 979 F. Supp. 2d 498, 511-12 (S.D.N.Y. 2013). Moreover, even were there any evidence of coordination – which there is not – Plaintiff has offered no support for her argument that somehow that coordination is improper.  The premise of Plaintiff's claim that the parties cannot coordinate to defend themselves is faulty.  As demonstrated above, defendants are entitled to take action in defense of a lawsuit and these actions fall outside the definition of actionable retaliation.  *See supra* § II.C.

Plaintiff's concession that the TAC's inclusion of allegations from a completely different lawsuit, involving different plaintiffs, allegations, and causes of action, were not offered for their truth (Opp. 35 n.11 (referencing TAC ¶¶ 207-08)) demonstrates that there is no non-prejudicial purpose for the inclusion of these claims.  Indeed, although Mr. Henry's counsel represented a defendant in a previous lawsuit commenced by Plaintiff's counsel, Fox's current counsel played no role in that previous litigation, further undermining any claim that somehow the actions of counsel are relevant to the current lawsuit. The inclusion of inflammatory allegations from a previously-settled lawsuit are exactly the sort that the Second Circuit routinely finds immaterial as a matter of law when included in an unrelated complaint.  *See Low v. Robb,* 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (collecting cases).

### C.    Plaintiff's Prejudicial Conduct Warrants Sanctions

The Court can and should use its inherent powers to sanction Eckhart and her counsel for including allegations about other women that they knew to be inaccurate and for including wholly unsupported and irrelevant allegations about defense counsel.

Eckhart acknowledges that Jane Doe 1 has publicly refuted several of the allegations contained in the TAC.  Plaintiff's only response is that these statements must be proper because they are based on statements made to Eckhart, yet Eckhart does not claim to have any first-hand knowledge of the facts of these allegations.  Plaintiff's refusal to remove or modify these allegations *after* learning from *Jane Doe 1 herself* that the TAC's recitation is inaccurate and untrue is sufficient reason for court to exercise its inherent authority to impose sanctions. Similarly, Eckhart's inclusion of allegations about defense counsel's conduct based on complete and utter speculation are so unsupported and baseless that they warrant sanctions.  These actions by Eckhart and her counsel are the very type of abuse of the judicial system for which sanctions are appropriate.

## VI.    A MORE DEFINITE STATEMENT IS WARRANTED

In her Opposition, Eckhart seeks to avoid having to provide a more definite statement by stating, in an entirely conclusionary fashion, that Mr. Henry must know the alleged dates of the allegations because Eckhart alleges that Mr. Henry committed the acts and sent the alleged communications.  This argument fails because the burden to state a claim rests on the plaintiff. Eckhart alleges that Mr. Henry violated the TVPA by allegedly raping her and that Mr. Henry "enticed" Eckhart, in part, by sending a series of text messages.  Of course, the text messages could only be alleged to have "enticed" Eckhart if they came before the alleged rape, a fact that Eckhart does not dispute.  *See Shuvalova v. Cunningham*, 2010 WL 5387770, at *4 (N.D. Cal. Dec. 22, 2010).  As such, unless Eckhart can plead that these messages came before the alleged rape, the TAC fails to state a claim under the TVPA.  This fact merits that the Court grant Mr. Henry's motion for a more definite statement.  *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992) (granting the defendant's motion for a more definite statement where the complaint "fail[ed] to comply with Rule 8 in several ways").  Tellingly, Eckhart clearly has exact

dates for her allegations, and provides no justification for her refusal to provide those dates.  The Court should grant Mr. Henry's motion for a more definite statement. *See* Fed. R. Civ. P. 12(e); *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 103 (E.D.N.Y. 2004) ("Because [the defendant] cannot reasonably be expected to respond to Count III in its present form, the Court *sua sponte* directs [the plaintiff] to provide a more definite statement as to that Count.").

## CONCLUSION

For the foregoing reasons and the reasons set forth in his opening moving papers, Mr. Henry respectfully submits that this Court should dismiss each of Plaintiff's claims against him with prejudice.  If the Court does not dismiss the Third Amended Complaint in its entirety, this Court should strike the immaterial and scandalous allegations in the Third Amended Complaint, order sanctions reimbursing Mr. Henry for the cost of making the motion to strike, and order that the plaintiff provide him with a more definite statement.

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC

By:  /s/ Elkan Abramowitz
Elkan Abramowitz
Catherine M. Foti
565 Fifth Avenue
New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
SALE & WEINTRAUB, P.A.
2 South Biscayne Boulevard
One Biscayne Tower – 21st Floor
Miami, Florida 33131

*Attorneys for Ed Henry*

25