UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JENNIFER ECKHART,                               :
                                                :
                               Plaintiff,        :          Civil Case No. 1:20-cv-05593-RA
                                                :
               v.                               :
                                                :
FOX NEWS NETWORK, LLC, and ED HENRY, :
in his individual and professional capacities,   :
                                                :
                               Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**REPLY IN SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S MOTION TO
DISMISS THIRD AMENDED COMPLAINT OF PLAINTIFF JENNIFER ECKHART**

---

January 25, 2021

Anthony J. Dick
J. Benjamin Aguiñaga
Ariel N. Volpe
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel. (202) 879-3939
Fax. (202) 879-1700
E-mail: ajdick@jonesday.com

Kathleen M. McKenna
Lloyd B. Chinn
Keisha-Ann G. Gray
Danielle J. Moss
Yonatan L. Grossman-Boder
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: KMcKenna@proskauer.com

*Attorneys for Defendant Fox News Network, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.   Ms. Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News ........................... 2

    A.   Fox News Had No Reason to Know of Mr. Henry's Alleged Criminal Sex Trafficking ................................................................................................. 3

    B.   Fox News Did Not "Benefit From" Mr. Henry's Alleged Criminal Sex Trafficking ................................................................................................. 8

II.   The "Continuing Violation" Doctrine Cannot Save Ms. Eckhart's Time-Barred Claims ....................................................................................................... 9

III.   Ms. Eckhart's Title VII Claims Are Barred for Failure to Exhaust ................................... 12

IV.   Fox News Is Not Vicariously Liable for Mr. Henry's Alleged Harassment ....................... 13

V.   Ms. Eckhart's Retaliation Claims Fail ............................................................................. 16

VI.   Fox News Cannot Be Held Liable for Mr. Henry's Filing of "Intimate Images" in Court ........................................................................................................................ 20

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.B. v. Marriott Int'l, Inc.*,
  455 F. Supp. 3d 171 (E.D. Pa. 2020) .......................................................7

*Amaya v. Ballyshear LLC*,
  295 F. Supp. 3d 204 (E.D.N.Y. 2018) .....................................................18

*Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*,
  2018 WL 2416568 (S.D.N.Y. May 29, 2018) ..........................................11

*Bass v. World Wrestling Fed'n Ent., Inc.*,
  129 F. Supp. 2d 491 (E.D.N.Y. 2001) .....................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................18

*Bridges v. Poe*,
  2020 WL 5408915 (N.D. Ala. Sept. 9, 2020) .......................................6, 7

*Canosa v. Ziff*,
  2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) .........................................7, 8, 9

*Doe S.W. v. Lorain-Elyria Motel, Inc.*,
  2020 WL 1244192 (S.D. Ohio Mar. 16, 2020)...........................................7

*Dollinger v. N.Y. State Ins. Fund*,
  2015 WL 1446892 (N.D.N.Y. Mar. 30, 2015) .........................................14

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019).....................................................8, 9

*Gilbert v. U.S. Olympic Comm.*,
  423 F. Supp. 3d 1112 (D. Colo. 2019).......................................................9

*H.G. v. Inter-Cont'l Hotels Corp.*,
  2020 WL 5653304 (E.D. Mich. Sept. 23, 2020)........................................6

*Hernandez v. Premium Merch. Funding One, LLC*,
  2020 WL 3962108 (S.D.N.Y. July 13, 2020) ...........................................12

*Jean-Charles v. Perlitz*,
  937 F. Supp. 2d 276 (D. Conn. 2013).....................................................7, 8

*Karibian v. Columbia Univ.*,
  14 F.3d 773 (2d Cir. 1994).......................................................................15

*Lawson v. Rubin*,
  2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ...........................................7

*Lenzi v. Systemax, Inc.*,
  944 F.3d 97 (2d Cir. 2019)........................................................................18

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019) ..................................................7

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010)..................................................................11

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)............................................................................10

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018)....................................................4

*Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*,
931 F.3d 59 (2d Cir. 2019)........................................................10, 11, 12

*Robinson v. Brooklyn Coll.*,
2010 WL 3924012 (E.D.N.Y. Sept. 29, 2010) ...............................11, 12

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011)..................................................................17

*Russo v. N.Y. Presbyterian Hosp.*,
972 F. Supp. 2d 429 (E.D.N.Y. 2013) ..................................................12

*S.Y. v. Naples Hotel Co.*,
476 F. Supp. 3d 1251 (M.D. Fla. 2020)..................................................7

*Torres v. Gristede's Operating Corp.*,
628 F. Supp. 2d 447 (S.D.N.Y. 2008)..................................................19

*Truskoski v. ESPN, Inc.*,
823 F. Supp. 1007 (D. Conn. 1993)......................................................18

*Zamora v. N. Salem Cent. Sch. Dist.*,
414 F. Supp. 2d 418 (S.D.N.Y. 2006)..................................................14

**STATUTES**

18 U.S.C. § 1591 .......................................................................... *passim*

18 U.S.C. § 1595 ...................................................................................3, 6, 8

42 U.S.C. § 2000e-5......................................................................12

N.Y. Civ. Rights Law § 52-b..................................................................20

**OTHER AUTHORITIES**

N.Y.C. Admin. Code § 8-107 ..................................................................15

**INTRODUCTION**

Ms. Eckhart's evasion of the motion to dismiss would stretch the law beyond its breaking point. She urges the court to reinterpret the federal prohibition against "sex trafficking" to cover virtually every allegation of workplace harassment. She admits that Fox News had no idea that Mr. Henry had ever engaged in sexual violence against her—or anyone else. Nevertheless, she urges that the company is liable for "sex trafficking" crimes based on pure speculation that the company *must have known* that Mr. Henry had a reputation for engaging in unspecified "sexual misconduct" at some unspecified time. But putting aside the sensationalized bluster, the complaint does not actually allege that the company had any reason to think that Mr. Henry had ever engaged in workplace harassment, much less criminal sex trafficking.

As to her other claims, Ms. Eckhart concedes that any actionable harassment she alleges occurred almost four years ago—well beyond the statutory time bars under both state and federal law. Nevertheless, she seeks to revive her claims through a creative distortion of the "continuing violation" doctrine. Although admitting that Mr. Henry's harassment ended in February 2017 and that she neither saw nor talked to him for nearly two years thereafter, she argues that her claim is timely because he made three "facially non-sexual" comments in October 2018. But the Second Circuit has squarely rejected her argument. Because she admits that Mr. Henry's alleged harassment did not actually *continue* between February 2017 and October 2018, there was no "continuing" violation.

With her substantive claims time-barred and hollow on the merits, Ms. Eckhart falls back on retaliation. But she admits that she never actually complained about sexual harassment or any other unlawful discrimination until after she was fired. She insists instead that the company "should have understood" through context that she was *implicitly* reporting sexual harassment

when she complained generally about her "work environment" four months before her dismissal. But the context alleged in her own complaint makes clear that she was complaining about the supposed non-sexual mistreatment while working under a female boss. Because that complaint had nothing to do with unlawful discrimination, it was not "protected activity" and cannot sustain a retaliation claim.

In the alternative, Ms. Eckhart floats an array of arguments that Fox News somehow retaliated against her *after* she had already left the company. Her lead argument is that after she made her allegations against Mr. Henry, the company terminated him for sexual misconduct without first telling her. The argument does not lack in chutzpah, but it does not state retaliation as a matter of law, and Ms. Eckhart does not cite any case supporting her view. Equally flimsy is her backup argument that the company retaliated against her by filing a Rule 11 motion against her erstwhile co-plaintiff Cathy Areu. Rule 11 motions are expressly authorized by the Federal Rules of Civil Procedure, and Ms. Eckhart cannot point to any case holding that filing one is unlawful retaliation—especially when it does not even target the plaintiff. That leaves only her last-ditch effort to blame Fox News for the images that Mr. Henry attached to his separate motion to dismiss. But she does not allege any facts to make a plausible showing that Fox News had anything to do with Mr. Henry's filing (which it did not). She thus has no legal basis to sue the company, and all her claims against Fox News should be dismissed.

## ARGUMENT

### I. Ms. Eckhart Fails to State a "Sex Trafficking" Claim Against Fox News

Ms. Eckhart admits that Fox News did not commit criminal sex trafficking under 18 U.S.C. § 1591. *See* Dkt. 118 ("Fox Br.") at 7. Instead, she relies solely on "a beneficiary theory of liability," Dkt. 128 ("Opp. Br.") at 6, which authorizes a trafficking victim to bring a civil action

against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act [of sex trafficking] in violation of this chapter," 18 U.S.C. § 1595(a). But while Ms. Eckhart alleges that Fox News formed a generic "venture" with Mr. Henry, her complaint fails to allege any facts showing that the company "knew or should have known" about his alleged sex-trafficking crimes. Nor does the complaint allege that Fox News benefited "from" those crimes in any way.

## A. Fox News Had No Reason to Know of Mr. Henry's Alleged Criminal Sex Trafficking

The most straightforward basis for dismissing Ms. Eckhart's sex-trafficking claim is that she has not alleged any facts showing that Fox News had any reason to know that it was somehow "participating in a venture" engaged in criminal "sex trafficking." Civil liability under § 1595(a) requires that the defendant participated in a "venture" that it "knew or should have known" engaged in "a violation of this chapter." *Id.* Ms. Eckhart's complaint alleges that the relevant "violation" is criminal sex trafficking allegedly committed by Mr. Henry in violation of § 1591. Dkt. 113, ¶¶ 212–24. And although her opposition brief omits this critical point, a violation of § 1591 requires the use of "force, fraud, [or] coercion" to compel a victim into a "commercial sex act." 18 U.S.C. § 1591(a). The question is thus whether Fox News had any reason to know Mr. Henry had used force, fraud, or coercion to compel a commercial sex act. As Fox News has explained, the answer is no. *See* Fox Br. 8–10. Ms. Eckhart tries a variety of arguments to resist this conclusion, but all fail.

**1.** Ms. Eckhart distorts the law by arguing that a company's supposed "knowledge of an institutional culture of sexual misconduct" is "sufficient to allege a violation" of the federal ban on sex trafficking. Opp. Br. 8. She thus insists that supposed complaints about Mr. Henry's prior "sexually inappropriate conduct" gave Fox News "sufficient knowledge of Henry's *trafficking*

activities." *Id.* at 9–10 (emphasis added). But the statute does not address sexual misconduct generally. It targets the specific crime of sex trafficking, which requires the use of force, fraud, or coercion to compel a person to perform a commercial sex act. 18 U.S.C. § 1591. Ms. Eckhart largely ignores the cases that Fox News cited on this point (Fox Br. at 8–9), relegating them to a footnote (Opp. Br. 9–10 n.2). But her claim fails for the same reason as the claims in those cases: Her complaint does not contain any allegation that even remotely suggests that Fox News knew or should have known that Mr. Henry had ever used force, fraud, or coercion to compel Ms. Eckhart (or anyone else) into a commercial sex act.

At times, Ms. Eckhart suggests that Mr. Henry's prior alleged acts of sexual misbehavior towards other women were federal sex-trafficking crimes because he had a "position of power" at the company, and he "leverag[ed] his position to coerce and groom young, impressionable women into sexual relationships." Opp. Br. 1, 4. But the statute defines "coercion" to mean threatening or making someone fear "serious harm . . . or physical restraint," or "the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2). She cannot cite any case ever holding that "leveraging" a "position of power" in the workplace to pursue sexual relationships is the type of "coercion" that amounts to a federal sex-trafficking crime. Otherwise, every claim of workplace sexual harassment involving a power imbalance would become a federal sex-trafficking case. That is not the law.[1]

Even if a claim of "coercion by workplace power" could theoretically be viable, Ms. Eckhart's complaint does not allege any facts showing that Mr. Henry had ever used his position

---

[1] Even in the Weinstein cases, his "tremendous influence in the industry" was not enough to find that he used "coercion" to obtain sex, and courts instead relied on the theory that he committed sex trafficking by coercive "sexual assault" or by "fraud" involving empty promises of career advancement. *See, e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 512, 515, 518 (S.D.N.Y. 2018). There is no allegation that Fox News was aware Mr. Henry had ever done that.

for anything that could plausibly be described as sexual "coercion" (or "fraud," for that matter), much less that Fox News had any reason to know about his doing so before his alleged abuse of her. Ms. Eckhart chiefly relies on paragraph 118 of the complaint (Opp. Br. 4), but that is nothing more than a conclusory assertion (lacking any supporting facts) that "Fox News was at all relevant times aware that Mr. Henry was leveraging his position to coerce and groom young, impressionable women into sexual relationships." Ms. Eckhart also cites the preceding paragraphs, 110–17 (*id.* at 9), but they likewise fail to allege any facts showing that Fox News was on notice of any coercive or fraudulent sexual behavior by Mr. Henry. Instead, those paragraphs allege the following:

- At some unspecified time after mid-2016, some unidentified "women" (who may or may not be employees) reported to an outside law firm that Mr. Henry engaged in some unspecified "sexually inappropriate conduct towards them" (Dkt. 113, ¶ 111);

- He had an "affair with a Las Vegas stripper" (*id.* ¶ 112);

- His promotion after the stripper affair was "crushing for female colleagues" (*id.* ¶ 113);

- His "reputation was well-known" (*id.* ¶ 114);

- "It was well-known he flirted with younger women in the office" and some unidentified employees told others (without the company's knowledge) to "be careful with him because of his flirtatious nature" (*id.* ¶ 115);

- Some unidentified "female coworkers" and "some males" warned an anonymous "staffer" (again without the company's knowledge) that she should "should stay away from or watch out for" him (*id.* ¶ 116);

- "[E]veryone at Fox News" knew that "Henry is a sex addict." (*id.* ¶ 117).

None of these allegations show that Mr. Henry had ever before committed a sex-trafficking crime, much less that Fox News knew or had any reason to know that he had.

**2.**     Ms. Eckhart argues that even if Fox News had no reason to know of any sex-trafficking by Mr. Henry, it still can be held liable for his alleged crimes if it knew of "similar" sex-trafficking committed by "other individuals and/or employees." Opp. Br. 7. But the statute requires that the defendant "knew or should have known" about trafficking committed by the specific "venture" that victimized the plaintiff. 18 U.S.C. § 1595(a); *H.G. v. Inter-Cont'l Hotels Corp.*, 2020 WL 5653304, at *7 (E.D. Mich. Sept. 23, 2020) ("plaintiff must allege [that] defendant knew or should have known of sex trafficking by the *particular* sex-trafficking venture in which [it] participated"). And here, the complaint alleges that the "venture" was between "Henry and Fox News." Dkt. 113, ¶ 217. Thus, to hold Fox News liable, Ms. Eckhart must show that the company should have known she would be subjected to sex trafficking as part of its "venture" *with Mr. Henry*.

The complaint alleges no facts to support this claim. Ms. Eckhart cites to paragraphs 95–105 of her complaint, which she portrays as alleging that Fox News "has a long and ignominious history of allowing its powerful male figures, such as Ailes and O'Reilly, to engage in sexual misconduct against its female employees, including through the use of force or fraud." Opp. Br. 8. But those paragraphs do not allege that *anyone* committed a violation of § 1591 because they do not allege the use of "force, fraud, [or] coercion" to compel a victim into a "commercial sex act." 18 U.S.C. § 1591(a). Nor do these paragraphs have anything to do with Mr. Henry or Ms. Eckhart. Much less do they show that Fox News knew or should have known that its "venture" with Mr. Henry would result in Ms. Eckhart (or anyone else) becoming a victim of criminal sex trafficking under § 1591.

Ms. Eckhart's own case law (Opp. Br. 7–9) illustrates how far afield this case is from others where courts have found the "knew or should have known" standard to be satisfied. In *Bridges v.*

6

*Poe*, 2020 WL 5408915 (N.D. Ala. Sept. 9, 2020), a police chief participated in a venture with local jailers when he "agreed with [them] that they could touch [female] inmates and condition [benefits] on sexual favors," while he "watch[ed] [the] abuse displayed on video monitors." *Id.* at *8. The defendant thus knew about the crimes committed by the very venture he participated in.

In *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020), the defendant hotel "rent[ed] rooms to traffickers" despite "obvious signs of human trafficking" such as "bruises and physical deterioration" on the victim, along with "indicators of commercial sex activity (bottles of lubricants, boxes of condoms, excessive requests for towels and linens, cash payments)." *Id.* at *5–6. Thus, again, the defendant rented rooms to the very people whom it should have known were engaged in trafficking. The other cited cases are similar:

- *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (defendants rented rooms to traffickers despite hearing "[p]leas and screams [for] help coming from the rooms" and seeing traffickers escorting victims);

- *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 194 (E.D. Pa. 2020) (hotel chain rented rooms to traffickers even though victim "entered all three hotels with visible injury" and staff was aware of "multiple broken objects and paraphernalia" in the rooms where she was kept);

- *Canosa v. Ziff*, 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019) (defendants "actively participated in the recruitment and enticement of women, knowing that [the] women would—or would likely—be coerced by Weinstein into engaging in what amounted to a commercial sex act with him");

- *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (plaintiff "was routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash" for a room; trafficker operated "out of the same hotel room for multiple days or weeks in succession"; plaintiff was forced to have sex with approximately 10 "johns" per day, who filed in and out of the hotel);

- *Lawson v. Rubin*, 2018 WL 2012869, at *20 (E.D.N.Y. Apr. 29, 2018) (defendant knowingly recruited women for Rubin, "knowing or in reckless disregard of the fact that" Rubin would use "force, threats of force, fraud, or coercion . . . to cause plaintiffs to engage in commercial sex"); and

- *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 280, 288 (D. Conn. 2013) (defendant witnessed school's founder "show[] a pornographic video to a

7

[school] student" and "shunned [an] administrator at [the school] after she tried to stop [the founder's] sexual abuse of [the] students").[2]

In all these cases, the defendants "knew or should have known" about trafficking because they facilitated other peoples' actions despite obvious signs that they were engaged in trafficking. Here, by contrast, Ms. Eckhart does not allege that Fox News was aware of *any* signs that Mr. Henry ever had (or ever would) use force, fraud, or coercion to compel her (or anyone else) into a commercial sex act. There is thus no basis for inferring that Fox News knew or should have known about the criminal sex trafficking that Ms. Eckhart alleges, and her claim against Fox News under § 1595(a) fails.

### B.      Fox News Did Not "Benefit From" Mr. Henry's Alleged Criminal Sex Trafficking

In its opening brief, Fox News explained that civil liability for sex trafficking also requires a showing that the defendant benefited "from" the sex-trafficking crimes in question. *See* Fox Br. 11–12 (relying on *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169–70 (S.D.N.Y. 2019)). In response, Ms. Eckhart concedes that her claim would fail under *Geiss* because Fox News did not benefit from Mr. Henry's alleged sex-trafficking crimes. *See* Opp. Br. 13–14.

Nevertheless, she criticizes the holding of *Geiss* and argues that this Court should instead follow *Canosa v. Ziff*, 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019). But *Canosa* is consistent with *Geiss*, as *Geiss* itself recognized. *See* 383 F. Supp. 3d at 169. In *Canosa*, the defendant companies benefited "from" Weinstein's sex trafficking because they affirmatively facilitated his trafficking activity as a form of payment to him in exchange for his contributions to the companies. 2019 WL 498865, at *24. As the court explained, the companies "affirmatively enabled and

---

[2] Although Ms. Eckhart does not recognize the distinction, *Jean-Charles* is inapt here because it involved the portion of § 1591(a) related to trafficking of *minor children*, which does not require the use of force, fraud, or coercion.

concealed Weinstein's predations as a means of keeping him happy, productive, and employable which *led the companies to achieve fame and reap financial benefits*." *Id*. (emphasis added). In other words, because Weinstein would have been less "productive" for the companies in the absence of the trafficking crimes, the companies derived a benefit "from" those crimes occurring. *Id*. There is no such allegation in the present case.

Ms. Eckhart points to her allegation that, "so long as Mr. Henry was continuing to generate revenue for the Company, it was willing to look the other way and even provide him access to additional victims." Dkt. 113, ¶ 133. But even if that false claim were true, it would not show that Fox News benefited in any way "from" Mr. Henry's alleged trafficking crimes. Unlike in *Canosa*, there is no allegation here that he was more "productive" as a result of his trafficking crimes, or that those crimes somehow helped Fox News "achieve fame and reap financial benefits." *Canosa*, 2019 WL 498865, at *24. Ms. Eckhart's claim thus fails under the rule of *Geiss* and *Canosa*.

Finally, Ms. Eckhart relies (at 14) on an out-of-district case, *Gilbert v. U.S. Olympic Comm*., 423 F. Supp. 3d 1112 (D. Colo. 2019). But that case is unreasoned, did not consider the rule of *Geiss* and *Canosa*, and should be rejected. The court simply assumed without explanation that a defendant can be held liable for a third party's sex-trafficking crimes even if there is no causal link between the crimes and any benefit to the defendant. *Id*. at 1138. But that is not a sensible way to read the statute, which targets those who benefit from "*a sex-trafficking venture*," not from "other activities engaged in by the sex traffickers." *Geiss*, 383 F. Supp. 3d at 169.

## II. The "Continuing Violation" Doctrine Cannot Save Ms. Eckhart's Time-Barred Claims

Ms. Eckhart does not dispute that all the incidents of sexual assault and other harassment allegedly committed by Mr. Henry occurred beyond the statutory time bar for all her harassment claims. As Fox News has explained, the last such incident occurred in February 2017, but she did

not file suit until July 2020. That is well past the 300-day time bar under Title VII, and several months past the three-year time bar under the NYCHRL and the NYSHRL. *See* Fox Br. 12–13.

Ms. Eckhart concedes that the acts of February 2017 and earlier are not actionable as "discrete acts." Opp. Br. 15. But she argues that her claims survive as a single claim of hostile-environment harassment under a "continuing violation" theory because Mr. Henry "attempt[ed] to engage [her] in further conversations" in "October 2018." *Id.* at 16. That argument fails for two reasons.

First, even if there was a single "continuing violation" that lasted until "October 2018," Ms. Eckhart's Title VII harassment claims are still time-barred because she did not file suit until July 2020. That is a year too late under Title VII's 300-day filing period. Even on her own theory, then, all of her Title VII harassment claims must be dismissed as time-barred.

Second, there was no "continuing violation" because a full 20 months passed between the last act of alleged harassment in February 2017 and the comments made by Mr. Henry in October 2018. That gap of nearly two years means that there was no *continuous* conduct constituting "a single unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

The Second Circuit has held that incidents are not "part of the same alleged hostile environment practice" when they "are separated by almost two years, during which period [the plaintiff] does not allege any discrimination." *Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019). "Due to this significant passage of time, [the plaintiff] has not plausibly alleged that [she] is the victim of any 'ongoing' discriminatory practice or policy." *Id*. The discontinuous nature of the conduct means that there are two *separate* practices, not a

single "continuing" violation. *Id*. And that is true even if the later acts were committed by one of the same people who committed the earlier harassment. *Id*.

That simple principle controls this case. Ms. Eckhart concedes that after February 2017, she experienced no harassment (and had no interaction with Mr. Henry) for 20 months until the messages he sent her in October 2018. Fox Br. 13; Opp. Br. 16. That is identical to the "almost two years" that the Second Circuit found dispositive in *Purcell*, 931 F.3d at 65. Thus, because Ms. Eckhart does not allege that Mr. Henry's harassment actually continued during this nearly two-year gap, there was no "continuing violation" that spanned this period.

The lack of a continuing violation is even clearer due to the lack of similarity between the non-sexual October 2018 comments and the graphic and violent incidents alleged in February 2017 and earlier. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010); *Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018). Ms. Eckhart admits that the October 2018 comments were "facially non-sexual," but she says they "undoubtedly *would have* culminated in further sexual demands" if she had engaged with Mr. Henry. Opp. Br. 16 (emphasis added). But the fact that the October 2018 messages *did not* culminate in any sexual harassment—Mr. Henry did not take any further action—distinguishes them sharply from the alleged severe incidents in February 2017 and before.

Ms. Eckhart cannot cite any case that has found a "continuing violation" based on this type of non-sexual comment nearly two years after otherwise time-barred harassment occurred. The best she can muster (at 17) is *Robinson v. Brooklyn College*, 2010 WL 3924012, at *5 (E.D.N.Y. Sept. 29, 2010). But that case involved a continuous pattern of critical comments and five harassing emails sent at roughly even intervals over an eight-month period, and one of the e-mails sent within the limitations period used "sarcastic language [intended] to overtly disparage and insult" the

plaintiff, just like the earlier e-mails. *Id*. at *5. That is what a continuing violation looks like: A continuing pattern of harassment, with similar harassing conduct occurring in the filing period, and without a two-year gap separating the earlier time-barred incidents. That is nothing like the present case. Instead, this case resembles *Purcell* and others that have rejected similar ploys to use the "continuing violation" doctrine to evade the time bar. *See, e.g.*, *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 435–36, 444 (E.D.N.Y. 2013) (holding that "vulgar and inappropriate" non-sexual comments six months later were not sufficiently related to time-barred conduct involving "physically intimidating" behavior and "comments of an underlying sexual nature").

## III.     Ms. Eckhart's Title VII Claims Are Barred for Failure to Exhaust

Ms. Eckhart concedes that she filed her Title VII claims without waiting 180 days after her EEOC charge. She also admits that the EEOC did not investigate and "dismiss" her charge. Because those are statutory prerequisites to suit, her Title VII claims are barred. Fox Br. 14–16.

Ms. Eckhart says that "there is nothing in the language of Title VII that prohibits the EEOC from issuing an early right to sue letter." Opp. Br. 17. But the statute imposes a mandatory duty by stating that the EEOC "shall" investigate any charge, allowing the agency to dismiss only "*after* [an] investigation." 42 U.S.C. § 2000e-5(b) (emphasis added). Ms. Eckhart's contrary reasoning—that the EEOC may dismiss and authorize suit *without* any investigation, merely by stating that it *will not* investigate within 180 days—is thus contrary to the statutory text and would nullify the investigation requirement. To be sure, there is "a circuit split"—and in fact, "district judges in this Circuit are split"—on this question. *Hernandez v. Premium Merch. Funding One, LLC*, 2020 WL 3962108, at *4 (S.D.N.Y. July 13, 2020). But the only way to preserve Title VII's investigation requirement is to hold that the EEOC cannot ignore it at will.

**IV.    Fox News Is Not Vicariously Liable for Mr. Henry's Alleged Harassment**

Even if Ms. Eckhart's harassment claims were not time-barred, they would still fail on the merits. She concedes that Fox News did not know about Mr. Henry's alleged mistreatment of her. Instead, she argues that the company should be held liable because it "should have known," and because he was supposedly her "supervisor." *See* Opp. Br. 18–24. Ms. Eckhart is wrong on both counts.

**A.**    As Fox News explained, Ms. Eckhart's complaint fails to allege any facts showing that anyone complained about Mr. Henry committing work-related harassment before he allegedly harassed Ms. Eckhart between 2014 and February 2017. *See* Fox Br. 17–18. In response, she relies on paragraphs 110–121 of her complaint (Opp. Br. 20), but those allegations fall short as demonstrated above (*supra* p. 5).

Ms. Eckhart does allege that, at some unspecified time after "mid-2016," "multiple" unidentified "women" supposedly complained to an outside law firm hired by Fox News that Mr. Henry had engaged in unspecified "sexually inappropriate conduct towards them." Dkt. 113, ¶ 111. But this paragraph does not say anything about the nature of the alleged "inappropriate conduct." It does not say whether the alleged "conduct" rose to the level of sexual *harassment*, or whether it was even work-related—and thus it does not show that Fox News should have known Mr. Henry would engage in such conduct. Nor does it say anything about who the women were, or whether they were even employees. Nor does it say *when* after mid-2016 these reports were made to the outside law firm, much less when the law firm told Fox News. The paragraph asserts that the complaints were made "*before* Ms. Eckhart was raped by Mr. Henry," but that vague and conclusory assertion is not supported by any concrete facts. *Id*. Ms. Eckhart also says that it should be "presumed" that the outside law firm would have informed Fox News about any reports of

misconduct. Opp. Br. 24. But even if so, that does not remedy her failure to allege what type of misconduct was reported, when the reports were made to the law firm, or if or when the firm reported to Fox News.

Ms. Eckhart also relies (at 23) on her allegation that, "[i]n 2017, a written complaint was filed" by an unnamed employee informing Fox News that Mr. Henry's promotion (shortly after the Las Vegas stripper controversy) would be "crushing for [his] female colleagues." Dkt. 113, ¶ 113. But this paragraph does not allege that the complaint said anything about Mr. Henry engaging in any sexual harassment or workplace misconduct at all. The paragraph also does not allege that the complaint was filed *before February 2017*, which is the last time he allegedly harassed Ms. Eckhart.

Ms. Eckhart's own case citations (at 20, 24) show why her allegations do not satisfy the "should have known" standard. In the cited cases, the plaintiffs alleged specific facts showing that their employer knew about the perpetrator's specific misconduct and failed to stop it. In *Bass v. World Wrestling Federation Entertainment, Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001), the plaintiff alleged that an employee had "simulated a sexual act" in her dressing room before a show, and a "senior executive[] came to her dressing room that day to apologize and to promise that no similar indignities would occur in the future," but the harassment then continued. *Id.* at 498, 501. In *Dollinger v. New York State Insurance Fund*, 2015 WL 1446892 (N.D.N.Y. Mar. 30, 2015), the plaintiff alleged that he had complained to his employer about the ongoing harassment, and the employer took some initial steps to address it but then failed to prevent it from recurring. *Id*. at *12. And in *Zamora v. North Salem Central School District*, 414 F. Supp. 2d 418 (S.D.N.Y. 2006), school officials received multiple reports giving them "actual knowledge of a teacher's propensity or proclivity to sexually harass children," yet failed to do anything to stop him. *Id*. at 425.

Here, by contrast, Ms. Eckhart's complaint does not allege *a single instance* of anyone telling Fox News about alleged work-related harassment committed by Mr. Henry before he allegedly harassed her. Instead, Ms. Eckhart's allegations amount to vague, generalized grievances about his behavior. None of them show that Fox News should have known that Mr. Henry would commit actionable harassment against Ms. Eckhart—much less that he would violently rape her.

To overcome these deficiencies, Ms. Eckhart says (at 21) that Fox News itself was to blame for its lack of knowledge because her supervisor, Brad Hirst, "dissuade[d] her from making her sexual harassment claims explicit" during a meeting in "February 2020." Opp. Br. 21. But needless to say, that 2020 meeting cannot be blamed for the company's lack of knowledge prior to Mr. Henry's last act of alleged harassment *in 2017*. And in any event, the February 2020 meeting did not address sexual harassment at all, much less "dissuade" Ms. Eckhart from reporting it. The meeting was about her complaints on other topics—namely the alleged *non-sexual* "abuse" and "hostil[ity]" she claimed to have experienced at the hands of her female boss. *See* Fox. Br. 20; *infra* pp. 16–17; *see also* Dkt. 113, ¶¶ 23–29.

**B.**     Ms. Eckhart admits that Mr. Henry did not actually supervise her (or even work with her) because she worked in a different city, on a different show, on a different network. *See* Fox Br. 16. Even so, she insists that he was her "supervisor" because he had "apparent authority" to invite her as a guest on his television show. Opp. Br. 22. But hosts can invite anyone on their shows, including people who are not even employees. That does not make them everyone's "supervisor." To the contrary, supervisory liability attaches only to those who have authority to "make[] employment decisions" about the plaintiff. *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994); *see also* N.Y.C. Admin. Code § 8-107(13)(b)(1) (employee must "*exercise[]*

managerial or supervisory responsibility" (emphasis added)). And whether to invite someone as a guest on a television show is not an "employment decision," nor can she cite any case saying it is.

Ms. Eckhart tries to evade this problem by switching to a different theory of harassment. She argues that, "unlike Fox's claim that it cannot be held liable under a hostile work environment theory because [Mr.] Henry was a coworker, *quid pro quo* sexual harassment does not require that the perpetrator be a supervisor in fact." Opp. Br. 18–19 n.5. Instead, she contends, a *quid pro quo* claim allows supervisory liability if the individual is a mere "*de facto* supervisor," not an actual one. *Id*. But her complaint does not mention any "*quid pro quo*" claim, and she cannot assert one now for the first time in responding to the motion to dismiss. Nor would a *quid pro quo* claim be timely even if she had brought one. Because *quid pro quo* harassment is a "discrete act," Ms. Eckhart cannot rely on a continuing-violation theory, and thus the claim is time-barred even under her own lax view of timeliness. *See supra* pp. 9–12. In any event, the claim is also meritless. Even a "*de facto*" supervisor must have authority to affect the plaintiff's "terms and conditions of . . . employment." Opp. Br. 18–19 n.5. There is no such allegation here, as Mr. Henry had no authority whatsoever over Ms. Eckhart's job. Fox News is not "estopped" from making this argument, *id*., because it is the same argument made in the motion to dismiss. *See* Fox Br. 16–17.

## V. Ms. Eckhart's Retaliation Claims Fail

A.      Ms. Eckhart's retaliation claim fails because she admits she never said anything about sexual harassment or other unlawful discrimination before she was fired. Fox Br. 19–21. Instead, she claims that the company should "reasonably have understood" that she was referring to sexual harassment when she complained generally about her "work environment." Opp. Br. 25.

As a threshold matter, her claim fails because retaliation claims must be objectively based in what the plaintiff *actually said*, not some secret meaning invented later for litigation purposes.

In *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011), the plaintiff allegedly complained about a "hostile environment" and specifically mentioned that she "wanted to discuss Sexual Misconduct." *Id.* But because she did not "complain[] specifically of *sexual harassment*," the employer "could not reasonably have understood that she was complaining" about that. *Id.* at 102–03, 108 (emphasis added). The same is even truer here, where Ms. Eckhart said nothing about sexual misconduct *at all*, much less sexual harassment.

Ms. Eckhart says that she was not required to use "magic words" and that her complaint should be considered "in 'context.'" Opp. Br. 25. But the context makes it even clearer that she was not complaining about unlawful harassment or discrimination. The complaint alleges that Ms. Eckhart's supervisor, Brad Hirst, was aware that she and others who worked on "Countdown to the Closing Bell" felt that they were subjected to an environment of "toxic abuse" (but not discrimination) by their female boss. Dkt. 113, ¶¶ 23–29. The complaint also alleges that, in February 2020, Ms. Eckhart complained to Hirst and Denise Collins about a "toxic work environment" but did not "mention sexual harassment or misconduct." *Id.* ¶ 90. Accordingly, the context makes clear that her complaint did not reasonably refer to discrimination, but instead to the other alleged (non-discriminatory) mistreatment that Hirst was allegedly aware of.

Ms. Eckhart says that Fox News "should have known" she was *implicitly* complaining about sexual harassment because it was a "systematic" problem at the company and "Henry himself" was guilty of it. Opp. Br. 26. But according to the complaint, the company had no idea that she and Mr. Henry had any relationship at all. And given her known dissatisfaction with her alleged *non-discriminatory* "toxic" work environment, her complaint about a "toxic work environment" in February 2020 could not reasonably be taken to refer to anything else.

Ms. Eckhart also says that her February 2020 complaint must have been understood to refer to harassment because in her "exit interview" in July 2020 the company "asked her whether she had been sexually harassed and/or assaulted." *Id.* But she does not dispute that there are many legitimate reasons to ask that standard question in an exit interview even if a person has never complained about harassment or assault. And because she pleads no facts contrary to those "obvious alternative explanation[s]," she fails to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

Ms. Eckhart relies (at 25) on *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019), but that case highlights why her claim fails. In *Lenzi*, the plaintiff had told management that she "wanted to be treated similarly to the males" she worked with. *Id.* at 113. She also said that she wanted to be "paid similar to my peers in NY – Tom, Ben, Curt, etc." *Id.* at 104. It was thus clear that she "was taking issue with being paid less than her male peers," which is a protected complaint about sex discrimination. *Id.* at 113 (emphasis omitted). Here, by contrast, Ms. Eckhart never even *hinted* that she was complaining about sexual harassment or discrimination. Let alone did she expressly mention it.

Ms. Eckhart also relies (at 25) on *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204 (E.D.N.Y. 2018). But in that case, the plaintiff complained to her managers that she was "deeply offended" by "a series of offensive race or national origin-based remarks" they had made. *Id.* at 212–13. Thus, again, it was clear that she was alleging unlawful discriminatory harassment, unlike here.

Finally, she relies on *Truskoski v. ESPN, Inc.*, 823 F. Supp. 1007, 1012 (D. Conn. 1993). But in that case, the plaintiff was a secretary who expressly complained about a policy that "applied only to secretaries," and, since "secretaries were all women," her complaint had "*definite* overtones of gender bias and discrimination." *Id.* (emphasis added). Not so here.

**B.** Ms. Eckhart also fails to show that Fox News retaliated against her after she filed suit. *See* Fox Br. 22–23. First, it makes no sense to say that Fox News "deter[red]" any "protected activity" by "publicly announcing Henry's termination" without "advance notice," or by describing the allegations against him as "sexual misconduct." *Id.*; Opp. Br. 27–28. This cannot reasonably be characterized as "protecting the reputations of serial harassers" or inflicting "trauma" on Ms. Eckhart. Opp. Br. 27–28.

Second, she points to no case holding that a Rule 11 motion is unlawful retaliation. Instead, she points to cases involving "bad faith or groundless counterclaims" against the plaintiff. *Id.* at 28. But here the Rule 11 motion was not a counterclaim, was not filed against her, and was not "bad faith or groundless." Accordingly, it was not the type of impermissible legal action "designed to deter [Ms. Eckhart] from seeking legal redress." *See, e.g.*, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472–73 (S.D.N.Y. 2008). The Rule 11 motion also did not accuse her of extortion but explained how *her counsel* improperly used the threat of reputational damage in unrelated litigation by Cathy Areu to force a settlement in her case.

Third, Ms. Eckhart repeats her baseless and conclusory claim that Fox News somehow retaliated against her through Mr. Henry's separate filing of a motion to dismiss with intimate pictures attached. Opp. Br. 29. But, aside from her baseless accusations about defense counsel, she can point to no concrete factual allegations to substantiate the notion that Fox News had anything to do with Mr. Henry's filing (because it did not). *Id.* Moreover, she cites no case holding that an improper responsive pleading is unlawful retaliation, because the way to deal with allegedly improper filings is through a sanctions motion—not through a separate substantive claim.

## VI. Fox News Cannot Be Held Liable for Mr. Henry's Filing of "Intimate Images" in Court

Lastly, Ms. Eckhart's opposition leaves no doubt that her state-law claim against Fox News for Mr. Henry's filing of intimate images should be dismissed. Although New York law provides a cause of action only against the "individual" who "disseminated or published" the intimate images (N.Y. Civ. Rights Law § 52-b(1)), Ms. Eckhart asserts that "the TAC contains sufficient allegations at the pleading stage to show that Fox and [Mr.] Henry were working in concert to retaliate against Plaintiff." Opp. Br. 29–30. But the only paragraph of her complaint that she cites is the conclusory assertion that "Fox News was aware of and ratified the retaliatory decision to file these highly sensitive photographs." Dkt. 113, ¶ 206. That bald assertion is (in addition to being false) pure conjecture, unsupported by any concrete factual allegations, and it cannot survive *Iqbal*/*Twombly*. Nor is it relevant that one other former Fox News employee allegedly retained the same counsel as Mr. Henry three years ago. That is not a "common practice," *id.*, and it does not reasonably suggest that Fox News had anything to do with Mr. Henry's choice of counsel (which it did not)—much less worked in concert with them.[3]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Ms. Eckhart's claims with prejudice.

---

[3] Ms. Eckhart's claim also must be dismissed because § 52-b does not apply to the disclosure of intimate images "during lawful and common practices of . . . legal proceedings." N.Y. Civ. Rights Law § 52-b(3)(b).

Dated:   January 25, 2021

By:      */s/ Kathleen M. McKenna*
       Kathleen M. McKenna, Esq.
       Lloyd B. Chinn, Esq.
       Keisha-Ann G. Gray, Esq.
       Danielle J. Moss, Esq.
       Yonatan L. Grossman-Boder, Esq.
       PROSKAUER ROSE LLP
       Eleven Times Square
       New York, New York 10036-8299
       (212) 969-3000
       kmckenna@proskauer.com

       Anthony J. Dick, Esq.
       J. Benjamin Aguiñaga, Esq.
       Ariel N. Volpe, Esq.
       JONES DAY
       51 Louisiana Ave., NW
       Washington, DC 20001
       Tel. (202) 879-3939
       Fax. (202) 879-1700
       E-mail: ajdick@jonesday.com

       *Attorneys for Defendant*
       *Fox News Network, LLC*