```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                       Docket #1:20-cv-05593-
ECKHART et al,                      : RA-GWG

                  Plaintiffs,       :

  - against -                       :

FOX NEWS NETWORK, LLC et al,        : New York, New York
                                      April 20, 2021
                  Defendants.       :
                                       TELEPHONE CONFERENCE
------------------------------------ :


                  PROCEEDINGS BEFORE
          THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          WIGDOR LLP
                         BY:  MICHAEL J. WILLEMIN, ESQ.
                              RENAN VARGHESE, ESQ.
                         85 Fifth Avenue, 5th Floor
                         New York, NY 10003
                         212-257-6829
For Defendants,
Fox News Network, LLC:   PROSKAUER ROSE LLP (NYC)
                         BY:  KATHLEEN MCKENNA, ESQ.
                              YONATAN GROSSMAN-BODER, ESQ.
                         11 Times Square
                         New York, NY 10036
                         212-969-3130

                         JONES DAY
                         BY:  ANTHONY J. DICK, ESQ.
                         51 Louisiana Avenue NW
                         Washington, DC 20001
                         202-879-7679

Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com
```

APPEARANCES - CONTINUED:

For Defendant,
Ed Henry:                MORVILLO, ABRAMOWITZ, GRAND, IASON, &
                         ANELLO P.C.
                         BY:  CATHERINE FOTI, ESQ.
                              DOUGLAS CHALKE, ESQ.
                         565 5th Avenue
                         New York, NY 10017
                         212-880-9530

                         SALE & WEINTRAUB, P.A.
                         BY:  JAYNE WEINTRAUB, ESQ.
                         2 South Biscayne Boulevard
                         One Biscayne Tower - 21st Floor
                         Miami, FL 33131
                         305-374-1818


Transcription Service:  Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-Direct</u> | <u>Re-Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>Exhibit Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                       PROCEEDINGS              4

 2              THE CLERK:  This is the matter of Eckhart versus

 3    Fox News Network, docket number 20-civ-5593.

 4              Counsel, state your names for the record, starting

 5    with plaintiff.

 6              MR. MICHAEL WILLEMIN:  Michael Willemin and Renan

 7    Varghese of Wigdor LLP for the plaintiffs.

 8              MS. KATHLEEN MCKENNA:  Kathleen McKenna of Proskauer

 9    Rose LLP for Fox News Network, LLC.  And I'm joined by my

10    associate, Mr. Grossman-Boder, and by my co-counsel from Jones

11    Day, Anthony Dick.

12              MS. CATHERINE FOTI:  Catherine Foti from Morvillo,

13    Abramowitz, Grand, Iason, & Anello, P.C., on behalf of the

14    defendant, Ed Henry.  And I'm joined by my associate, Douglas

15    Chalke; and my co-counsel Jayne Weintraub from Sale &

16    Weintraub.

17              HONORABLE GABRIEL W. GORENSTEIN (THE COURT):

18    Okay.  Thank you, everyone.  First, let me remind everyone

19    the conference is being recorded, but no recording by

20    anyone else is permitted; and any dissemination of the

21    audio of these proceedings is prohibited.  I'm going to ask

22    everyone to keep their phone on mute unless they're

23    speaking, in which case, they should unmute it.

24              All right, we're here based upon essentially a

25    renewed application by defendant Fox News Network, LLC, to
```

```
 1                          PROCEEDINGS                    5

 2   continue the stay of discovery.  I already have written the

 3   parties telling them I wouldn't be asking any specific

 4   questions about the strength-of-the-motion prong of the

 5   stay dispute unless they want to raise it in what they say

 6   to me -- I guess they're welcome to do so.

 7          So since it's Fox's motion, I'll hear from them

 8   first.

 9          MS. MCKENNA:  Good morning, your Honor.  And thank

10   you. We believe that Judge Abrams' prior stay of discovery

11   should not be disturbed.  We believe Fox has demonstrated

12   good cause for continuing the stay and easily meets the

13   three-part test under Hong Leong.  As your Honor noted, the

14   parties have been notified we are not going to be meeting

15   on [indiscernible] substantial grounds for dismissal, the

16   first prong of the test.

17          THE COURT:  Ms. McKenna, can I just tell you

18   you're -- somehow you're not that sharp in terms of the

19   voice quality.  So I don't know if you can move closer to a

20   microphone or anything you can do, it will help.  But, I

21   mean, it's sort of understandable; it's a little bit of a

22   struggle.

23          MS. MCKENNA:  Well, let the record reflect my

24   children would be delighted that someone's asking me to

25   speak more loudly and clearly.  I'm definitely going to
```

```
 1                        PROCEEDINGS                    6

 2   request a copy of the transcript, then, your Honor.

 3            Is this any better?  I've switched headphones.

 4            THE COURT:  Yes, that actually is better, yes.

 5   Thank you.

 6            MS. MCKENNA:  Wonderful.  Okay, great.  As I was

 7   noting, your Honor, we don't need to address the

 8   substantial grounds for -- [indiscernible] -- so I'm going

 9   to turn to the other two prongs that -- [indiscernible] --

10   even written discovery would impose a significant burden on

11   the clocks.  And we believe that neither the plaintiff nor

12   defendant, Ed Henry, would suffer prejudice from continuing

13   the stay. In fact, the only thing that's really changed

14   since Judge Abrams entered the stay is that the motions to

15   dismiss are now fully briefed.

16            With the respect to the ground of the *Hong Leong*

17   test that focuses on the breadth of discovery, we believe

18   that discovery is likely to be broad and potentially

19   unnecessary.  And, of course, where discovery is likely to

20   be broad and significant, the stay would be warranted

21   pending a substantial Motion to Dismiss.  Here, the likely

22   breadth of discovery is pretty clear from the Third Amended

23   Complaint.  We have a 276-paragraph Complaint; the

24   allegations date back to 2013; the Third Amended Complaint

25   makes claims that involve multiple former and current
```

1                          PROCEEDINGS                          7

2   employees of Fox News; the Third Amended Complaint

3   references what are alleged to be multiple internal

4   company-wide and privileged investigations.  So it is

5   pretty obvious, from the face of the Third Amended

6   Complaint, that we're going to have expensive and time-

7   consuming requests dating back many years that inevitably

8   is going to involve, you know, hundreds of hours of time of

9   conducting and reviewing documents, to say nothing of

10  addressing issues of privilege.  And this is particularly

11  true where the face of the Complaint alleges broadly

12  allegations about what the company assertedly knew or

13  should have known.  And I would note that back in August,

14  Judge Abrams recognized that even service of written

15  discovery was going to impose a burden and not be

16  appropriate.  And we certainly think it's less appropriate

17  now, given the substantial Motion to Dismiss that's been

18  filed.

19          There's an allegation that has been made by

20  defendant Henry that there's really an overlap here and

21  discovery would be the same if the motions are granted.

22  That's plainly not true.  Discovery will not be the same if

23  Fox is dismissed from this action.  The sex-trafficking

24  claims against Fox are entirely distinct; they involve the

25  oldest allegations asserted in the Complaint.  They involve

1                              PROCEEDINGS                        8

2  questions, as I've noted, about what the company allegedly

3  should have known, and no issues of what Fox knew or should

4  have known or issues of retaliation will be present if Fox

5  is dismissed from the action.  If Fox is dismissed from the

6  action, discovery would solely be focused on Mr. Henry's

7  actions, what he did or didn't do.  So we believe that the

8  burdens of discovery are pretty obvious from the face of

9  the Third Amended Complaint and therefore should be stayed.

10             Additionally, we believe that a short stay of

11  discovery, given that we're now months from the motion now

12  being fully briefed, this short additional stay of

13  discovery to disposition of the Motion to Dismiss cannot

14  prejudice either the plaintiff or Mr. Henry.  This Court

15  has previously found that conclusory allegations about

16  delay doesn't establish prejudice.  Obviously, delay alone

17  is not sufficient to cause prejudice because, otherwise,

18  every motion would involve the delay that's inherent in the

19  stay.  Judge Abrams thought in August there would be no

20  significant prejudice from a brief stay.  The claims that

21  have been made by defendant Henry that this causes

22  reputational damage to him, Judge Abrams didn't find that

23  persuasive for lifting a stay.  And she was going to wait

24  to see the strength of the dispositive motion.  And,

25  obviously, we think that's important here.

```
 1                         PROCEEDINGS                    9
 2              We also think discovery from Fox News doesn't
 3    address the alleged reputational harm from either the
 4    plaintiffs' point of view or defendant Henry's point of
 5    view because that's about their sexual encounters with each
 6    other.  And those sexual encounters occurred with any
 7    knowledge of Fox News -- plaintiff doesn't even allege that
 8    Fox News knew that they had had these sexual encounters in
 9    a relationship.  So, really, what we're left with is the
10    question of delay.  And given that the motions are on the
11    cusp of being decided, there is less time in front of us, I
12    think, your Honor, than there is behind us.  We would
13    respectfully suggest that we've met the good-cause standard
14    in Hong Leong and that discovery should be stayed as it
15    regards Fox News.  And I'm happy to answer any additional
16    questions the Court may have.
17              THE COURT:  I think you've covered everything.
18    This is an option, but I'm going to ask the other parties
19    this, and I'll now ask you, since I have you, if you have
20    any position on it, if the plaintiff and Henry want to
21    proceed with written discovery as to each other without any
22    prejudice to your having the full amount of discovery you'd
23    be entitled to in case this case proceeds, do you have any
24    problem with that?
25              MS. MCKENNA:  Yeah, if those two want to
```

```
 1                        PROCEEDINGS                 10
 2  voluntarily exchange information to shed some light on
 3  these encounters they had with each other, Fox has, you
 4  know, no objections at -- there's no reason to drag Fox
 5  into it.  But, yes, your Honor, if they want to conduct
 6  discovery as to their relationship for each other, as long
 7  as Fox is not dragged into it, I don't see that there's any
 8  negative consequence to the Fox defendant.
 9            THE COURT:  All right, I'll hear from plaintiff
10  next.
11            MR. WILLEMIN:  Thank you, your Honor.  So
12  Ms. McKenna referenced a few of the things that Judge
13  Abrams stated back in August when a stay was initially
14  imposed.  But I think, you know, the most important thing
15  that Judge Abrams said was that this would be revisited at
16  this time.  And so I don't think that anything she said
17  should be an indication that the motion to stay with the
18  revisiting of the issue of a stay, nothing that she said
19  should be deemed sort of dispositive on that front.
20            I won't, you know, belabor the point, but I think
21  the most important issue here is the issue of burden, and
22  really not just burden -- because of course there's going
23  to be some burden -- but the issue of whether the burden is
24  undue or if it's somehow unnecessary.  And we submit that
25  it's not.  In this case although there's 200-and-something
```

1                         PROCEEDINGS                    11

2    paragraphs in the Complaint and a lot of pages -- I'll

3    grant your Honor that -- this case revolves entirely around

4    defendant Henry's conduct and what he did both to our

5    client and to other individuals while working for Fox News

6    because even if, let's say, the only claim that remains is

7    the sexual assault claim or the, you know, the sex

8    trafficking claim against Ed Henry or under the New York

9    City law, all of the other activity that he engaged in goes

10   to Mr. Henry's state of mind, his motive, his modus

11   operandi; it's general background, and it really goes to

12   his intent with respect to that particular sexual

13   encounter.  And if his conduct with respect to any of the

14   allegations in the Complaint is being discussed or

15   documented or in some way described in documentation that

16   Fox has, that is going to be subject to discovery

17   regardless of whether Fox is in the case or Fox is not in

18   the case.  And --

19            THE COURT:  Well, Mr. Willemin, I mean, let's just

20   get practical.  If you're taking the position that you will

21   limit -- that Fox stays on the case -- that you will limit

22   your discovery to whatever would have been available to you

23   had they not been in the case and there were no claims

24   against them and they were third party, we can start

25   talking about that.  But to have someone, you know, review

```
 1                        PROCEEDINGS                    12
 2   ESI for the specific Ed Henry claims once and then do it
 3   again for, you know, the claims specific to Fox, you're
 4   simply ignoring the fact that that would be incredibly
 5   burdensome.  Now, if you want to limit --
 6            MR. WILLEMIN:  Your Honor --
 7            THE COURT:  -- yourself to the first thing, then
 8   we can start talking.
 9            MR. WILLEMIN:  Your Honor, I think -- I guess my
10   point -- and I certainly wouldn't suggest that we should do
11   this as an iterative process -- what I'm suggesting is that
12   the defendants are arguing that there is not substantial
13   overlap or at least could potentially not be substantial
14   overlap in discovery.  And my --
15            THE COURT:  I don't think that's their point.  I
16   think the point, at least the point that I'm taking from
17   it, is that there is additional discovery that would be
18   required from them if they remained as a party than would
19   be required of them if they were merely a third party being
20   subpoenaed for documents relating to the Henry matter.  So
21   if you admit those are two different things -- if you don't
22   think they're two different things, then we can start
23   talking.  But if you admit, as I think you have to, they're
24   two different things, then it's an iterative process if you
25   make them do it twice, right?
```

```
 1                      PROCEEDINGS              13
 2              MR. WILLEMIN:  Well, I guess my point is that I
 3  don't understand why we would do it twice.  So perhaps --
 4  and I would like to address that point -- perhaps there --
 5  I'm not sure that there are, frankly -- documents that
 6  would be subject to discovery if Fox is in the case but not
 7  subject to discovery if Fox is out of the case.
 8              THE COURT:  Well, hold on.  That's a very
 9  important premise, so let's talk about that.  You have --
10  in order to keep Fox in this case, you have to talk about
11  what they should have known, right?
12              MR. WILLEMIN:  That's correct.  And this is the
13  point that I wanted to drive to is that what -- to the
14  extent that something goes to what Fox would have or should
15  have known, it's going to be a document that relates to
16  Mr. Henry's conduct.  So whether that document is one
17  that's sent to a low-level employee or one that's sent
18  to -- I'm getting a lot of feedback for some reason.
19              THE COURT:  No.  Hopefully -- I'll remind everyone
20  to put themselves on mute if they're not speaking.  Go
21  ahead.
22              MR. WILLEMIN:  So the document, a classic document
23  that goes to state of mind, an email --
24              THE COURT:  But hold on, hold on.  Before we bore
25  in too finely on this, you have a host of allegations about
```

1

2   other people who worked at Fox.  So are you prepared to

3   give up on discovery as to all those people?

4           MR. WILLEMIN:  No, those -- it's only insofar as

5   those people relate to Mr. Henry.  So again, it's

6   Mr. Henry's conduct towards those people which is going to

7   be relevant regardless of whether Fox is in the case.  This

8   is -- at the end of the day, if we have to prove a claim

9   against Mr. Henry that he acted in a certain way towards

10  our client, his conduct with respect to all of the

11  allegations in the Complaint -- and that's what all those

12  allegations relate to -- his conduct is relevant.  And so

13  to the extent that his conduct is being discussed at

14  various levels at Fox, that would be your, I guess,

15  ordinary way of proving Fox's knowledge of Mr. Henry's

16  conduct.  Even if it's not relevant to Fox's knowledge

17  because Fox's knowledge is no longer relevant to the case,

18  those documents are going to be describing Mr. Henry's

19  conduct in some way, shape or form, whether it's concerns,

20  complaints raised about him, etc.

21          So what I would suggest is to the extent that

22  there are documents that are outside of the scope of any

23  claim that would rely only against Mr. Henry, what we are

24  just taking the position is that there isn't a substantial

25  number of those documents.  And they haven't -- they're not

```
 1                          PROCEEDINGS                    15

 2   documents for --

 3            THE COURT:  Would you like to give up on getting

 4   them?

 5            MR. WILLEMIN:  Your Honor, I wouldn't -- no.  I

 6   mean, this is one consideration.  I think that to the

 7   extent that there are some documents that are outside of

 8   the scope of a claim against, you know, Mr. Henry in

 9   particular, I certainly wouldn't be willing in the context

10   of still having claims against Fox to give up on those

11   documents.  But just because there's a -- the mere fact

12   that some documents exist, the mere fact that there's not

13   necessarily a 100% overlap, that doesn't require a stay to

14   be put into place.  It's one of the facts, and in this case

15   a factor, I think, that cuts sharply towards our position,

16   which is that there is substantial overlap.  And the

17   documents that Fox contends are going to be problematic or

18   not be subject to discovery are ones that they claim would

19   go to their knowledge.  And that's what they've identified

20   as the set of documents that are going to be problematic.

21   And all I'm saying is that's actually not true because

22   those documents are still going to be subject to discovery

23   whether they're for Fox's state of mind or whether they're

24   for the description therein of whatever Mr. Henry did.  And

25   so I think there will be very substantial overlap, which
```

```
 1                           PROCEEDINGS                      16
 2   cuts in favor of plaintiff on the issue of continued stay.
 3             And then in terms of -- with respect to prejudice,
 4   it is true that, you know, mere delay alone obviously
 5   doesn't require not having a stay, just as making a Motion
 6   to Dismiss does not require having a stay.  But in this
 7   case I don't think that it is just mere delay.  We do have
 8   a case in which two parties of the three are claiming that,
 9   from a reputational perspective, this delay is actually
10   harming them.  I obviously don't take the position that
11   Mr. Henry's concerns are warranted, but he's saying that he
12   can't get a job now.  And Ms. Eckhart is saying that she
13   has been maligned in various ways and that her reputation
14   is one that needs to be restored.  So it's not a situation
15   where we have a breach of contract and we're just waiting
16   an extra six months to get some sort of lump-sum payment;
17   we have a situation where two individuals are saying this
18   is impacting my life in negative ways, and the quicker that
19   we can get this resolved, the quicker that that negative
20   impact on my life can go away.  So it's not, I don't think,
21   a prototypical case of, you know, it's just delay; there is
22   attendant damage that's being done here, at least according
23   to two parties.  And I think that that -- I mean, Fox can't
24   simply just say that that's not happening.  You know,
25   that's something that I think needs to be considered.  And
```

```
 1                        PROCEEDINGS                    17

 2   for the same reasons I just described before, I don't think

 3   that there's any significant prejudice, if any prejudice at

 4   all, to Fox in having to, you know, begin discovery at this

 5   time.

 6            THE COURT:  Are you interested in proceeding with

 7   complete written discovery between you and Henry?

 8            MR. WILLEMIN:  That is something I obviously

 9   hadn't given any thought to.  And to be honest, I would

10   want to speak with my client about it because my concern on

11   that is just that we're going to end up having an

12   obviously, you know, incomplete picture of things; whereas,

13   I'd prefer to have, you know, as complete a picture as

14   possible as early as possible.  And --

15            THE COURT:  Well, I'm not saying that -- I'm

16   asking -- I should have made it clearer.  In the event you

17   were to lose this motion, are you interested in that?

18            MR. WILLEMIN:  It's something that I would

19   consider.  I honestly couldn't give you a "I will do it,"

20   or "I won't do it" answer at this moment.  I do think it's

21   something that I should consult with my client on.  And so

22   I would be open to it, but I can't commit that that's

23   something that I would for sure do.

24            THE COURT:  Okay.  Anything else?

25            MR. WILLEMIN:  That's all, your Honor.
```

```
 1                        PROCEEDINGS               18

 2            THE COURT:  All right, Ms. Foti?

 3            MS. FOTI:  Good morning, your Honor.  So I'd like

 4   to start with the actual prejudice that our client has been

 5   suffering because I did say in August that what was so

 6   difficult here is that my client's reputation has been

 7   completely demolished, and he is out of a job.  And it has

 8   now been -- how many months is that? -- eight months now

 9   that he continues to be out of a job, unable to clear his

10   reputation.  And that, in fact, is significant prejudice

11   that is coming from this delay in trying to move this case

12   forward.

13            And the fact that Fox is pointing to, I guess, the

14   documents it might have in the system that it -- would have

15   nothing to do with repairing Mr. Henry's reputation, that's

16   not the point.  The point is that we need to move this case

17   forward as quickly as possible because we are very

18   confident that my client's reputation will be restored once

19   the discovery has become available and we're able to

20   basically win what we think would be a victory in, you

21   know, ultimately in this case.

22            So I think the prejudice here is incredibly

23   significant.  And, you know, this may be the only time that

24   I actually will be agreeing with the plaintiff in this

25   case, because I agree that -- with what Mr. Willemin said
```

```
 1                          PROCEEDINGS                    19

 2   in terms of that it is of a different type than just

 3   regular, you know, prejudice suffered in any case just

 4   because there has been some delay.  So I feel like we --

 5   that certainly that weighs completely in our favor in terms

 6   of having discovery go forward as to both parties, Fox and

 7   the plaintiff.

 8            But we are willing to have discovery directly with

 9   the plaintiff if that's the only alternative.  I don't

10   think that should be the only alternative because I believe

11   that the idea that Fox would still be subject to production

12   of the same documents that we would be requesting is very

13   clear.  We do not have the same issue with Fox in terms of

14   whether or not, you know, what the company knew about the

15   relationship, needing to prove or not prove anything about

16   that.  What we need are the communications that the

17   plaintiff may have had with other people, that we had with

18   the plaintiff over email, our communications.  We need some

19   basic discovery, and that same discovery would be requested

20   by subpoena even if Fox were to win a complete dismissal on

21   this case.  So we feel that not only is the prejudice

22   tremendous and weigh in favor of lifting the stay, the

23   discovery that we would need would be the same, and we

24   would really suggest to your Honor that that -- you know,

25   that discovery, maybe there's a way to limit the nature of
```

```
 1                          PROCEEDINGS                    20
 2   the discovery that we are allowed to take as to Fox; we
 3   feel that the discovery that we would want as to Fox would
 4   be the same were they not in the case.
 5              That's all I really have, your Honor.
 6              THE COURT:  Okay.  I'll give Fox a chance to
 7   reply.
 8              You may still be on mute, because we're not
 9   hearing anything from Fox.
10              MS. MCKENNA:  Thank you, your Honor.  That's the
11   buzz word of 2021, I guess, "You're on mute."  I apologize.
12              It is the strong view of Fox that with respect to
13   Ms. Foti's argument about reputational repair, we are fully
14   confident that, if this matter gets litigated, either with
15   or without Fox, that it will not result in reputational
16   repair.  To the extent that, as I said to your Honor
17   before, that Mr. Henry and Ms. Eckhart want to exchange
18   discovery between themselves that reflect upon the nature
19   of their relationship, so be it.  But we don't think Fox
20   should be dragged into it, certainly not before the
21   disposition of the motion so we know what the contours of
22   the claims in the matter.
23              With respect to Mr. Willemin's comments that the
24   discovery will be the same and the overlap will be the
25   same, he's either right or he's wrong.  I think he's wrong,
```

1                          PROCEEDINGS                    21

2  and it's pretty clear that the nature of the claims against

3  Fox will be entirely different if its motion is granted.

4  If he's right that discovery is the same, frankly, I think

5  it argues for hearing the Court's ruling on the motion so

6  we would know the scope and the contours of the claims and

7  see what discovery is needed.  And as we noted in our

8  papers, your Honor, it is not uncommon for stays to be

9  granted in employment cases.  So even if Mr. Willemin were

10 right -- well, two out of the three parties here would like

11 to have discovery -- the plain fact of the matter is that

12 the scope of the claims, the what survives, what survives

13 if anything against Fox, really argues, certainly at this

14 late stage, that we wait a few more months before the

15 disposition of the pending motion.

16          That's all I have, your Honor.

17          THE COURT:  Okay.  I've considered the parties'

18 letters and the arguments, and I am applying the standard

19 for stays pending a Motion to Dismiss expressed in many

20 cases, including *Hong Leong Finance Limited*, 297 F.R.D. 69.

21 There are three factors:  the breadth of discovery sought,

22 prejudice that would result, and the strength of the

23 motion.

24          With respect to the strength of the motion, I've

25 reviewed the pending papers.  And the defendants' arguments

```
 1                       PROCEEDINGS                22
 2  are certainly supported by substantial arguments for
 3  dismissal with respect to that factor.
 4           As to the prejudice that results -- would result,
 5  I'm certainly sympathetic to the plaintiffs' wish to move
 6  this case along and to Henry's desire to advance it for
 7  purposes of protecting his reputation.  And that's a factor
 8  to be considered, but there are certain aspects of
 9  prejudice that don't exist in this case, such as, you know,
10  pending witnesses who are elderly or documents that are in
11  danger of being destroyed or anything like that.  So the
12  prejudice here is not of the type that is normally viewed
13  as being the sort of prejudice that might result in the
14  denial of a stay.
15           Also, the plaintiff has the keys in her pocket, as
16  it were, to advancing this case in a significant way
17  because Henry has already said he's prepared to go down the
18  road of written discovery with the plaintiff.  And if
19  there's a dispute about that, I would certainly invite
20  Henry, if he wants, to make a motion to lift the stay as to
21  the plaintiff if they can't come to agreement on that.
22  That's up to him if he wants to make that motion.  But that
23  certainly does something to lessen the prejudice because
24  the more that can be accomplished in terms of discovery,
25  even if it's as to only the discovery between those
```

1
2  parties, the better.  I mean, there may be disputes, there
3  may be things that can be resolved; all of that could be
4  taken care of before we had to get Fox involved.
5        Finally, as to the breadth of discovery, I just --
6  you know, there are doctrines that limit what a party in
7  their capacity of a non-party in a proceeding has to do
8  versus as party and in terms of the burdens that we're
9  prepared to impose on non-parties.  And it's going to be a
10 very different contemplation of discovery whether Fox is in
11 the case versus whether it turns out to be a non-party in
12 the case.  And, you know, there may be substantial overlap,
13 but in the days of electronic discovery it's a very
14 expensive process to redo searches and to add custodians
15 that might not have otherwise been searched if you're
16 looking at upper-level people that you might not have
17 looked at in response to a subpoena.
18        So after having balanced all these factors, I
19 conclude that the stay previously ordered by Judge Abrams
20 should continue.
21        That was my only agenda for today.  I'll just
22 check with each of the parties if they think there's
23 anything else that we need to do today.  I guess I'll start
24 with the defendants.  Ms. McKenna, anything else for today?
25        MS. MCKENNA:  No.  Thank you, your Honor.

1                          PROCEEDINGS                    24

2          THE COURT:  Mr. Willemin?

3          MR. WILLEMIN:  No, your Honor.

4          THE COURT:  Ms. Foti?

5          MS. FOTI:  No, your Honor.  Thank you.

6          THE COURT:  Okay.  Thank you, everyone.  Good-bye.

7          (Whereupon, the matter is recessed.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

C E R T I F I C A T E

          I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Eckhart et al v.

Fox News Network, LLC et al, Docket #20-cv-05593-RA-GWG,

was prepared using digital transcription software and is a

true and accurate record of the proceedings.

          Signature *Carole Ludwig*

                     Carole Ludwig

          Date:    April 21, 2021