# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER ECKHART,

           Plaintiff,

      v.

FOX NEWS NETWORK, LLC, and ED HENRY, in his individual and professional capacities,

           Defendants.

Case No. 20-CV-5593 (RA)

# DECLARATION OF BRUCE A. GREEN IN SUPPORT OF DEFENDANT ED HENRY'S MOTION FOR RECONSIDERATION

BRUCE A. GREEN declares, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.9, under penalty of perjury, the following to be true and correct:

1.    I am the Louis Stein Chair at Fordham University School of Law and Director of the Louis Stein Center for Law and Ethics. I am admitted to practice law in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the Supreme Court of the United States.

2.    Counsel for Defendant Ed Henry has retained me to provide an expert opinion in connection with Henry's motion for reconsideration of the Court's September 9, 2021 Opinion and Order. Specifically, I have been asked to address professional conduct rules and norms that

1

may be relevant to whether Henry's counsel reasonably included, in a public filing, explicit photographs that Eckhart sent Henry during the period covered by Eckhart's complaint.

## QUALIFICATIONS

3.  My qualifications to provide expert opinions on questions of lawyers' professional conduct are set forth in my curriculum vitae, attached hereto as Exhibit A.

4.  I have been a law professor at Fordham University since 1987.  Upon graduation from law school in 1981, I served as a law clerk to Judge James L. Oakes of the United States Court of Appeals for the Second Circuit, and then as a law clerk to Justice Thurgood Marshall of the Supreme Court of the United States.  I then became an Assistant United States Attorney for the Southern District of New York, eventually serving as Deputy Chief and then Chief of the Criminal Division's appeals unit.

5.  I have regularly taught courses in legal ethics since 1987.  I teach a survey course on Professional Responsibility and a seminar on Ethics in Criminal Advocacy.  In the survey course, I assign a casebook on which I am a co-author.  (Jefferson, Pearce, Green et al., *Professional Responsibility: A Contemporary Approach* (4th ed. 2020).)

6.  I have organized or co-organized numerous conferences and programs for academics and practitioners on issues of legal ethics, and I speak frequently at Continuing Legal Education and academic programs regarding legal ethics issues in litigation.  I have written extensively on legal ethics in both academic and professional publications, including regarding issues that arise in litigation.  My curriculum vitae lists my publications.

7.  I have engaged extensively in various professional work relating to legal ethics, primarily involving drafting, interpreting, or enforcement of professional conduct rules.  In New York, I am the immediate past chair of the New York City Bar's Committee on Professional

Ethics; in the New York State Bar Association, I am a member and past chair of the Committee on Professional Ethics, and I serve on the Committee on Standards of Attorney Conduct; and I previously served on the Departmental Disciplinary Committee of the First Department.  On the national level, I chair the Multistate Professional Responsibility Examination drafting committee; I previously served on the ABA Standing Committee on Ethics and Professional Responsibility, to which I am now a liaison; I chaired the ethics committees of the ABA's Litigation and Criminal Justice Sections; I served on the ABA Litigation Section's Task Force on Settlement Ethics; I was the reporter to the ABA Commission on Multijurisdictional Practice and to the ABA Task Force on Attorney-Client Privilege; and I chaired the Section on Professional Responsibility of the Association of American Law Schools.  In recognition of my work in the field of legal ethics, I was the 2018 recipient of the Michael Franck Professional Responsibility Award.

8.      I occasionally testify as an expert witness, give advice, draft amicus briefs, and render other professional services on lawyers' professional conduct.  As an expert witness, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated.

9.      I am being compensated at my regular hourly rate for preparing this Declaration.

**RELEVANT FACTS**

10.     I have no first-hand knowledge of the relevant facts.  For purposes of rendering opinions, I have reviewed the following documents: (1) Eckhart's Second Amended Complaint; (2) Memorandum of Law in Support of Defendant Ed Henry's Motion to Dismiss [the Second Amended Complaint] and for a More Definite Statement ("Mem. No. 1"); (3) Eckhart's Third Amended Complaint; (4) Memorandum of Law in Support of Defendant Ed Henry's Motion to

3

Dismiss [the Third Amended Complaint], Motion to Strike, Motion for Sanctions, and Motion for a More Definite Statement ("Mem. No. 2"); (5) Memorandum of Law in Opposition to Defendant Ed Henry's Motion to Dismiss Plaintiff's Third Amended Complaint, Motion to Strike, Motion for Sanctions and Motion for a More Definite Statement; (6) Reply Memorandum of Law in Further Support of Defendant Ed Henry's Motion to Dismiss, Motion to Strike, Motion for Sanctions, and Motion for a More Definite Statement; (7) the Court's September 9, 2021 Opinion & Order in this case ("*Eckhart* Opinion & Order"); (8) the Court's September 9, 2021 Order in *Areu v. Fox News Network, LLC* ("*Areu* Opinion & Order"); and (9) Declaration of Catherine M. Foti in Support of Defendant Ed Henry's Motion for Reconsideration.

11.     The relevant facts are known to the Court and are, in brief, as follows.

12.     Eckhart's Second Amended Complaint alleged that Henry "prey[ed]" on her beginning in 2014 when he began following her on Twitter and that, shortly after, he sent her "a Direct Message ('DM') on Twitter that said only, 'beautiful.'" Soon after, Eckhart allegedly became Henry's "sexual target," as he "continued to send inappropriate, flirtatious and, at times, sexually graphic messages" to her. The ongoing communications between them, quoted in part in the Complaint, allegedly led to forcible sexual encounters, sexual assaults and other sexual misconduct, and rape, after which Henry allegedly harassed and retaliated against Eckhart. The Complaint quotes extensively from Henry's correspondence with Eckhart, which allegedly documents and corroborates her allegations.

13.     On behalf of Henry, his counsel prepared and filed a memorandum of law moving to dismiss the Second Amended Complaint and seeking a more definite statement regarding when the alleged rape and other alleged acts and communications occurred. Both the Preliminary Statement and the Factual Background asserted that Henry's relationship with

4

Eckhart "was completely consensual, and Eckhart engaged in it willingly and enthusiastically," Mem. No. 1, at 2, and that the Complaint's allegations to the contrary had "cherry-picked communications, selectively quoted only portions of those communications, and failed to include crucial evidence of her interactions with Mr. Henry to paint a false and libelous narrative of what was clearly a consensual relationship between two adults." *Id.* at 1-2.  To show that Eckhart had instigated the flirtation with Henry, *id.* at 5, and that Eckhart was a willing participant in their sexual relationship, *id.* at 8, the memorandum of law provided a factual account contrary to that of the Complaint, based on communications between Henry and Eckhart that were not quoted in the Complaint or not quoted in full.  Among the relevant correspondence omitted from Complaint, along with various emails and texts showing Eckhart's alleged willingness, were sexually explicit photos that she sent Henry on her own initiative.  *Id.*

14.     The memorandum of law noted that the Second Amended Complaint was vague as to the timing of alleged events, *id.* at 6, 14 n.5 & 16, and particularly of the alleged rape, *id.* at 8 n.4, and it argued that Henry could not adequately defend himself "without a precise date of the alleged rape" and "specific dates for the first sexual encounter or for the numerous snippets of text messages" included in the complaint.  *Id.* at 29-32.

15.     Along with the memorandum of law, Henry's counsel publicly filed a declaration attaching the exhibits to which the memorandum of law referred, including the photographs, after undertaking to "obscure[] the images that show Eckhart's naked breasts, buttocks, or vagina."  *Id.* at 8 n.3.  The memorandum of law acknowledged that "normally courts are not entitled to consider extrinsic evidence in determining a motion to dismiss," but asserted that a court must consider the documents incorporated into the complaint by reference, that the plaintiff had incorporated her sexually-explicit correspondence with Henry by selectively quoting from it,

5

and that "the Court should consider the remainder of the communication[s]."  Mem. #1 at 4-5 n.2.

16.    Eckhart responded by filing a Third Amendment Complaint adding allegations targeting Henry's public filing.  This complaint alleged that by filing the sexually explicit photographs of her, Henry had engaged in a further act in violation of New York State's anti-retaliation law and had violated its "revenge porn" law (Civil Rights Law § 52-b).

17.    On Henry's behalf, his counsel filed a memorandum of law moving to dismiss the Third Amended Complaint and again seeking a more definite statement regarding when the alleged rape and other alleged events occurred.  As before, to show that her relationship with Henry was consensual, the memorandum of law provided a contrary factual account based on portions of the chain of communications (including the photos Eckhart sent of herself) that Eckhart had omitted from this complaint.  Mem. #2 at 1-13.  The memorandum of law argued that "the redacted photographs . . . were plainly not retaliation" because "Mr. Henry has a right to defend himself." *Id.* at 30.  And it argued that the photographs were outside the Civil Rights Law because, among other things, the law permits the "dissemination or publication of an intimate still or video image made during lawful and common practices of . . . legal proceedings," and the redacted photographs were not filed "to harass, annoy or alarm Eckhart," but "to demonstrate that, as with her other allegations, Eckhart had chosen to cherry-pick the facts." *Id.* at 34-35.

18.    The Court rejected Henry's arguments regarding the photographs.  While acknowledging that reasonable defense measures are not subject to allegations of retaliation, the Court found that "[t]he filing of these photographs was by no means reasonable." *Eckhart* Opinion and Order at 42.  For essentially the same reason, the Court denied Henry's motion to

dismiss Eckhart's cause of action under New York's Civil Rights Law § 52-b. *Id.* at 2 ("Because Eckhart plausibly alleges that this conduct was indeed intended to 'shame' her, and because the Court finds that posting these photographs was not a reasonable litigation tactic, this claim [for retaliatory harassment and trauma] survives, as does Eckhart's claim against Henry for violation of New York's 'revenge porn' law.").

## OPINION

19.     I submit this opinion on the assumption that the applicable professional conduct rules and norms may bear on whether Henry may be civilly liable for his counsel's public filing of explicit photographs. I do not express an opinion on whether professional understandings are in fact significant, because that is a question of law.[1] But for purposes of putting my opinions in context, I assume that professional understandings relating to civil litigation may bear on whether advocacy in defense of a civil lawsuit is "reasonable"[2] and/or that professional

---

[1] I also express no view on whether an expert opinion on questions of professional conduct is admissible and useful in this context. Although courts have varied in their receptivity to expert opinions from legal ethics scholars, courts sometimes find such submissions useful. *See, e.g.*, *In re Grievance Committee of United States Dist. Court*, 847 F.2d 57, 62 (2d Cir. 1988); *see also Amnesty Int'l United States v. Clapper*, 638 F.3d 118, 128 (2d Cir. 2011).

[2] I note that *Strickland v. Washington*, 466 U.S. 668 (1984), which addresses "reasonableness" under the Sixth Amendment right to effective assistance of counsel, recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable." *Id.* at 688. The Court also observed that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

7

understandings may be relevant because the New York State anti-retaliation and "revenge porn" laws generally exempt lawful, ethical advocacy in defense of a federal civil lawsuit.[3]

20. In this case, the applicable professional conduct rules are those of the New York Rules of Professional Conduct ("NY Rules"), which have been adopted by Local Rule 1.5(b)(5) of the Civil Local Rules of the Southern and Eastern Districts of New York.

21. An overriding principle of the professional conduct rules and norms as they relate to civil litigation is that, within the bounds of the law, lawyers must provide "zealous advocacy." *See Grievance Comm. v. Simels*, 48 F.3d 640, 650 (2d Cir. 1995) (acknowledging the "overriding concern of . . . a lawyer's ethical duty of zealous advocacy"); *see also* NY Rules, Rule 1.1(c)(1) ("A lawyer shall not intentionally . . . fail to seek the objectives of the client through reasonably available means permitted by law and these Rules"). Therefore, Henry's motion and his counsel's accompanying filing of exhibits, including the redacted photographs, raises two questions of professional conduct: (1) whether Henry's counsel were engaged in zealous advocacy; and (2) whether their advocacy was within the bounds of the law and professional conduct rules.

22. For the reasons discussed below, when Henry's counsel publicly filed the explicit photographs that Eckhart sent Henry, the lawyers engaged in zealous advocacy within the

---

[3] I assume that questions of federal preemption might be raised if state laws did not include such exemptions.

bounds of the law and the NY Rules.  If the state laws exempt lawful, ethical advocacy in defense of a lawsuit, counsel's conduct should therefore be exempt.

> *Henry's counsel were engaged in zealous advocacy in filing redacted photographs to substantiate the statement of facts in support of the pretrial motions.*

23. As discussed below, it is evident on the face of Henry's filings that his lawyers were engaged in zealous advocacy on his behalf when, to support the statement of facts in connection with Henry's pretrial motions, they publicly filed Henry's correspondence with Eckhart, including redacted photographs that Eckhart sent Henry.

24. I assume that no one takes issue with the legitimacy of the pretrial motions themselves as zealous advocacy on Henry's behalf.  Motions to dismiss civil claims are permitted by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and motions for a more definite statement are permitted by Rule 12(e).  Such motions may not contain frivolous factual or legal assertions or knowingly false statements, and they may not be supported by knowingly false evidence, *see* NY Rules, Rule 3.1 & 3.3, but there is no suggestion that Henry's motions suffered from any of these infirmities.

25. The pretrial motions included Henry's factual account – namely that, contrary to Eckhart's allegations, their sexual relationship was consensual and she encouraged it, including by sending him sexually suggestive photographs of herself.  Henry's counsel could have awaited the filing of Henry's Answer or other subsequent pleadings before providing his factual account to counter the allegations of the complaint, but taking advantage of this earlier opportunity was legitimate, zealous advocacy.  This is true, in my opinion, for each of the following reasons.

   a. First, Henry's factual account, based on correspondence omitted from the complaint, bolstered his motion for a more definite statement.  Without describing Henry's defense, it would be less clear why learning the dates of Henry's acts and statements alleged in the complaint

9

mattered to the defense. Eckhart alleged that their sexual encounters were nonconsensual and forcible. Henry was prepared to show that Eckhart engaged in acts inconsistent with the claim, prominent among them being her sending Henry sexually explicit photographs of herself. The probative value of the photos and other documentary evidence of Eckhart's receptivity to a sexual relationship with Henry would depend, however, on their temporal proximity to the acts that Eckhart alleges to have been nonconsensual and forcible. If Henry's counsel had asked the Court to order Eckhart to provide specific dates, but they did not tie this request to his factual defense, their motion would have been weaker.

      b. Second, Henry's contrary version of events provided context for the motion to dismiss. Just as judicial opinions frequently recite facts, regardless of whether they bear directly on the particular legal questions addressed in the opinions, parties may seek to provide their version of the disputed facts of a case to contextualize their legal arguments. Facts that have "no legal force" may provide "fair litigation atmospherics," *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 705 (Del. Ch. 2004), with the aim of enhancing the court's understanding or evoking the court's sympathy for legal arguments that follow. Further, Henry's counsel could seek to advance the defense by providing Henry's version of events, corroborated by documentary evidence, to educate the court about the theory of the defense and attempt to counter the negative feelings that the allegations of the complaint would tend to evoke.[4]

      c. Third, it advanced the defense to use the occasion of the motions to attempt "to blunt the inflammatory force of [Eckhart's] allegations," *Hughes v. Twenty-First Century Fox, Inc.*,

---

[4] Regardless of whether judges' feelings are legally relevant, their feelings are likely to influence their decision-making. *See, e.g.*, William J. Brennan, Jr., *Reason, Passion, and "The Progress of the Law,"* 10 CARDOZO L. REV. 3, 10 (1988) (observing that "sensitivity to one's intuitive and

10

304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018), to protect Henry's professional reputation. Courts – including this Court in its *Areu* Opinion & Order at 29 – have recognized that, even in extrajudicial advocacy, it is legitimate for counsel to counter allegations' adverse impact by publicizing the client's contrary factual account. *See, e.g.*, *Gentile v. State Bar of Nevada* 501 U.S. 1030, 1043 (1991) (plurality opinion of Kennedy, J.) (An attorney "cannot ignore the practical implications of a legal proceeding for the client. . . . [A]n attorney may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives. A defense attorney may pursue lawful strategies . . ., including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried."). If countering adverse allegations is legitimate advocacy in the court of public opinion, it is legitimate advocacy in judicial filings.

26. Having provided Henry's contrary version of the facts to advance Henry's defense, it was zealous advocacy for Henry's counsel to substantiate Henry's version of events by filing documentary evidence of uncontested authenticity, including not only Eckhart's written communications but also the photographs she sent Henry, which counsel redacted to reduce harm to Eckhart. The credibility of Henry's factual account was enhanced by providing evidence to

---

passionate responses . . . [is] not only an inevitable but a desirable part of the judicial process"); Irving R. Kaufman, *The Anatomy of Decisionmaking*, 53 FORDHAM L. REV. 1, 16 (1984) ("Our intuition, emotion and conscience are appropriate factors in the jurisprudential calculus."). Advocates are not obligated to ignore the emotional impact of the opposing party's allegations; as an aspect of zealous advocacy, counsel may attempt to reduce the allegations' emotional impact by presenting contrary or additional facts.

11

substantiate it. The Court may have discounted that account or ignored it altogether if it were unsubstantiated.

27. In advancing the defense by submitting Henry's version of events, together with evidence to support his account, it was also legitimate, zealous advocacy for Henry's counsel to include the actual photographs rather than descriptions of them. In general, advocates prefer to present photographs and other tangible evidence rather than verbal descriptions, which tend to be imprecise and less impactful. Advocates are generally permitted to do so at trial, because tangible evidence has more force than a description. *See Old Chief v. United States*, 519 U.S. 172, 186-89 (1997). Further, it made sense to file the memorandum of law, the supporting declaration, and the accompanying records on the public docket because that is the norm in federal litigation: There is a strong presumption against filing under seal, because of the public right of access to judicial filings and the First Amendment implications. *See, e.g.*, *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020). Beyond that, putting the evidence on the public docket constituted zealous defense advocacy because, by publicly corroborating Henry's account, the evidence potentially mitigated the prejudice caused by Eckhart's public allegations. *See* ¶ 25, *supra*.

*Counsel's advocacy was within the bounds of the law.*

28. Counsel's zealous advocacy in submitting the redacted photographs in support of Henry's pretrial motions was within the bounds of the law. Procedural rules permitted counsel to publicly file the motions along with a declaration with exhibits in support of the motions. Leaving aside the civil law on which Eckhart bases her causes of action (and which accommodate defense advocacy), it does not appear that any law, rule or prior ruling precluded Henry's counsel from including the redacted photographs as part of their judicial filing on the

12

public docket.  It may be that, in retrospect, a court rule or ruling should provide for sexually explicit photographs to be filed under seal, or not filed at all, to protect against invasions of privacy and bodily integrity, but the law did not so require at the time of the filing in this case.  Neither Fed. R. Civ. P. 5.2, which specifically sets forth privacy protections in civil filings, nor this Court's Local Rules, addressed this issue.

29. Although the Court declined to consider the photographs in deciding Henry's motion to dismiss, because it determined the photographs were not "'incorporated' into the Complaint,'" *Eckhart* Opinion & Order at 43, it was lawful to include the redacted photographs in the filing on Henry's behalf.  This is true for any of several reasons.  First, the factual background and the evidence supporting it, including the photographs, were relevant to Henry's motion for a more definite statement, for reasons discussed in ¶ 25, above.  Second, counsel may submit evidence to support a motion to dismiss, and strict evidentiary rules do not apply.  *See, e.g., Shepard v. Shinseki*, 2014 U.S. Dist. LEXIS 20562, *8-9 (D. Nev. Feb 19, 2018).  Third, even if a court deciding a motion to dismiss should consider only evidence incorporated in the complaint, a lawyer violates no rule or law by making factual or evidentiary submissions that, in retrospect, should not be considered.  Fourth, even assuming a lawyer needs a legal basis to submit evidence in support of a motion to dismiss, the governing standard is Fed. R. Civ. P. 11 and Rule 3.1 of the NY Rules.  That is, the lawyer is required, at most, to have a nonfrivolous basis to argue that the court may consider the evidence in question.  I assume it was not frivolous for Henry's counsel to assert that Eckhart's complaint, alleging that Henry preyed on her by sending "inappropriate, flirtatious and, at times, sexually graphic messages," implicitly

"incorporated" both sides of their sexually graphic correspondence, not just the pieces of Henry's communications quoted in the complaint.

*Counsel's advocacy was within the bounds of the NY Rules.*

30.     As noted at the outset in ¶ 21, Henry's counsel's overarching professional obligation was that of zealous advocacy. His lawyers must use their best professional judgment to defend him in this lawsuit. They would be subject to discipline under Rule 1.1(c)(1) if they intentionally "fail[ed] to seek [his] objectives . . . through reasonably available means permitted by law and [the NY Rules]."

31.     Two provisions of the NY Rules, in addition to those discussed above, potentially applied to the lawyers' decision to file the redacted photographs in support of Henry's motions, but on analysis, neither rule was violated.

32.     First, Rule 3.4(d)(1) provides: "A lawyer shall not . . . in appearing before a tribunal on behalf of a client . . . state or allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence." This rule is ordinarily invoked in jury trials when lawyers refer to irrelevant facts or make unsupportable factual assertions. It is doubtful whether the rule applies to irrelevant factual assertions in connection with lawyers' legal arguments to the court. *Cf. Geltzer v. Brizinova*, 565 B.R. 488, 501, 506-10 (E.D.N.Y. 2017) (denying sanctions under the NY Rules for alleged improprieties in motion to dismiss). But even if the rule might apply to pretrial motions, the rule was not violated here. For the reasons discussed above in ¶¶ 24-27, in preparing a memorandum of law in support of their pretrial motions, Henry's counsel could conclude, as a matter of professional judgment, that his contrary factual account of his relationship with Eckhart would advance the defense in any of

several ways, and the factual account was supported by the documentary evidence they filed along with the pretrial motions.

33.     Second, Rule 4.4(a) provides, in part: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass or harm a third person." The rule clearly conveys that an advocate may employ litigation tactics and strategies that serve a substantial purpose – e.g., to discover relevant evidence, or, as here, to prevail on a motion and to influence judicial and public perceptions of the defense – even if someone other than the client may be embarrassed or harmed as a result. As a recent state court decision explained:

> An attorney is in violation of rule 4.4(a) if he or she, in representing a client, employs resources and methods that, although not illegal, have no important or considerable purpose other than to embarrass, delay, or burden a third person. Such actions are prohibited when the attorney engages in them for no other significant purpose other than to harass the third person. It is important to note that an attorney's lawful actions taken on behalf of his or her client may often cause embarrassment or inconvenience to an opposing party or another person. The attorney does not violate the rule, however, unless the means were employed for no legitimate and considerable purpose other than to cause embarrassment or inconvenience to the third person.

*Marino v. Statewide Griev. Comm.*, 206 A.3d 198, 205 (Conn. 2019) (overturning sanction under Rule 4.4(a)); *see, e.g.*, *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1483-84 (D.C. Cir. 1995) (finding that lawyer did not violate Rule 4.4(a) by upsetting a witness during an interview, because the lawyer had a legitimate purpose for speaking with the witness).

34.     For reasons already discussed in ¶¶ 24-27, Henry's counsel had a "substantial purpose" for filing pretrial motions and for including the photographs along with written communications in the evidentiary submission filed publicly in support of the motions. That purpose was implicit on the face of the relevant memorandum of law, and explicit in counsel's subsequent submission, which explained that "Mr. Henry has a right to defend himself," Mem. #2 at 30, and that the redacted photographs were filed as part of that defense "to demonstrate

that, as with her other allegations, Eckhart had chosen to cherry-pick the facts." *Id.* at 34-35. The Court acknowledged that this explanation is "reasonable," *Eckhart* Opinion & Order at 46, which should compel the conclusion that, from an objective perspective, Henry's counsel had a "substantial purpose other than to embarrass or harm" the plaintiff.

## Conclusion

35.     Eckhart's Second Amended Complaint alleged that Henry sent her "inappropriate, flirtatious and, at times, sexually graphic messages" that led to forcible, nonconsensual sexual encounters, including a rape.  The complaint quoted selectively from their communications.  In defense of their client, Henry's counsel publicly filed two pretrial motions.  Their memorandum of law provided a contrary version of the facts drawn from communications omitted from the complaint, to show that the sexual relationship between Eckhart and Henry was consensual. Henry's counsel also filed on the public record the communications from which the statement of facts was drawn.  These included, along with written communications, redacted copies of sexually explicit photographs that Eckhart had sent Henry during the period when Henry was allegedly making unwanted advances.  In making these submissions to the Court, counsel's purpose was to defend Henry.  The purpose of the contrary statement of facts, corroborated by documentary evidence, was to show that Eckhart had "cherry-pick[ed] the facts," and that her allegations were false.   For the reasons discussed above, my conclusion is that, in making these public filings, Henry's counsel engaged in zealous advocacy within the bounds of the law and

professional conduct rules. That is, counsel employed "reasonably available means permitted by law and the[] Rules" to defend their client, as contemplated by Rule 1.1(c)(1).

Dated: New York, New York
      September 21, 2021

                                              BRUCE A. GREEN