Exhibit A

| | |
|---|---|
| **From:** | Grossman-Boder, Yonatan L. |
| **To:** | Renan F. Varghese; John S. Crain |
| **Cc:** | McKenna, Kathleen M.; Fischer, Rachel S.; Abramowitz, Elkan; Chalke, Douglas; Foti, Catherine M. |
| **Subject:** | [External] RE: Ekhart v. Fox News Network, LLC et al |
| **Date:** | Friday, November 19, 2021 4:04:17 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | Eckhart ESI Protocol -Proskauer Edits.DOCX |
| | REDLINE Eckhart ESI Protocol - With Proskauer Edits.pdf |

Please see attached the ESI Protocol with Fox News' proposed edits.  A redline is also attached showing changes.  We will be making suggestions in regards to custodians and search terms separately.

Best,
Yoni

**Yonatan Grossman-Boder**
Associate

(he/him)
Proskauer
Eleven Times Square
New York, NY 10036
d 212.969.3248
f 212.969.2900
YGrossman-Boder@proskauer.com
 greenspaces

 Please consider the environment before printing this e-mail.

**From:** Renan F. Varghese <RVarghese@wigdorlaw.com>
**Sent:** Wednesday, November 10, 2021 1:12 PM
**To:** McKenna, Kathleen M. <KMcKenna@proskauer.com>; Moss, Danielle J. <DMoss@proskauer.com>; Grossman-Boder, Yonatan L. <YGrossman-Boder@proskauer.com>; Abramowitz, Elkan <EAbramowitz@maglaw.com>; 'Chalke, Douglas' <dchalke@maglaw.com>; Foti, Catherine M. <CFoti@maglaw.com>
**Cc:** John S. Crain <jcrain@wigdorlaw.com>
**Subject:** Eckhart v. Fox News Network, LLC et al

**This email originated from outside the Firm.**

All-

Attached please find a draft ESI protocol in the instant case.  Moreover, I believe we have to submit a confidentiality order to the court this week.  If you please send us a proposal, we will be happy to take a look and revert back to you.

Thanks,



**Renan F. Varghese**
*Of Counsel*

**WIGDOR LLP**
85 Fifth Avenue, New York, NY 10003
T: (212) 257-6800 | F: (212) 257-6845

rvarghese@wigdorlaw.com
www.wigdorlaw.com
·

This communication may contain Confidential or Attorney-Client Privileged Information and/or Attorney Work Product. If you are not the addressee indicated in this message or its intended recipient (or responsible for delivery of the message to such person(s)), do not read, copy, or forward this message to anyone and, in such case, please immediately destroy or delete this message, including any copies hereof, and kindly notify the sender by reply e-mail, facsimile or phone. Thank you.

*********************************************************************************************************************************************

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
*********************************************************************************************************************************************

EXTERNAL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| JENNIFER ECKHART, | : | |
| | : | Civil Case No. 1:20-cv-05593 |
| Plaintiff, | : | (RA)(GWG) |
| | : | |
| v. | : | |
| | : | |
| FOX NEWS NETWORK, LLC and ED HENRY, | : | |
| in his individual and professional capacities, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------X

### PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION OF ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION

Plaintiff and Defendants (the "Parties" or "Party" when singular) hereby agree to the following protocol ("ESI and Discovery Protocol") for the production of electronically stored information of Plaintiff Jennifer Eckhart ("Plaintiff"), Defendants Fox News Network, LLC ("Fox News"), Ed Henry ("Henry") and any affiliate company that is in the possession, custody, or control of Plaintiff, Fox News or Henry's ESI.  Nothing in the protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules or object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

## I.   DEFINITIONS

In addition to terms defined throughout this ESI and Discovery Protocol, the following definitions shall apply:

1.   "Plaintiff" shall mean Plaintiff Jennifer Eckhart.

2.   "Fox News" shall mean Defendant Fox News Network, LLC.

3.   "Henry" shall mean Defendant Ed Henry.

4.   "ESI" shall mean Electronically Stored Information.

5.   "Privileged Material" shall mean any discovery protected from disclosure by any applicable law, rule order, agreement or stipulation that protects such material from disclosure.

6.   "Producing Party" shall mean the Party producing any particular discovery.

1

7.      "Receiving Party" shall mean the Party receiving any particular discovery.

## II.   GENERAL AGREEMENTS

1.      **Scope Of Discovery:** The standards, limits and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer in good faith with regard to any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any Party to object to any Request for Production, Interrogatory or other discovery request.

2.      **No Designation Of Discovery Requests:** Productions of ESI in the reasonably usable form set out in this protocol need not include any reference to the requests to which a document or other ESI may be responsive, including but not limited to the Parties need not identify by Bates number which messages, emails and attachments are responsive to which requests.

3.      **Clawback of Privileged Documents:** The production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations ("Privileged Material"), shall be governed by provisions contained in the FRCP 26(b)(5)(B) and/or any stipulation entered into by the Parties and So-Ordered by the Court. The production of Privileged Material may not be a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding and may not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter.

Upon written notification from the party producing the material ("Producing Party") to the receiving party ("Receiving Party") identifying disclosed Privileged Material, the Receiving Party shall not review the disclosed Privileged Material in any respect; shall within seven days return, sequester, delete or destroy all copies of the disclosed Privileged Material (including any and all work-product containing such Privileged Material, including but not limited to all notes and other materials referring to the Privileged Material); shall take reasonable steps to retrieve such Privileged Material if the Receiving Party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material). The Producing Party must promptly provide a privilege log for the claimed Privileged Information consistent with Local Civil Rule 26.2.

## III.   FORM OF ESI PRODUCTION

1.      **Production In Reasonably Useable Form:** Parties shall produce ESI in connection with this protocol in reasonably usable form. Except as stated in paragraph II.2 below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be the single-page, TIFF-image format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full in this protocol. If the receiving Party seeks production in native format of specifically identified ESI produced originally in TIFF-image

2

form, the producing Party shall respond reasonably and in good faith to any such request.  This shall be limited to tailored requests for metadata for reasonable articulable purposes and/or documents produced in or non-usable format.  Parties may produce documents in native format in lieu of producing documents pursuant to the format set forth in Attachment A.

**2.**     **Documents Subject To Production In Native Format and Structured Data:** Electronic spreadsheets (*e.g.*, Excel) and audio/video multimedia files that have been identified as responsive shall be produced in native format. The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats, including TIFF-images.  To the extent a response to discovery requires production of ESI contained in a database or other structured data, the Parties shall negotiate appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (for example, Excel, CSV, PDF) or other format.

**3.**     **Deduplication:**  Defendants are only required to produce a single copy of a responsive document, and Parties should de-duplicate responsive ESI across all custodians, provided, however, that all custodians who sent, received or were copied (including blind copied) on such email exchange are identifiable in the load file.    Defendants will run deduplication of emails and other ESI using industry standard review platform technology.  In order to enhance review and production efficiency, a Party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of the chain.

## IV.     SEARCH OF FOX NEWS' CORPORATE ESI SYSTEMS

**1.**     **Search Terms.**  The Parties shall meet and confer to discuss the use of reasonable search terms, custodians, file types and date ranges that will capture responsive ESI and reduce the recall of irrelevant documents, and will apply to the following ESI systems: Defendant's corporate email systems, including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders and the fields "TO", "FROM", "CC", "RE" and the body.  To the extent the search terms to which the Parties agree result in excessive, disproportional and/or overly burdensome results, the Parties will meet and confer in good faith to discuss any potential revisions to the search terms with the goal of identifying unique, responsive documents and reducing the recall of irrelevant documents.

**2.**     **Review of Search Term Protocol Hits.**  Defendants shall retain the sole right and responsibility to conduct the searches of its data files.  Nothing contained herein is intended to or shall serve to limit Defendants' right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  The fact that any electronic file has been identified as being "hit" by a search term shall not prevent Defendants from withholding such file from production on the grounds that the file is not responsive to any discovery request or is protected from disclosure as Privileged Material.  However, to the extent any document responsive to a discovery request is withheld on grounds of any applicable privilege, such document must be

identified in a privilege log.  In addition, Defendants shall not be limited regarding the manner in which they choose to conduct document review.

       **3.**    **Review Methodology.** In order to promote efficient review, the Parties may also use technology-assisted review technologies, with industry-standard workflows and validation protocols, to isolate potentially relevant documents for review and production.

       **4.**    **Privilege Logs**.  To the extent a Producing Party claims that a document or ESI contains both privileged and responsive non-privileged material, the Producing Party shall redact the privileged information, produce the responsive, non-privileged documents or ESI, and identify the basis for the asserted privilege in accordance with the foregoing.  For any such documents or ESI withheld, the Producing Party will produce a privilege log in Excel or PDF format, except that the parties shall have no obligation to log documents or ESI generated solely for litigation purposes after June 25, 2020.  When there is a chain or group of related privileged e-mails or records, the Producing Party need only include one entry on the privilege log for the entire e-mail chain or group of records and need not log each record separately.  The parties may modify the form and/or deadlines for production of privilege logs by agreement.  Privilege logs shall be produced within forty-five (45) calendar days of completion of all document production. The Producing Party's privilege logs shall include the following information:

    a.    Date;
    b.    File type
    c.    Author(s) (including for loose electronic files);
    d.    Recipient(s), CC(s) and BCC(s) (where known);
    e.    The type or nature of the privilege or immunity asserted; and
    f.    A file name, subject line or other brief description of the subject matter of the document or ESI to enable the other party's evaluation of the claim of privilege or immunity and the basis for the privilege or immunity.

Metadata for documents redacted for privilege shall be included on the privilege log.  Redactions need not be made on privileged documents where the remainder to be produced would be wholly non-responsive.

Within 45 days after production of the privilege log, or by a deadline otherwise set by agreement of the parties, a Receiving Party may identify, in writing, particular documents or ESI identified on the Producing Party's privilege log that it believes require further explanation.  Within 21 calendar days of such an identification, or by a deadline otherwise set by agreement of the parties, the Producing Party must respond to the request.  If a party challenges a request for further information, the parties shall meet and confer within seven calendar days to try to reach a mutually agreeable solution.

Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the omission, the Producing Party sends to the Receiving Party an addendum to the privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

    

5.      **No Limitations Assumed.** Nothing in this agreement shall limit Plaintiff's right to seek additional custodians and/or keywords to be applied to the ESI and Discovery Protocol at any point during discovery.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

6.      **Known Documents.**  For the avoidance of any doubt, to the extent Defendants are aware of a document that is responsive to Plaintiff's discovery requests, the failure to produce (or log in a privilege log) such a document shall not be justified on the basis that such document was not a "hit" under the Search Term Protocol.

## V.     **PERSONAL AND OTHER ACCOUNTS**

The Parties shall meet and confer to discuss the use of reasonable search terms, file types and date ranges for Individual Defendant Henry and Plaintiff to employ in searching their personal and other accounts, as identified in this Article V, to capture responsive ESI and reduce the recall of irrelevant documents.  Nothing in this agreement shall limit Fox News' right to seek additional search terms, file types and date ranges to be applied by Individual Defendant Henry and Plaintiff in searching their personal and other accounts at any point during discovery.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.  To the extent the search terms to which the Parties agree result in excessive, disproportional and/or overly burdensome results, the Parties will meet and confer in good faith to discuss any potential revisions to the search terms with the goal of identifying unique, responsive documents and reducing the recall of irrelevant documents.

1.      **Individual Defendant Henry:**  Defendant Henry shall conduct a thorough and diligent search of their personal documents, personal email accounts (including all folders), personal workstation or other personal computer, personal cloud storage, personal cellular phones, messaging applications on cellular phones or other electronic devices, social media accounts, and any other ESI that may contain information responsive to Plaintiff or Fox News' discovery requests.  These documents may be produced in word searchable PDF format. This paragraph is not intended to limit the obligations or expand the obligations of the Individual Defendants to search and produce documents pursuant to the FRCP or the obligations to search emails and other ESI as described herein.

2.      **Plaintiff:**  Plaintiff shall conduct a thorough and diligent search of her personal documents, personal email accounts (including all folders), personal workstation or other computer, personal cloud storage, personal cellular phones, messaging applications on cellular phones or other electronic devices, social media accounts and any other ESI that may contain information responsive to Fox News or Henry's discovery requests.  These documents may be produced in word searchable PDF format. This paragraph is not intended to limit the obligations or expand the obligations of the custodians named herein to search and produce documents pursuant to the FRCP or the obligations to search emails and other ESI as described herein.

## VI.    **OTHER SOURCES OF INFORMATION**

5

To the extent there are additional sources of information responsive to a discovery request are not specifically referenced herein, the Producing Party shall have an obligation to search such sources for responsive ESI consistent with the obligations of the Scheduling Order.  If a source of potentially responsive information is expansive and a Party believes such a source is not proportional or is otherwise objectionable, the Parties shall meet and confer and attempt to devise a search term or other protocol and attempt to ease the volume and/or burden on the Producing Party.

Dated: February 11, 2022
      New York, New York

**WIGDOR LLP**

By: _____
     Douglas H. Wigdor
     Michael J. Willemin
     Renan F. Varghese
     John S. Crain
85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
rvarghese@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*

**PROSKAUER ROSE LLP**

By: _____
     Kathleen M. McKenna
     Lloyd B. Chinn
     Keisha-Ann G. Gray
     Yonatan L. Grossman-Boder
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
kmkenna@proskauer.com

*Counsel for Fox News Network*

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC**

By: _____
     Elkan Abramowitz
     Catherine M. Foti
     565 Fifth Avenue
     New York, New York 10017

     Jayne C. Weintraub
     Jon A. Sale
     Sale & Weintraub, P.A.
     2 South Biscayne Boulevard

One Biscayne Tower, 21st Floor
Miami Florida 33131

*Attorneys for Ed Henry*

## **ATTACHMENT A**

A.1.   <u>Image Files</u>. Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

> *be consistent across the production;*
>
> *contain no special characters; and*
>
> *be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

7

A.3.     User-Created Files: Word processing files, presentation files, and all other non-natively produced user-created files,  including without limitation *.doc, *.docx, *.ppt, *pptx  will be produced in the above format with tracked changes and comments showing.  To the extent there is hidden content such as tracked changes, hidden columns, mark-ups, notes, it shall be expanded and rendered in the image file.

A.4.     Parent-Child Relationships. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.5.     Dynamic Fields. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed or imaged.

A.6.     English Language. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.7.     Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.8.     Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.9.     Encrypted Files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.10.    Scanned Hardcopy Documents

> *In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).*

> *If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.*

> *In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the*

8

*document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.*

A.11.   <u>Production Numbering</u>. In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.12.   <u>Data and Image Load Files</u>.

> *<u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.*

> *<u>Load File Formats</u>.*

>> **i.    Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.**

>> **ii.   Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.**

>> **iii.  Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.**

> *<u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.*

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |

9

| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00000105 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |

| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to EST |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to EST |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC0000000 01.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

A.13.  Files Produced in Native Format. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively". To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

11

A.14.  <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.  Each production shall be encrypted and delivered separately from the decryption password.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JENNIFER ECKHART,                                    :

                              Plaintiff,    :      Civil Case No. 1:20-cv-05593

                                            :      (RA)(GWG)

                                            :

                    v.                                      :

                                            :

FOX NEWS NETWORK, LLC and ED HENRY,    :
in his individual and professional capacities,    :

                                            :

                          Defendants.    :
-------------------------------------------------------------X

**PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION OF**
**ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION**

        Plaintiff and Defendants (the "Parties" or "Party" when singular) hereby agree to the following protocol ("ESI and Discovery Protocol") for the production of electronically stored information of Plaintiff Jennifer Eckhart ("Plaintiff"), Defendants Fox News Network, LLC and ("Fox News"), Ed Henry ("DefendantsHenry") and any affiliate company that is in the possession, custody, or control of Defendants'Plaintiff, Fox News or Henry's ESI.  Nothing in the protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules or object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

## I.    **DEFINITIONS**

        In addition to terms defined throughout this ESI and Discovery Protocol, the following definitions shall apply:

        1.      "Plaintiff" shall mean Plaintiff Jennifer Eckhart.

        2.      "Fox News" shall mean Defendant Fox News Network, LLC.

        3.    2. "Henry" shall mean Defendant Ed Henry.

        4.    3. "ESI" shall mean Electronically Stored Information.

        5.    4. "Privileged Material" shall mean any discovery protected from disclosure by any applicable law, rule order, agreement or stipulation that protects such material from disclosure.

        6.    5. "Producing Party" shall mean the Party producing any particular discovery.

9534/85474-001 CURRENT/127004425v2

11/19/2021 1:55 PM

7. 6. "Receiving Party" shall mean the Party receiving any particular discovery.

## II.    GENERAL AGREEMENTS

**1.    Scope Of Discovery:**  The standards, limits and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP").  The Parties agree to meet and confer in good faith with regard to any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court.  Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any Party to object to any Request for Production, Interrogatory or other discovery request.

**2.    No Designation Of Discovery Requests:**  Productions of ESI in the reasonably usable form set out in this protocol need not include any reference to the requests to which a document or other ESI may be responsive, including but not limited to the Parties need not identify by Bates number which messages, emails and attachments are responsive to which requests.

**3.    Clawback of Privileged Documents:**  The production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations ("Privileged Material"), shall be governed by provisions contained in the FRCP 26(b)(5)(B) and/or any stipulation entered into by the Parties and So-Ordered by the Court.  The production of Privileged Material may not be a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding and may not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter.

Upon written notification from the party producing the material ("Producing Party") to the receiving party ("Receiving Party") identifying disclosed Privileged Material, the Receiving Party shall not review the disclosed Privileged Material in any respect; shall within seven days return, sequester, delete or destroy all copies of the disclosed Privileged Material (including any and all work-product containing such Privileged Material, including but not limited to all notes and other materials referring to the Privileged Material); shall take reasonable steps to retrieve such Privileged Material if the Receiving Party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material).  The Producing Party must promptly provide a privilege log for the claimed Privileged Information consistent with Local Civil Rule 26.2.

## III.    FORM OF ESI PRODUCTION

**1.    Production In Reasonably Useable Form:**    Parties shall produce ESI in connection with this protocol in reasonably usable form.  Except as stated in paragraph II.2 below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be the single-page, TIFF-image format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full in this protocol.  If the receiving Party

2

seeks production in native format of specifically identified ESI produced originally in TIFF-image form, the producing Party shall respond reasonably and in good faith to any such request.  This shall be limited to tailored requests for metadata for reasonable articulable purposes and/or documents produced in or non-usable format.  Parties may produce documents in native format in lieu of producing documents pursuant to the format set forth in Attachment A.

       **2.**      **<u>Documents Subject To Production In Native Format and Structured Data:</u>** Electronic spreadsheets (*e.g.*, Excel) and audio/video multimedia files that have been identified as responsive shall be produced in native format. The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats, including TIFF-images.  To the extent a response to discovery requires production of ESI contained in a database or other structured data, the Parties shall negotiate appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (for example, Excel, CSV, PDF) or other format.

       **3.**      **<u>Deduplication:</u>**   Defendants are only required to produce a single copy of a responsive document, and Parties should de-duplicate responsive ESI across all custodians, provided, however, that all custodians who sent, received or were copied (including blind copied) on such email exchange are identifiable in the load file.   Defendants will run deduplication of emails and other ESI using industry standard review platform technology. <u>In order to enhance review and production efficiency, a Party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of the chain.</u>

## IV.    **<u>SEARCH OF FOX <span style="color:blue">NEWS'</span><s>S</s> CORPORATE ESI SYSTEMS</u>**

       **1.**      **<u>Search Terms.</u>**  The Parties shall meet and confer to discuss the use of reasonable search terms, custodians, file types and date ranges <s>("Search Protocol") which</s><u>that will capture responsive ESI and reduce the recall of irrelevant documents, and</u> will apply to the following ESI systems: Defendant's corporate email systems<u>,</u> including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders and the fields "TO", "FROM", "CC", "RE" and the body.  <u>To the extent the search terms to which the Parties agree result in excessive, disproportional and/or overly burdensome results, the Parties will meet and confer in good faith to discuss any potential revisions to the search terms with the goal of identifying unique, responsive documents and reducing the recall of irrelevant documents.</u>

       **2.**      **<u>Review of Search Term Protocol Hits.</u>**  Defendants shall retain the sole right and responsibility to conduct the searches of its data files.  Nothing contained herein is intended to or shall serve to limit Defendants' right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  The fact that any electronic file has been identified as being "hit" by a search term shall not prevent Defendants from withholding such file from production on the grounds that the file is not responsive to any discovery request or is protected from disclosure as Privileged Material.  However, to the extent any document responsive to a

3

discovery request is withheld on grounds of any applicable privilege, such document must be identified in a privilege log.  In addition, Defendants shall not be limited regarding the manner in which they choose to conduct document review.

**3.     Review Methodology.** In order to promote efficient review, the Parties may also use technology-assisted review technologies, with industry-standard workflows and validation protocols, to isolate potentially relevant documents for review and production.

**4.     Privilege Logs**.  To the extent a Producing Party claims that a document or ESI contains both privileged and responsive non-privileged material, the Producing Party shall redact the privileged information, produce the responsive, non-privileged documents or ESI, and identify the basis for the asserted privilege in accordance with the foregoing.  For any such documents or ESI withheld, the Producing Party will produce a privilege log in Excel or PDF format, except that the parties shall have no obligation to log documents or ESI generated solely for litigation purposes after June 25, 2020.  When there is a chain or group of related privileged e-mails or records, the Producing Party need only include one entry on the privilege log for the entire e-mail chain or group of records and need not log each record separately.  The parties may modify the form and/or deadlines for production of privilege logs by agreement.  Privilege logs shall be produced within forty-five (45) calendar days of completion of all document production. The Producing Party's privilege logs shall include the following information:

a.     Date;
b.     File type
c.     Author(s) (including for loose electronic files);
d.     Recipient(s), CC(s) and BCC(s) (where known);
e.     The type or nature of the privilege or immunity asserted; and
f.     A file name, subject line or other brief description of the subject matter of the document or ESI to enable the other party's evaluation of the claim of privilege or immunity and the basis for the privilege or immunity.

Metadata for documents redacted for privilege shall be included on the privilege log.  Redactions need not be made on privileged documents where the remainder to be produced would be wholly non-responsive.

Within 45 days after production of the privilege log, or by a deadline otherwise set by agreement of the parties, a Receiving Party may identify, in writing, particular documents or ESI identified on the Producing Party's privilege log that it believes require further explanation.  Within 21 calendar days of such an identification, or by a deadline otherwise set by agreement of the parties, the Producing Party must respond to the request.  If a party challenges a request for further information, the parties shall meet and confer within seven calendar days to try to reach a mutually agreeable solution.

Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the omission, the Producing Party sends to the Receiving

4

Party an addendum to the privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

**5.** ~~3.~~**No Limitations Assumed.** Nothing in this agreement shall limit Plaintiff's right to seek additional custodians and/or keywords to be applied to the ESI and Discovery Protocol at any point during discovery.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

**6.** ~~4.~~**Known Documents.**  For the avoidance of any doubt, to the extent Defendants are aware of a document that is responsive to Plaintiff's discovery requests, the failure to produce (or log in a privilege log) such a document shall not be justified on the basis that such document was not a "hit" under the Search Term Protocol.

## V.    PERSONAL AND OTHER ACCOUNTS

The Parties shall meet and confer to discuss the use of reasonable search terms, file types and date ranges for Individual Defendant Henry and Plaintiff to employ in searching their personal and other accounts, as identified in this Article V, to capture responsive ESI and reduce the recall of irrelevant documents.  Nothing in this agreement shall limit Fox News' right to seek additional search terms, file types and date ranges to be applied by Individual Defendant Henry and Plaintiff in searching their personal and other accounts at any point during discovery.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.  To the extent the search terms to which the Parties agree result in excessive, disproportional and/or overly burdensome results, the Parties will meet and confer in good faith to discuss any potential revisions to the search terms with the goal of identifying unique, responsive documents and reducing the recall of irrelevant documents.

**1.**    **Individual Defendant Henry:** ~~Any Individual Defendants~~Defendant Henry shall conduct a thorough and diligent search of their personal documents, personal email accounts (including all folders), personal workstation or other personal computer, personal cloud storage, personal cellular phones, messaging applications on cellular phones or other electronic devices, social media accounts, and any other ESI that may contain information responsive to Plaintiff~~'s~~ or Fox News' discovery requests.  These documents may be produced in word searchable PDF format. This paragraph is not intended to limit the obligations or expand the obligations of the Individual Defendants to search and produce documents pursuant to the FRCP or the obligations to search emails and other ESI as described herein. ~~The search terms provided in Attachment B shall only be run against the Individual Defendant's email boxes.~~

**2.**    **Plaintiff:**  Plaintiff shall conduct a thorough and diligent search of her personal documents, personal email accounts (including all folders), personal workstation or other computer, personal cloud storage, personal cellular phones, messaging applications on cellular phones or other electronic devices, social media accounts and any other ESI that may contain information responsive to ~~Defendants'~~Fox News or Henry's discovery requests.  These documents may be produced in word searchable PDF format. This paragraph is not intended to limit the obligations or expand the obligations of the custodians named herein to search and produce

5

documents pursuant to the FRCP or the obligations to search emails and other ESI as described herein.

## VI.   OTHER SOURCES OF INFORMATION

To the extent there are additional sources of information responsive to a discovery request are not specifically referenced herein, the Producing Party shall have an obligation to search such sources for responsive ESI consistent with the obligations of the Scheduling Order.  If a source of potentially responsive information is expansive and a Party believes such a source is not proportional or is otherwise objectionable, the Parties shall meet and confer and attempt to devise a search term or other protocol and attempt to ease the volume and/or burden on the Producing Party.

Dated:  November 10,19, 2021
New York, New York


**WIGDOR LLP**                                      **PROSKAUER ROSE LLP**


By: _____         By: _____
        Douglas H. Wigdor                             Kathleen M. McKenna
        Michael J. Willemin                            Lloyd B. Chinn
        Renan F. Varghese                             Keisha-Ann G. Gray
        John S. Crain                                      Yonatan L. Grossman-Boder
85 Fifth Avenue                                    Eleven Times Square
New York, New York 10003                New York, New York 10036-8299
Telephone: (212) 257-6800               Telephone: (212) 969-3000
dwigdor@wigdorlaw.com                  kmkenna@proskauer.com
mwillemin@wigdorlaw.com
rvarghese@wigdorlaw.com              *Counsel for Fox News Network*
jcrain@wigdorlaw.com


*Counsel for Plaintiff*


                                                        **MORVILLO ABRAMOWITZ GRAND
                                                        IASON & ANELLO PC**

                                                        By: _____
                                                                Elkan Abramowitz
                                                                Catherine M. Foti
                                                                565 Fifth Avenue

6

New York, New York 10017

Jayne C. Weintraub
Jon A. Sale
Sale & Weintraub, P.A.
2 South Biscayne Boulevard
One Biscayne Tower, 21st Floor
Miami Florida 33131

*Attorneys for Ed Henry*

## **ATTACHMENT A**

A.1.   <u>Image Files</u>. Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

> *be consistent across the production;*
>
> *contain no special characters; and*
>
> *be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a

7

single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.    User-Created Files: Word processing files, presentation files, ~~spreadsheet or worksheet files,~~ and all other <u>non-natively</u> produced user-created files,  including without limitation *.doc, *.docx, *.ppt, *pptx~~, *.xls, *.xlsx~~ will be produced in the above format with tracked changes and comments showing.  To the extent there is hidden content such as tracked changes, hidden columns, mark-ups, notes, it shall be expanded and rendered in the image file.

A.4.    <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.5.    <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed or imaged.

A.6.    <u>English Language.</u> To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.7.    <u>Embedded Objects</u>. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.8.    <u>Compressed Files</u>. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.9.    <u>Encrypted Files</u>. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.10.    <u>Scanned Hardcopy Documents</u>

       *In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).*

9534/85474-001 CURRENT/127004425v2

*If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level \*.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.*

*In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.*

A.11.  <u>Production Numbering</u>. In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each \*.tif image will have its assigned production number electronically "burned" onto the image.

A.12.  <u>Data and Image Load Files</u>.

*<u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (\*.dat) format and an image load file in Opticon (\*.opt) format.*

*<u>Load File Formats</u>.*

> **i.  Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.**

> **ii.  Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.**

> **iii.  Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.**

*<u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that*

9

*a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into \*.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.*

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |

10

| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
|---|---|---|---|---|
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to EST |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to EST |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

11

A.13.  <u>Files Produced in Native Format</u>. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively". To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.14.  <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.  Each production shall be encrypted and delivered separately from the decryption password.

9534/85474-001 CURRENT/127004425v2

11/19/2021 1:55 PM

**ATTACHMENT B**

The agreed upon custodians for search, search terms, and date range are listed below.  To the extent the search terms to which the Parties agree result in excessive and/or overly burdensome results, the Parties will meet and confer in good faith to discuss any potential revisions to the search terms.  Defendants agree to share hit reports for the search term keywords they claim result in a disproportionate amount of hits.

| Custodian | Time Period | Keywords[1] |
|---|---|---|
| Jennifer Eckhart | January 1, 2013 through present | <ul><li>Discrim!</li><li>Haras!</li><li>Hostil!</li><li>Unfair!</li><li>Justif!</li><li>Unjust!</li><li>Not w/4 fair!</li><li>Mistreat!</li><li>(Treat! OR Act! OR Perform!) w/4 (Bad! OR Neg! OR Poor!)</li><li>Promot!</li><li>Deserv!</li><li>Warrant!</li><li>Responsib!</li><li>Inappropriat!</li><li>Appropriat!</li><li>Offen!</li><li>Uncomfortab!</li><li>Not w/4 comfortab!</li><li>Sexis!</li><li>Female!</li><li>Flirt!</li><li>(come or coming) /2 on</li><li>Perform!</li><li>Bitch</li><li>(Respect! OR Disrespect! OR Offensiv!) w/5 (Comment! OR Treat! OR Languag!)</li><li>"Disparate treatment"</li><li>EEO!</li><li>"Equal Employment"</li></ul> |

13

| | | |
|---|---|---|
| | | • Unhapp! <br> • Henry or EH <br> • _ |
| Liz Claman <br><br> Brad Hirst <br><br> Kevin Burke | January 1, 2013 through present | • Eckhart w/25 of any of the following terms <br>  o Perform! <br>  o Employ! <br>  o Compens! <br>  o Terminat! <br>  o Hir! <br>  o Promot! <br>  o Potential <br>  o Improv! <br>  o PIP <br>  o Career <br>  o Discipline! <br>  o Compl! |
| Thomas Bowman | January 1, 2013 through present | • Eckhart |
| Liz Claman | January 1, 2013 through present | • Eckhart w/25 of any of the following terms <br>  o Babysit! <br>  o Clean! <br>  o Shoes <br>  o Dress <br>  o Lunch <br>  o Coffee <br>  o Pizza <br>  o Senator <br>  o Zoom |
| Liz Claman <br><br> Brad Hirst <br><br> Edward Henry <br><br> Denise Collins | January 1, 2013 through present | • Gender <br> • Discrim! <br> • Girl <br> • Harass! <br> • MeToo <br> • Bitch <br> • Cunt <br> • Whore <br> • Slut <br> • Mother <br> • Birth <br> • Sex! |

14

| Edward Henry | January 1, 2013 through present | • Eckhart<br>• "Hard to get"<br>• Drinks<br>• Marquis<br>• Obey<br>• Punish!<br>• Submissive<br>• Sub!<br>• Sex<br>• Blow job<br>• Blowjob<br>• Oral<br>• Fellatio<br>• Tongue<br>• Lick<br>• Date<br>• Heisman<br>• Dating<br>• Go! /2 out<br>• Com! /2 out<br>• Com! /2 on<br>• Sexy<br>• Hot<br>• Attractive<br>• Breasts<br>• Boobs<br>• Puss!<br>• Tits<br>• Ass<br>• Cock<br>• Dick<br>• Hotel<br>• Whore<br>• Grope<br>• Anal<br>• Mentor<br>• Brooke or Hammerling<br>• Roxie or Marroquin<br>• Cathy or Areu |
| Denise Collins<br><br>Brad Hirst | January 1, 2020 through present | • Eckhart w/25 of any of the following:<br>  ○ Repercussion<br>  ○ Compl!<br>  ○ Abuse |

15

|  |  | o  Toxic!<br>o  Hostil!<br>o  Environment!<br>o  Compl!<br>o  Sex!<br>o  Lawsuit<br>o  Groom!<br>o  Investigat! |
|---|---|---|
| Bill Shine<br><br>Suzanne Scott<br><br>Kevin Lord<br><br>Jay Wallace<br><br>Lauren Petterson<br><br>Bill O'Reilly<br><br>Charlie Gasparino | January 1, 2013 to January 1, 20120 | • Gender<br>• Discrim!<br>• Sexual!<br>• Harass!<br>• Misconduct<br>• Abus!<br>• Eckhart<br>• "Paul Weiss" /10 invest!<br>• Henry AND any of the following<br>  o  Assault<br>  o  Attack<br>  o  Rape<br>  o  Pressure<br>  o  Complain!<br>  o  Object<br>  o  Compensation<br>  o  Ratings<br>  o  Viewers<br>  o  Money<br>  o  (Own or personal or his) /10 (show or program or air or host or anchor or co-anchor)<br>  o  Profile<br>  o  Reput!<br>  o  Flirt!<br>  o  Report<br>  o  Woman<br>  o  Women<br>  o  Girl!<br>  o  Rap!<br>  o  Sex!<br>  o  Relation!<br>  o  Disciplin!<br>  o  Book<br>  o  Revenu!<br>  o  Promot! |

16

| | | |
|---|---|---|
| | | <ul><li>Brooke or Hammerling</li><li>Roxie or Marroquin</li><li>Cathy or Areu</li><li>Hufsa or Kamal</li><li>Lawsuit</li><li>Groom!</li><li>Terminat!</li><li>Object!</li><li>Approp!</li><li>Inapprop!</li><li>Comfortab!</li><li>Uncomfortabl!!</li><li>Unfair</li><li>Fair</li><li>Promot!</li><li>Date!</li><li>Drinks</li><li>Uncomfortable</li><li>Ailes</li><li>Go! /2 out</li><li>Com! /2 out</li><li>Com! /2 on</li><li>Sexy</li><li>Hot</li><li>Attractive</li><li>Breasts</li><li>Boobs</li><li>Puss!</li><li>Tits</li><li>Vagina</li><li>Ass</li><li>Cock</li><li>Dick</li><li>Affair</li><li>Hotel</li><li>Whore</li><li>Grope</li></ul> |
| Bill Shine<br><br>Suzanne Scott<br><br>Kevin Lord<br><br>Jay Wallace | January 1, 2013 to January 1, 20120 | <ul><li>Gender</li><li>Discrim!</li><li>Sexual!</li><li>Harass!</li><li>Misconduct</li><li>Abus!</li><li>Eckhart</li></ul> |

17

| Lauren Petterson | | • "Paul Weiss" /10 invest! |
|---|---|---|
| | | • Complain! |
| Bill O'Reilly | | • Retaliat! |
| | | • Sex! |
| Charlie Gasparino | | • Gender |
| | | • Harass! |
| | | • Affair |
| | | • Assault |
| | | • Rape |
| | | • Hostil! |
| | | • Bitch |
| | | • Cunt |
| | | • Whore |
| | | • Uncomfortabl! |
| | | • Not /4 comfortable |
| | | • (Ailes or O'Reilly or OReilly or O'Reily or OReily) /10 |
| | |     ○ Complain! |
| | |     ○ Harass! |
| | |     ○ Unfair |
| | |     ○ Uncomfortab! |
| | |     ○ Sex! |
| | |     ○ Retaliat! |
| | |     ○ Assault |
| | |     ○ Uncomfortable |
| | |     ○ Not /4 comfortabl! |
| | |     ○ Whore |
| | |     ○ Bitch |
| | |     ○ Slut |
| | |     ○ Jokes |
| | |     ○ Settle |
| | |     ○ Pay |
| | |     ○ Millions |
| | |     ○ Cost |
| | |     ○ Ratings |
| | |     ○ Value |
| | | |
| | | • Britt /4 McHenry /10 |
| | |     ○ Complain! |
| | |     ○ Harass! |
| | |     ○ Unfair |
| | |     ○ Uncomfortab! |
| | |     ○ Sex! |
| | |     ○ Retaliat! |
| | |     ○ Assault |

18

| | | |
|---|---|---|
| | | <ul><li>Uncomfortable</li><li>Not /4 comfortabl!</li><li>Whore</li><li>Bitch</li><li>Slut</li><li>Jokes</li><li></li></ul> |
| Cathy Areu | January 1, 2015 to January 1, 2021 | <ul><li>Gender</li><li>Discrim!</li><li>Sexual!</li><li>Harass!</li><li>Misconduct</li><li>Abus!</li><li>Henry /10 any of the following</li><ul><li>Compl!</li><li>Reput!</li><li>Flirt!</li><li>Report</li><li>Woman</li><li>Women</li><li>Girl!</li><li>Rap!</li><li>Sex!</li><li>Inapprop!</li><li>Comfortab!</li><li>Uncomfortabl!</li><li>Unfair</li><li>Fair</li><li>Promot!</li><li>Date!</li><li>Drinks</li><li>Uncomfortable</li><li>Ailes</li><li>Go! /2 out</li><li>Com! /2 out</li><li>Com! /2 on</li><li>Sexy</li><li>Hot</li><li>Attractive</li><li>Breasts</li><li>Boobs</li><li>Puss!</li><li>Tits</li><li>Vagina</li><li>Ass</li></ul></ul> |

19

20

Document comparison by Workshare 9.5 on Friday, November 19, 2021 3:59:22 PM

| Input: | |
|---|---|
| Docum ent 1 ID | file://C:\Users\9534\AppData\Local\Microsoft\Windows\INetCache\Conte nt.Outlook\P7JQVU6V\Eckhart ESI Protocol v1 (002).docx |
| Descrip tion | Eckhart ESI Protocol v1 (002) |
| Docum ent 2 ID | interwovenSite://DMS/CURRENT/127004425/2 |
| Descrip tion | #127004425v2<CURRENT> - Eckhart ESI Protocol -Proskauer Edits |
| Renderi ng set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 50 |
| Deletions | 349 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |

| Format changed | 0 |
|---|---|
| Total changes | 401 |

---

[1]    ~~Search terms are~~ <u>not</u> ~~case sensitive and "!" indicates a wild card root expander~~ ~~(*e.g.*, appl! matches apple, application, applied, applicant and so on).~~