```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                             :
                                       Docket #1:20-cv-05593-
ECKHART, et al.,                   : RA-GWG

                   Plaintiffs,     :

   - against -                     :

FOX NEWS NETWORK, LLC, et al.,     : New York, New York
                                     May 9, 2022
                   Defendants.     :
                                     TELEPHONE CONFERENCE
------------------------------------ :


                      PROCEEDINGS BEFORE
              THE HONORABLE GABRIEL W. GORENSTEIN,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:            WIGDOR LLP
                           BY:  MICHAEL JOHN WILLEMIN, ESQ.
                           85 Fifth Avenue, 5th Floor
                           New York, New York 10003
                           212-257-6829


For Defendants Fox News:   PROSKAUER ROSE LLP (NYC)
                           BY:  KATHLEEN MCKENNA, ESQ.
                                RACHEL SARAH FISCHER, ESQ.
                                YONATAN GROSSMAN-BODER, ESQ.
                           11 Times Square
                           New York, New York 10036
                           212-969-3130



Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

<u>APPEARANCES - CONTINUED:</u>

For Defendant Ed Henry:     MORVILLO, ABRAMOWITZ, GRAND,
    IASON, & ANELLO P.C.
BY:  CATHERINE FOTI, ESQ.
    DOUGLAS CHALKE, ESQ.
565 5th Avenue
New York, New York 10017
212-880-9530

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    4

 2            THE CLERK:  -- in the matter of Eckhart et al v.

 3  Fox News Network LLC et al, case number 20-cv-5593.

 4            Starting with plaintiffs' counsel, please state

 5  your appearance for the record.

 6            MR. MICHAEL J. WILLEMIN:  Good morning, your Honor.

 7  This is Michael Willemin with Wigdor LLP for the plaintiff.

 8  And I'm joined by my law clerk, Christina Sabato.

 9            HONORABLE GABRIEL W. GORENSTEIN (THE COURT):  Do

10  we have someone for the defendant?

11            MS. RACHEL FISCHER:  Good morning, your Honor.

12  This is Rachel Fischer of Proskauer Rose for defendant Fox

13  News.  And also on the line are Kathleen McKenna and Yonatan

14  Grossman-Boder, also from Proskauer.

15            THE COURT:  Okay.

16            MS. CATHERINE FOTI:  Good morning, your Honor.  This

17  is Catherine Foti from Morvillo, Abramowitz, Grand, Iason, &

18  Anello, on behalf of the defendant, Ed Henry.  And I'm joined

19  by my associate, Douglas Chalke.

20            THE COURT:  Okay.  So let me just tell everyone

21  we're being recorded, in case anyone orders a transcript.

22  But any further recording or dissemination of the proceeding

23  is prohibited.  Please also keep your cell phone on mute

24  unless you're actually speaking to the Court.

25            We're here based on a letter dated April 21st from
```

```
 1                            PROCEEDINGS                    5
 2   the defendant and a response dated April 25th.  So I'll hear
 3   from the defendant since it's their application.
 4            MS. FISCHER:  Thank you, your Honor.  This is
 5   Rachel Fischer of Proskauer.  Fox is seeking discovery
 6   concerning plaintiff's alleged emotional distress damages.
 7   Specifically, Fox is seeking HIPAA-compliant authorization
 8   for plaintiff's medical records from January 2, 2013,
 9   through the present.  And the reason Fox is seeking
10   discovery is because plaintiff put her mental health at
11   issue by alleging emotional distress damages in this case,
12   including -- and this is from the Third Amended
13   Complaint -- severe mental anguish, emotional distress,
14   post-traumatic stress; and plaintiff further alleges that
15   she's had to seek weekly therapy from a trauma specialist
16   in connection with the alleged damages and distress that
17   she has experienced.
18            She is seeking --
19            THE COURT:  If I can just sort of jump in,
20   Ms. Fischer --
21            MS. FISCHER:  Sure.
22            THE COURT:  -- I actually, I read the letters.
23   You know, obviously, they're not protesting producing any
24   emotional distress -- I'm sorry -- psychiatric-type
25   records.  So what we really have to focus on is, I think,
```

```
 1                        PROCEEDINGS                    6

 2    two things.  One is are there some sort of records you get

 3    to look at to figure out whether there have been traumas to

 4    her that should cause -- that, you know, might have caused

 5    emotional distress and that might lead you to other

 6    records, or would you just get all records on the theory

 7    that any medical procedure or dental procedure can cause

 8    emotional distress and you should be able to look at all of

 9    them.  So that's the real issue here and you should address

10    that.

11             MS. FISCHER:  Well, your Honor, I believe there is

12    actually an additional issue with respect to the mental

13    health records, because it's plaintiff's position, as we

14    understand it, that although she concedes that her -- you

15    know, she's put her mental health at issue, her position is

16    that she does not have to provide us with HIPAA

17    authorizations and that she can instead obtain her records

18    directly from her providers, go through them and then

19    decide which pieces of those records she wants to produce,

20    which we believe is highly problematic.  So even on the

21    mental health records --

22             THE COURT:  Let's do it in two pieces, then.

23    Let's just do the actual psychiatric, psychological therapy

24    providers.  Is there an objection to providing HIPAA

25    authorizations for those --
```

```
 1                         PROCEEDINGS                    7
 2            MR. WILLEMIN:  No --
 3            THE COURT:  Mr. Willemin?
 4            MR. WILLEMIN:  Oh, sorry.  We -- thank you, your
 5   Honor.  We have the records.  We can provide separate HIPAA
 6   authorizations if the defendants want.  But, I mean, we
 7   have all the records.  I mean, we sent our own, obviously,
 8   HIPAA authorization, and we're happy to turn over
 9   everything that we got from them.  We're not trying to pick
10   and choose.  If they feel more comfortable having a HIPAA,
11   you know, authorization for those, I think it's three
12   individuals, as well, then we can -- you know, I don't have
13   an issue providing that.
14            THE COURT:  Okay.  Does that answer your question,
15   Ms. Fischer?
16            MS. FISCHER:  Yes, it did.  Thank you.
17            THE COURT:  All right, so let's go onto the
18   physical part.
19            MS. FISCHER:  Okay.  With respect to the, you
20   know, physical or medical records, again, you know, we --
21   first of all, she --
22            THE COURT:  No, before you answer that, do we know
23   that type of providers we're talking about?  I assume
24   there's some general practitioner or, you know, frontline
25   doctor that we're talking about.  Anything else in addition
```

```
 1                          PROCEEDINGS                    8

 2    that we know?   You know, did she provide you a list of

 3    providers?

 4            MS. FISCHER:  No, she did not.  So we really don't

 5    know what the universe is of potential records that are out

 6    there.  We have not been provided with that information,

 7    although we've asked for it.

 8            MR. WILLEMIN:  So --

 9            THE COURT:  Okay.  Go ahead.  I interrupted you.

10            No, no, no, I want to hear out Ms. Fischer.  Then

11    I'll hear from you, Mr. Willemin.

12            MS. FISCHER:  Plaintiff does allege physical

13    injury as a result of her alleged rape by Mr. Henry, which

14    I'd also like to point out.  So she does allege --

15            THE COURT:  I didn't see that in your letter.  I'm

16    sorry, was that in your letter?  I missed that.

17            MS. FISCHER:  I believe it is.  I don't have it at

18    my fingertips.

19            THE COURT:  I mean, I saw you're saying that there

20    was a chronic physical injury which they said you

21    misunderstood, but I didn't see anything else -- oh, yes,

22    you do mention the specific claims of physical injury.

23            MS. FISCHER:  Yes.  I think it's on page three.

24            THE COURT:  Yes, I see it now.

25            Okay, well, and I don't have those paragraphs, the
```

```
 1                      PROCEEDINGS                    9
 2  Complaint in front of me.  Is this alleged physical injury
 3  from a sexual act?
 4            MS. FISCHER:  Yes.
 5            THE COURT:  Oh, okay.
 6            MS. FISCHER:  That's the --
 7            THE COURT:  So --
 8            MS. FISCHER:  That's an allegation.  But in
 9  addition, you know, as the Court noted, we are seeking
10  discovery, you know, because discovery on this subject may
11  reveal, you know, whether there were other medical issues,
12  other issues that may have been going on that caused the
13  plaintiff to suffer the emotional distress that she
14  attributes to the defendants in this case.
15            THE COURT:  Right.  Well, that's the part that I'm
16  trying to get you to address, because it's not intuitive to
17  me that -- you know, obviously, there are many things in
18  life that can cause emotional distress beyond doctors'
19  visits or medical -- I should say beyond medical
20  conditions, including, you know, personal problems and a
21  million other -- and, you know, repair on your house.  I
22  mean, there's a million things that can cause emotional
23  distress.  So I think you have a little bit of a tough row
24  to hoe if you say, well, I want to pore over the medical
25  records to see if there's something there that might have
```

```
 1                        PROCEEDINGS                 10
 2   caused emotional distress because there's no -- there
 3   doesn't seem to be any limitation to that principle.
 4            MS. FISCHER:  Well, this is something that --
 5            THE COURT:  You could start questioning all her
 6   friends and relatives about anything about whether they'd
 7   ever observed any emotional distress in her life from any
 8   source.  I mean, I just -- I'm trying to figure out what
 9   the limiting principle is, if any.
10            MS. FISCHER:  Well, there is, you know, support
11   that this has been done in employment discrimination cases.
12   But we do think in light of the allegations here involving
13   an alleged rape and physical issues related to that,
14   allegedly, that at a minimum, plaintiff should provide
15   authorizations for her primary care provider as well as any
16   gynecological records, because that would go specifically
17   to the allegations in this case, meaning, you know, if
18   there's some underlying issue or something in her records,
19   she has alleged physical injury, we should be entitled to
20   review those records and see whether there was some
21   preexisting condition, preexisting issue that we should be
22   able to probe that in discovery.  You know, although there
23   may be many different types of stressors that can cause
24   emotional distress, you know, to the Court's point, you
25   know, renovations on your house or something like that, you
```

```
 1                          PROCEEDINGS                  11

 2   know, we are -- we believe we are entitled to review

 3   documents related to physical injury and illness because,

 4   you know, those are very real stressors even if they're not

 5   the only stressors that plaintiff may have had in her life

 6   at the time.

 7              THE COURT:  All right, Mr. Willemin?

 8              MR. WILLEMIN:  I just think that there's a pretty

 9   gross misrepresentation of the physical injuries that our

10   client's alleging.  Our client alleges that when she was

11   raped in 2017, that she was also hit in the face and that

12   she was left with scratches and bruising.  She never went

13   and got any medical treatment in connection with those

14   injuries.  She doesn't claim to have, you know, ongoing,

15   chronic physical injury as a result of this.  She was beat

16   up by Mr. Henry.  And she didn't go to the hospital for it.

17   And that's -- you know, that's what she'll testify to.  And

18   so I don't really see how under that circumstance there

19   could be such a wide swath of medical records that would be

20   conceivably reviewed by the defense.

21              And I'm not saying that there are no cases in

22   which that's ever happened, but very, very, very rarely,

23   because we deal with this issue a lot when defense try to

24   overreach, there's a court order, a complete production of

25   medical files for, you know, a nine-year period.  So we
```

```
 1                        PROCEEDINGS              12

 2  have the -- the other doctors other than -- I mean, we

 3  didn't get records from dentists or what-have-you yet.  But

 4  the other doctors that we have records from are her primary

 5  care doctor and her OB-GYN, the latter of which we don't

 6  have the records yet but we've sent the HIPAA out.  And to

 7  the extent that there are, you know -- I mean, we can meet

 8  and confer after receiving the records to the extent that

 9  there's some sort of, you know, chronic illness that, you

10  know, needs to be potentially disclosed.  I think the

11  better course would be, as we've suggested, that our client

12  be asked questions at her deposition about any sort of you

13  know, chronic illness or any sort of, you know, more

14  significant health issue that could potentially be causing

15  distress.  We'll try to get out in front of that once we

16  get the records, if we can, so, you know, as to make things

17  most sufficient.

18          But, you know, we're producing the records from

19  the two trauma counselors and the therapist.  There are two

20  hospitals that we're in the process of getting records

21  from -- well, I think it's one doctor and one hospital that

22  she saw immediately after having panic attacks in the last

23  few years.  So all of the emotional distress stuff is, you

24  know, going to be produced.  And then I don't see at this

25  stage why she should have to produce nine years of
```

```
 1                          PROCEEDINGS              13
 2  gynecological records.  I mean, she doesn't claim that he
 3  gave her an STD or, you know, or anything of the sort.
 4         THE COURT:  I'm sorry, what did you say existed in
 5  terms of records about panic attacks and so forth?
 6         MR. WILLEMIN:  Yeah, there's one -- she had a
 7  panic attack in 2019 after which she saw a doctor.  And
 8  we've received records in connection with that panic
 9  attack.  And then there was another panic attack that she
10  had in 2017 when she was in Atlanta, and she went to the
11  hospital.  And we have sent the HIPAA in connection with
12  those records, and we're just still awaiting them.  So, I
13  mean, those two, as well, if defendants want a HIPAA of
14  their own, I mean, that's fine.  But between those two and
15  the three, you know, the two trauma counselors and the
16  therapist, that's all the emotional distress, you know,
17  mental health records that -- and we're not objecting to
18  producing any of that.
19         MS. FISCHER:  Your Honor, may I respond?
20         THE COURT:  Go ahead.
21         MS. FISCHER:  Well, first of all, you know, a lot
22  of this is new information to us because, although we asked
23  for it, even in the meet-and-confers, we weren't -- you
24  know, we were kept in the dark on all of this.  But, in any
25  event, you know, plaintiff is claiming emotional distress
```

```
 1                          PROCEEDINGS                14
 2   since she met Henry and in dealing with Henry.  You know,
 3   there's plenty of case law which we've cited that
 4   authorizes the disclosure of medical records in these
 5   circumstances.  And now, you know, we're hearing about
 6   these panic attacks and she's going to the hospital, well,
 7   we should be permitted to probe whether there were other
 8   medical conditions going on, you know, including but not
 9   limited to at that time.  You know, we shouldn't have to
10   just rely on what she says, "Oh, this is a mental health
11   record as opposed to a medical record," we should be
12   permitted to investigate well, is there a, you know,
13   medical component of this.  And I think the fact that the
14   plaintiff herself has now obtained her primary care and OB-
15   GYN records, which again we did not know before five
16   minutes ago that she was going to do that, you know, that
17   would seem --
18           MR. WILLEMIN:  We -- that was our proposal.  You
19   wrote to --
20           THE COURT:  Hold on.  Hold on.  Mr. Willemin, do
21   not interrupt.
22           MS. FISCHER:  No, the --
23           THE COURT:  Go ahead.
24           MS. FISCHER:  -- the proposal that was given,
25   which is what I articulated earlier, which was plaintiff
```

```
 1                       PROCEEDINGS                    15
 2  would, you know, go through her records and weed through
 3  them and, you know, decide what she's going to produce.
 4  But, you know, we would like the opportunity to review them
 5  ourselves.  We shouldn't have to rely on plaintiff to do
 6  that.  And we are permitted, you know, under plenty of case
 7  law, including the cases that we've cited to the Court, the
 8  DeSouza case, the Presley case, to probe whether there were
 9  other medical events going on in plaintiff's life at the
10  time that she alleges that she was under emotional distress
11  due to Mr. Henry's interactions with her.
12            THE COURT:  Mr. Willemin, you wanted to add
13  something?
14            MR. WILLEMIN:  No, I just -- I don't think it's
15  fair to say that they didn't know we were getting these
16  records.  I mean, that's literally what we told them we
17  were going to do and what now counsel has articulated
18  twice.  But just -- we're not, like, sandbagging anybody,
19  but I don't have anything further in terms of the
20  substantive arguments.  And I apologize for my
21  interruption.
22            THE COURT:  All right, so certainly we need in
23  writing a list of medical providers that she has seen for
24  some reasonable period -- and I think five years before is
25  plenty.  So May 2012 -- is it May when the --
```

1                              PROCEEDINGS                    16

2                MR. WILLEMIN:   The rape itself I believe was in

3    February of 2017.

4                THE COURT:   Okay.  So February 2012 until the

5    present.  So we'll start with that.

6                The -- I mean, the primary care physician -- I

7    gather there is a primary care physician, is that right?

8                MR. WILLEMIN:   Yes.

9                THE COURT:   Okay.  The primary care, I'm not

10   prepared at this point to say that the defendants should be

11   able to comb through the primary care records to see if

12   there was something serious in her life that might have

13   also caused emotional distress.  I just -- I just don't see

14   a limiting principle.  I know there are some cases that

15   have adverted to that happening, but nothing that really

16   contains a discussion or makes clear that the plaintiff was

17   even protesting it in some of those cases.

18               However, the plaintiff needs to go through the

19   primary care records, and any reference at all to any

20   mental problem at all, nervousness, anxiety, distress,

21   anything like that, the record has to be produced.  So, I

22   mean, you know, the fact is we trust entities to look

23   through their own records for responsive documents.  We

24   don't make them produce their entire email files.  We trust

25   them to go through it and do searches in a particular way.

```
 1                        PROCEEDINGS                    17
 2   So, Mr. Willemin, you have to be responsible for the
 3   search.  This is not something the plaintiff herself is
 4   going to do.  You or someone from your firm has to make a
 5   serious effort to go through this, and anything at all that
 6   relates to any psychological condition needs to be, those
 7   records need to be produced from the primary care
 8   physician.  I don't know who these other providers are.  I
 9   wouldn't make you go through dental records to see if
10   there's such records, but, you know, if there's some other
11   provider once we get the list that seems appropriate to
12   look for emotional distress references in the records,
13   then, you know, we can -- you've got to agree to reveal to
14   the defendants or they can come back to me if you can't
15   reach agreement on it.
16           So we need the list of providers in interrogatory
17   response form or in a letter, if that's satisfactory to the
18   defendants.  And you need to -- have you gotten the primary
19   care records already?
20           MR. WILLEMIN:  We just got those.  And there's one
21   other outstanding one that we're waiting on; that's the OB-
22   GYN, which I'm also not objecting to reviewing for such --
23           THE COURT:  Yes, you need to review the OB-GYN
24   ones, as well, for the same purpose.  So that should be
25   done in short order, you know, in the next week unless you
```

```
 1                          PROCEEDINGS                    18
 2   folks agree otherwise.
 3            Okay, anything else on that issue, Ms. Fischer?
 4            MS. FISCHER:  No, I don't believe so.
 5            MS. FOTI:  It's Catherine Foti.  I just wanted,
 6   your Honor, just to make sure that we are just on record.
 7   We served requests, but the responses were not yet due, so
 8   we're not suggesting that the plaintiffs haven't provided
 9   us with anything that we've asked for.  But they were
10   similar requests to what you have just ruled on today, and
11   we just want to confirm that, obviously, you've been
12   referring to the defendants that whatever is produced to
13   Fox will in fact be produced to us.  We've agreed that the
14   parties will share all the discovery.  But I just wanted
15   to, you know, obviously make a record that, you know, we
16   assume that the plaintiffs will -- that their response will
17   be consistent in terms of our requests, as well.
18            THE COURT:  Okay.  Well, whatever the Fox News
19   gets, obviously, the other defendants should get.
20            MS. FOTI:  Thank you, your Honor.
21            THE COURT:  Okay.  So I can't tell if there's even
22   an issue remaining here.  I gather the plaintiff doesn't
23   have any diaries.
24            MR. WILLEMIN:  No, not --
25            THE COURT:  What does the plaintiff have that's
```

1
2   responsive to this?

3         MR. WILLEMIN:  Well, she -- I mean, the way that
4   it was originally written, I mean, I think she has, you
5   know, plenty of stuff in terms of her hard drives and so on
6   and so forth that relate to Fox News or Ed Henry.  And
7   anything that she has related to Fox News or Ed Henry she'd
8   produce, whether it's in a calendar, whether it's in a
9   diary, whether it's in a notebook; you know, anything in
10  her possession that relates to the issues that are relevant
11  to the case, mitigation, Fox News, Ed Henry, etc., you
12  know, she'll produce.  She didn't maintain -- my
13  understanding is that she didn't maintain a diary while she
14  was working for Fox News.  Since she left Fox News, she has
15  taken some sort of notes to self.  I don't know that I'd
16  characterize it as a diary, but we're going to produce
17  those because they relate to Fox News and to Ed Henry.

18        And so, I mean, just like any -- just like, for
19  instance, you know, our client has a whole email account,
20  we wouldn't produce the whole email account; we'd review it
21  as we would a diary, a notebook, a calendar or anything to
22  make sure that anything that is relevant and responsive
23  gets turned over.  And it just so happens she doesn't have
24  a diary for that time period, anything.  And her calendar,
25  as I understand it, was maintained on Fox News' systems.

```
 1                        PROCEEDINGS                    20

 2              THE COURT:  So, Ms. Fischer, what's left on this?

 3              MS. FISCHER:  Well, again, this was new

 4   information to us in their letter.  And I think that

 5   resolves virtually all of the issues.

 6              The other issue we had -- you know, the other

 7   issue relevant to the calendars is documents reflecting

 8   plaintiff's whereabouts and dates that she was later absent

 9   from work, which conceivably could be calendar entries or

10   it could be other documents reflecting where she was.  And

11   I'm not sure if there's still an objection to producing

12   that information.

13              THE COURT:  Yes, I think you have to provide the

14   dates you want.

15              MS. FISCHER:  Okay.

16              THE COURT:  So do you have some list of dates?

17              MS. FISCHER:  Yeah, we can provide the dates.  We

18   can provide the dates and then --

19              THE COURT:  Okay, so provide the dates.  And you

20   should provide any calendar entries, Mr. Willemin, or if

21   there's some way to figure out something else that relates

22   to her whereabouts on those dates, then provide it.  I'm

23   not sure there would be anything else, but if you can

24   figure out anything else.  Understood, Mr. Willemin?

25              MR. WILLEMIN:  Yes.  yes, your Honor.
```

```
 1                          PROCEEDINGS                    21

 2              THE COURT:  Ms. Fischer, anything else we need to

 3   do today?

 4              MS. FISCHER:  No, your Honor.

 5              THE COURT:  Mr. Willemin, anything?

 6              MR. WILLEMIN:  No, thank you, your Honor.

 7              THE COURT:  Okay.  Thank you.  Good-bye, everyone.

 8              (Whereupon, the matter is adjourned.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                                                    22

2

3                    C E R T I F I C A T E

4

5          I, Carole Ludwig, certify that the foregoing

6   transcript of proceedings in the case of Eckhart et al v.

7   Fox News Network, LLC et al, Docket #20-cv-05593-RA-GWG,

8   was prepared using digital transcription software and is a

9   true and accurate record of the proceedings.

10

11

12

13  Signature_____Carole Ludwig_____

14                    Carole Ludwig

15  Date:     May 10, 2022

16

17

18

19

20

21

22

23

24

25
```