# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JENNIFER ECKHART and CATHY AREU,

PLAINTIFFS,

-against- Case No.: 1:20-cv-05593

FOX NEWS NETWORK, LLC, ED HENRY, SEAN HANNITY, TUCKER CARLSON and HOWARD KURTZ, in their individual and professional capacities,

DEFENDANTS.
------------------------------------------X

DATE: June 15, 2023
TIME: 10:00 A.M.

CONFIDENTIAL VIDEOTAPED DEPOSITION of the Defendant, EDWARD HENRY, taken by the Plaintiffs, pursuant to a Subpoena and to the Federal Rules of Civil Procedure, held at the offices of Wigdor, LLP, 85 5th Avenue, Suite 5, New York, New York 10003, before Karyn Chiusano, a Notary Public of the State of New York.

A P P E A R A N C E S:

WIGDOR, LLP
Attorneys for the Plaintiffs
JENNIFER ECKHART and CATHY AREU
85 5th Avenue ~ Suite 5
New York, New York 10003
BY: MICHAEL J. WILLEMIN, ESQ.
MEREDITH A. FIRETOG, ESQ.
RENAN F. VARGHESE, ESQ.
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com
rvarghese@wigdorlaw.com

MORVILLO, ABRAMOWITZ, GRAND,
IASON & ANELLO, P.C.
Attorneys for the Defendant
ED HENRY
565 Fifth Avenue
New York, New York 10017
BY: CATHERINE M. FOTI, ESQ.
MICHAEL D. MANZO, ESQ.
ELKAN ABRAMOVITZ, ESQ.
cfoti@maglaw.com
mmanzo@maglaw.com
eabramovitz@maglaw.com

PROSKAUER
Attorneys for the Defendants
FOX NEWS NETWORK, LLC, SEAN HANNITY,
TUCKER CARLSON and HOWARD KURTZ, in their
individual and professional capacities
Eleven Times Square
New York, New York 10036
BY: KATHLEEN M. McKENNA, ESQ.
RACHEL FISCHER, ESQ.
JULIA HOLLREISER, ESQ.
kmckenna@proskauer.com
rfischer@proskauer.com
jhollreiser@proskauer.com

ALSO PRESENT:
CARLOS KING, Videographer
JENNIFER ECKHART
CARL GUIDA, ESQ., in-house FOX
CHRISTINA SABATO, Law Clerk
SOFIYA PAVLOVA, Paralegal

F E D E R A L S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the counsel for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath, with the same effect as if signed before a Judge of the Court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness, 30 days after service of the original & 1 copy of same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to form, are reserved to the time of trial.

* * * *

CONFIDENTIAL ~ OPENING STATEMENTS

THE VIDEOGRAPHER: Good morning.

We are going on the record at 10:03 A.M., on June 15, 2023.

Please note that the microphones are sensitive and may pick up whispering and private conversations.

Please mute your phones at this time.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit Number 1 of the video-recorded deposition of Ed Henry taken by Counsel for Plaintiffs in the matter of Jennifer Eckhart, et al., versus Fox News Network, LLC, filed in the United States District Court of the District of New York, Case Number 120-CV-05593.

The location of this deposition is 85 5th Avenue, New York, New York.

My name is Carlos King

CONFIDENTIAL ~ OPENING STATEMENTS

representing Veritext, and I'm the videographer.

The Court Reporter is Karyn Chiusano, also of Veritext.

I'm not authorized to administer an oath. I'm not related to any party in this action, and I'm not financially interested in the outcome.

If there are any objections to the proceedings, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearance and affiliations for the record, beginning with the noticing attorney.

MR. WILLEMIN: Michael Willemin, Widgor, LLP.

I'm joined by my colleagues Renan Varghese, Meredith Firetog, Christina Sabato, Sofiya Pavlova, and our client, Jennifer Eckhart.

MS. FOTI: Catherine Foti for

CONFIDENTIAL ~ OPENING STATEMENTS

the witness, Ed Henry, also listed in the action. I'm with the firm Morvillo, Abramowitz, Grand, Iason & Anello.

And I'm joined by my colleagues Michael Manzo and Elkan Abramowitz.

MS. McKENNA: Kathleen McKenna, Proskauer Rose for Fox News.

I am joined by my colleagues Rachel Fischer, Julia Hollreiser, and by counsel -- in-house Counsel for Fox News, Carl Guida.

THE VIDEOGRAPHER: Can the Court Reporter please swear in or affirm -- or affirm the witness.

THE COURT REPORTER: Can you please raise your right hand?

THE WITNESS: Yes.

(Witness complies.)

THE COURT REPORTER: Do you swear that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS: I do.

E D W A R D H E N R Y, called as a witness, having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

THE COURT REPORTER: Wonderful.

Can I kindly have your name spelling, please?

THE WITNESS: Edward Henry. H-E-N-R-Y.

THE COURT REPORTER: Can I have your, um, address?

You can provide business.

THE WITNESS: I can provide a business address, you say?

THE COURT REPORTER. Yes.

307 Evernia Street. E-V-E-R-N-I-A, Street, West Palm Beach, Florida.

THE COURT REPORTER: Any time you're ready, sir, I'm ready for you.

EXAMINATION BY
MR. WILLEMIN:

Q. Good morning, Mr. Henry.

CONFIDENTIAL ~ EDWARD HENRY

MS. FOTI: I was going to clarify, "our" being you as the attorneys?

MR. WILLEMIN: Yeah.

MS. FOTI: And your answer is.

A. No.

I have no knowledge.

Q. You were hired by Fox in 2011; is that right?

A. That sounds right.

Q. And at the time, you were hired as the Chief White House Correspondent?

A. Correct.

Q. Based in D.C.?

A. Yes.

Q. And that first contact was a three-year contract; correct?

A. I believe so.

I -- I -- at one point, there was like, I think, a five-year -- I think it was three -- that sounds right.

Q. And there's a provision in that contract that permit -- permits Fox to have exclusive negotiation period starting 90

No direct conversation. There was more broad -- you know, we had that issue. We don't want more bad publicity, kind of thing.

But there was no specific questions about a woman in Las Vegas or anybody.

Q. And in connection with the negotiation of the 2017 contract, when did you come back from your leave following that -- um, the revelation of that affair?

MS. McKENNA: I didn't hear the end of you question.

MR. WILLEMIN: Oh, following the revelation of that affair with the woman in Las Vegas.

MS. FOTI: Objection.

A. As I testified earlier, my recollection is that was I was suspend in roughly May of 2016.

And I believe I came back to work August, September 2016.

Q. Got it.

And in connection with the

CONFIDENTIAL ~ EDWARD HENRY

I don't recall any of that.

Q. Prior to your termination --

MR. WILLEMIN: Well, let me withdraw that.

Q. Prior to Jennifer's termination, um, did you have any discussions with anyone at Fox News about Ms. Eckhart?

A. No.

Q. How many times -- there's a -- there was one occasion that you had that there was oral sex that was performed by Ms. Eckhart in the offices of Fox News; is that correct?

A. Yes.

Q. Okay. Setting that aside for a moment, how many different sexual encounters did you have with Ms. Eckhart?

A. Um, four.

Q. Um, and are you counting the oral sex as one of them or --

A. Yes.

You said sexual encounter; right?

CONFIDENTIAL ~ EDWARD HENRY

Q. Yeah.

And I said setting that aside, but it's fine. It's confusing.

A. Okay.

Q. So four, including the oral sex.

A. Okay.

Q. So, and -- and when was the first sexual encounter?

A. Um, I believe it was late or some point in 2014 at the Marriott Marquis.

Q. And were you traveling for work at the Marriott or is that -- some other, um, reason you were at that hotel?

A. I don't recall specifically. It would -- it's a couple of blocks from Fox, so it would seem likely that it was Fox, but I don't have a specific recollection.

Q. Do you know whether or not you put any expenses in for your stay at that Marriott Marquis at that time?

A. I don't recall for that visit. It was 2014. I don't recall.

I don't have access to those expense reports anymore.

Q. Did you have -- prior to that meeting, do you have any recollection of any communication that you had with Ms. Eckhart concerning the possibility of having sex?

MS. FOTI: Objection.

A. Um, I believe our communications started in 2013, and it was -- started -- it just started as flirtatious.

Q. Did you have -- prior to --

MR. WILLEMIN: Let me withdraw that.

Q. Prior to having sex with her at the Marriott, you had a drink with her at the hotel bar; is that correct?

A. Yes.

Q. Prior to meeting her at the hotel bar, had there been any discussions, specific discussion, in which the two of you agreed that you would be having sex?

MS. FOTI: Objection.

CONFIDENTIAL ~ EDWARD HENRY

A. Um, no.

I don't recall a specific discussion.

Q. And was there any specific discussion at the hotel bar about wherein you two agreed that you would have sex?

MS. FOTI: Objection.

A. Um, I recall that at the end of the drink or however it ended in paying a check, um, I asked her if she wanted to come upstairs.

And she smiled and said "yes." And we did.

Q. Um, and did you say: "Do you want to come upstairs to have sex?" Or did you just say: "Do you want to come upstairs?"

A. I don't recall the specific words, but I was in a hotel. And I said: "Do you want to come up to my room?"

Q. Um, and when you -- you -- so you did -- the two of you went to your room; correct?

A. Yes.

CONFIDENTIAL ~ EDWARD HENRY

Q. And did you have sex with Ms. Eckhart on that occasion?

A. Yes.

Q. Um, and on that occasion, did you use any handcuffs or any belt or any sort of S & M play?

A. No.

Q. Did you have anal sex with Ms. Eckhart?

A. Not on that occasion.

Q. And isn't it true that when you had sex --

MR. WILLEMIN: Well, let me withdraw that.

Q. Um, during that -- from the time you got to the hotel room to the time that you began having intercourse with Ms. Eckhart, isn't it true that you did not ask her whether or not you could have intercourse with her?

MS. FOTI: Objection.

A. Um, what happened was, we got in the room. The door shut. We started taking each others' clothes off. And, um,

A. No.

Q. Did you ever tell her that you might be able to introduce her to your agent?

MS. FOTI: Objection.

A. No.

And as I established, um, I went back and forth between the attorneys and agents. Agents first, then an attorney, then an agent.

They all, essentially, work as agents, but I don't -- I did not say to her that I would introduce her to an agent.

Q. Was the next sexual encounter that you had with Ms. Eckhart the oral sex that you had in September of 2015?

A. Yes.

Q. And that was in a guest office of the New York Fox News offices?

A. Yes.

Q. On that day prior to that, um, you asked Ms. Eckhart to take off her underwear and provide them to you; correct?

A. Yes.

CONFIDENTIAL ~ EDWARD HENRY

MS. FOTI: Objection.

You can answer.

A. Yes.

Q. Do you still have the underwear that Ms. Eckhart gave you?

A. No.

Q. And where did you get the idea to ask her to provide you with her underwear?

A. I don't recall.

Q. And where did you get the idea to use a belt when engaged in sexual activity?

A. I don't recall.

Other than her sending me a picture of one.

Q. Well, let me, maybe, rephrase that.

Just as a general proposition not specific to Ms. Eckhart, where is it that you got the idea to engage in S & M type sexual activity?

MS. FOTI: Objection.

A. I don't recall a specific thing

it was relative to February 11, 2017, that you told him about that on the golf course?

A. I don't remember how many days, but I know that before this encounter -- this is referencing he and I talking about me potentially getting together with her in February, because I had talked to her about me being around New York around February 10.

Q. Now, you sent another couple of photographs of Ms. Eckhart, and Mr. Cohen writes down at the bottom of -- I guess the third page. "She lives in New York. When is she coming down to Florida?"

Do you see that?

(Witness reviews document.)

A. Yes.

Q. And you said, "Working on it. Boo-yah."

Do you see that?

(Witness reviews document.)

A. Yes.

Q. What were you working on with Mr. Cohen?

CONFIDENTIAL ~ EDWARD HENRY

Do you see that?

(Witness reviews document.)

A. Um, yes.

It -- it was from me, yes.

Q. And that's -- I am not suggesting that Jennifer actually said that, but that's you sort of mimicking a quote from Jennifer; that correct?

MS. FOTI: Objection.

A. It was a joke along those lines that he suggests.

Q. Along the lines that she would be star struck by the fact that you're an author?

MS. FOTI: Objection.

A. That was the joke.

MR. ABRAMOVITZ: Do you want water?

MS. McKENNA: No. I have some.

Q. Did there come a time where you unfollowed Ms. Eckhart on Twitter?

A. Yes.

Q. And do you recall approximately when that was?

A. I don't have a good idea of when, but I know why.

Q. Why was it?

A. It was because I was engaged in a relationship with . And she was very jealous and kept asking about Jennifer and wanted to know why I was following her and why I had liked some of her photos on Instagram. Because she liked to check out everybody I was following and was -- like I say, was very jealous.

So, I just realized, Number One, I kind of wanted her to stop bugging me about why I was following this person.

And secondly, I realized, well, if she figured out that maybe I had a relationship with her, I shouldn't like her photos. So that's why.

Q. And you actually removed a number of likes from her photos; correct?

A. For that reason, correct.

Q. Essentially, trying to make it more difficult for someone to figure out that you had a relationship with Jennifer?