**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
JENNIFER ECKHART,                :
               :
            Plaintiff,      :   Case No. 1:20-cv-05593 (RA) (GWG)
               :
      v.            :
               :
FOX NEWS NETWORK, LLC and ED HENRY,  :
in his individual and professional capacities,  :
               :
          Defendants.    :
-------------------------------------------------------------- X

**PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the

Southern District of New York ("Local Civil Rules") and the Individual Rules of this Court,

Plaintiff Jennifer Eckhart ("Ms. Eckhart" or "Plaintiff") submits the following response to the

Statement of Material Facts of Defendant Ed Henry ("Defendant" or "Henry"). All statements

admitted herein are admitted without prejudice and solely for the purpose of responding to

Defendant's Statement of Material Facts pursuant to Local Civil Rule 56.1. All citations to

exhibits ("Ex. __") in Plaintiff's responses are to the documents attached to the Declaration of

Michael J. Willemin in opposition to the instant motion ("Willemin Decl.") submitted herewith,

unless otherwise noted, or to Defendants' papers, exhibits or declarations.

<u>**PLAINTIFF JENNIFER ECKHART'S RESPONSES**</u>

<u>**The Parties**</u>

<u>**Defendants Fox News Network, LLC ("FNN") and Ed Henry**</u>

1.      Defendant FNN is a national news network headquartered in New York, New York. (Dkt. 157, Judge Abrams Opinion & Order, at 3).

      <u>**Response to Paragraph 1:**</u>
      Admit.

2.      Defendant Ed Henry ("Henry") was hired by FNN as an on-air employee in 2011. Quainton Decl. **Ex. 1**, Deposition Transcript of Edward Henry ("Henry Tr."), 51:9-14. Ed was an on-air political commentator, with a specialization in coverage of the White House, which he covered for a decade, and national politics generally. Henry Tr., 51:9-16, 69:13-22.

      <u>**Response to Paragraph 2:**</u>

      Admit.

<u>**Plaintiff Jennifer Eckhart**</u>

3.      Plaintiff Jennifer Eckhart ("Eckhart") is a former employee at FNN who worked in the New York City office. (Quainton Decl. **Ex. 2**, Deposition Transcript of Jennifer Eckhart ("Eckhart Tr."), 23:5-7, 40:2-11, 47:13-16, 53:21-24.).

      <u>**Response to Paragraph 3:**</u>

      Admit.

4.      In January 2013, Jennifer Eckhart ("Jennifer") began working as a Freelance Administrative Assistant to Liz Claman. Eckhart 40:2-4. Fourth Amended Complaint, Dkt. 227 (the "FAC") ¶ 23.

      <u>**Response to Paragraph 4:**</u>

      Admit.

5.      Liz Claman is an anchor at the Fox Business Network, a division of FNN separate from the division at which Ed worked. Quainton Decl. **Ex. 3**, Deposition Transcript of Liz Claman ("Claman Tr.").

      <u>**Response to Paragraph 5:**</u>

Admit.

6.  Jennifer was subject to the supervision of Brad Hirst, the Executive Producer of the Claman Countdown, Liz Claman's on air show, Quainton Decl. **Ex. 4**, Deposition Transcript of Brad Hirst ("Hirst Tr."), 14:19-25. From 2015-2018, Jennifer was a researcher/booker for a business show, The Claman Countdown, an on-air show anchored by Liz Claman. Eckhart Tr., 48:9-12; Hirst Tr., 18:7-22.

**<u>Response to Paragraph 6:</u>**

Admit.

7.  Mr. Hirst had the sole authority to discipline Jennifer. Hirst Tr., 15:24-25, 16:2.

**<u>Response to Paragraph 7:</u>**

Dispute.  Ex. 3 (Eckhart Dep.) at 159:14-160:23, 183:20-185:7, 190:7-11, 202:14-19, 210:22-25, 301:8-303:22; Ex. 16 (Eckhart Decl.).

8.  The authority to direct Jennifer's day-to-day activities was shared between Brad Hirst and Alicia Cascardi, the Senior Producer for the Claman Countdown. Hirst Tr., 16:3-12. Jennifer was terminated by Fox on June 12, 2020 for performance reasons. Eckhart Tr., 301:4-16; Hirst Tr. 130:16-25, 131:2-5. At the time of her termination, Jennifer was an assistant producer for the Claman Countdown. Eckhart Tr., 53:5-20; Hirst Tr., 21:10-22:15. Issues surrounding Jennifer's performance began in 2018 and continued into 2019 and 2020. Hirst Tr., 45:9-19, 46:5-13, Hirst Tr. 130:16-25, 131:2-5.

**<u>Response to Paragraph 8:</u>**

Admit that Plaintiff was an assistant producer for the Claman Countdown when she was terminated.  Dispute the remainder.  Other Fox employees, including Liz Claman, also had authority to direct Plaintiff's day-to-day activities.  Ex. 3 (Eckhart Dep.) at 48:13-23, 51:12-52:21, 66:8-12, 138:9-24, 140:7-148:2, 152:7-16, 167:5-13, 174:17-20, 363:21-25; Ex. 3 (Eckhart Decl.) at ¶ 18.  Plaintiff disputes that she was a poor performer or that she was terminated for performance reasons.  Ex. 76; Ex. 77.

9.  Ed had no authority to discipline, supervise or direct the activities of Jennifer. *Supra* ¶¶ 6-7.

**Response to Paragraph 9:**

Dispute.  Ex. 3 (Eckhart Dep.) at 265:9-266:10, 340:9-342:3, 451:13-18, 471:20-23; Ex.

12 (Eckhart Decl.); see also ¶¶ 7-8.

### The First Exchanges Between Ed and Jennifer

10.    The first contact Ed had with Jennifer was on December 18, 2013, when Jennifer, who apparently had been following Ed on Twitter, initiated communications with Ed by commenting on one of Ed's tweets about the film Anchorman 2. Quainton Decl. **Ex. 7**, Henry___000001, Eckhart Tr., 245:21-23, 246:9-12.

**Response to Paragraph 10:**

Dispute.  Ex. 3 (Eckhart Dep.) at 246:9-20.

11.    About two hours after Jennifer communicated with Ed on Twitter, Ed reached out to Jennifer over email with the comment "Haha nice tweet:)" and Jennifer responded, "Ha! Big fan of yours.…Thanks for the follow :)." Quainton Decl. **Ex. 8**. Henry____000002. The smiley face emoji :) conveys happiness, contentment, or agreement. Quainton Ex. 9, https://emojipedia.org/smiling-face.

**Response to Paragraph 11:**

Dispute that this statement is a material fact.  It contains the recitation of the partial

content of a document, does not establish that the content is true, and serves no purpose in a Rule

56.1 Statement.  Plaintiff respectfully refers the Court to the document for an accurate record of

its content.  Plaintiff further disputes that emojipedia.org is a binding authority on this Court and

any suggestion that emojis cannot be used in a sarcastic or duplicitous way.

12.    Sometime in 2014, Jennifer received a private message from Ed that read "beautiful," to which Jennifer responded telling Ed that she was a fan of his and that it would be an honor to meet him. FAC ¶¶ 37-38.

**Response to Paragraph 12:**

Admit.

13.    Ed replied by telling Jennifer that he was in New York and inviting her to meet him in the green room, a common area where people congregate before going on air. FAC ¶ 39.

**Response to Paragraph 13:**

Admit.

14.    Jennifer agreed, and the two had their picture taken. FAC ¶ 40.

**Response to Paragraph 14:**

Admit.

15.    On June 13, 2014 at 5:40 Ed sent Jennifer an email to Jennifer's Fox Business email account with the words, "this you?" Quainton Decl. **Ex. 9**. Henry____000003. Jennifer responded to Ed's Fox Business email account with the word "maybe" followed by the smiley-face "emoticon" :). *Id.* Ed countered with "hard to get," to which Jennifer responded, "very hard" and then ended this exchange by giving Ed her personal email address, accompanied with the words, "Try me here." *Id.*

**Response to Paragraph 15:**

Admit with the clarification that this statement contains a partial quote omitting

Defendant's own use of the smiley-face emoticon in his initial email to Plaintiff.

16.    Later Ed sent Jennifer a link to download the WhatsApp messaging app. Quainton Decl., **Ex. 10**, PL_002908.

**Response to Paragraph 16:**

Admit.

17.    About an hour later, Jennifer responded to Ed, "Done. How do I find you?" *Id.* Jennifer included her own personal telephone number along with this question. *Id.*

**Response to Paragraph 17:**

Admit.

**The Sexual Encounters Between Jennifer and Ed**

***2014***

18.    At some point later in 2014, Ed and Jennifer had sex. Henry Tr., 123:12, 25.; Eckhart Tr., 237:6-11.

**Response to Paragraph 18:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 382:2-10, 386:8-21, 417:9-419:2,

420:3-421-6, 426:21-427:10.

19.    When this sexual encounter occurred, Ed was staying at the Marriot Marquis hotel and
met Jennifer for drinks at the hotel bar. Eckhart Tr., 379:11-12; Henry Tr. 123:11-12,
124:17-20.

**Response to Paragraph 19:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 382:2-10, 386:8-21, 417:9-419:2,

420:3-421-6, 426:21-427:10.

20.    Ed invited Jennifer to his room and Jennifer went willingly to Ed's room. Eckhart Tr.,
418:13-15. Henry Tr., 125:9-25. In the room, the two had sexual intercourse. Eckhart Tr.,
418:23-24; Henry Tr., 126:2-4.

**Response to Paragraph 20:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 382:2-10, 386:8-21, 417:9-419:2,

420:3-421-6, 426:21-427:10.

21.    At no point did Jennifer ever say "no" to sexual intercourse. Eckhart Tr., 418:8-9;
419:23-25; 420: 20-21. Jennifer did not say anything to indicate she was not agreeing to
have consensual sex. Eckhart Tr., 423:24-25, 424:2.

**Response to Paragraph 21:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 382:2-10, 386:8-21, 417:9-419:2,

420:3-421-6, 426:21-427:10.

22.    Before Ed and Jennifer had sex, Ed made no statements that he could use his influence on
behalf of Jennifer in any way. Eckhart Tr., 425-16-19. While Jennifer allegedly brought a
yellow legal pad with her purportedly to ask career questions of Ed, she never took the
legal pad out of her purse. Eckhart Tr. 388:14-18.

**Response to Paragraph 22:**

Dispute the contention that Mr. Henry made no statements that he could use his influence on behalf of Ms. Eckhart in any way prior to them having sex. Ex. 3 (Eckhart Dep.) at 417:9-12. Admit that Plaintiff did not take notes with the clarification that Plaintiff disputes any inference suggesting that the sexual encounter was consensual. Ex. 3 (Eckhart Dep.) at 382:2-10, 386:8-21, 417:9-419:2, 420:3-421-6, 426:21-427:10.

23.    In the six years after this encounter, Jennifer did not tell her boyfriend, her close friend, her therapist or anyone else about the encounter until she filed her lawsuit against FNN and Ed in 2020. Eckhart Tr., 429-432.

**Response to Paragraph 23:**

Dispute. In 2015, Plaintiff told Dr. Mark Sager that she had to share an office with her abuser, which led Dr. Sager to prescribe bupropion to Plaintiff. Ex. 3 (Eckhart Dep.) at 331:20-332:9. Prior to filing this lawsuit, Plaintiff told her parents that she had been raped by a Fox anchor. Ex. 3 (Eckhart Dep.) at 334:5-23. Moreover, Plaintiff was not dating anyone at the time of the rape and therefore could not have told her "boyfriend" about the encounter. Ex. 3 (Eckhart Dep.) at 429:12-430:5.

24.    When Jennifer consulted a therapist, Dr. Marlene Oakes ("Dr. Oakes"), in 2017, she did not mention any assault at any time by Ed. Quainton Decl., **Ex. 5**, Oakes Tr. In her deposition testimony, Jennifer makes no allegation that any violence was used in in her sexual relations with Ed in 2014.

**Response to Paragraph 24:**

Dispute. Ex. 3 (Eckhart Dep.) at 418:19-419:2.[1] Admit only that Plaintiff did not disclose to Dr. Marlene Oakes that she was assaulted by Mr. Henry.

---

[1]    Moreover, violence is neither a legal term nor a defined term herein. According to the World Health Organization, "sexual violence encompasses acts that range from verbal harassment to forced penetration, and an array of types of coercion, from social pressure and intimidation to physical force." (https://iris.who.int/bitsream/handle/10665/77434/WHO_RHR_12.37_eng.pdf.)

25.     When Jennifer met with Dr. Oakes for the first time, in October 2017, her "primary presenting symptoms" were that "she had had a very, very old, close friend recently die and she was experiencing a lot of grief . . . and so, there was some, you know, anxiety that would be anticipated." Oakes Tr., 61:21-25, 62:1-2.

**Response to Paragraph 25:**

Admit.

26.     Ed's recollection of the incident is that they both had oral sex with each other and then had intercourse and that Jennifer texted Ed afterwards saying that she wanted "more of it." Henry Tr. 127:13-23.

**Response to Paragraph 26:**

Dispute.  Ex. 3 (Eckhart Dep.) at 418:16-419:2, 426:12-427:21.

**_September 16, 2015_**

27.     A second sexual encounter between Ed and Jennifer occurred on September 16, 2015 at the FNN Fox News New York offices. Eckhart Tr., 468:5-10.

**Response to Paragraph 27:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 443:19-444:10, 453:16-455:11,

456:14-457:13, 461:17-462:18, 463:18.

28.     Before the sexual encounter occurred, Jennifer took off her panties and put them in an envelope for Ed, which she handed to him as he passed by her desk. Eckhart Tr., 449-450.

**Response to Paragraph 28:**

Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

29.     Jennifer had a meeting at the New York Stock Exchange that day with Liz Claman. 453:20-22. Jennifer went to the New York Stock Exchange without her panties on. 450:8-20.

**Response to Paragraph 29:**

Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

30.    After taking off her panties and putting them in an envelope for Ed, Jennifer called a cab so that she and Liz Claman could go to the New York Stock Exchange. 454:3-5.

**Response to Paragraph 30:**

Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

31.    While the cab was waiting Jennifer went up to see Ed in his office and performed oral sex on him. Eckhart Tr. 454:8-9, 455:8-11, Henry Tr., 132, 15-25. 122:12-16.

**Response to Paragraph 31:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 443:19-444:10, 453:16-455:11,

456:14-457:13, 461:17-462:18, 463:18.

32.    After performing oral sex on Henry, Jennifer went down to the cab with Liz Claman, without going to the bathroom to check on her appearance. Eckhart Tr., 464:10-24.

**Response to Paragraph 32:**

Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

33.    When Jennifer got in the cab, Ms. Claman has no recollection that Jennifer appeared flustered. Claman Tr., 111:12-20.

**Response to Paragraph 33:**

Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

34.    The only person Jennifer claims to have told about this incident prior to filing her complaint was her then boyfriend Andrew Holt ("Mr. Holt") in 2019. Eckhart Tr., 466:21-25.

**Response to Paragraph 34:**

Dispute.  Defendant mischaracterized the evidence, which shows that Andrew Holt is the

first person Plaintiff told about the incident, not the "only" person.  Ex. 3 (Eckhart Dep.) at

466:21-25.

35.    Mr. Holt has no recollection of hearing anything about this incident. Quainton Decl., **Ex. 6**, Holt Tr., 164:11-16.

**Response to Paragraph 35:**

Dispute.  Defendant mischaracterized the evidence, which shows that Holt testified that

he does recall that Plaintiff told him that she had been sexually assaulted by Defendant.  Ex. 6

(Holt Dep.) at 156:8-14, 164:11-24; Eckhart Tr., 470:22-25.

36.    At the time Jennifer claims to have told her boyfriend about the alleged assault by Ed, Jennifer had been receiving warnings about her work performance. Eckhart Tr., 99:6-25, 100:2-3.

**Response to Paragraph 36:**

Dispute.  Defendant mischaracterized the evidence, which does not show in what month

Plaintiff told Holt about being assaulted by Henry.  Ex. 3 (Eckhart Dep.) at 999:6-100:3, 466:21-

467:9.  Admit only that Plaintiff received warnings about her work performance in September

2019.

37.     On the day of the incident, Jennifer posted a picture of her smiling NYSE media entrance badge that she had received "after months of waiting and anticipation" and the hash tags #soproud and #tear. Quainton Decl., **Ex. 11.**, PL_H000814.

    <u>**Response to Paragraph 37:**</u>

    Admit with the clarification that this fact is immaterial and serves no purpose in a Rule

56.1 Statement of Material Facts because it does not help the Court in narrowing the issues for

trial, in violation of Fed. R. Civ. P. 56.

38.     Ed had nothing to do with Jennifer receiving this badge. Jennifer makes no allegation that Ed had any power to influence Jennifer's receipt of a press badge for admission to the NYSE.

    <u>**Response to Paragraph 38:**</u>

    Admit.

### *<u>Jennifer's Pursuit of Ed</u>*

39.     In October 21, 2015, Jennifer emailed Ed that she had a "top secret server" from which she "had wiped all the dirty pictures with a cloth." Quainton Decl., **Ex. 9**, Henry__00004, **Ex. 12**, PL_H002912. The Hilary Clinton email scandal, in which Hilary Clinton admitted to having "wiped" her server, was making news at this time. Quainton Decl., **Ex. 12A**, https://www.npr.org/sections/alltechconsidered/2015/09/14/438814692/did-clinton-camp-delete-emails-or-wipe-server-the-difference-matters

    <u>**Response to Paragraph 39:**</u>

    Admit with the clarification that Plaintiff disputes any inference suggesting that she sent

that email to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-14.

40.     Ed responded to this email by saying "I'd like to wipe you with my tongue." Quainton Decl., **Ex. 12**.

    <u>**Response to Paragraph 40:**</u>

    Admit.

41.    Twenty minutes later, Jennifer sent an email back to Ed saying, "I bet you would, dirty boy. Come n get it." *Id*.

**Response to Paragraph 41:**

Admit with the clarification that Plaintiff disputes any inference suggesting that she sent that email to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-14.

42.    A few months after Jennifer told Ed to "come n get it," on January 2, 2016, Jennifer sent Ed a playlist of songs, with word "Enj…". Quainton Decl., **Ex. 13**, Henry___00005.

**Response to Paragraph 42:**

Admit with the clarification that Plaintiff disputes any inference suggesting that she sent that message and the playlist to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 483:15-18, 508:5-14.

43.    In her message accompanying the play list, Jennifer asked Ed, "Think this is long enough?" *Id.*

**Response to Paragraph 43:**

Admit with the clarification that Plaintiff disputes any inference suggesting that she sent that message to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 483:15-18, 508:5-14.

44.    The playlist of songs has titles such as:

    a.    "All Eyes on You," Quainton Decl., **Ex. 14**, HENRY___000849,
    b.    "Cockiness (Love it When You Eat It)," Quainton Decl., **Ex. 15**, HENRY__0000851,
    c.    "Coffee (F**ing).ft.Whale" , Quainton Decl., **Ex. 16**, HENRY 000852,
    d.    ""F**k You All the Time," Quainton Decl., **Ex. 17**, HENRY___000855,
    e.    "Into the Morning," Quainton Decl., **Ex. 18,** HENRY___000858.
    *fn2:* Jennifer testified that she did not recall the names of the songs on the playlist, but it is not disputed that she selected the songs on the playlist and sent the playlist via Dropbox to Ed on January 2, 2016. Eckhart Tr. 485:3-23. Quainton Decl. **Ex. 13**. The songs on the playlist were saved by Ed and certain are identified below. *See* Declaration of Ed Henry, dated September 30, 2024.

**Response to Paragraph 44:**

Admit with the clarification that Plaintiff disputes any inference suggesting that she included those songs to invite sexual contact by Defendant. Ex. 3 (Eckhart Dep.) at 483:15-18, 508:5-14.

45.    A few months after Jennifer sent Ed her list of playlist songs, in May, 2016, a news story broke that Ed was having an affair with a Las Vega stripper named Natalie Lima. Quainton Decl., **Ex. 19**. https://www.dailymail.co.uk/news/article-3583848/FOX-correspondent-Ed-Henry-affair-STRIPPER-met-reporter-Las-Vegas-club-gave-2-000-private-lap-dance.html.

**Response to Paragraph 45:**

Admit.

46.    Ed left Fox for treatment and only returned in September 2016. Henry Dep, 82:19-24.

**Response to Paragraph 46:**

Admit.

47.    Not long after Ed's return, in early February 2017, Jennifer sent Ed a series of scantily clad or nude erotic photographs of herself (or someone she presented as herself):

    a.    Quainton Decl., **Ex. 20**, HENRY___0000009
    b.    Quainton Decl., **Ex. 21**, HENRY___0000010,
    c.    Quainton Decl., **Ex. 22**, HENRY__0000011,
    d.    Quainton Decl., **Ex. 23**, HENRY___000012,
    e.    Quainton Decl. **Ex. 24**, HENRY____000013,
    f.    Quainton Decl., **Ex. 25**, HENRY___000014,
    g.    Quainton Decl., **Ex. 26**, HENRY____000015.

**Response to Paragraph 47:**

Admit with the clarification that Plaintiff disputes any inference suggesting that she sent those messages to invite sexual contact by Defendant.   Ex. 3 (Eckhart Dep.) at 508:5-14.

***Early February 2017***

48.    On or about February 10, 2017, Ed and Jennifer had another sexual encounter. Henry Tr., 204:8-10; Eckhart Tr., 506:13-25, 507, 508:1-9.

**Response to Paragraph 48:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 535:7-538:18, 539:16-541:12, 562:15-

24.

49.    Before the sexual encounter, Ed and Jennifer engaged in consensual sexting revolving
around rough sexual imagery known as "S&M." Eckhart Tr., 507:10.

**Response to Paragraph 49:**

Dispute.  Ex. 3 (Eckhart Dep.) at 508:5-21.

50.    Jennifer sent Ed a photograph of a belt, to which Ed replied "mindmeld." Quainton Decl.,
**Ex. 27**, PL__H000822; Henry Tr., 195:12-17. Jennifer told Ed she would "always obey
and make myself available to u," Quainton Decl., **Ex. 27**, PL__H000822, and added the
image of a big red kiss to her message. *Id.*

**Response to Paragraph 50:**

Admit that Plaintiff sent those messages, but dispute to the extent it suggests that she did

so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

51.    On February 9, Jennifer told Ed, "You NEED my 26-year-old pussy." Quainton Decl. **Ex.
28**, PL___H002746. Ed responded, "Gentle little whore. Gonna get tossed around like a
rag doll." *Id*.  Jennifer replied simply, "Love that." *Id*.

**Response to Paragraph 51:**

Admit that Plaintiff sent those messages, but dispute to the extent it suggests that she did

so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

52.    On the morning of February 10, 2017 Jennifer sent Ed a suggestive picture of a woman's
bottom with thong-like underwear tightly pulled up behind her. Quainton Decl. **Ex. 26**
*supra*.

**Response to Paragraph 52:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

53.    The sexual encounter between Ed and Jennifer involved the extreme practice of "fisting," the use of handcuffs, a belt with which Ed struck Jennifer on the back, and vaginal intercourse. Eckhart Tr. 539:16-25, 540:1-3. Quainton Decl. **Ex. 29**, PL_H002941.

**Response to Paragraph 53:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 535:7-538:18, 539:16-541:12, 562:15-

24.

54.    Ed wanted the encounter to include anal intercourse and asked Jennifer if she would consent to anal sex, which she declined, and Ed respected. Eckhart Tr. 559: 16-25.

**Response to Paragraph 54:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 535:7-538:18, 539:16-541:12, 562:15-

24.

55.    After the encounter, Jennifer claims her face was bright red, she had a bloody lip, her wrists were bleeding, and she had taken off her high heels that she was holding in her hands, but she left the hotel passing through the lobby without attracting attention. Eckhart Tr., 539:16-18, 540:10-11; 540:22-23.

**Response to Paragraph 55:**

Admit.

56.    Jennifer was a well-educated woman. She went to Auburn University from 2008-2010, and to the University of Florida from 2010-2012, graduation with a Bachelor of Science in telecommunications. Eckhart Tr., 37:19-25, 38:2-5.

**Response to Paragraph 56:**

Admit.

57.  Jennifer did not go to the police after the sexual encounter with Ed, which she alleges was "rape."

**Response to Paragraph 57:**

Neither admit nor dispute.  Defendant failed to cite any evidence to support this

contention against Fed. R. Civ. P. 56(c) and Local Rule 56.1(d).

58.  Jennifer did not go to the hospital for the preparation of a "rape kit" to preserve evidence after the sexual encounter she alleges was "rape."

**Response to Paragraph 58:**

Neither admit nor dispute.  Defendant failed to cite any evidence to support this

contention against Fed. R. Civ. P. 56(c) and Local Rule 56.1(d).

59.  Jennifer had her first session with therapist Margaret Oakes on October 3, 2017. Oakes Tr., 64:20-21. During her first session with Ms. Oakes, Jennifer's "primary presenting symptom was she had had a very, very old, close friend recently died, and she was experiencing a lot of grief," and she was suffering anxiety because her father was ill. Oakes Tr., 65-22-25, 66:2-7.

**Response to Paragraph 59:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 331:3-11.

60.  Jennifer did not disclose the sexual encounter to Ms. Oakes during the initial session or at any time in 2017. Jennifer had two sessions with Ms. Oakes in 2017. Oakes Tr., 54:6-8. in 2017.

**Response to Paragraph 60:**

Admit with the clarification that Plaintiff disputes any inference suggesting that the

sexual encounter was consensual.  Ex. 3 (Eckhart Dep.) at 331:3-11.

61.   Jennifer did not tell her parents about the February sexual encounter with Ed.

**Response to Paragraph 61:**

Dispute.  Defendant failed to cite any evidence to support this contention against Fed. R.

Civ. P. 56(c) and Local Rule 56.1(d).  Prior to filing this lawsuit, Plaintiff told her parents that

she had been raped by a Fox anchor.  Ex. 3 (Eckhart Dep.) at 334:5-23.

62.   Jennifer did not tell her best friend, a woman named ███████ about the February sexual
      encounter with Ed. Eckhart Tr., 430:6-8.

**Response to Paragraph 62:**

Dispute. The cited evidence only shows that Plaintiff did not tell Kayley about the 2014

sexual assault at the Marriott Marquis "at the time" the rape occurred.  Ex. 3 (Eckhart Dep.) at

428:24-430:8.

63.   Jennifer did not tell one of her best friends, ████████████ about the February sexual
      encounter with Ed. Eckhart 430:9-29

**Response to Paragraph 63:**

Dispute.  The cited evidence only shows that Plaintiff did not tell Amanda Quinton about

the 2014 sexual assault at the Marriott Marquis "at the time" the rape occurred.  Ex. 3 (Eckhart

Dep.) at 428:24-430:16.

64.   Jennifer did not tell any female friends about the February sexual encounter with Ed.
      until after she filed her complaint 3 years later.

**Response to Paragraph 64:**

Neither admit nor dispute.  Defendant failed to cite any evidence to support this

contention against Fed. R. Civ. P. 56(c) and Local Rule 56.1(d).

65.     Jennifer did not tell FNN about the sexual encounter until she filed her lawsuit 3 years later.

**Response to Paragraph 65:**

Dispute.  Defendant failed to cite any evidence to support this contention against Fed. R.

Civ. P. 56(c) and Local Rule 56.1(d).  See also Declaration of Kathleen McKenna, Ex. 66 at

FOX 002827.

66.     Jennifer did not tell any third party about the sexual encounter until two years later, when she told her then boyfriend that she had allegedly been assaulted by Ed. Holt Tr., 156:11-14.

**Response to Paragraph 66:**

Dispute.  Defendant mischaracterized the evidence, which does not show when Eckhart

told Holt that she had been assaulted by Henry or which incident Eckhart was referring to when

she did tell Holt that she had been sexually assaulted by Henry.  Ex. 6 (Holt Dep.) at 156:11-14.

**Jennifer and Ed's Relationship After the Alleged "Rape" and Jennifer's Continued Pursuit of Ed**

67.     Immediately after the sexual encounter with Ed in February 2017, Jennifer continued to send Ed more erotic photos of herself and other women.

**Response to Paragraph 67:**

Dispute.  Defendant failed to cite any evidence to support this contention against Fed. R.

Civ. P. 56(c) and Local Rule 56.1(d).

68.     On February 20, 2017, shortly after the alleged "rape," Jennifer sent Ed the following:
   a.     A photograph of herself in black lingerie with the tips of the two middle fingers of her left hand inserted into her panties. Quainton Decl., **Ex. 30**, HENRY___000016.
   b.     A photograph of herself lying sideways in her underwear on the bed, breast thrust forward. Quainton Decl. **Ex. 31**, HENRY____0000017.
   c.     A photograph of a woman from a side view showing a nearly naked bottom, Quainton Decl., **Ex. 32**, HENRY___ 000018.
   d.     A photograph of her own fully exposed, slightly parted vagina lathered in soap. Quainton Decl., **Ex. 33**, HENRY___000019.

**Response to Paragraph 68:**

Dispute.  Ex. 3 (Eckhart Dep.) at 636:8-639:16.

69.  On February 21, 2017, Jennifer sent Ed photograph of herself, lying facing down on a bed in lingerie, looking straight at the camera, smiling and kicking her high heels up behind her. Quainton Decl., **Ex. 34**, HENRY____000020.

**Response to Paragraph 69:**

Dispute.  Ex. 3 (Eckhart Dep.) at 640:2-10.

70.  On February 23, 2017, Jennifer sent Ed a selfie of a half-naked woman in green panties with a green mesh top pulled up to expose her breasts up to the nipples. Quainton Decl., **Ex. 35**, HENRY____000021.

**Response to Paragraph 70:**

Dispute.  Ex. 3 (Eckhart Dep.) at 640:15-24.

71.  On February 25, 2017, Jennifer sent Ed a self of a woman's upper body with prominent cleavage showing from a black frilled top. Quainton Decl., **Ex. 36**, HENRY____00022.

**Response to Paragraph 71:**

Dispute.  Ex. 3 (Eckhart Dep.) at 641:4-17.

72.  Of the fifteen erotic photographs Jennifer sent to Ed, five were not of Jennifer, but were of other women. Eckhart Tr., 645:9-15.

**Response to Paragraph 72:**

Admit.

73.  These five photographs were submitted under seal as Exhibits I, G, M, T and U to the Declaration of Cathy Foti, dated October 19, 2020 (the "Foti Decl."), Dkt. 85. Quainton Decl. **Ex. 20**; **Ex. 22**; **Ex. 26**; **Ex. 36**; **Ex. 51**.

**Response to Paragraph 73:**

Dispute.  Ex. 3 (Eckhart Dep.) at 645:9-16.

74.     The ten remaining photographs were redacted to obscure any sexual body parts. Foti Decl. H, J, K, L, N, O, P, Q, R, S. Quainton Decl. **Ex. 21**, **Ex. 23**, **Ex. 24**, **Ex. 25**, **Ex. 30**, **Ex. 31**, **Ex. 32**, **Ex. 33**, **Ex. 34**, **Ex. 35**.

**Response to Paragraph 74:**

Admit.

75.     Ed and Jennifer also continued sexting in the weeks after and months after the alleged rape, with frequent references to rough, consensual sex, with Jennifer often initiating.

**Response to Paragraph 75:**

Dispute.  Again, Defendant failed to cite any evidence to support this contention against

Fed. R. Civ. P. 56(c) and Local Rule 56.1(d).

76.     On a morning after the alleged "rape." Jennifer messaged Ed at 8:41 a.m., asking "You put all your friends in cuffs?" Quainton Decl., **Ex. 37**, PL_H002943.

**Response to Paragraph 76:**

Admit.

77.     Ed responded "Shhh," followed by a smiley face emoticon. He then added, "It was nice to see you for a quick drink," followed by a smiley face with a halo emoticon. *Id.*

**Response to Paragraph 77:**

Admit.

78.     The smiley face with a halo conveys angelic behavior. Quainton Decl. **Ex. 38,** https://emojipedia.org/smiling-face-with-halo.

**Response to Paragraph 78:**

Admit for the purposes of this motion but dispute that emojipedia.org is a binding

authority on this court and any suggestion that emojis cannot be used in a sarcastic or duplicitous

way.

79.     Jennifer responds, "sore wrists, marks on my ass, broke a nail, bruise on my leg." Quainton Decl., **Ex. 37**, PL_H002943. There is a further comment below this that Jennifer has not preserved.

**Response to Paragraph 79:**

Admit.

80. Valentine's day in 2017 fell on Tuesday, February 14, 2017. Quainton Decl. **Ex. 39**, https://www.census.gov/newsroom/facts-for-features/2017/cb17-ff02.html#:~:text=14,-January%2023%2C%202017&text=Expressing%20one's%20affection%20to%20another%20is%20a%20celebrated%20custom%20on%20Valentine's%20Day.

**Response to Paragraph 80:**

Admit.

81. On the afternoon of February 14, 2017, at 1:07 p.m., Ed wrote to Jennifer, "Again, please," to which Jennifer responds, "You didn't get enough." Quainton Decl. **Ex. 40**, PL_H002748.

**Response to Paragraph 81:**

Admit that Eckhart sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

82. Ed responds, "Nowhere close," to which Jennifer replies, "Fucking dirty boy. I love it." *Id*.

**Response to Paragraph 82:**

Admit that Eckhart sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

83. A bit later, at 1:53 p.m., Ed banters "Fuck you and your safe word. You will know when I am done," followed by an "emoticon" of a face with squinty eyes and tongue sticking out.  Quainton Decl., **Ex. 41**, PL_H002872.

**Response to Paragraph 83:**

Admit.

84.   The squinty eyes tongue out emoticon conveys a sense of playfulness and joking. Quainton Decl., **Ex. 42**, https://emojipedia.org/squinting-face-with-tongue.

**Response to Paragraph 84:**

Admit for the purposes of this motion but dispute that emojipedia.org is a binding

authority on this court and any suggestion that emojis cannot be used in a sarcastic or duplicitous

way.

85.   Jennifer responds to Ed's message by saying "You need to be sweeter to me. It's Vday." Quainton Decl. **Ex. 41**, PL__H002872.

**Response to Paragraph 85:**

Admit.

86.   Ed responds by saying "Nah. Valentine my ass," *id*., to which Jennifer replies with a red heart and a winking tongue out emoticon. *Id.*

**Response to Paragraph 86:**

Admit that Eckhart sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

87.   The winking tongue out emoticon conveys a sense of fun, excitement, wackiness, buffoonery, or joking. Quainton Decl., **Ex. 43**, https://emojipedia.org/winking-face-with-tongue.

**Response to Paragraph 87:**

Admit for the purposes of this motion but dispute that emojipedia.org is a binding

authority on this court and any suggestion that emojis cannot be used in a sarcastic or duplicitous

way.

88.   At 4:17 p.m., Ed writes to Jennifer, "I bet, you'll cum back for more." Quainton Decl., **Ex. 49**, PL_H000824, PL_H002849, PL_002956.

**Response to Paragraph 88:**

Admit.

89.    Jennifer responds, "Want it. Badly." *Id.*

**Response to Paragraph 89:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

90.    On the evening of February 14, 2017, at 6:05 p.m., Jennifer sends Ed a selfie of herself in a revealing black top showing the areola of her left breast, with the comment, "Come do me in the back of this cab," followed by the image of big red kiss. Quainton Decl., **Ex. 45**, PL_H002955.

**Response to Paragraph 90:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

91.    In another exchange after the alleged rape, Ed says that they only "met for a quick drink," to which Jennifer responds, "sore wrists, marks on my ass, a broken nail, bruise on my leg . . ." and a final comment Jennifer has not preserved. Quainton Decl., **Ex. 46**, PL_H002852.

**Response to Paragraph 91:**

Admit.

92.    In another exchange, Ed asked Jennifer if he could use his "fingers." Quainton Decl., **Ex. 47**, PL___H002745. Jenifer responded, "So tight," to which Ed said, "Miss" and Jennifer responded, "Miss more." *Id*.

**Response to Paragraph 92:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

93.    In 2017, the Conservative Political Action Committee ("CPAC") conference was held in Washington D.C. from February 22-February 25. Quainton Decl., Ex. 48, https://www.pbs.org/newshour/tag/cpac-2017.

**Response to Paragraph 93:**

Admit.

94.    Before the CPAC conference, Jennifer texted Ed, "You wanna fuck me at CPAC?" Quainton Decl. **Ex. 49**, PL__H002952.

**Response to Paragraph 94:**

Dispute.  Ex. 3 (Eckhart Dep.) at 648:15-649:10.  In addition, the messages are misquoted.  Ex. 33.[2]

95.    Ed responded, "No I mean it's an excuse to get your tight ass to DC." *Id.*

**Response to Paragraph 95:**

Admit.

96.    Jennifer replied, "Ha. You NEED my tightness." *Id.* Jennifer made clear, "I don't need a work excuse to come see you in DC." *Id.*

**Response to Paragraph 96:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

97.    Ed then stated, "Then get your ass on it," to which Jennifer replied, "I will eventually." Jennifer never went to CPAC to meet Ed that year.

**Response to Paragraph 97:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

98.    On another occasion after the alleged rape, Ed texted Jennifer "Gonna make you my little whore again." Quainton Decl., **Ex. 50**, PL__H002834.

**Response to Paragraph 98:**

Dispute.  Ex. 3 (Eckhart Dep.) at 519:21-520:3.

---

[2]    Exhibits 19-32 have been removed from the Declaration of Michael Willemin and consequently are not included here.

99.    Jennifer responded, "Good. Someone needs to take ownership of this pussy." *Id.*

**Response to Paragraph 99:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

100.    Ed stated, "Lame boys don't know how you like to be sucked and f***d." *Id.*

**Response to Paragraph 100:**

Admit.

101.    Jennifer responded, "No one can handle me." *Id.*

**Response to Paragraph 101:**

Admit.

102.    Ed replied, "Except me; came on your face; and you loved it." *Id.*

**Response to Paragraph 102:**

Admit.

103.    Jennifer failed to preserve her response to this comment. *Id.*

**Response to Paragraph 103:**

Admit.

104.    After the alleged rape, during which Jennifer declined Ed's request for anal sex, Ed and
Jennifer continued sexting for many months.

**Response to Paragraph 104:**

Dispute.  Again, Defendant failed to cite any evidence to support this contention against

Fed. R. Civ. P. 56(c) and Local Rule 56.1(d).

105.    On April 13, 2017, Jennifer sent Ed a provocative photograph of a well-endowed woman in a revealing white bikini thrusting her breasts forward onto the green cushion of a sun-lounger by a pool. Quainton Decl. **Ex.51**, HENRY__0000023.

**Response to Paragraph 105:**

Dispute.  Ex. 3 (Eckhart Dep.) at 671:16-672:16.

106.    Later, Ed refers to another incident in which he and Jennifer engaged in anal sex. Quainton Decl., **Ex. 52**, PL___H002964.

**Response to Paragraph 106:**

Dispute.  Defendant mischaracterized evidence.  Defendant wrote that he wants "more

anal;" there is no reference to any incident in which he and Plaintiff engaged in anal sex and

Plaintiff never had anal sex with Mr. Henry.  Ex. 3 (Eckhart Dep.) at 649:15-651-3; Ex. 34.

107.    During this sexting exchange Jennifer sent Ed a provocative photograph of her legs with the comment, "Come meet me." *Id*.

**Response to Paragraph 107:**

Admit that Plaintiff sent that photograph, but dispute to the extent it suggests that she did

so to invite sexual contact from Defendant or that it is "provocative."  Ex. 3 (Eckhart Dep.) at

508:5-21.

108.    Ed responds to Jennifer's request that Ed "come meet" her by saying, "Those leggz." *Id*.

**Response to Paragraph 108:**

Dispute.  This is an incorrect quote.

109.    Jennifer continued to invite sexual contact from Ed, saying, "Come spread them and slide my bikini off." *Id*.

**Response to Paragraph 109:**

Admit that Plaintiff sent that message, but dispute that she did so to invite sexual contact

by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

110.    Ed commented, "U need." *Id*.

    **Response to Paragraph 110:**

    Admit.

111.    Jennifer did not deny Ed's statement, adding, "Maybe it's the daquiri talking." Id.

    **Response to Paragraph 111:**

    Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

112.    Ed banters in response, "The more impaired the better." *Id*.

    **Response to Paragraph 112:**

    Admit.

113.    Jennifer followed with, "That's how you like me. Weak and submissive." *Id*.

    **Response to Paragraph 113:**

    Admit.

114.    Ed concluded the exchange with a reference to a previous sexual encounter involving
    anal sex, saying "owned and submissive. More anal." *Id*.

    **Response to Paragraph 114:**

    Dispute.  Defendant mischaracterized evidence, which does not reference any incident in

which he and Plaintiff engaged in anal sex and Plaintiff never had anal sex with Mr. Henry.  Ex.

3 (Eckhart Dep.) at 649:15-651-3; Ex. 34.

115.    On another occasion, Jennifer sent Ed a message asking Ed to tell her why it would be
    "worth it" to see him and imploring Ed to "entice me." Quainton Decl., **Ex. 53**,
    PL_H00PL2963.

    **Response to Paragraph 115:**

    Admit that Plaintiff sent those messages, but dispute to the extent it suggests that she did

so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

116.    In response, Ed queries, "Do you like when Daddy eats you out." Jennifer responds, "So much." *Id*.

**Response to Paragraph 116:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

117.    Jennifer adds, "But it's going to take more than that. What else" *Id*.

**Response to Paragraph 117:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

118.    Ed follows with "and when he tastes your ass." *Id*.

**Response to Paragraph 118:**

Admit.

119.    Jennifer has not preserved the remainder of this exchange.

**Response to Paragraph 119:**

Admit.

120.    On another occasion, Ed and Jennifer arrange to meet for a late night drink at the Marriot. Quainton Decl., **Ex. 54**, PL__H002965. Ed and Jennifer banter about who is in the dominant position in the relationship, with Jennifer asking, "I thought I was in charge," *id.*, and Ed confirming "you are." *Id*. Jennifer asks Ed if he would like a "quick drink," in a reference to the night of the alleged "rape," that Ed had referred to as their "quick drink." *See supra* at ¶ 75; Quainton Decl., **Ex. 54**, PL_002965.

**Response to Paragraph 120:**

Dispute.  Ex. 3 (Eckhart Dep.) at 601:19-602:15, 609:12-18.

121.    On another occasion after the alleged rape, Jennifer messages Ed, but preserves only a portion of her text ending in "you're through with me." Quainton Decl., **Ex. 55**, PL_002846.

**Response to Paragraph 121:**

Admit that Plaintiff sent that message, but dispute to the extent it suggests that she did so

to invite sexual contact by Defendant.  Ex. 3 (Eckhart Dep.) at 508:5-21.

122.    Ed responds, "What about bruises? Your roommate will be mad. Yacht club pals outraged." *Id.* Jennifer responds, "I live alone. Smartass. No bruises – photo shoot this week." *Id.* Jennifer concludes her comment with the semicolon, close parenthesis sign for a smiley face emoticon. *Id.* Ed adds that he will "rough her up." *Id*. Jennifer has not preserved her answer in full, but the letter "Y" is visible in the portion of the text that has not been obscured. *Id.*

**Response to Paragraph 122:**

Admit.

123.    On April 13, 2017, Jennifer sent Ed a photo of a woman in a revealing white bikini. However, the parties did not engage in sex at that time or in February or March after any of their provocative banter.

**Response to Paragraph 123:**

Dispute.  Ex. 3 (Eckhart Dep.) at 672:5-16.

124.    At the time of this sexting, Ed had a sexual partner who stated that she enjoyed S&M of the same kind Ed engaged in with Jennifer. Quainton Decl., **Ex. 56**, PL___H0000798. Henry Tr., 224:50-22.

**Response to Paragraph 124:**

Dispute.  The cited evidence shows the exact opposite.  PL_H000798 is a photograph of a

Snapchat conversation in which ▮▮▮▮▮ told Defendant: "I gave you the same type of sexual

activity..bdsm type stuff that you and her did" as she confronted Defendant about his infidelity

and questioned why he cheated on her even though she gave into his preference for violent and

degrading sex.  Ex. 35.

29

125.    This woman, ███████████▌ █████████████████████████████████
████████████████████████ uainton Decl., **Ex. 57**, PL__H002915.

**Response to Paragraph 125:**

Admit that ██████ sent that message, but dispute to the extent it suggests that she

enjoys S&M.  Ex. 35.

126.    In response to this woman's jealousy, Ed "unfollowed" Jennifer on Twitter. Henry Tr.,
223:21-25, 224:2-9.

**Response to Paragraph 126:**

Admit that Defendant unfollowed Plaintiff on Twitter but dispute that it was in response

to ██████████ jealousy.  Ex. 3 (Eckhart Dep.) at 682:7-12, 683:15-684:4, 686:1-18.

127.    At approximately the same time, Ed deleted his "likes" of Jennifer's Instagram photos.
Henry Tr. 224:9-22.

**Response to Paragraph 127:**

Admit that Defendant removed likes of Plaintiff's Instagram photos but dispute that it

was in response to ██████████ jealousy.  Ex. 3 (Eckhart Dep.) at 682:7-12, 683:15-684:4,

686:1-18.

**Jennifer Breaks Off Communications and Creates a Selective "Record"**

128.    Eckhart breaks off her written communications with Ed on August 5, 2017. Eckhart Tr.,
401-404.

**Response to Paragraph 128:**

Dispute.  Defendant mischaracterized evidence.  The cited evidence does not support

Defendant's contention.

129.   Jennifer admitted she deleted direct messages to and from Ed over Twitter after the
       sexual encounter in February 2017. Eckhart Tr., 347:18-24. Jennifer deleted what she
       wanted to delete. Eckhart Tr., 347:25, 348:2-4.

       **Response to Paragraph 129:**

       Admit, but see Ex. 3 (Eckhart Dep.) at 347:12-17.

130.   Other than through Twitter DM's, Jennifer primarily communicated with Ed via the
       Whats App. Platform. Eckhart Tr., 394: 4-9.

       **Response to Paragraph 130:**

       Admit.

131.   A few months after the February 2017 sexual encounter with Ed, Jennifer deleted "the
       majority" of her text exchanges through Whats App. Eckhart Tr., 394:10-24.

       **Response to Paragraph 131:**

       Admit, but see Ex. 3 (Eckhart Dep.) at 347:12-17.

132.   At this time, Jennifer used her work iPhone to take a selective set of pictures of messages
       and photos from her chats with Ed through the Whats App platform and then texted these
       messages and photos to her personal phone. Eckhart Tr. 401:3-17; Quainton Decl., **Ex.
       58**, PL__H00923. All the WhatsApp messages preserved for litigation are selectively
       chosen photographs of a portion of Jennifer's communications with Ed. Eckhart Tr.
       401:3-17. Many of these messages, including most of the ones Jennifer thinks are
       incriminating, have been cut off to obscure a final comment by Jennifer expressing
       pleasure, agreement or desire. *See, e.g., supra* at ¶¶ 90, 122.

       **Response to Paragraph 132:**

       Dispute.  Plaintiff erased her WhatsApp conversation with Defendant to protect herself

       from traumatic reminders.  Ex. 3 (Eckhart Dep.) at 347:12-17.  Plaintiff preserved some text

       messages that evidence Defendant's violent and abusive behavior by taking pictures of the chat

       with her work phone.  Ex. 3 (Eckhart Dep.) at 400:25-401:25.  Defendant provides no evidence

       for the contention that Plaintiff intentionally cut off "a final comment by Jennifer expressing

       pleasure, agreement or desire."

133.    Jennifer then deleted her entire Whats App message history with Ed, thus preserving only a selected number of messages she had specifically chosen to preserve and destroying all other evidence of her Whats App communications with Ed. Eckhart Tr., 401:14-17.

**Response to Paragraph 133:**

Admit, but see Ex. 3 (Eckhart Dep.) at 347:12-17.

134.    At the time Jennifer deleted her Whats App communications, she believed she had a legal claim against Ed. Eckhart Tr., 395:10-17.

**Response to Paragraph 134:**

Admit, but see Ex. 3 (Eckhart Dep.) at 347:12-17.

135.    Jennifer deliberately preserved a select number of messages because she wanted to "keep a record." Eckhart Tr., 404:16.

**Response to Paragraph 135:**

Admit.

**FNN's Concern with Jennifer's Performance and Dishonesty**

136.    FNN expressed concerns about Jennifer's work on numerous occasions, and in particular, her truthfulness.

**Response to Paragraph 136:**

Dispute.  Defendant failed to cite any evidence to support this contention against Fed. R.

Civ. P. 56(c) and Local Rule 56.1(d).

137.    On June 10, 2020, Brad Hirst stated that Jennifer had created a "disaster" through an "epic fail." Quainton Decl., **Ex. 59**, FOX___1950. Brad also stated on this occasion his concern that Jennifer had been guilty of plagiarism, writing, "Plagiarism, in addition to the inattention, poor editorial judgement and basic lack of professionalism, all violate the PIP."

**Response to Paragraph 137:**

Dispute.  Ex. 3 (Eckhart Dep.) at 215:5-217:24.

138.    A PIP is the acronym for a Performance Improvement Plan. Quainton Decl, **Ex 4**, Hirst Tr., 87:5-18.

**Response to Paragraph 138:**

Admit.

139.   On May 29, 2020, Alicia Cascardi wrote a summary of Jennifer's work, underscoring "multiple errors and a lack of preparedness. Quainton Decl., **Ex. 60**, FOX___0001955.

**Response to Paragraph 139:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

140.   Alicia Cascardi that during the period under review "Jen lightly plagiarized her intro from the New York Times. She changed a word or two in the copy to make it less of a direct copying effort, but her sentence structure was essentially same. This is also a pattern with Jen and varies from full plagiarism to this kind of copying where she uses same sentence structure but changes a word or two." Quainton Decl., **Ex. 60**, FOX___0001956.

**Response to Paragraph 140:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

141.   In her notes for May 29, 2020, Alicia Cascardi questions "whether she [Jennifer] was being honest." Quainton Decl., **Ex. 60**, FOX____0001957.

**Response to Paragraph 141:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

142.    Further, in her notes for the same day, Ms. Cascardi further questioned whether Jennifer was lying to Fox, writing, "[a]lso even if somehow she couldn't use either her home or office computer to read the notes, where was her work phone? She certainly could have read the notes from there. And if she was still home during the 9am call, then it would also mean she lied about attempting to be at work on time when asking her colleague to do the morning sheet for her). Quainton Decl., **Ex. 60**, FOX___0001958.

**Response to Paragraph 142:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

143.    Ms. Cascardi re-emphasized her concern with Jennifer's truthfulness, writing, "[b]ut the bigger question this brings up, is if Jen was telling the truth and did reach out for it earlier—why not mention it in the packet? That would be both responsible communication by the producer and proof that she is paying attention to her duties as a producer. And it would avoid Liz getting upset and having to send an email out asking for one. All she had to do here was say next to the PRONOUNCER line in packet "waiting to hear back from PR." Whole problem would have been solved. But Jen didn't do that and without asking to physically see her emails, we can't 100% know if she is telling truth". Quainton Decl., **Ex 60**, FOX___0001959.

**Response to Paragraph 142:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

144.    Brad Hirst was also concerned that Jennifer was falsely presenting herself "Fox Business on air talent." Quainton Decl., **Ex. 61**, FOX___0001951, **Ex. 62**, FOX___1952.

**Response to Paragraph 144:**

Admit that the email states this, but the contentions therein are hearsay, not supported by

admissible evidence and, therefore, are disputed.

**Jennifer Attempts to Implicate Other Women**

145.    The Fourth Amended Complaint alleges that Mr. Henry "coerced" a woman, identified only as "Jane Doe 1," into having sex with him. *See* FAC ¶ 157. Jane Doe 1 has publicly repudiated this allegation, making clear that her relationship with Mr. Henry was completely consensual, and also repudiated the allegations relating to Jane Doe 3, which Plaintiff apparently learned of only from Jane Doe 1. Quainton Decl. **Ex. 63**, Diana Falzone, *The Sexual Assault Lawsuit Against Ed Henry Just Took a Wild Turn*, The Daily

Beast (Nov. 15, 2020).

**Response to Paragraph 145:**

Dispute.  Defendant mischaracterized evidence.  See also Ex. 3 (Eckhart Dep.) at 267:21-

268:12, 272:4-7, 280:19-25; Exs. 36-49.  Admit only that Paragraph 157 of the Fourth Amended

Complaint alleges that Defendant coerced a woman into having sex with him.

146.    The allegations brought by Cathy Areu have been completely discredited and have been
        dismissed with prejudice. Quainton Decl. **Ex. 64**,
        https://www.cbsnews.com/miami/news/daughter-charged-with-kidnapping-financial-
        exploitation-of-88-year-old-mother/; Quainton Decl., **Ex. 65.**
        https://lawandcrime.com/high-profile/fox-news-succeeds-in-dismissing-ex-contributors-
        lawsuit-against-tucker-carlson-sean-hannity-ed-henry-and-howard-kurtz/.

**Response to Paragraph 146:**

Dispute.  Ex. 3 (Eckhart Dep.) at 653:5-10.  Admit only that Cathy Areu's lawsuit has

been dismissed with prejudice.

147.    On December 20, 2023, Plaintiff filed a letter on the public document disseminating
        claims that a video of Ed sexually assaulting a woman on a boat existed. Dkt. 274.

**Response to Paragraph 147:**

Dispute that this statement is a material fact.

148.    The Court ordered Plaintiff to act "very promptly" to verify the truth of the allegation
        with the alleged source, and ordered Plaintiff's counsel to "report" back to the Court.
        Dkt. 314, Transcript of January 11, 2024 Hearing, 83:13.

**Response to Paragraph 148:**

Dispute that this statement is a material fact.  It contains the partial recitations of

statements made during a status conference hearing and serves no purpose in a Rule 56.1

Statement of Material Facts.  Plaintiff respectfully refers the Court to the hearing transcript for an

accurate record of its content.

149.    Defendant notified Plaintiff that the refusal to withdraw the allegation from the public

docket would subject Plaintiff to sanctions under Fed. R. Civ. P. 11. Quainton Decl, **Ex. 66**.

**Response to Paragraph 149:**

Dispute.  ECF 314 at 76.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff sets forth the following statements of additional material facts as to which she contends there exists a genuine issue to be tried:

**Additional Background Facts Concerning Ms. Eckhart**

150.    In or around June 2013, Ms. Eckhart joined Fox News as a Production Assistant for Liz Claman's show, The Claman Countdown.  Ex. 3 (Eckhart Dep.) at 26:21-23.

151.    Her aspirations were to be an on-air journalist.  Ex. 3 (Eckhart Dep.) at 40:12-15.

152.    Ms. Eckhart believed that working at Fox News would help her get closer to her goal of being an on-air reporter and that she could meet people at Fox News that could help her become an on-air reporter.  Ex. 3 (Eckhart Dep.) at 40:16-23.

153.    In or around December 2015, Ms. Eckhart was promoted to the position of Booker on the Claman Countdown.  Ex. 3 (Eckhart Dep.) at 48:9-12.

154.    Anchors make demands of their bookers if they want particular guests on their shows.  Ex. 3 (Eckhart Dep.) at 48:13-23.

155.    In or around August 2018, Ms. Eckhart was promoted to the position of Associate Producer on the Claman Countdown.  Ex. 3 (Eckhart Dep.) at 53:11-20.

156.    While employed by Fox News, Ms. Eckhart had the opportunity to interact with Fox News reporters, and it remained her aspiration to be an on-air reporter or talent during the time she worked at Fox News.  Ex. 3 (Eckhart Dep.) at 40:16-24-41:7, 93:10-25

157.    In 2015, Plaintiff was prescribed bupropion to help cope with the distress caused by frequently seeing Mr. Henry in the Fox News offices in New York.  Ex. 3 (Eckhart Dep.) at 332:8-19; Ex. 50.

158.    After the February 2017 rape, Plaintiff was diagnosed with post-traumatic stress disorder.  Ex. 3 (Eckhart Dep.) at 332:23-333:4; Ex. 7 (Karp Dep.) at 75:23-76:12, 101:20-103:9.

159.    Dr. Amie O. Karp is a licensed clinical social worker at Mount Sinai St. Luke Hospital's Crime Victims Treatment Center and a New York State Department of Health certified rape crisis conselor.  Ex. 7 (Karp Dep.) at 27-29, 40.

160.    Dr. Karp testified as Ms. Eckhart's treating therapist.  Ex. 7 (Karp Dep.) at 32.

161.    Dr. Karp testified that "it's a fairly common dynamic for survivors, who have ongoing contact with a perpetrator of sexual violence . . . to minimize the likelihood of additional assaults or harassment by placating or appeasing the perpetrator."  Ex. 7 (Karp Dep.) at 85:2-8.

162.    Dr. Karp testified that "it is not unusual at all" for a victim of sexual assault to wait five years before seeking treatment.  This delay can be caused by "shame, fear of not being believed, [a] natural tendency toward avoiding traumatic material that most survivors have, and not wishing to confront the pain associated with the victimization."  Ex. 7 (Karp Dep.) at 92:25-94:3.

163.    In 2018, Fox anchor Neil Cavuto brought Ms. Eckhart onto his show as a guest.  See  https://www.foxnews.com/video/5789815654001?playlist_id=930909826001#sp=show-clips; Ex. 3 (Eckhart Decl.) at ¶ 19.

164.    In 2018, Fox anchor Tom Shillue brought Ms. Eckhart onto his show as a recurring guest.  See https://radio.foxnews.com/2018/07/10/shillue-07-10-18-third-hour/; Ex. 3 (Eckhart Decl.) at ¶ 20.

### ADDITIONAL BACKGROUND FACTS CONCERNING MR. HENRY

165.    In 2011, Henry was the "Chief White House Correspondent," based in Washington, D.C.  Ex. 5 (Henry Dep.) at 51:9-16.

166.    Mr. Henry was superior to Ms. Eckhart within the Fox News organization.  Ex. 3 (Eckhart Dep.) at 362:12-19.

167.    Mr. Henry was in a position of power at Fox News and had a lot of influence with superiors at the Company.  Ex. 3 (Eckhart Dep.) at 265:7-12.

168.    In May 2016, Fox learned through a media report that beginning in 2015, Henry had an extramarital affair with a stripper in Las Vegas.  Ex. 5 (Henry Dep.) at 134:21-135:3, 135:25-136:7, 314:24-317:5; see https://www.intouchweekly.com/posts/ed-henry-affair-mistress-100998/.

169.    When the news of the affair broke, he was earning $███████ per year.  Ex. 5 (Henry Dep.) at 73-75.

170.    In May 2016, FNN responded to Henry's extramarital affair by taking him off the air for four months.  Ex. 5 (Henry Dep.) at 71:8- 74:24, 82:9-23, 139:5-6, 313:13-18, 317:20-318:8, 327:10-328:18, 417:19-23.

171.    During this "suspension," Henry was in fact sent to a sex rehabilitation program with Dr. ███████████.  Ex. 8 (Lord Dep) at 70; Ex. 5 (Henry Dep.) at 139, 146-148.

172.    While he was "suspended" – *i.e.*, sent to a sex rehabilitation program – he was still paid.  Ex. 5 (Henry Dep.) at 72; Ex. 1 (Collins Dep.) at 238-239; Ex. 4 (Gilman Dep.) at 14-15.

173.    By the beginning of 2017, Fox News decided to increase Mr. Henry's compensation to $⬛⬛⬛⬛ per year.  Ex. 5 (Henry Dep.) at 73-75.

174.    Mr. Henry's second contract with Fox News ran from July 2014 to July 2017.  Ex. 9; Ex. 5 (Henry Dep.) at 53-54.

175.    During that time, Mr. Henry was employed as the Chief White House Correspondent and a General Assignment News Reporter.  Ex. 5 (Henry Dep.) at 58.

176.    Prior to the expiration of the second contract, and on the heels of his suspension, Mr. Henry entered into a third contract in March 2017.  Ex. 10 ; Ex. 5 (Henry Dep.) at 58-61.

177.    Fox News started to negotiate that contract after Mr. Henry's suspension, and before he raped Ms. Eckhart in February 2017.  Ex. 5 (Henry Dep.) at 61.

178.    This third contract reflects that Mr. Henry would be promoted to an anchor position, and Mr. Henry testified that he was being considered for that promotion by late-2016, mere months after his suspension ended.  Ex. 5 (Henry Dep.) at 61-62.

### ADDITIONAL FACTS REGARDING RELEVANT INTERACTIONS WITH MR. HENRY

179.    Mr. Henry often appeared on The Claman Countdown.  Ex. 3 (Eckhart Dep.) at 340-341.  When he appeared on The Claman Countdown, Ms. Eckhart was tasked with producing his reporter hits.  Id.

180.    The first direct communication between Ms. Eckhart and Mr. Henry outside of the Claman Countdown was when he sent her a direct message on (then) Twitter, that said, "beautiful."  Ex. 3 (Eckhart Dep.) at 236:4-9, 246:12-23.

181.    Ms. Eckhart responded by telling him that she was a big fan of his work and that it would be an honor to meet him someday.  Ex. 3 (Eckhart Dep.) at 346.

182.    At the time, Ms. Eckhart was 24 years old.  Ex. 3 (Eckhart Dep.) at 372:24-373:4.

183.    In 2014, when Mr. Henry visited Fox's New York office, he invited Ms. Eckhart to meet him in the green room before his appearance on the show Outnumbered.  Ex. 3 (Eckhart Dep.) at 348.

184.    That day in the green room, Mr. Henry asked if Ms. Eckhart wanted to take a picture with him.  Ex. 3 (Eckhart Dep.) at 351.

185.    Later, Mr. Henry later reached out to Plaintiff on Twitter to request a copy of the picture.  Ex. 3 (Eckhart Dep.) at 355.

186.    Following their initial communications and meeting, "[Mr. Henry] incessantly blew up [Ms. Eckhart's] phone demanding that [she] meet him for a quick drink.  [She] felt uncomfortable doing so, so [she] remember[s] him inviting [her] to have a drink that same night, to which [she] came up with an excuse because [she] didn't feel comfortable meeting him. And, luckily, [she] got out of that, but his communication with [her] persisted and he seemed really adamant about wanting to have a drink with [her]."  Ex. 3 (Eckhart Dep.) at 366:3-14.

187.    Mr. Henry would send Ms. Eckhart sexually suggestive text messages.  Examples include, "I bet you're really good in bed" and asking Ms. Eckhart how "tight" she was and if she had a boyfriend.  Ex. 3 (Eckhart Dep.) at 371:2-11.  He also asked Ms. Eckhart what her favorite sexual positions were and sent her (unsolicited) pornographic images and videos.  Id.

188.    Ms. Eckhart responded to some of these messages because she felt she had to, but they made her very uncomfortable.  Ex. 3 (Eckhart Dep.) at 372:17-373:24.

189.    The photos and videos that Mr. Henry included "[w]omen getting slapped, women getting abused, gang bangs [and] other pornographic images," and were "really disturbing," "really upset" Ms. Eckhart and made her "super uncomfortable.  Ex. 3 (Eckhart Dep.) at 374:11-375:25.

190.    Ms. Eckhart also did not tell Mr. Henry to stop sending them because she "was a young girl, just starting her journalism career and [ ] did not feel [she] was in a position of power to tell the chief White House correspondent of Fox News that [she] was uncomfortable with the material he was sending [her]."  Ex. 3 (Eckhart Dep.) at 376:2-13.

191.    After being worn down by his multiple advances, Ms. Eckhart finally agreed to meet Mr. Henry for a drink at the Marriott Marquis hotel.  Ex. 3 (Eckhart Dep.) at 379:8-19.

192.    Ms. Eckhart did not feel like she could say no to the request.  Ex. 3 (Eckhart Dep.) at 383:14-16.

193.    Hopeful that she could use the opportunity to seek career advice, Ms. Eckhart brought with her a yellow legal pad with career related questions.  Ex. 3 (Eckhart Dep.) at 379:8-19.  The questions on the pad included questions about Mr. Henry's work and career progression.  Ex. 3 (Eckhart Dep.) at 387:3-24.

194.    She asked Mr. Henry about how he got to where he was in his career and whether he had any journalistic advice.  Id.  She also told him that she had on-air aspirations and wanted to be in front of the camera.  Id.

195.    Mr. Henry then told Ms. Eckhart that he wanted to have another drink up in his room, and that he wanted to discuss her career further.  Ex. 3 (Eckhart Dep.) at 417:6-12.

196.    Once again, Ms. Eckhart felt like she could not say no to the request.  Ex. 3 (Eckhart Dep.) at 417:13-18.

197.     When they got to the room, Mr. Henry did not initially discuss Ms. Eckhart's career.  Instead, he locked the door and forcefully started kissing her.  Ms. Henry threw Ms. Eckhart against the wall, quickly undressed her, threw himself on top of her on the bed and had intercourse with her without her consent.  Ex. 3 (Eckhart Dep.) at 418:16-419:2.

198.     The intercourse was "very brief."  Ex. 3 (Eckhart Dep.) at 426.

199.     Ms. Eckhart entered a state of shock.  Ex. 3 (Eckhart Dep.) at 424.

200.     Ms. Eckhart did not say "no" or fight Mr. Henry off because she was afraid of him and was not sure what would happen to her if she said no.  Ex. 3 (Eckhart Dep.) at 420:3-9.

201.     After having intercourse with Ms. Eckhart, Mr. Henry told her that she was beautiful and that she was wasting her time behind the scenes as a production assistant.  He said that she should be on camera becoming a star, and that he could put her in the room with really powerful people and decision-makers at Fox News.  Ex. 3 (Eckhart Dep.) at 424:4-13.

202.     The next physical interaction between Ms. Eckhart and Mr. Henry occurred on September 16, 2015.  Ex. 3 (Eckhart Dep.) at 447:5-448:13, 453:16-455:11; Ex. 5 (Henry Dep.) at 349:23-350:4.

203.     On that day, Mr. Henry texted Ms. Eckhart on WhatsApp and demanded that she remove her underwear and put them in an envelope for him to retrieve at her desk.  Ex. 3 (Eckhart Dep.) at 448:3-10.

204.     Ms. Eckhart acquiesced to the demand because she felt that she would be punished professionally if she did not.  Ex. 3 (Eckhart Dep.) at 450:14-24.

205.     After Mr. Henry retrieved the underwear, he began to text Ms. Eckhart about what a dirty girl she is and told her to come see him in the guest office on at Fox News on the 17th floor of the building.  Ex. 3 (Eckhart Dep.) at 453:14-24.

206.    Ms. Eckhart felt that if she did not acquiesce to Mr. Henry's demands, she would be punished professionally, so she went to the guest office.  Ex. 3 (Eckhart Dep.) at 456:19-457:2.

207.    When she arrived, Mr. Henry was sitting at a desk and on the phone.  Ex. 3 (Eckhart Dep.) at 453:14-455:11, 461:17-24.  Ms. Eckart told Mr. Henry that she had to go because she was very busy, but he signaled for her to come into the room and close the door.  Id.  Ms. Eckhart did not close the door, but sat down and continued to express that she had to go and was very busy.  Id.  Mr. Henry proceeded to hang up the phone and closed the door himself.  Id.  Mr. Henr began forcibly kissing Ms. Eckhart, pinned her against the wall and shoved her head down with his hand.  Id.  Mr. Henry took off his belt, opened his fly, put his hand on Ms. Eckhart's head and used it to force her to give him oral sex against her will by jerking her head back and forth and grabbing on to her hair.  Id.

208.    After Mr. Henry's suspension, he continued to send Ms. Eckhart inappropriate sexual messages, some of which Ms. Eckhart responded to because she was afraid that if she did not she could lose her job.  Ex. 3 (Eckhart Dep.) at 476:22-24.

209.    Mr. Henry told Ms. Eckhart on a number of occasions that she must obey him, or be disciplined.  Ex. 3 (Eckhart Dep.) at 476:25-477:18.

210.    Leading up to the February 10, 2017 rape, Henry sent Plaintiff messages that suggest an intent to use violence against her.  Ex. 3 (Eckhart Dep.) at 507-508, 647-650, Exs. 53-54.

211.    Ms. Eckhart sent the playlist referenced in MSF ¶¶ 42-45 to Mr. Henry because he demanded that she do so.  Ex. 3 (Eckhart Dep.) at 483:10-484:7.

212.    Ms. Eckhart's next physical interaction with Mr. Henry was on February 10, 2017.  Mr. Henry was in town to anchor Fox & Friends.  Ex. 3 (Eckhart Dep.) at 503:17-504:3. He had messaged Ms. Eckhart over WhatsApp and asked to meet with him for a quick drink and to discuss her career at a restaurant called Fresco by Scotto.  Id.

213.    Ms. Eckhart felt comfortable meeting him there because the restaurant is owned by a Fox affiliate anchor and is often frequented by Fox employees.  Ex. 3 (Eckhart Dep.) at 534:16-21, 553:21-2.

214.    Ms. Eckhart did not think she could say no because she was afraid of Henry and feared retaliation.  Ex. 3 (Eckhart Dep.) at 551:24-25, 553:8-14.

215.    Ms. Eckhart met Mr. Henry at Fresco by Scotto, where Mr. Henry was waiting for her at the bar.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

216.    Mr. Henry announced that Fox News was going to give him his very own show. Ex. 3 (Eckhart Dep.) at 534:12-541:11.

217.    This made Ms. Eckhart even more fearful of Mr. Henry because it demonstrated his power within the network.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

218.    Mr. Henry told Ms. Eckhart that he wanted to bring her on his future show.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

219.    He also asked her how her job was going and whether she had an agent.  Ex. 3 (Eckhart Dep.) at 534:12-541:11. When Ms. Eckhart told him that she did not, Mr. Henry offered to introduce her to his agent, who is highly influential in the industry. Ex. 3 (Eckhart. Dep.) at 549:14-19.

220.    Mr. Henry reiterated that Ms. Eckhart should be in front of the camera, rather than behind it, producing.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

221.    Mr. Henry and Ms. Eckhart each had one drink.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

222.    At that point, Mr. Henry asked Ms. Eckhart to discuss his impending promotion and her future at the network at his hotel.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

223.    Mr. Henry assured Ms. Eckhart that they would only be going for drinks.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

224.    Ms. Eckhart genuinely wanted to discuss her career and on-air aspirations, and agreed to go with Mr. Henry.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

225.    However, when the two left the restaurant, Mr. Henry forcibly pulled Ms. Eckhart by the arm and she started to panic.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

226.    She tried to come up with an excuse not to go, saying that her feet were hurting in her high heels.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

227.    That excuse did not seem to satisfy Mr. Henry, who continued to yank on her arm and lead her down the street.  Ex. 3 (Eckhart Dep.) at 534:12-541:11.

228.    Defendant then forcefully pulled Plaintiff out of the restaurant by her arm and led her to his room at the Omni Berkshire hotel nearby.  Ex. 3 (Eckhart Dep.) at 536:11-19, 551:16-18, 554:13-17.

229.    Instead of discussing Plaintiff's career, Defendant violently raped Plaintiff.  Ex. 3 (Eckhart Dep.) at 537:2-540:3, 556:2-559:10; 562:23-24.

230.    During this encounter, Defendant restrained Plaintiff with handcuffs.  Ex. 3 (Eckhart Dep.) at 537:7-10.

231.    While Plaintiff was restrained with handcuffs, Defendant took pictures of her and refused to delete them.  Ex. 3 (Eckhart Dep.) at 537:11-25, 564:5-9; Ex. 55; Ex. 56.

232.     Defendant hit Plaintiff's face.  Ex. 3 (Eckhart Dep.) at 538:15-18, 539:16-18, 557:13-19.

233.     Defendant struck Plaintiff with his belt.  Ex. 3 (Eckhart Dep.) at 539:18-21, 557:19-21, 561:11-13.

234.     Defendant penetrated Plaintiff with his fist.  Ex. 3 (Eckhart Dep.) at 539:22-24; Ex. 57.

235.     Defendant caused Plaintiff to suffer from bleeding wrists, a bloody lip, bruises and whipping marks.  Ex. 3 (Eckhart Dep.) at 540:10-15, 577:18-23; Ex. 56.

236.     Plaintiff was afraid to report the rape to law enforcement because Defendant told her that he had friends in the NYPD, and Ms. Eckhart understood this as a threat.  Ex. 3 (Eckhart Dep.) at 538:6-14, 564:9-12.

237.     When Plaintiff confronted Defendant about the encounter, Defendant told Plaintiff to "Shhhh" and explained that it was just "A quick drink."  Ex. 59.

238.     When Plaintiff tried to explain that he was too forceful, Defendant wrote: "Whatever When u r owned U don't get a "Choice"."  Ex. 60.

239.     Defendant continued to verbally abuse and sexually harass Plaintiff after the rape, sending messages such as "You needed to take your punishment;" "Fuck you and your safe word;" "you will know when I am done;" "get on your knees again and I'll give you your Valentine;" "#obey or #discipline;" "the more impaired the better;" "owned & submissive;" and "Gona make you my little whore again."  Exs. 61-62.

240.     After Mr. Henry violently raped Ms. Eckhart, Ms. Eckhart saw Mr. Henry in the office "all the time."  Ex. 3 (Eckhart Dep.) at 240:18, 679:14-681:18.

241.    Henry shared intimate photos of Plaintiff in a group chat to "entertain [his] friends," who in turn called Ms. Eckhart a "whore" and made degrading comments about Ms. Eckhart with allusions to prostitution and sex trafficking.  Ex. 63.

242.    In reference to the February 2017 rape, Henry bragged to his friends that Plaintiff "took the belt."  Ex. 64.

243.    Henry wrote that he is "working on" bringing Plaintiff to Florida to "rent" her to his friends.  Ex. 63 at HENRY-786, Ex. 65.

244.    Henry deleted all of his communications with Plaintiff over the course of an unknown period.  Mr. Henry claimed that he did so before this lawsuit to hide his infidelity from his wife.  Ex. 5 (Henry Dep.) at 36:18-37:2.

245.    Ms. Eckhart erased most of her communications with Henry a few months after the February 2017 rape because seeing reminders of Defendant and the rape was triggering and a form of re-traumatization.  Ex. 3 (Eckhart Dep.) at 347:14-17, 394:16-23.

246.    Before erasing those communications, Ms. Eckhart took care to preserve those emails and messages that captured what she believed to be true, including Mr. Henry's violence towards her.  Ex. 3 (Eckhart Dep.) 397:6-14, 401:24-25, 404:13-17.

**Additional Facts Regarding Mr. Henry's Sexual Misconduct**

247.    Henry was often "aggressively flirtatious with younger female colleagues" and sometimes sent "graphic notes or graphic images to them, sometimes even through the network's own messaging services."  Ex. 66.

248.    Mr. Henry sexually assaulted his former colleague, ███████. Ex. 13 (███  Decl.).  According to ███████, Mr. Henry's communications with her became increasingly uncomfortable as he would send her sexually explicit messages about what he

would want to do to her if they ever met in person.  Id. at ¶ 3.  Later, in a Las Vegas hotel, Mr.

Henry entered ███████ room, launched himself at her and began to kiss her.  Id. at ¶ 4.

After getting over her shock at the situation, █████ refused to continue and told Mr. Henry

that his behavior was extremely inappropriate.  Id. at ¶ 4.    A year or two later, Mr. Henry

suggested to ███████ that he had a hand in her getting a role at Fox News.  Id. at ¶ 8.  Two

months later, Mr. Henry again attempted to kiss ██████ without her consent.  Id. at ¶ 9.

Finally, in 2018, at a going away party for ██████, Mr. Henry sexually assaulted her: "At

some point, Henry was sitting across from me at a table, and though we had not had a physical

encounter in years, he suddenly and very unexpectedly put his hand under the table and under

my skirt and fingered me.  He did this without my consent . . . I remember feeling considerable

distress and confusion."  Id. at ¶ 11.

249.    Mr. Henry lied about his interactions with ███████ during his deposition.  Ex.

5 (Henry Dep.) at 253-256.

250.    In November 2016, Mr. Henry started an affair with an entry-level employee he

worked with at Fox News, ████████.  Ex. 14 (██████ Decl.) at ¶¶ 3, 6; Ex. 75.

251.    ████████ testified via declaration that before they became involved, Mr. Henry

sent her an unsolicited picture of his penis, and that on one occasion, Mr. Henry hit her so hard

that she began to cry. Ex. 14 (██████ Decl.) at ¶¶ 5, 7.

252.    During his deposition Mr. Henry lied and testified that he never sent a picture of

his penis to ████████, which was a lie.  Ex. 5 (Henry Dep.) at 225.

253.    Mr. Henry used his influence to put in a good word for ███████ with upper

management when she was seeking a promotion.  Ex. 3 (Eckhart Dep.) at 266:3-10, 268:22-

269:5; Ex. 5 (Henry Dep.) at 227:14-229:2; Ex. 14 (██████ Decl.) at ¶ 10.

254.    ███████ believes that her relationship was "not as "consensual" as [she] thought," abusive and violent.   Ex. 46 (███████ describing her relationship with Mr. Henry: "I was victimized too, it's not as 'consensual' as I thought"); Ex. 36 (███████ describing Mr. Henry as a "predator"); Ex. 37 (███████ describing Mr. Henry as a "creep"); Ex. 38 (██ ████ describing the relationship, "Yes def a power imbalance.  And I absolutely now believe that he used my ███████████████ to his advantage too."); Ex. 39, 44 (███████ describing Mr. Henry as an "addict" and a "sex addict"); Ex. 40 (███████ describing Mr. Henry as "emotionally abusive"); Ex. 40 (███████ describing Mr. Henry as "psychotic"); Ex. 42 (███████ describing that Mr. Henry sent her an unsolicited picture of his penis, which was a memory that she had "repressed"); Ex. 43 (███████ describing that she cried herself to sleep over Mr. Henry because of "how mean he could be"); Ex. 44 (███████ referring to Mr. Henry as a monster and noting that he "manipulated so many girls" and was "so evil to so many girls"); Ex. 78 (███████ describing Mr. Henry as "a psychopath"); Ex. 45 (███████ describing that she was in a "deep depression" and suicidal because of Mr. Henry); Ex. 46 (███████ saying that she is "scared of Ed" and does not want him to "retaliate" against her); Ex. 48 (███████ describing Mr. Henry as an "extra fucking predator"); Ex. 49 (███████ stating that she "told some [sic] Ed was emotionally abusive"); Ex. 49 (███████ stating that she "was so freaking manipulated by Ed"); Ex. 3 (Eckhart Dep.) at 266:17-267:8 (███████ told Ms. Eckhart that Mr. Henry coerced her into having sex in his office).

255.    This was just one of the many examples of which Ms. Eckhart was aware of anchors and/or correspondents at Fox News helping to advance the careers of women.  Ex. 3 (Eckhart Dep.) at 266:3-10.

256.    Henry admitted to engaging in inappropriate sexual banter with many other subordinates and colleagues, including ████████ and Cathy Areu.  Ex. 5 (Henry Dep.) at 43-45.

257.    Ms. Areu's case was originally dismissed without prejudice on legal grounds and without coming to any determinations as to the veracity of her factual claims.  Ex. 18 (Areu Dkt. 77); Ex. 18 (Areu Dkt 158).

258.    ████████ testified in her declaration: "at one point Mr. Henry sent me a photo of his penis, via Snapchat. I never asked for or solicited the photo, and never in any way indicated to Mr. Henry that I wanted to see a picture of his penis. I was shocked and upset when I saw the photo, and threw my phone aside."  Ex. 16 (████ Decl.) at ¶ 8.

259.    During his deposition, Mr. Henry lied and testified that he never sent a picture of his penis to ████████, which was a lie.  Ex. 5 (Henry Dep.) at 44:20-22.

260.    As for Ms. Areu (who was seeking Mr. Henry's assistance with getting a job at Fox News), Mr. Henry sent her various sexual GIFs and images, including a photograph of a vagina being clamped shut with clothespins, as well as a video entitled "fastest video ever," in which an interviewee exposes her vagina to get a job.  Ex. 5 (Henry Dep.) at 234-235; Ex. 17 (Amended Complaint filed by Ms. Areu against Fox News, Mr. Henry and others).

261.    After sending the latter video, Mr. Henry asked Ms. Areu if she was available for an interview.  Ex. 17 (Amended Complaint filed by Ms. Areu against Fox News, Mr. Henry and others).

262.    ████████████ was another female colleague of Mr. Henry's who was subjected to unwanted sexual communications.  Ex. 2 (████ Dep.) at 13-14.  At the time, it made her so uncomfortable that she forwarded the message to then-Fox News host ████████.  Ex.

2 (███ Dep.) at 74. ████████ agreed that the message was inappropriate. Ex. 2 (███ Dep.) at

74. ████████ also ultimately disclosed this communication to Mr. Lord in April 2017. Ex. 71;

Ex. 2 (███ Dep.) at 32.

263.     Roxie Marroquin was dating a Fox News White House correspondent and

colleague of Mr. Henry's in 2015 when Mr. Henry reached out to her through a private Twitter

DM. See https://www.truehollywoodtalk.com/woman-claims-ex-fox-news-anchor-ed-henry-

sends-private-investigator-to-silence-her-from-exposing-their-extra-marital-rendezvous/).

264.     Ms. Marroquin, who was at the time only 25 years old and seeking a mentor in the

media industry, asked Mr. Henry to "meet up…just as friends of course," and suggested that

"maybe [he] c[ould] teach [her] a few things about the industry." Id. Mr. Henry, seizing yet

another opportunity to take advantage of a young woman, invited Ms. Marroquin to meet him at

The Wynn hotel in Las Vegas, Nevada. Id. When Ms. Marroquin arrived at the Wynn hotel, Mr.

Henry asked her to go back to his hotel room, purportedly because he did not want people to

recognize him in public. Id. When the two arrived at his hotel room, Mr. Henry drew up a

bubble bath and directed Ms. Marroquin to join him in it. Id. After she got into the bathtub, Mr.

Henry began touching her breasts and vagina and asked her to touch him. Id. Ms. Marroquin

submitted to the pressure of Mr. Henry's advances. Id. Soon thereafter, Mr. Henry began to

panic out of fear that Ms. Marroquin would expose their sexual encounter. Id. He began sending

her harassing messages demanding that she meet with him and threatening her. Id. In one

message, Mr. Henry wrote: "If you are talking [to a magazine] I am pushing back super hard and

pointing out [her ex-boyfriend] so that I tell the truth. Tell me you are not talking or I am going

to [the] magazine to push back hard." Ex. 78 (PL_F001161). Mr. Henry subsequently arranged

to meet with Ms. Marroquin at a restaurant in Washington, D.C. See

https://www.truehollywoodtalk.com/woman-claims-ex-fox-news-anchor-ed-henry-sends-private-investigator-to-silence-her-from-exposing-their-extra-marital-rendezvous/). However, when Ms. Marroquin arrived at the restaurant with her son, she was, instead, confronted by a private investigator who told her to "keep her mouth closed" and that he knew where she lived. Id. He also threatened that Mr. Henry would sue her. Id. In Ms. Marroquin's words: "I have nothing to hide…Ed Henry is a sexual predator. I do know that he preys on girls who are very young and very impressionable." Id.; see also Ex. 72; Ex. 5 (Henry Dep.) at 87, 148-155.

265.    After this action was filed, one of Mr. Henry's former colleagues at CNN, Brooke Hammerling, tweeted, "No chance @foxnews didn't know about Ed Henry. He was a menace to many of us on the comms side when he was @cnn and everyone talked about it. Literally so so so gross." Ex. 67.

266.    Describing Mr. Henry, Ms. Hammerling told Ms. Eckhart: "he definitely made the moves on me and I said no which was fine I felt like swatting him away like a fly. He was not someone that would directly impact my job so I didn't really care. But was stunned by the openness and swiftness of the sexual nature of his messages to me. Even when I tried to just brush them off and think he was just a horny little dude... And try to keep it professional . . . he would always come back with something sexual and perverted. And I would say something to some of my friends and they would roll their eyes and be like UGH... Yeah he's a horn dog..." Ex. 73.

267.    Mr. Henry testified that no one had ever made any complaints of inappropriate conduct against him at Real America's Voice ("RAV"), his post-Fox News employer. Ex. 5 (Henry Dep.) at 37-38, 194.

268.    That was a lie.  We subpoenaed RAV and, as it turned out, someone had made a complaint of sexual harassment against Mr. Henry, including that he asked her to "suck on [his] dick."  Ex. 74; see https://www.mediaite.com/media/strippers-lewd-comments-sexual-memes-the-wild-hr-complaint-against-ed-henry/.

269.    Mr. Henry then tried to pretend that he was unaware of the complaint.  That too turned out to be a lie.  Ex. 15.  (Investigator Decl.)

270.    Mr. Henry also testified that he was not having an affair with his co-anchor at RAV, Karyn Turk.  Ex. 5 (Henry Dep.) at 39.

271.    That was a lie.  Just days after his deposition, Mr. Henry was pulled over for DUI and his passenger in the car was Ms. Turk.  See https://www.dailymail.co.uk/news/article-12312343/Leggy-blonde-caught-car-married-former-Fox-News-anchor-Ed-Henry-DUI-arrest-revealed-pageant-winning-American-Sunrise-host-Karyn-Turk-insists-theyre-not-item.html).

272.    During his interview with Fox News' outside investigator, Mr. Henry lied about numerous things, including: (i) disputing that he engaged in rough sex with Ms. Eckhart; (iii) disputing that he used a belt and handcuffs to strike and restrain Ms. Eckhart; (iii) the number of sexual encounters between the two; (iv) the years of the sexual encounters; (v) disputing that he took compromising photographs of Ms. Eckhart while she was naked and restrained with handcuffs; and (vi) disputing that he left bruises on Ms. Eckhart.  Ex. 5 (Henry Dep.) at 9-27.

Dated: November 19, 2024
      New York, New York            Respectfully submitted,

                            **WIGDOR LLP**

                            By: _____

                                 Michael J. Willemin

                               85 Fifth Avenue

New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com

*Attorney for Plaintiff*