UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
: 
JENNIFER ECKHART,                                            :   Civil Case No. 1:20-cv-05593 (RA)(GWG)
                                                             :
                  Plaintiff,                        :
                                                             :
              v.                                            :
                                                             :
FOX NEWS NETWORK, LLC and ED HENRY,                          :
in his individual and professional capacities,               :
                                                             :
                  Defendants.                       :
                                                             :
------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S MOTION FOR SUMMARY JUDGMENT

Kathleen M. McKenna, Esq.
Rachel S. Fischer, Esq.
Julia F. Hollreiser, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
kmckenna@proskauer.com
rfischer@proskauer.com
jhollreiser@proskauer.com

*Attorneys for Defendant*
*Fox News Network, LLC*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. ECKHART FAILS TO CREATE A TRIABLE ISSUE OF FACT ON HER SEXUAL HARASSMENT CLAIMS ...........................................................................2

    A. Dismissal is Required Because it is Undisputed that FNN Was Not on Notice of Any Unwelcome Sexual Activity By Henry During Eckhart's Employment .............................................................................2

    B. Henry Was Not Eckhart's Supervisor ...........................................................7

II. ECKHART CANNOT CREATE A FACT DISPUTE BY HEARSAY AND SPECULATION ...........................................................................................................9

    A. Rumors about Henry Among Non-Supervisory Personnel Are Immaterial ................9

    B. Complaints Involving Other People Are Immaterial .................................. 10

III. ECKHART FAILS TO CREATE A TRIABLE ISSUE OF FACT ON HER RETALIATION CLAIM ........................................................................................ 12

    A. Eckhart Has Failed to Raise a Triable Issue on her Prima Facie Case ...................... 12

    B. Plaintiff Cannot Refute FNN's Legitimate Reasons for Terminating Her ................ 14

    C. Plaintiff Has Failed to Put Forth Any Evidence of Pretext ....................... 15

IV. PLAINTIFF HAS ABANDONED HER NEGLIGENCE CLAIM ................................. 15

CONCLUSION ............................................................................................................................. 16

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bassi v. N.Y. Med. Coll.*,
2023 WL 2330478 (S.D.N.Y. Mar. 2, 2023) ............................................................................14

*Cajamarca v. Regal Ent. Grp.*,
2013 WL 5717119 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) ...........................................................8

*Chambers v. Heidelberg USA, Inc.*,
2006 WL 1281308 (D.N.J. May 5, 2006) ................................................................................13

*Champion v. N.Y. St. Off. of Parks, Recreation & Historic Pres.*,
500 F. Supp. 3d 26 (S.D.N.Y. 2020) .......................................................................................15

*Debrosse v. City of N.Y.*,
739 F. App'x 48 (2d Cir. 2018) ...............................................................................................11

*Dobney v. Walt Disney Co.*,
2024 WL 325336 (S.D.N.Y. Jan. 29, 2024) ..............................................................................9

*Greenidge v. City of N.Y.*,
2023 WL 6598626 (Sup. Ct. N.Y. Cnty. Oct. 10, 2023) ...........................................................9

*Hernandez v. Coca Cola Refreshments USA, Inc.*,
2013 WL 6388654 (E.D.N.Y. Dec. 6, 2013) .....................................................................10, 11

*Jackson v. Fed. Express*,
766 F.3d 189 (2d Cir. 2014) ....................................................................................................15

*Joshi v. Trs. of Columbia Univ.*,
515 F. Supp. 3d 200 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3205883 (2d Cir. Aug.
9, 2022) ...................................................................................................................................13

*Kaur v. N.Y.C. Health & Hosps. Corp.*,
688 F. Supp. 2d 317 (S.D.N.Y. 2010) .....................................................................................15

*Mason v. Vassar Coll.*,
2009 WL 10739919 (S.D.N.Y. July 2, 2009) .........................................................................15

*Maynard v. Montefiore Med. Ctr.*,
2021 WL 396700 (S.D.N.Y. Feb. 4, 2021) ...............................................................................9

*McCrain v. MTA*,
2020 WL 1285634 (S.D.N.Y. Mar. 18, 2020) ..........................................................................9

*Mejia v. City of N.Y.*,
  2020 WL 2837008 (E.D.N.Y. May 30, 2020) ................................................................7

*Melendez v. New York City Transit Authority*,
  2021 WL 2627513 (Sup. Ct. N.Y. Cnty. June 24, 2021).............................................10

*Melendez v. New York City Transit Authority*,
  204 A.D.3d 542 (1st Dep't 2022) ............................................................................8, 9

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
  232 F. Supp. 3d 558 (S.D.N.Y. 2017).........................................................................7

*N.Y.C. Dep't of Finance v. Twin Rivers, Inc.*,
  182 F.3d 900 (2d Cir. 1999).....................................................................................12

*O'Neil v. Roman Cath. Diocese of Brooklyn*,
  2011 WL 1587753 (Sup. Ct. Kings Cnty. Apr. 27, 2011) ...........................................8

*Ruradan Corp. v. City of N.Y.*,
  2024 WL 1555230 (S.D.N.Y. Apr. 10, 2024)...........................................................15

*Schmidt v. Medicalodges, Inc.*,
  492 F. Supp. 2d 1302 (D. Kan. 2007).........................................................................3

*Slattery v. Swiss Reins. Am. Corp.*,
  248 F.3d 87 (2d Cir. 2001).......................................................................................14

*Soliman v. Deutsche Bank GE*,
  2004 WL 1124689 (S.D.N.Y. May 20, 2004) ..........................................................12

*Szewcyk v. Saakian*,
  774 F. App'x 37 (2d Cir. 2019) ..................................................................................3

*United States ex rel. Quartararo v. Cath. Health Sys. of Long Island*,
  2018 WL 3825906 (E.D.N.Y. Aug. 10, 2018)............................................................7

**OTHER AUTHORITIES**

Fed. R. Evid. 408 ...............................................................................................................12

Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J.,
  2021 WL 3038875 (Sup. Ct. N.Y. Cnty. Feb. 12, 2021)............................................9

iii

**PRELIMINARY STATEMENT**

Eckhart's opposition underscores that the Court should grant summary judgment to defendant FNN because Eckhart lacks evidence to support an essential element of her sexual harassment claims: that FNN knew or should have known that Ed Henry would harass and rape her. Eckhart does not and cannot identify such evidence in the record because none exists. Indeed, the undisputed timing of material events makes those claims not just unsupported by any evidence but also temporally impossible. Eckhart must show FNN knew Henry posed a danger no later than February 2017—the last date on which Henry allegedly raped her.[1] (56.1 Reply[2] ¶ 328.) But Eckhart admits that neither she nor Henry told a single person at FNN about their sexual encounters until after the company fired her for poor performance in June 2020, more than three years *after* the alleged assaults. (*Id.* ¶¶ 150, 156.) Eckhart argues that Henry's consensual affair with a Las Vegas stripper should have placed the company on notice that Henry would "violently" and "forcefully" rape her. (Opp. 5.) But an employee's consensual extramarital affair—particularly one conducted outside the workplace—does not, as a matter of law, alert his employer that he might engage in sexual harassment or rape. Eckhart also relies on Henry's conduct towards several employees, but she admits that the earliest that FNN learned about these events was when a producer disclosed her consensual relationship with Henry in April 2017, two months *after* Eckhart's last sexual encounter with Henry. (56.1 Reply ¶ 186; Opp. 12.)

---

[1] For purposes of this motion, FNN takes no position as to whether or not Eckhart welcomed Henry's sexual conduct. Her claims against FNN fail as a matter of law irrespective of whether his conduct was unwelcome.

[2] FNN's Reply to Plaintiff's Responses to FNN's Statement of Undisputed Material Facts and FNN's Responses to Plaintiff's Statement of Additional Material Facts, filed in connection with FNN's Reply, is referred to herein as "56.1 Reply."

Lacking any evidence that FNN had knowledge specific to Henry, Eckhart argues that the company is "aware of sexual harassment" more generally because other female employees have made unproven accusations against men other than Henry. (Opp. 14.) But Eckhart has shown only that these hearsay allegations were made, not that they are credible—much less admissible into evidence. This Court should not permit Eckhart to proceed to a jury trial at which her evidence will require a series of confusing detours into accusations of sexual harassment involving third parties who have nothing to do with her case. To withstand summary judgment, Eckhart must come forward with evidence that FNN knew about Henry's proclivities—which she has not done.

Eckhart's own admissions also dispose of her meritless retaliation claim. Eckhart cannot trace her termination to any protected activity because she admits she did not report Henry's alleged harassment at any time during her employment, as her own contemporaneous notes confirm. Nor does Eckhart even address the well-documented performance failures that led to her termination in June 2020. In short, Eckhart comes nowhere close to establishing that she would not have been fired "but for" FNN's retaliation for her (nonexistent) reporting activity.

Finally, Eckhart entirely fails to respond to FNN's arguments for dismissing her negligence claim. Eckhart has thus abandoned this claim, which must be dismissed.

## ARGUMENT

**I.   ECKHART FAILS TO CREATE A TRIABLE ISSUE OF FACT ON HER SEXUAL HARASSMENT CLAIMS**

   **A.   Dismissal is Required Because it is Undisputed that FNN Was Not on Notice of Any Unwelcome Sexual Activity By Henry During Eckhart's Employment**

Eckhart can prevail on her sexual harassment claims only if she shows FNN had actual or constructive knowledge that Henry might sexually harass and assault her. (Dkt. 157 at 34.) What is more, Eckhart must show FNN acquired that knowledge no later than February 2017—the date of her third and final sexual encounter with Henry. (Mov. Br. 21-22.) But Eckhart admits that

2

neither she nor Henry told anyone at FNN about their relationship during the entire course of her employment. (56.1 Reply ¶¶ 150, 156.) Eckhart also does not dispute that no one complained to FNN that Henry engaged in any *unwelcome* sexual conduct before Eckhart's termination in June 2020. (*Id.* ¶¶ 184, 193.) These undisputed facts alone warrant summary judgment for FNN.

In an effort to resist summary judgment, Eckhart notes that FNN learned in 2016 that Henry had an extramarital affair with a Las Vegas stripper. But as FNN argued in its opening brief—and Eckhart fails to contest with any citations to authority—courts have consistently rejected the argument that consensual affairs place an employer on notice that its employee might engage in sexual harassment or rape. (Mov. Br. 23-25.) (collecting cases). Eckhart argues that FNN must have known that Henry posed a danger to women because reporter ▇▇▇▇▇▇▇ complained that Henry's return to work after the stripper affair was "demoralizing" for women. (56.1 Reply ¶ 184.) ▇▇▇▇ personal opinion that FNN should not employ a man who violates his marriage vows outside the workplace did not alert the company that Henry might engage in sexual harassment within the workplace. ▇▇▇▇, in any event, did not make her complaint until May 2017—three months *after* Eckhart and Henry's final sexual encounter. Eckhart also suggests that FNN must have known that Henry engaged in misbehavior beyond his affair with the stripper because he attended a treatment program, but she has no evidence for this assertion beyond rank speculation—which "cannot be used to overcome summary judgment."³ *Szewcyk v. Saakian*, 774 F. App'x 37, 40 (2d Cir. 2019). To the contrary, Eckhart admits that, when Henry returned from

---

³ Eckhart's effort to distinguish *Schmidt v. Medicalodges, Inc.*, 492 F. Supp. 2d 1302 (D. Kan. 2007), fails. In that case, the court specifically rejected the plaintiff's argument that her employer "knew or should have known of sexual harassment" before she complained because management knew her alleged harasser had "consensual sexual relationships with two different employees." *Id.* at 1309. The court held that a "consensual sexual relationship" does not "raise a reasonable inference that [the alleged harasser] was also engaging in unwelcome sexual harassment." *Id.*

3

the rehabilitation, FNN received a medical report recommending his return to the workplace. (56.1 Reply ¶ 15.)

Eckhart cites evidence that Henry engaged in workplace affairs before February 2017—but she admits that FNN learned of these affairs only later, when producer ▇▇▇ reported her own affair with Henry in April 2017. (*Id.* ¶ 186; Opp. 12.) Not only did ▇▇▇ report come too late in time to alert FNN of Henry's proclivities, but she also made clear the relationship was wholly consensual. (56.1 Reply ¶ 190.) ▇▇▇ also conveyed rumors that Henry had previously engaged in "sexting" and had an affair with a desk assistant in FNN's D.C. Bureau. (*Id.* ¶ 191.) But ▇▇▇ never alleged that this conduct was unwelcome, and FNN investigated and could not corroborate that it even occurred. (*Id.* ¶¶ 193-99.) And ▇▇▇ April 2017 report conveying these rumors could not, in any event, have put FNN on notice that Henry might rape Eckhart in February 2017.[4]

The same is true for ▇▇▇ December 2023 declaration describing her consensual affair with Henry. ▇▇▇ sworn statement, submitted during discovery in this case, made clear that she "kept [her] relationship with Ed a secret," "never told anyone at Fox News about [her] relationship prior to Jennifer [Eckhart] filing her lawsuit," and has "no reason to believe that

---

[4] Eckhart's allegation that FNN did not investigate ▇▇▇ disclosures is contrary to the record evidence. (*Id.* ¶¶ 194-99.) It is undisputed that: (1) two FNN executives contacted the head of the news organization at which the woman Henry was allegedly "sexting" was employed; (2) Kevin Lord spoke with an employee who supposedly had information about Henry's sexting behavior; and (3) Lord asked a Human Resources colleague to speak with D.C. Bureau employees with the title of desk assistant to see if any had workplace concerns. Despite these efforts, FNN could not corroborate any of the rumors that ▇▇▇ mentioned. ▇▇▇ was one of the individuals Lord spoke with during his inquiry. Eckhart's new allegation that ▇▇▇ "reported that Mr. Henry sent her a sexually inappropriate communication" is false. ▇▇▇ testified that when Henry was first hired (in 2011) she received an email from him that "seemed odd" and "suggestive," but not that the email was sexually inappropriate. (*Id.* ¶ 381.) Contrary to Eckhart's assertions, ▇▇▇ did not say that the reason she forwarded Henry's email to ▇▇▇ was because Henry's email "made her so uncomfortable." That statement appears nowhere in the record.

4

anyone at Fox News" knew about her relationship with Henry. (*Id.* ¶¶ 273-74.) Despite Eckhart's insinuations to the contrary, ▮ was also unequivocal that her relationship with Henry was "welcome" and "consensual." (*Id.* ¶ 272.) Eckhart offers no evidence whatsoever that FNN knew about Henry's consensual relationship with ▮ which would not have put FNN on notice of Henry's propensity for harassment in any event.

Eckhart cites evidence that Henry made *unwelcome* sexual advances toward two former FNN employees, but she admits that FNN learned about this alleged misconduct only in the course of this litigation. (*Id.* ¶¶ 280, 292.)[5] The fact that ▮ and ▮ provided declarations during discovery, long after Henry and Eckhart were both terminated, cannot create a fact dispute concerning FNN's knowledge of Henry's alleged misconduct at the time it occurred.

A brief chronology makes clear that FNN had no basis to know prior to February 2017 that Henry posed a sexual harassment risk to Eckhart:

- **December 2013:** Eckhart and Henry interact for the first time on Twitter. (56.1 Reply ¶ 200.)
- **2014:** Eckhart and Henry have sex at the Marriott Marquis hotel. (*Id.* ¶ 216.)
- **September 2015:** Eckhart performs oral sex on Henry at FNN offices. (*Id.* ¶ 223.)
- **May 2016:** FNN learns of Henry's affair with a Las Vegas stripper and disciplines Henry. (*Id.* ¶ 12.)
- **February 2017**: Eckhart and Henry have sex at the Omni Hotel. (*Id.* ¶ 235.)
- **April 2017:** ▮ discloses to FNN her consensual affair with Henry and mentions rumors that he may have had another affair and "sexted" with someone. (*Id.* ¶¶ 186-191.)

---

[5] Eckhart also points to Henry's interactions with Cathy Areu, a non-employee whose sexual harassment claims were previously dismissed. (*Id.* ¶ 263.) Areu claimed that Henry sexually harassed her only after Henry was already terminated, so her allegations could not have placed FNN on notice of Henry's propensity for harassment. Eckhart also cites to an October 2020 tabloid article concerning Henry's consensual interactions with Roxie Marroquin, another non-employee. (*See* Counterstatement ¶¶ 382-395.) But an article published months after Henry was terminated in 2020 is irrelevant to FNN's knowledge as of February 2017—and is inadmissible hearsay in any event.

5

- **May 2017:** ▮▮▮▮ expresses her belief that Henry's return to the workplace after his 2016 suspension was "demoralizing" for female employees. (*Id.* ¶ 184.)
- **October 2018:** Henry sends Eckhart some non-sexual texts; Eckhart does not respond. (*Id.* ¶¶ 247-250.)
- **June 12, 2020:** Eckhart is terminated for poor performance. (*Id.* ¶ 123.)
- **June 25, 2020:** Eckhart asserts for the first time, through counsel, that Henry sexually harassed and raped her. (*Id.* ¶¶ 150-151.)
- **June 25, 2020:** FNN retains attorneys at Davis & Gilbert LLP ("D&G") to investigate Eckhart's allegations. (*Id.* ¶ 152.)
- **June 30, 2020:** D&G provides FNN with a Preliminary Report, including a finding that Henry and Eckhart engaged in oral sex on FNN premises. (*Id.* ¶¶ 168, 171.)
- **July 1, 2020:** Henry is terminated. (*Id.* ¶ 174.)
- **July 20, 2020:** Eckhart files this lawsuit. (Dkt. 1.)
- **September 2023:** ▮▮▮▮ signs a declaration claiming that Henry sent a photo of his penis to her before 2016, and that she did not report it to FNN. (56.1 Reply ¶¶ 292-293.)
- **December 2023:** ▮▮▮▮ signs a declaration stating that her relationship with Henry was consensual and that neither she nor Henry disclosed it to FNN; ▮▮▮▮ signs a declaration stating that Henry sexually assaulted her in June 2018 and that she did not report it to FNN. (*Id.* ¶¶ 272-73, 286.)

The first time FNN received a complaint of unwelcome sexual activity by Henry was in June 2020, when Eckhart made a post-termination complaint through counsel.[6] Eckhart offers no evidence that FNN had notice of Henry's alleged propensities to engage in harassment and sexual assault before that date. Her sexual harassment claims against FNN must therefore be dismissed.

---

[6] There is no merit to Eckhart's claim that D&G's investigation into her harassment complaint was deficient. That investigation ended in Henry's termination. Eckhart suggests that FNN "lied" to D&G by representing that there had been no prior complaints of workplace harassment against Henry (Opp. 15-16), but it is true that no such complaints had been made. Although the investigator was not aware that ▮▮▮▮ reported uncorroborated rumors in April 2017 that Henry had engaged in "sexting" and other sexual conduct, there is no evidence that the investigation would have turned out differently had that information been conveyed. Eckhart also faults D&G for not speaking with Lord, but the investigator testified that he asked to speak with Lord only *after* Eckhart's counsel informed him in early July that Lord might have relevant information. (56.1 Reply ¶¶ 164, 513.) By that point, Henry had already been terminated. (*Id.*, *see also id.* ¶ 10.)

6

### B. Henry Was Not Eckhart's Supervisor

Having failed to satisfy her burden to show that FNN knew or should have known that Henry might sexually harass and rape her, Eckhart attempts to resurrect the argument that FNN is liable because Henry is a "supervisor." Her arguments flout this Court's ruling at the motion to dismiss stage that "Henry *was not Eckhart's manager or supervisor*." (Dkt. 157 at 34 (emphasis added).) That ruling constitutes the law of the case, and Eckhart offers no argument for why the Court should repudiate it. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570-71 (S.D.N.Y. 2017). She has therefore forfeited any challenge to the Court's order concluding that no supervisory relationship existed. *See United States ex rel. Quartararo v. Cath. Health Sys. of Long Island*, 2018 WL 3825906, at *5 (E.D.N.Y. Aug. 10, 2018) (applying the law of the case doctrine and explaining that the defendants "should have moved for reconsideration" of its earlier ruling).

Even if the Court were to entertain Eckhart's forfeited argument, it would fail. Under New York law, an employee exercises supervisory authority over another only if he has authority to affect the terms and conditions of her employment. That authority includes the ability "to take tangible employment actions against the victim, *i.e.* to effect a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Mejia v. City of N.Y.*, 2020 WL 2837008, at *16 (E.D.N.Y. May 30, 2020). But Eckhart does not offer a shred of evidence that Henry—who worked for a different show in a different office on a different Fox network—held any power to make decisions about her employment status. (56.1 Reply ¶¶ 2, 3, 9, 11, 17, 11, 357.) To the contrary, Eckhart admits that she did not report to Henry. (*Id.* ¶¶ 348-51, 354.) Brad Hirst was Eckhart's sole supervisor and the only person who had the authority to discipline her. (*Id.* ¶¶ 310, 317, 323, 325, 347, 350.) Eckhart also admitted at deposition, and Henry confirmed,

7

that Henry had no input into her compensation or promotions. (*Id.* ¶¶ 310, 317, 321, 323, 325.) Nor did Henry ever direct the tasks Eckhart was assigned, have any input into the terms and conditions of Eckhart's employment, or discuss Eckhart's job performance with her supervisors or anyone else at FNN. (*Id.*)

Eckhart's argument that Henry functioned as her "de facto" supervisor because he could make demands as an occasional guest on Claman's show is also frivolous. As support, Eckhart cites to her self-serving declaration (Willemin Ex. 61), which in turn refers to (but does not attach) purported communications between "Henry and his staff" and members of the *Countdown* staff. Even assuming Eckhart had offered such evidence, these types of incidental interactions do not come close to establishing that Henry could dictate the terms and conditions of Eckhart's employment. *See, e.g.*, *O'Neil v. Roman Cath. Diocese of Brooklyn*, 2011 WL 1587753, at *9 (Sup. Ct. Kings Cnty. Apr. 27, 2011) (finding no triable issue as to supervisory status under NYCHRL where alleged harasser had only an "incidental presence" in plaintiff's workplace and had no authority to make and oversee her daily work assignments); *Cajamarca v. Regal Ent. Grp.*, 2013 WL 5717119, at *13-15, 20 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) (no triable issue as to supervisory status under NYCHRL where plaintiff performed certain tasks as directed by alleged harasser, which was "abnormal" because "they usually worked in geographically different locations . . . and their job functions and activities did not overlap"). Eckhart's argument also ignores the Court's earlier ruling that anchors and correspondents do not become "supervisors" by virtue of their on-air appearances—a ruling that is the law of the case. (Dkt. 157 at 30-31.)

Eckhart's argument that Henry should be considered a "supervisor" because he allegedly supervised *other* people lacks any support in the caselaw. Eckhart's sole authority for this untenable position is *Melendez v. New York City Transit Authority*, 204 A.D.3d 542 (1st Dep't

8

2022), but that case did not even address the issue. The summary judgment briefing in *Melendez* makes clear that the plaintiff argued that the alleged harasser exercised supervisory responsibility *over her*—not over other staff. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 9, 2021 WL 3038875 (Sup. Ct. N.Y. Cnty. Feb. 12, 2021) (arguing that harasser "made it clear that he was the real supervisor" on her shift). Case after case has made clear that the supervisory relationship needed to establish vicarious liability must exist between the plaintiff and alleged harasser.[7]

Beyond its legal infirmities, Eckhart's argument that Henry exercised supervisory authority over others is also factually baseless. Eckhart's only support for this assertion is her own self-serving declaration. But Eckhart does not claim to have personal knowledge concerning Henry's interactions with staff on his show, and her statements are therefore inadmissible. *See McCrain v. MTA*, 2020 WL 1285634, at *11 (S.D.N.Y. Mar. 18, 2020) (disregarding portions of plaintiff's declaration that included assertions made without personal knowledge). Eckhart's argument that Henry was a supervisor, and that FNN therefore is vicariously liable, must be rejected.

## II. ECKHART CANNOT CREATE A FACT DISPUTE BY HEARSAY AND SPECULATION

### A. Rumors about Henry Among Non-Supervisory Personnel Are Immaterial

Lacking any evidence that FNN was on notice that Henry had a propensity for harassment or rape, Eckhart relies on alleged rumors among non-supervisory personnel about Henry's

---

[7] *See Maynard v. Montefiore Med. Ctr.*, 2021 WL 396700, at *14 (S.D.N.Y. Feb. 4, 2021) ("none of the alleged harassers had any supervisory authority *over the Plaintiff* . . . which forecloses one avenue for establishing vicarious liability") (emphasis added); *Dobney v. Walt Disney Co.*, 2024 WL 325336, at *6 (S.D.N.Y. Jan. 29, 2024) (stating that the NYCHRL provides for vicarious liability where the employee who engaged in unlawful conduct "'exercised managerial or supervisory authority' *over the plaintiff*") (emphasis added); *Greenidge v. City of N.Y.*, 2023 WL 6598626, at *4 (Sup. Ct. N.Y. Cnty. Oct. 10, 2023) (granting motion to dismiss where plaintiff failed to allege that the purported discriminators exercised supervisory responsibility over him, and finding an allegation that the discriminators were "of higher rank than plaintiff" insufficient).

9

interactions with women. But those rumors did not relate to unwelcome sexual activity. For example, Eckhart notes that ▅▅▅▅▅▅ discussed Henry with coworkers, but ▅▅▅ testified that she had merely heard "chatter" that Henry was "unfaithful to his wife" and "rumors" that he had "consensual" affairs. (Willemin Decl. Ex. 1 at 17, 19, 22.) ▅▅▅ testified that she was not aware that Henry allegedly engaged in sexual harassment. (*Id.* at 43.) Eckhart also claims that Claman, an employee and not an executive of FNN, told her that Henry was a "sex addict." But this statement—which Claman denies ever making—is inadmissible hearsay and does not reflect any knowledge on the part of the company that Henry might sexually harass or rape anyone.

Eckhart cites *Melendez v. New York City Transit Authority*, 2021 WL 2627513 (Sup. Ct. N.Y. Cnty. June 24, 2021), but that case fails to support her contention that rumors about Henry can establish corporate notice. The plaintiff in *Melendez* offered evidence that *supervisory* personnel were aware of harassing comments to female employees that were similar to comments the harasser made to the plaintiff. Here, by contrast, Eckhart offers no evidence that rumors of harassing conduct were ever brought to anyone at FNN with supervisory authority over Henry. And even if they were, rumors that Henry was "unfaithful" and even a "sex addict" would not have placed the company on notice that he might sexually harass and rape a colleague.

### B.  Complaints Involving Other People Are Immaterial

Faced with the reality that there is no record evidence that FNN was on notice of Henry's propensity to harass or assault her, Eckhart relies on unsupported hearsay allegations made by other FNN employees that have nothing to do with her or Henry. (*See* Opp. 14-16.) Eckhart points to allegations in publicly filed lawsuits by former FNN employees, but unproven allegations are not "evidence."[8] *See, e.g.*, *Hernandez v. Coca Cola Refreshments USA, Inc.*, 2013 WL 6388654,

---

[8] The complaints on which Eckhart relies include that of her former co-plaintiff, Cathy Areu, whose claims were dismissed with prejudice. *Areu v. Fox News Network, LLC*, 20-cv-8678

10

at *3 (E.D.N.Y. Dec. 6, 2013) ("allegations in a complaint are not 'evidence' that can defeat a motion for summary judgment"). She also cites unverified complaints of sexual harassment that FNN employees made to Human Resources and alleges that FNN failed to properly investigate them. But unproven allegations of harassment are not evidence; they are rank hearsay. Eckhart cannot survive summary judgment by relying on accusations that would not be admissible at trial—nor should she be permitted to subject a jury to a series of mini-trials concerning whether these allegations were credible or whether FNN's response was sufficient.[9] *See Debrosse v. City of N.Y.*, 739 F. App'x 48, 50 (2d Cir. 2018) ("Nor does any of the inadmissible hearsay . . . defeat summary judgment, since the court may consider only admissible evidence."). Far from helping her case, these complaints give the lie to Eckhart's argument that FNN employees did not know how to complain of sexual harassment or were afraid to do so. As Eckhart has acknowledged, FNN had numerous avenues for employees to complain of sexual harassment, provided employees anti-harassment trainings during which Eckhart and other employees were informed how to complain, displayed posters with information about how to complain, and issued policies that made reporting sexual harassment mandatory. (56.1 Reply ¶¶ 130, 138-140, 145, 147.)

---

(S.D.N.Y. Oct. 19, 2020), at Dkt. 71. Gallingly, Eckhart also relies on a complaint by *Henry*, whose veracity she otherwise questions and whose claims were dismissed in 2022. *Henry v. Fox News Network, LLC*, 21-cv-07299 (S.D.N.Y. Aug. 31, 2021), at Dkts. 94-95.

[9] Nearly three years ago, Judge Gorenstein rejected Eckhart's contention that FNN's response to other employees' complaints is relevant to the merits of this case, except for the limited purpose of using "other" complaint documents to ascertain whether there had been other complaints of a "toxic work environment" that FNN's Human Resources department had interpreted as complaints of sexual harassment. (Dkt. 198.) FNN was not ordered to produce full investigation files for each of these complaints because they are irrelevant to the merits of Eckhart's claims.

11

In short, the unproven allegations regarding various third parties do not create a material fact dispute concerning whether FNN was on notice of *Henry*'s alleged propensity to engage in sexual harassment and rape.[10]

### III.  ECKHART FAILS TO CREATE A TRIABLE ISSUE OF FACT ON HER RETALIATION CLAIM

#### A.  Eckhart Has Failed to Raise a Triable Issue on her Prima Facie Case

Eckhart admits that she did not complain about sexual harassment during her employment. She seeks to salvage her retaliation claim by contending that her mention of a "toxic" or "hostile" "jealous mean girls" work environment at the February 10, 2020 meeting should be construed as a protected complaint of harassment because a juror "could draw" an "inference" that Hirst and Collins "would have" understood Eckhart's complaints to mean something different from what she actually said. (Opp. 32.) Eckhart does not cite any authority to support her argument that a retaliation claim can proceed to trial based on neutral language that the plaintiff believes "would" have put her employer on notice of protected activity. Her speculation and assumptions cannot create a material dispute of fact because "where a plaintiff's complaint is vague or ambiguous and does not sufficiently articulate the nature of harassment, courts hold that a plaintiff has not engaged in a protected activity." *Soliman v. Deutsche Bank GE*, 2004 WL 1124689, at *13 (S.D.N.Y. May 20, 2004). The fact that Eckhart's contemporaneous notes state that she had "not yet mentioned the sexual harassment" during her February 10, 2020 meeting with Hirst and Collins further underscores that she did not engage in protected activity at that time. (56.1 Reply ¶ 96.)

---

[10] The New York City Commission on Human Rights' ("NYCCHR") press release concerning its conciliation agreement with FNN is hearsay and merely demonstrates that the NYCCHR initiated an investigation and then reached a settlement with FNN. The press release is not admissible as evidence of sexual harassment liability or the adequacy of FNN's procedures. Fed. R. Evid. 408; *see also N.Y.C. Dep't of Finance v. Twin Rivers, Inc.*, 182 F.3d 900, 900 (2d Cir. 1999) ("settlement agreements are generally inadmissible to prove facts related to a settling party's liability").

Moreover, it is undisputed that neither Collins nor Hirst understood Eckhart's complaints about a "toxic" or "hostile" "jealous mean girls" environment to refer to sexual harassment, and it is not possible for them to have retaliated against Eckhart if they were unaware of her alleged protected activity. *See Joshi v. Trs. of Columbia Univ.*, 515 F. Supp. 3d 200, 217 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3205883 (2d Cir. Aug. 9, 2022) (holding that there was "no basis to claim retaliation" when the decisionmaker was unaware of the plaintiff's complaint). Nor can Eckhart circumvent her burden of establishing the elements of her claim by arguing that Hirst "directed" her not to complain and interrupted her during the meeting. *See Chambers v. Heidelberg USA, Inc.*, 2006 WL 1281308, at *10 (D.N.J. May 5, 2006) ("regardless of the reason why [Plaintiff] did not complain . . . there can be no claim for retaliatory discharge when [Plaintiff] never engaged in a protected activity"). Eckhart testified that the complaints she intended to raise at the meeting were not sexual harassment but: (1) that she "worked in a toxic work environment"; and (2) that she followed the same protocol for Go Red as for past events. Importantly, despite Hirst's purported directive that she refrain from making such complaints, Eckhart *disregarded* Hirst and raised these concerns during the meeting. (56.1 Reply ¶¶ 361-62.) Eckhart concededly was also aware of several other avenues to register complaints but did not do so.[11] She does not dispute that she was aware of FNN's complaint procedures, had received training on this subject, and had received communications instructing and encouraging employees to notify the company of any

---

[11] Eckhart argues (at 10) that "employees" did not know how to complain of sexual misconduct, but the only evidence that she cites in support of this sweeping statement is the testimony of one FNN employee. However, direct proof of the falsity of Eckhart's statement is located just a few pages later, where Eckhart cites to a number of instances when FNN employees utilized FNN's hotline and other avenues for making internal complaints. (Opp. 14-16.) Those complaints would not exist if FNN's complaint procedures were inaccessible.

concerns. (56.1 Reply ¶¶ 130-134, 140, 141, 143, 145, 147.) She nevertheless chose to keep her relationship with Henry a secret while she was employed. (*Id.* ¶ 148.)

Eckhart argues that the "temporal proximity" between her "complaints" and her placement on a PIP establishes causation, but in doing so she completely ignores the evidence documenting her performance failures over many months before and after her February 10, 2020 "complaints." It is undisputed that Eckhart received a "Below Expectations" rating in July 2019 and that numerous deficiencies were noted in the months that followed. Moreover, Eckhart acknowledges that the discussions about placing her on a PIP preceded her "complaints," which further undermines any argument that there was a connection between these events. *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Bassi v. N.Y. Med. Coll.*, 2023 WL 2330478, at *13 (S.D.N.Y. Mar. 2, 2023) (no causal connection where plaintiff's performance deficiencies were identified "several months before" plaintiff's complaint).

### B. Plaintiff Cannot Refute FNN's Legitimate Reasons for Terminating Her

Eckhart completely ignores the substantial evidence showing that FNN had serious concerns about her performance that ultimately led to her termination. There is no evidence that Senior Producer Alicia Cascardi—who escalated Eckhart's performance problems, including her chronic tardiness, repeated failure to complete the rundown sheet, editorial mistakes, failure to respond to emails, and disrespectful attitude, to Hirst's attention—had any knowledge of Eckhart's "complaints." (56.1 Reply ¶¶ 108-117.) Eckhart does not argue, nor could she, that Cascardi was

motivated by retaliatory animus when she brought these concerns to Hirst. FNN's legitimate, non-retaliatory reasons for firing Eckhart are well-documented and undisputed.[12]

### C. Plaintiff Has Failed to Put Forth Any Evidence of Pretext

Plaintiff has failed to raise a genuine issue of fact that FNN's reasons for terminating her were pretextual—let alone that retaliation was the "but for" cause of the adverse employment actions. As discussed above, the temporal proximity between Eckhart's "protected activity" and the PIP cannot establish pretext. That Eckhart disagrees with her manager's assessment of her performance is also of no moment, as "a plaintiff's subjective assessment of [her] qualifications is insufficient to create a genuine issue of fact as to whether an employer's proffered reason" was pretextual. *Champion v. N.Y. St. Off. of Parks, Recreation & Historic Pres.*, 500 F. Supp. 3d 26, 46 (S.D.N.Y. 2020). Eckhart fails to address the evidence demonstrating her lateness, policy violations, and overall failure to perform to her manager's expectations which lead to her termination. (*See, e.g.*, 56.1 Reply ¶¶ 28-61.) "[A]n employee's personal disagreement with [her] employer's evaluation of [her] is not enough to create an inference of [retaliation]." *Mason v. Vassar Coll.*, 2009 WL 10739919, at *6 (S.D.N.Y. July 2, 2009).

### IV. PLAINTIFF HAS ABANDONED HER NEGLIGENCE CLAIM

Eckhart fails to oppose the portions of FNN's motion seeking summary judgment on her negligence claim. This failure to respond amounts to an abandonment of these claims, requiring dismissal. *See Jackson v. Fed. Express*, 766 F.3d 189, 195-96 (2d Cir. 2014); *Ruradan Corp. v. City of N.Y.*, 2024 WL 1555230, at *5-6 (S.D.N.Y. Apr. 10, 2024).

---

[12] Eckhart objects to Cascardi's reports to Hirst as hearsay, but personnel documents such as these "are not hearsay because they are not being offered to prove the truth of what they assert . . . [but] to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff." *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010).

## **CONCLUSION**

This Court should grant FNN's Motion For Summary Judgment in its entirety.

Dated: December 20, 2024
                                                       Respectfully submitted,

*/s/ Kathleen M. McKenna*
Kathleen M. McKenna, Esq.
Rachel S. Fischer, Esq.
Julia F. Hollreiser, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
kmckenna@proskauer.com
rfischer@proskauer.com
jhollreiser@proskauer.com

*Attorneys for Defendant*
*Fox News Network, LLC*

16